UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: MACBOOK KEYBOARD LITIGATION | Case No. 5:18-cv-02813-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 72 |

This case is about the thin "butterfly" keyboards that Defendant Apple, Inc. rolled out with its MacBook and MacBook Pro laptop computers in 2015 and 2016. Plaintiffs bring a number of consumer protection and warranty claims stemming from an alleged defect in the keyboards, and they purport to represent a nationwide class and state-specific subclasses. Apple's Motion to Dismiss the Consolidated Class Action Complaint ("CCAC") under Federal Rules of Civil Procedure 12(b)(6) and 9(b) is currently before the Court. For the reasons discussed below, the Court grants in part and denies in part Apple's Motion.

## I. Plaintiffs' Allegations

In May 2015, Apple introduced the butterfly keyboard with that year's model of MacBook. CCAC ¶ 113. In late 2016, Apple released a new version of the MacBook Pro laptop also built with the butterfly keyboard. *Id.* ¶ 117. Since the launches of the butterfly keyboard, Apple has released updated versions of both laptops and equipped each update with the butterfly keyboard. *Id.* ¶¶ 116-18. The MacBook sells at retail for $1299 to $1599 and the MacBook Pro sells for $1299 to $2799. *Id.* ¶¶ 116, 119.

During Apple's launch event for the 2015 MacBook on March 9 of that year, Apple

boasted that the new keyboard was 40 percent thinner than older keyboards. *Id.* ¶ 113. The new keyboard was also represented to be "much more precise, and accurate" and "four times more stable." *Id.* During the October 27, 2016 launch event for the first MacBook Pro with the butterfly keyboard, Apple stated that the keyboard was "more responsive." *Id.* ¶ 119. Apple has continued to make similar representations about the butterfly keyboard on its website and through other media.

Plaintiffs allege that the keyboards have a latent physical defect. *Id.* ¶¶ 127, 130. Allegedly, minute amounts dust or other debris can get into the keyboard so that the keys stick in place and fail to respond to keystrokes. *Id.* ¶ 127. This alleged defect will render some keys inoperable, making it impossible to use the laptop for one of its basic functions—entering keyboard commands. *Id.* ¶¶ 127-29. Plaintiffs allege that this defect is common to all butterfly keyboards—meaning all MacBook and MacBook Pro laptops manufactured since 2015 and 2016 respectively—and will eventually impact every one. *Id.* ¶ 130.

Plaintiffs further allege that Apple knew about this defect since just months after the initial release of the 2015 MacBook, but it has concealed the defect. *Id.* ¶¶ 140, 152-53. On May 13, 2015, Apple filed a patent entitled "Keyboard Assemblies Having Reduced Thicknesses and Method of Forming Keyboard Assemblies." *Id.* ¶ 142. The filing noted that the reduction in size of keyboard components could degrade the "operational life of the component . . . [and] the keyboard assembly and/or electronic device." *Id.* The filing proposed a method to "seal[]" or "protect[]" the keyboard's electrical contacts "from contaminants." *Id.* A year later, Apple filed another patent, and that filing stated: "a piece of debris, such as sand, crumbs, dust, or the like, may interfere with the movement of the butterfly hinge during the actuation of the key" and that "debris or other contaminants [may] fall under the keycap[s]." *Id.* ¶ 144. In September 2016, Apple filed a patent for methods to "prevent the ingress of contaminants such as dust or liquids into keyboards." *Id.* ¶ 145. In July 2018, Apple released a new version of the MacBook Pro with a silicone membrane in the keyboard. *Id.* ¶ 149. Plaintiffs allege that the silicone membrane does not cure the defect. *Id.* ¶ 150. During this entire time, Apple has not publicly disclosed the

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
2

alleged defect. *Id.* ¶¶ 147, 149, 154.

Plaintiffs further allege that Apple puts each of its keyboards through testing to simulate real-world conditions prior to launch. *Id.* ¶ 151. Allegedly, these tests check the keyboards for instability and non-responsiveness. *Id.* ¶ 153. Plaintiffs allege that this testing revealed the defect to Apple. *Id.* ¶ 153.

In addition to the patent applications and Apple's testing, Plaintiffs allege that Apple has knowledge of the defect from numerous online complaints posted to the apple.com forums and to other online forums that Apple monitors. *Id.* ¶ 139. Plaintiffs quote several comments voicing complaints such as "the spacebar on my new 12 [inch] macbook is not working properly on the right side. . . . It feels like it is bottoming out on that side," "[t]he u key. Sometimes it doesn't work at all. Other times it types twice," and "I have a stuck key on the butterfly keyboard of a MacBook Pro (13-inch, 2016)." *Id.* ¶¶ 132, 134, 136.

Apple provides a one-year Limited Warranty with each MacBook and MacBook Pro. *Id.* ¶ 155. The relevant portions of the Limited Warranty state:

> Apple . . . warrants the Apple-branded hardware product . . . ("Apple Product") against defects in materials and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase by the end-user purchaser ("Warranty Period").
>
> \*\*\*
> WHAT WILL APPLE DO IN THE EVENT THE WARRANTY IS BREACHED?
>
> If during the Warranty Period you submit a claim to Apple . . . in accordance with this warranty, Apple will, at its option:
> (i) repair the Apple Product using new or previously used parts that are equivalent to new in performance and reliability,
> (ii) replace the Apple Product with the same model (or with your consent a product that has similar functionality) formed from new and/or previously used parts that are equivalent to new in performance and reliability, or
> (iii) exchange the Apple Product for a refund of your purchase price.

CCAC ¶ 156. The warranty gives Apple sole discretion to repair or replace a defective laptop, or to refund the purchase price. *Id.* ¶ 157.

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
3

Plaintiffs are ten consumers from California, Florida, Illinois, Michigan, New Jersey, New York, and Washington. *Id.* ¶¶ 24, 30, 38, 46, 53, 61, 67, 75, 85, 93. Each Plaintiff alleges to have purchased a MacBook or MacBook Pro with the butterfly keyboard. *Id.* Each one alleges to have made the purchase after being exposed to representations on specific apple.com websites that the butterfly is "more" "responsive." *Id.* ¶¶ 25, 31, 39, 47, 54, 62, 68, 76, 86. Plaintiffs allege that after they purchased their laptops, their keyboards failed within a year. *Id.* ¶¶ 26, 32, 40, 48, 55, 63, 69, 77, 87, 94. Each Plaintiff alleges that he consulted with or complained to Apple about the faulty keyboards, but Apple failed to provide effective troubleshooting or repairs, an operable replacement laptop free of charge, or a refund. *Id.* ¶¶ 27-28, 35-36, 41-43, 49-52, 56-59, 64-65, 70-73, 78-83, 88-91, 96-99. Several Plaintiffs allege that they were forced to spend money out of pocket for AppleCare service, insurance, or a new non-Apple laptop. *Id.* ¶¶ 28, 43-44, 78-80, 95-96. Several Plaintiffs allege that after having their laptops repaired or replaced, the defect returned. *Id.* ¶¶ 35-36, 50-52, 56-59, 64-65, 69-72, 79-81, 87-91, 95-99.

**II.     Legal Standard**

To survive a 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must construe the alleged facts and draw all inferences in the light most favorable to the plaintiff. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). But courts need not accept legal conclusions as true. *Iqbal*, 566 U.S. at 678. Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Claims based in fraud are subject to the heightened pleading standards of Rule 9(b). To adequately allege fraud, a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*,

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
4

780 F.2d 727, 731 (9th Cir. 1985).

**III. Choice of Law**

Apple asks the Court to dismiss the California-law claims of the non-California Plaintiffs. Mot. at 5. Plaintiffs argue that the Court should, instead, defer the choice of law analysis until class certification. Op. at 7. "There is no bright-line requirement dictating when the court must determine which state's laws apply." *Potter v. Chevron Prod. Co.*, 2018 WL 4053448, at *10 (N.D. Cal. Aug. 24, 2018). Apple cites several cases where courts decided which law to apply at the pleadings, and Plaintiffs cite others where courts deferred the choice of law question until later. This Court will consider whether "further development of the factual record is . . . reasonably likely to materially impact the choice of law determination" in order decide when to make that determination. *Id.* (citing *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1021 (N.D. Cal. 2014)).

Under California law, courts apply a three-step governmental interest test to determine whether California law should apply to out-of-state plaintiffs or class members. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). The first step is to determine whether the relevant laws of the affected jurisdictions are the same or different. *Id.* "A problem only arises if differences in state law are material, that is, if they make a difference in this litigation." *Id.* Apple provided a six-page chart reviewing the differences in the consumer protection laws of each of Plaintiffs' home states. Apple contends that the Illinois and Michigan consumer protection law requires some level of intent[1] while the consumer protection laws of California, Florida, Massachusetts, New Jersey, New York, and Washington do not. Mot. at 6. Apple argues that this difference is material and therefore weighs in favor of dismissing the non-California Plaintiffs claims under California law. Reply at 3-4. Plaintiffs, though, allege facts that support an inference that Apple acted with intent (*see, e.g.*, CCAC ¶¶ 149, 153-54) and they contend that they

---

[1] The Court does not presently consider whether the Illinois Consumer Fraud Act requires "scienter" beyond noting that it does require some form of "intent." 815 Ill. Comp. Stat. Ann. 505/2.

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
5

will be able to show intent which will make this conflict immaterial. Op. at 9. This is the sort of issue where development of the factual record is necessary for the fair determination of choice of law. *Potter*, 2018 WL 4053448, at *10; *see also Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012). Because Plaintiffs have identified at least one area where discovery is necessary for the choice of law analysis, the Court will defer this question. The Motion to Dismiss the non-California Plaintiffs' claims under California law is DENIED. Apple may raise this challenge again at class certification.

### IV. The Implied Covenant of Good Faith and Fair Dealing

"It has long been recognized in California that there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000), *as modified* (July 26, 2000) (citation, quotation, and internal alterations omitted). The purpose of the implied covenant is "to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992) (quotation omitted). To maintain a claim for breach of the implied covenant, "a plaintiff must show that the conduct of the defendant, whether or not it constitutes a breach of a consensual contract term, unfairly frustrates the agreed upon purposes and disappoints the reasonable expectations of the other party." *Reiser v. Marriott Vacations Worldwide Corp.*, 2016 WL 1720741, at *5 (E.D. Cal. Apr. 29, 2016).

Here, Apple's Limited Warranty provides in relevant part:

> Apple . . . warrants the Apple-branded hardware product . . . ("Apple Product") against defects in materials and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase by the end-user purchaser ("Warranty Period").
>
> \*\*\*
> WHAT WILL APPLE DO IN THE EVENT THE WARRANTY IS BREACHED?

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
6

> If during the Warranty Period you submit a claim to Apple . . . in accordance with this warranty, Apple will, at its option:
> (i) repair the Apple Product using new or previously used parts that are equivalent to new in performance and reliability,
> (ii) replace the Apple Product with the same model (or with your consent a product that has similar functionality) formed from new and/or previously used parts that are equivalent to new in performance and reliability, or
> (iii) exchange the Apple Product for a refund of your purchase price.

CCAC ¶ 156.

Plaintiffs allege that Apple violated the covenant implied in the Limited Warranty through its responses to their complaints about the allegedly defective keyboard. Specifically, they allege that Apple, despite knowing that the butterfly keyboard is defective, deprived Plaintiffs of warranty service by failing to provide an effective repair or remedy for the defect, directing Plaintiffs to engage in ineffectual troubleshooting, promising but failing to deliver warranty relief, and blaming them for the problems with the keyboard. *Id.* ¶ 218. Apple contends that Plaintiffs allege a design defect in the keyboard, but the Limited Warranty only obliges Apple to provide warranty services for "defects in materials and workmanship." Mot. at 8-10. Thus, Apple is under no duty to provide any warranty services for the allegedly defective keyboard design, and therefore could not have violated the implied covenant. *Id.*

The Court agrees with Apple that the CCAC alleges that the defect is a product of the keyboard's design. Plaintiffs allege that Apple designed the butterfly keyboard (CCAC ¶ 141) and that the "design" has a "defective nature" (*id.* ¶ 3). That the CCAC describes the defect as a "physical" one does not make the defect a production defect. Contrary to Plaintiffs' contention, the CCAC does not sufficiently allege a manufacturing or production defect. The CCAC's assertions that Apple "produc[ed]" the defective keyboard either are conclusory (*id.* ¶ 2) or refer to the keyboards' design, not their manufacture (*id.* ¶ 112).

The Court further agrees with Apple that the covenant of good faith and fair dealing implied into the Limited Warranty does not apply to design defects. Courts have found that warranties for defects in "materials" and "workmanship" do not apply to design defects. *See, e.g., Davidson v. Apple, Inc.*, 2017 WL 976048, at *11 (N.D. Cal. Mar. 14, 2017); *Sater v. Chrysler*

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
7

*Grp. LLC*, 2015 WL 736273, at *4 (C.D. Cal. Feb. 20, 2015); *Clark v. LG Elecs. U.S.A., Inc.*, 2013 WL 5816410, at *7 (S.D. Cal. Oct. 29, 2013). Because the implied covenant protects the "express" terms of a contract and does not create obligations not included in the contract, the Court finds that the Plaintiffs have failed to plead a cause of action for violation of the implied covenant of good faith and fair dealing. *Carma Developers*, 2 Cal. 4th at 373. The Court GRANTS the Motion without prejudice as to the Fourth Claim for Relief.

## V. Claims Based in Fraud

### A. Legal Framework

Plaintiffs confirm in their Opposition that their fraud claims are based on the alleged omission or concealment of materials facts, not affirmative misrepresentations. Op. at 15. "Omissions may be the basis of claims under California consumer protections laws, but 'to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824 (2006)). "An essential element for a fraudulent omission claim is actual reliance." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). Apple moves to dismiss Plaintiffs' fraud by omission claims on the grounds that they failed to plead that they relied on the alleged fraudulent omissions and that Apple was under a duty to disclose the alleged defect. Mot. at 13-15 & n.14. The parties agree that California's test to determine whether a duty to disclose exists is the same under the other consumer protection laws. Mot. at 15 n.14; Op. at 16 n.3.

### B. Duty to Disclose

The parties disagree over the circumstances that can create a duty to disclose for a manufacturer-defendant. Apple maintains that the Ninth Circuit decision in *Wilson v. Hewlett-Packard* is controlling, and therefore Plaintiffs must allege a safety hazard arising from the omission in order to adequately allege a duty to disclose. 668 F.3d 1136, 1141 (9th Cir. 2012); Mot. at 15. Plaintiffs argue that the Ninth Circuit's decision in *Hodsdon* takes these facts outside of *Wilson*'s safety hazard requirement because the alleged keyboard defect goes to the laptops'

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
8

core functionality. 891 F.3d at 861-63; Op. at 17-18. Since the *Hodsdon* decision, courts in the Northern District have ruled that when an omission goes to the core function of a product, then a defendant may be under a duty to disclose and a plaintiff may maintain a claim for fraudulent omission. In *Hoai Dang v. Samsung Elecs. Co.*, the court noted that under *Hodsdon*, "'central function' cases 'are not necessarily irreconcilable with *Wilson* because, where the challenged omission does not concern a central functional defect, the plaintiff may still have to plead a safety hazard to establish that the defendant had a duty to disclose.'" 2018 WL 6308738, at *6-7 (N.D. Cal. Dec. 3, 2018) (quoting *Hodsdon*, 891 F.3d at 864, and dismissing the complaint after "appl[ying] the *Hodsdon* standard"). In *Norcia v. Samsung Telecommunications Am., LLC*, the court ruled that the *Hodsdon* decision "made crystal clear that '*Wilson*'s safety hazard pleading requirement is not necessary in all omission cases.'" 2018 WL 4772302, at *1 (N.D. Cal. Oct. 1, 2018) (quoting *Hodsdon*, 891 F.3d at 862-64). And in *Beyer v. Symantec Corp.*, the court reasoned that "[b]ecause the complaint in the instant case does not allege a safety hazard, the issue . . . is whether" the alleged defects met the central function standard articulated in *Hodsdon*. 333 F. Supp. 3d 966, 979 (N.D. Cal. 2018); *see also In re Seagate Tech. LLC*, 326 F.R.D. 223, 242 (N.D. Cal. 2018) (noting that *Hodsdon* called *Wilson* "into doubt"); *Garcia v. Gen. Motors LLC*, 2018 WL 6460196, at *17 n.2 (E.D. Cal. Dec. 10, 2018) ("[T]he Court declines to follow cases suggesting a safety-based duty under California state law to the extent they contradict [California state court precedent]. And, regardless of whether a safety-based duty does exist, the Court finds [the defendant] did have a duty to disclose the alleged defect at the time of sale.").

Apple has identified one case from the Central District that post-dates the Ninth Circuit's decision in *Hodsdon* and that holds that *Wilson* is binding on the district courts. *Otero, et al. v. Zeltiq Aesthetics, Inc.*, 2018 WL 3012942, at *5 (C.D. Cal. June 11, 2018). But the Court does not find it persuasive. This case was decided approximately one week after *Hodsdon*, and it did not consider the Ninth Circuit's reasoning in *Hodsdon*. Further, it only addressed one of the two California state court cases that the Ninth Circuit considered in *Hodsdon*.

This Court will follow the reasoning expressed in *Hodsdon*, and adopted by other Northern

District courts, that "*Wilson*'s safety hazard pleading requirement is not necessary in all omission cases." *Hodsdon*, 891 F.3d at 864. Under the standard expressed in *Hodsdon*, a plaintiff must allege three factors to raise a duty to disclose. First, the plaintiff must allege that the omitted fact was material. *Id.* at 863. Second, the plaintiff must allege that the omitted or concealed defect was central to the product's function. *Id.* at 864. And third, the plaintiff must allege one of the following: "(1) [that] the defendant is the plaintiff's fiduciary; (2) [that] the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) [that] the defendant actively conceals a material fact from the plaintiff; [or] (4) [that] the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Id.* at 862 (citations and quotations omitted). The Court now considers these factors.

### 1. Materiality

To determine whether a defendant omitted a material fact, a court should assess whether "a reasonable consumer would deem it important in determining how to act in the transaction at issue." *Gutierrez v. Carmax Auto Superstores California*, 19 Cal. App. 5th 1234, 1258 (Ct. App. 2018), *as modified on denial of reh'g* (Feb. 22, 2018). "Materiality usually is a question of fact that should be left to the jury unless the statement at issue is obviously unimportant." *Beyer*, 333 F. Supp. 3d at 978 (quoting *Gutierrez*, 19 Cal. App. 5th at 1262).

Here, Plaintiffs allege that every MacBook from the 2015 model and later, and MacBook Pro from the 2016 model and later have keyboards that will, eventually, fail. CCAC ¶ 130. The alleged failure is caused by the exposure of a minute amount of dust or debris to the keyboard. *Id.* ¶ 127. The Court finds that a reasonable consumer would deem these alleged facts to be important when choosing to purchase a laptop computer.

### 2. Centrality to the Product's Function

Plaintiffs allege that the defect will cause one or more keys on the laptop's keyboard to become inoperable. *Id.* The defect thusly prevents or seriously impairs the full use of the laptop. *Id.* ¶¶ 127-29. As in *Norcia* where the court found that speed and performance to be a central function of a mobile phone (2018 WL 4772302, at *1-2), this Court finds that the functionality of

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
10

a keyboard to be central to a laptop.

### 3. Exclusive Knowledge

Finally, Plaintiffs adequately plead facts showing that Apple had exclusive knowledge of the defect. Plaintiffs allege that they were unaware that their keyboards were likely to fail within a year of purchase. CCAC ¶ 102. The CCAC alleges that Apple performs engineering tests on its hardware prior to release, which Apple concedes. *Id.* ¶¶ 151-52; Reply at 11. Plaintiffs further allege that Apple's patent applications reflect knowledge of the defect before any Plaintiff purchased their laptop. *Id.* ¶ 142. Specifically, in a patent application from May 2015, Apple noted that reducing the size of the keyboard components could degrade the "operational life" of the keyboard and it proposed a method for "seal[ing]" or "protect[ing]" electrical contacts from "contaminants." *Id.* Finally, Plaintiffs allege that Apple had knowledge of the defect from numerous online complaints at the customer forums on apple.com and other websites that Apple monitors. *Id.* ¶¶ 132-36.

Apple's arguments to the contrary are not persuasive. First, Apple contends that Plaintiffs' allegations as to testing are conclusory, lack specificity, and fail to show that Apple had knowledge of the defect. Mot. at 15-16; Rep. at 11. Next, Apple argues that its patent applications merely show its "plans and ideas" for its keyboards. Mot. at 16 n.16; Rep. at 11-12. Finally, Apple contends that the online complaints in apple.com forums and other locations are insufficient to show Apple had knowledge of the defect because they were not made to Apple Stores or to Apple Support, and the complaints failed to identify the defect itself. Rep. at 12. Apple misses the forest for the trees. Courts have found that allegations that similarly address multiple specific sources of knowledge have raised a plausible inference of the defendant's knowledge. *See, e.g.*, *Aguilar v. Gen. Motors, LLC*, 2013 WL 5670888, at *5 (E.D. Cal. Oct. 16, 2013); *Kowalsky v. Hewlett-Packard Co.*, 2011 WL 3501715, at *5 (N.D. Cal. Aug. 10, 2011); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007). Assuming Plaintiffs' allegations are true and drawing all inference in Plaintiffs' favor, the Court finds that Plaintiffs' allegations raise a plausible inference that Apple had knowledge of the defect.

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
11

Apple also argues that the online complaints show that any knowledge Apple had could not have been exclusive because "Plaintiffs themselves should have been aware of [the complaints]." Mot. at 16; Rep. at 12. The Court is not persuaded. "[C]ourts do not apply 'exclusivity' with such rigidity. Rather, exclusivity is analyzed in part by examining whether the defendant had 'superior' knowledge of the defect." *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012). Courts have found that the existence of online complaints do not show that that knowledge of the allegedly omitted defect was not exclusive to the defendant. *See, e.g.*, *Weeks v. Google LLC*, 2018 WL 3933398, at *10-11 (N.D. Cal. Aug. 16, 2018). As one court in this district has reasoned: "It is true that prospective purchasers, with access to the Internet, could have read the many complaints about the [defective product] . . . . Some may have. But [the defendant] is alleged to have known a lot more about the defective [products], including information unavailable to the public. Many customers would not have performed an Internet search before [purchasing a new laptop]. Nor were they required to do so." *Falk*, 496 F. Supp. 2d at 1097. The unexpected failure of a laptop's keyboard, as Plaintiffs allege here (*id.* ¶ 102), is unlike the alleged failure of the battery in a mobile device, which is understood to degrade over time. *See In re Apple Inc. Device Performance Litig.*, Case No. 18-md-02827-EJD, slip op. at 28 (N.D. Cal. Apr. 22, 2019). Given Apple's alleged product testing, patent applications, and monitoring of the online forums where customers posted complaints, Plaintiffs sufficiently plead that Apple had superior knowledge of the alleged defect.

Plaintiffs sufficiently plead that Apple had exclusive knowledge of the alleged defect. Because Apple only challenges whether Plaintiffs allege a duty to disclose, and Plaintiffs are only required to show one of the four factors under the third step of the *Hodsdon* framework, the Court does not consider whether Plaintiffs sufficiently allege partial misrepresentations or active concealment.

**C. Reliance**

Plaintiffs must sufficiently plead that they relied on Apple's allegedly fraudulent omission to maintain their claims. *Daniel*, 806 F.3d at 1225. To do so, they must show that "had the

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
12

omitted information been disclosed, one would have been aware of it and behaved differently." *Id.* (quoting *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993)). So, a plaintiff must show first "they would have been aware of a disclosure by [the defendant]." *Id.* at 1226. Second, if the omission is material, then it can be inferred that the plaintiff would have behaved differently. *Id.* (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)). As another court in this district reasoned: "What matters in an omission case under *Daniel* is whether the plaintiff had an opportunity to receive and therefore rely on the omitted information, not whether they actually received some other, irrelevant information. Although the actual receipt of some information from a defendant might tend to demonstrate that the plaintiff had an opportunity to receive additional information, it is not necessarily the only way to establish such an opportunity." *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 875 (N.D. Cal. 2018), *order clarified*, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018).

Here, each Plaintiff alleges to have visited a specific Apple website prior to purchasing their laptop. CCAC ¶¶ 25, 31, 39, 47, 54, 62, 68, 76, 86, 94. Each Plaintiff alleges that they saw representations that the keyboards on the new model laptops were "more" "responsive." *Id.* Plaintiffs also allege that they were unaware of the alleged defect at the time of purchase, that they would not have purchased the laptops, or would not have paid the price that they did, had they known that the keyboards did not have an allegedly material defect. *Id.* ¶ 102. Plaintiffs therefore adequately allege that they had an opportunity to receive information about the alleged defect, had Apple disclosed it. The Court has already addressed materiality. The CCAC pleads reliance.

Because Plaintiffs sufficiently allege that Apple had a duty to disclose the alleged defect and they adequately allege reliance, Apple's Motion is DENIED as to Plaintiffs' claims based on fraud by omission.

**VI.    Claims Under the CLRA and the Song-Beverly Consumer Warranty Act**

Apple contends that the Keyboard Service Program moots Plaintiffs' claims under the CLRA and the Song-Beverly Consumer Warranty Act because the Program already provides the relief to which Plaintiffs would be entitled under those laws. Mot. at 17-18. Plaintiffs counter that

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
13

the Court should not take judicial notice of the Keyboard Service Program, and even if it does, their claims are still not mooted.

### A. Judicial Notice

"Facts subject to judicial notice may be considered on a motion to dismiss." *Baxter v. Intelius, Inc.*, 2010 WL 3791487, at *1 (C.D. Cal. Sept. 16, 2010). Courts may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute," meaning that it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Ninth Circuit has recently cautioned that when district courts take judicial notice of a document, they must "consider—and identify—which fact or facts it is noticing from [the document]. Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Here, Apple requests that the Court take judicial notice of an apple.com webpage that describes the Keyboard Service Program. On the webpage, Apple represents that it will provide free service to MacBooks, model years 2015-2017, and MacBook Pros, model years 2016-2017, whose keyboards malfunction in ways similar to the alleged failures of Plaintiffs have experienced. Ex. A. This service "may involve the replacement of one or more keys or the whole keyboard." *Id.*

The Court takes judicial notice of the following facts because they are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" (Fed. R. Evid. 201(b)): (1) Exhibit A is an accurate depiction of an apple.com webpage, (2) Apple has made the above representations about the Key Board Service Program to the public through that website, and (3) Apple is providing free services to the models of MacBook and MacBook Pro listed on the website.

### B. Mootness

Plaintiffs argue that the Key Board Service Program does not moot their CLRA and Song-Beverly claims because Apple is unable to provide an effective fix to the defect, and the Keyboard

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
14

Service Program does not provide all of the relief that they seek. Op. at 22, 24. Plaintiffs cite several cases where courts refused to rule that a recall mooted a plaintiff's claims. But those cases have one important difference with the circumstances here: those plaintiffs alleged facts that the recalls were somehow deficient. *See, e.g.*, *Luong v. Subaru of Am., Inc.*, 2018 WL 2047646, at *6 (N.D. Cal. May 2, 2018) ("[T]he allegations here [are] that the extended warranty program did not cover or acknowledge the scope of the Windshield Defect plaintiffs allege."); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prod. Liab. Litig.*, 890 F. Supp. 2d 1210, 1218 (C.D. Cal. 2011) ("Plaintiffs allege that despite the recall of the Class Vehicles in February 2010, the braking defects for Plaintiff Kramer's and the putative class members' vehicles have not been cured."). Here, Plaintiffs allege no facts about the Keyboard Service Program. Accordingly, Plaintiffs do not allege any facts showing that the Keyboard Service Program does not moot their claims under the CLRA and the Song-Beverly Act.

The Court GRANTS the Motion without prejudice as to the Second and Fifth Claims for Relief.

### VII. Claims Under the Unlawful and Unfair Prongs of the UCL

#### A. The Unlawful Prong

Plaintiffs' claims under the unlawful prong of the UCL are based on their claims under the CLRA and the Song-Beverly Consumer Warranty Act. CCAC ¶ 177. Because Plaintiffs failed to state viable claims under those laws, they have also "failed to state a claim under the 'unlawful' prong of the UCL." *McKinney v. Google, Inc.*, 2011 WL 3862120, at *7 (N.D. Cal. Aug. 30, 2011).

The Motion is GRANTED without prejudice as to Plaintiffs' claims under the unlawful prong of the UCL.

#### B. The Unfair Prong

Apple lumped Plaintiffs' claim under the Unfair prong of the UCL in with its arguments about Plaintiffs claims based in fraud. Mot. 10, Rep. at 8 n.8. Because the Court has denied the Motion as to the fraud claims, the Court now turns to the unfair prong of the UCL. *See* Rep. at 8

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
15

n.8. Plaintiffs allege that Apple has engaged in unethical, unscrupulous, outrageous, oppressive, and substantially injurious conduct by promoting and selling laptops with keyboards it knew were defective, failing to disclose the laptops were defective, offering repairs it knew were futile, failing to exercise quality control over its product, and minimizing the scope and severity of the defect. CCAC ¶ 179-80. "To determine unfairness, California courts have applied a balancing test that balances the impact of the business practice on the victim against the reasons, justifications and motives of the wrongdoer." *Gianino v. Alacer Corp.*, 2010 WL 11468710, at *4 (C.D. Cal. Aug. 4, 2010). "The balancing test required by the unfair business practice prong of section 17200 is fact intensive and is not conducive to resolution at the motion to dismiss phase. *Id.* (citation and quotation omitted). Without a factual record as to Apple's justifications and motives for its alleged conduct and to that conduct's alleged impact on Plaintiffs, the Court cannot determine the outcome of the balancing test. Accordingly, the Motion is DENIED as to Plaintiffs' claim under the unfair prong of the UCL.

### VIII. Conclusion

For the reasons discussed above, the Court grants in part and denies in part Apple's Motion to Dismiss. Plaintiffs may file an amended complaint no later than May 13, 2019.

**IT IS SO ORDERED.**

Dated: April 22, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
16