1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6                         SAN JOSE DIVISION

7

8                                              Case No.  5:18-cv-02813-EJD

9    IN RE: MACBOOK KEYBOARD
     LITIGATION                                **ORDER DENYING DEFENDANT'S**
10                                             **MOTION TO DISMISS**

11                                             Re: Dkt. No. 130

12

13          Plaintiffs claim the Apple MacBook, MacBook Pro, and MacBook Pro with Touch Bar

14   laptops they purchased in 2016, 2017, and 2018 contain a defective "butterfly" keyboard design

15   that causes their keyboards to fail—resulting in sticky keys, unresponsive keys, and keys that do

16   not register strokes properly.  First Am. Consolidated Class Action Compl. ("FAC") ¶¶ 23, 25, 29,

17   31, 37, 39, 44, 46, 52, 54, 58, 60, 66, 68, 76, 78, 84, 86.  Plaintiffs bring a putative class action

18   against Defendant Apple Inc. for allegedly selling MacBook, MacBook Pro, and MacBook Air

19   laptops with defective keyboards in violation of state consumer protection and warranty laws.  *Id.*

20   ¶¶ 1, 193-312.  Plaintiffs seek monetary damages, equitable relief, attorneys' fees, and costs.  *Id.* ¶

21   312.  Apple moves to dismiss Plaintiffs' FAC under Rule 12(b)(1) and Rule 12(b)(6).  Mot. to

22   Dismiss (Dkt. No. 130) at 2-3.  For the reasons below, the court DENIES Apple's motion.[1]

23

24

25   _____

     [1] The court has filed this order under seal because it contains material subject to sealing orders.
26   Dkt. Nos. 135, 157.  Within seven days of the filing date of this order, the parties shall provide the
     court a stipulated redacted version of this order, redacting only those portions of the order
27   containing or referring to material for which the court has granted a motion to seal and for which
     the parties still request the material remain sealed.  The court will then issue a redacted version of
28   the order.

     Case No.: 5:18-cv-02813-EJD
     ORDER DENYING DEFENDANT'S MOTION TO DISMISS
                                       1

1

## I.   PROCEDURAL HISTORY

In October 2018, ten plaintiffs, citizens and residents of California, Florida, Illinois, Massachusetts, Michigan, New Jersey, New York, and Washington, filed a putative class action against Apple "on behalf of individuals who purchased model year 2015 or later Apple MacBook laptops and model year 2016 or later MacBook Pro laptops."  Consolidated Class Action Complaint ("CCAC") (Dkt. No. 66) ¶¶ 1, 8-18.  Plaintiffs claimed the MacBook and MacBook Pro laptops have defective "butterfly" keyboards that place consumers at a "constant threat of non-responsive keys and keyboard failure." *Id.* ¶ 2.  Accordingly, Plaintiffs brought ten claims against Apple for alleged violations of: (1) the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (3) fraudulent concealment; (4) breach of the covenant of good faith and fair dealing (common law); (5) Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1792, *et seq.*; (6) Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq.*; (7) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; (8) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.*; (9) New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*; (10) New York General Business Law § 349; and (11) Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq. Id.* ¶¶ 174-302.  In December 2018, Apple filed a Motion to Dismiss Plaintiffs' CCAC and Request for Judicial Notice.  Dkt. Nos. 72, 74.  Soon after, Plaintiffs filed their Opposition and Apple filed a Reply.  Dkt. Nos. 79, 82.

In April 2019, the court granted in part and denied in part Apple's Motion to Dismiss Plaintiff's CCAC under Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Order (Dkt. No. 110). The court denied Apple's Motion to Dismiss the non-California Plaintiffs' claims under California law, deciding to defer the choice of law analysis.  *Id.* at 5-6.  The court also denied the motion as to Plaintiffs' claims based on fraud by omission (*id.* at 13) and Plaintiffs' claim under the unfair prong of California's UCL (*id.* at 16).

The court, however, granted Apple's Motion to Dismiss Plaintiffs' claims under the

United States District Court
Northern District of California

1    CLRA, Song-Beverly Act, and implied covenant of good faith and fair dealing.  *Id.* at 8, 15.  In

2    their Opposition, Plaintiffs claimed Apple's Keyboard Service Program ("Program") did not moot

3    their CLRA and Song-Beverly Act claims because Apple could not "provide an effective fix to the

4    defect" and the Program "does not provide all of the relief that they seek."  *Id.* at 14-15 (citing

5    Pls.' Opp'n at 22, 24).  But, Plaintiffs did not allege any facts about the Program in the CCAC.

6    Order at 15.  Thus, "Plaintiffs d[id] not allege any facts showing that the Keyboard Service

7    Program does not moot their claims under the CLRA and the Song-Beverly Act."  *Id.*

8         Regarding the Program, Apple had requested the court to take judicial notice of an

9    apple.com webpage that described the Program.  Dkt. No. 74.  The webpage represented that

10   Apple will provide free service to model years 2015-2017 MacBooks and model years 2016-2017

11   MacBook Pros with keyboards that malfunction in ways similar to the alleged failures that

12   Plaintiffs have experienced.  *Id.* at 14 (citing Ex. A).  The webpage stated that the service "may

13   involve the replacement of one or more keys or the whole keyboard."  *Id.* (quoting Ex. A).  The

14   court took judicial notice of the following facts under Federal Rule of Evidence 201(b): "(1)

15   Exhibit A is an accurate depiction of an apple.com webpage, (2) Apple has made the above

16   representations about the Key Board Service Program to the public through that website, and (3)

17   Apple is providing free services to the models of MacBook and MacBook Pro listed on the

18   website."  Order at 14.

19        The order granted Plaintiffs leave to amend.  *Id.* at 16.  In May 2019, Plaintiffs filed their

20   FAC.  Dkt. No. 117.  In June 2019, Apple filed a Motion to Dismiss Plaintiffs' FAC.  Dkt. No.

21   130.  Plaintiffs and Apple respectively filed an Opposition and Reply.  Dkt. Nos. 148, 152.  And

22   the court heard oral argument on Apple's Motion to Dismiss on November 21, 2019.

23   **II.    BACKGROUND**

24        **A.  Plaintiffs' Allegations in the FAC**

25        In May 2019, Plaintiffs, nine consumers from California, Florida, Illinois, Massachusetts,

26   Michigan, New Jersey, New York, and Washington, filed a putative class action against Apple on

27   behalf of persons "who purchased model year 2015 or later Apple MacBook laptops, model year

28   Case No.: 5:18-cv-02813-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS
3

1    2016 or later MacBook Pro laptops, and model year 2018 or later MacBook Air laptops." FAC ¶¶

2    1, 8-16. Plaintiffs invoke jurisdiction in federal court under the Class Action Fairness Act, 28

3    U.S.C. § 1332. *Id.* ¶ 18. Plaintiffs bring ten causes of action against Apple, stemming from

4    allegedly defective butterfly keyboards for alleged violations of: (1) the UCL, Cal. Bus. & Prof.

5    Code § 17200, *et seq.*; (2) CLRA, Cal. Civ. Code § 1750, *et seq.*; (3) fraudulent concealment; (4)

6    Song-Beverly Act, Cal. Civ. Code § 1792, *et seq.*; (5) Washington Consumer Protection Act,

7    Wash. Rev. Code § 19.86.010, *et seq.*; (6) Florida Deceptive and Unfair Trade Practices Act, Fla.

8    Stat. § 501.201, *et seq.*; (7) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill.

9    Comp. Stat. § 505/1, *et seq.*; (8) New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et*

10   *seq.*; (9) New York General Business Law § 349; and (10) Michigan Consumer Protection Act,

11   Mich. Comp. Laws § 445.901, *et seq.* ("MCPA"). *Id.* ¶¶ 193-312.

12          Each Plaintiff alleges to have purchased a new MacBook, MacBook Pro, or MacBook Pro

13   with Touch Bar laptop with the defective butterfly keyboard design. *Id.* ¶¶ 23, 29, 37, 44, 52, 58,

14   66, 76, 84. Plaintiffs purchased their laptops after viewing Apple advertisements and marketing

15   materials that "touted the MacBook's thinness and represented that it has a highly responsive

16   butterfly keyboard." *Id.* ¶¶ 24, 30, 38, 45, 53, 59, 67, 77, 85. Specifically, Plaintiffs purchased

17   their laptops after reviewing promotional material on Apple's website that represented the

18   MacBook as having a "more responsive keyboard." *Id.*

19          But, Plaintiffs claim their keyboards failed within one year of purchasing their laptops. *Id.*

20   ¶¶ 23, 25, 29, 31, 33, 37, 39, 44, 46, 52, 54, 58, 60, 66, 68, 76, 78, 84, 86. Plaintiffs experienced

21   various keyboard issues, including sticky keys, unresponsive keys, and keystrokes that would not

22   register. *Id.* ¶¶ 25, 31, 39, 46, 54, 60, 68, 78, 86. Plaintiffs allege they consulted with Apple or

23   Apple certified technicians about their keyboard issues. *Id.* ¶¶ 27, 34, 40-43, 47-48, 50, 55-56, 61-

24   62, 64, 69-70, 73-74, 79-82, 87-89. However, Apple's troubleshooting and repair efforts did not

25   resolve their issues. *Id.* ¶¶ 28, 36, 43, 51, 57, 65, 75, 83, 90.

26          Plaintiffs allege that "Apple's butterfly keyboard and MacBook are designed and produced

27   in such a way that when minute amounts of dust or debris accumulate under or around a key,

28   Case No.: 5:18-cv-02813-EJD
     ORDER DENYING DEFENDANT'S MOTION TO DISMISS
                                                  4

United States District Court
Northern District of California

keystrokes fail to register properly." *Id.* ¶ 2.  The keyboard fails when "the keys stick, register multiple key strikes when a key is pressed only once, or stop registering keystrokes." *Id.* ¶ 1.  And "[w]hen one or more keys on the keyboard fail, the MacBook can no longer perform its core function: typing." *Id.* ¶ 2.

Plaintiffs allege that Apple's patent filings and in-house testing records show that Apple was aware of the defective butterfly keyboard design before selling MacBook laptops to the public in 2015. *Id.* ¶¶ 3, 134-154. ███████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████ Despite this awareness, Apple markets "the MacBook as having a superior and highly responsive keyboard" and "continue[s] selling it at a premium price." *Id.* ¶¶ 3-4.  Apple's representations of the keyboard are "materially misleading" to consumers. *Id.* ¶ 4.  Each Plaintiff claims: "Had he been aware of the existence of the keyboard defect, [he] would not have purchased his laptop or would have paid significantly less for it." *Id.* ¶¶ 28, 36, 43, 51, 57, 65, 75.

Apple provides a one-year limited warranty for each MacBook laptop. *Id.* ¶ 155.  In relevant part, the warranty provides:

> WHAT IS COVERED BY THIS WARRANTY?
>
> Apple Inc. of One Infinite Loop, Cupertino, California 95014, U.S.A. ("Apple") warrants the Apple-branded hardware product and Apple-branded accessories contained in the original packaging ("Apple Product") against defects in materials and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase by the end-user purchaser ("Warranty Period").
>
> * * *
>
> WHAT WILL APPLE DO IN THE EVENT THE WARRANTY IS BREACHED?
>
> If during the Warranty Period you submit a claim to Apple or an AASP in accordance with this warranty, Apple will, at its option:
>
> (i) repair the Apple Product using new or previously used parts that are equivalent to new in performance and reliability,

United States District Court
Northern District of California

(ii) replace the Apple Product with the same model (or with your consent a product that has similar functionality) formed from new and/or previously used parts that are equivalent to new in performance and reliability, or

(iii) exchange the Apple Product for a refund of your purchase price.

*Id.* ¶ 156. Plaintiffs allege that "[w]hen a consumer submits a warranty claim, Apple instructs him or her to attempt futile repairs or troubleshooting or fails to provide an effective repair." *Id.* ¶ 157.

Moreover, Plaintiffs allege that the Program does not resolve keyboard issues. *Id.* ¶ 158. On June 28, 2018, Apple announced its Program for eligible MacBook and MacBook Pro laptops, model years 2015-2017, that experience keyboard issues. *See id.* ¶¶ 166-67. Plaintiffs claim the Program is Apple's "eventual[ ] acknowledg[ment]" of the defect. *Id.* ¶ 5. Plaintiffs claim: "Apple's internal documents produced in this litigation, and the experiences of numerous consumers, demonstrate that the Program has not delivered satisfactory relief to consumers who have experienced MacBook keyboard failures." *Id.* (citing *id.* ¶¶ 166-84). The Program allegedly does not "cure" the design defect that causes keyboard failure. FAC ¶ 184.

Plaintiffs take issue with the repairs and refund available through the Program. With respect to repairs, the Program offers to replace individual keys or the entire keyboard. *Id.* ¶ 168. Plaintiffs allege: "When Apple agrees to replace an entire keyboard under the Program, it merely replaces it with another defective keyboard. The replacement keyboards provided under the Program have not been updated or improved to address the root cause of the failures." *Id.* ¶ 172 (footnote omitted). Plaintiffs cite several comments from consumers online who claim to experience issues with the replacement keyboards they received through the Program. *Id.* ¶ 175.

With regard to the refund, Plaintiffs claim the Program does not fully compensate them and other consumers for out-of-pocket expenses incurred while seeking repairs for their keyboards. *Id.* ¶ 182. Plaintiffs Rao, Gulker, and Ferguson, for example, paid for external keyboards and repairs. *Id.* ¶ 183. The Program notes that "consumers who have paid for repairs or replacements 'can contact Apple about a refund' under the Program, without any indication that any consumers will in fact receive a refund. Nor has Apple provided any information about how

consumers can obtain a refund, who is eligible for a refund, what sort of documentation, if any, consumers must provide to obtain a refund, or the amount of compensation Apple is willing to pay." *Id.* ¶ 182.

Plaintiffs allege Apple's conduct has injured them.  *Id.* ¶¶ 28, 36, 43, 51, 57, 65, 75, 83, 90. Plaintiffs seek monetary damages, attorneys' fees and costs, and equitable relief, including "an order requiring Apple to: (1) adequately disclose the defective nature of the MacBook; and (2) return to Plaintiffs and Class members all costs attributable to remedying or replacing MacBook laptops, including but not limited to economic losses from the purchase of replacement laptops or keyboards." *Id.* ¶ 312.

In Apple's Motion to Dismiss the FAC, Apple moves the court: (1) to dismiss all of Plaintiffs' claims on grounds that Plaintiffs have not demonstrated an injury, Article III standing, or prudential standing; (2) to dismiss Plaintiffs' CLRA claim for mootness; and (3) to dismiss Plaintiffs' Song-Beverly Act claim for mootness.  Mot. to Dismiss (Dkt. No. 130) at 1-3.

## III.    LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a party may seek dismissal of a suit for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion challenges a court's subject-matter jurisdiction and may be either facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted); *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citation omitted).  When a defendant brings a facial challenge, as in this case, defendant claims the allegations in a complaint are "insufficient on their face to invoke federal jurisdiction."  *Safe Air*, 373 F.3d at 1039.  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). A party may seek dismissal of a suit for lack of subject-matter jurisdiction on grounds of mootness

United States District Court
Northern District of California

1   and lack of standing "in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not

2   Rule 12(b)(6)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

3   **B. Federal Rule of Civil Procedure 12(b)(6)**

4   Federal Rule of Civil Procedure 12(b)(6) provides that a party may seek dismissal of a suit

5   for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court

6   "must accept as true all factual allegations in the complaint and draw all reasonable inferences in

7   favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,

8   768 F.3d 938, 945 (9th Cir. 2014) (citation omitted). A court may dismiss a complaint on a Rule

9   12(b)(6) motion "only where there is no cognizable legal theory or an absence of sufficient facts

10  alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)

11  (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), *second am. opinion*

12  *filed* May 11, 1990)). Defeating a motion to dismiss requires that the complaint "contain[s]

13  sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

14  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

15  (2007)) (quotations omitted). A claim is plausible on its face "when the plaintiff pleads factual

16  content that allows the court to draw the reasonable inference that the defendant is liable for the

17  misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

18  **IV.   DISCUSSION**

19  In Apple's Motion to Dismiss the FAC, Apple argues that its Program provides Plaintiffs

20  the remedy they seek, and thus, "moots their claims and eliminates their ability to establish injury

21  or standing." Mot. to Dismiss at 2. Apple moves the court: (1) to dismiss Plaintiffs' claims under

22  Rule 12(b)(1) on grounds that Plaintiffs have not demonstrated an injury, Article III standing, or

23  prudential standing, (2) to dismiss Plaintiffs' CLRA claim for mootness under Rule 12(b)(6), and

24  (3) to dismiss Plaintiffs' Song-Beverly Act claim for mootness under Rule 12(b)(6). *Id.* at 1.

25  Because Plaintiffs establish standing, the court DENIES Apple's Motion to Dismiss all of

26  Plaintiffs' claims under Rule 12(b)(1). Because Plaintiffs adequately plead claims under the

27  CLRA and Song-Beverly Act that the Program does not moot their claims, the court DENIES

28  Case No.: 5:18-cv-02813-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    Apple's Motion to Dismiss these claims under Rule 12(b)(6).  Below, the court will first address

2    Apple's Request for Judicial Notice ("RJN") (Dkt. No. 131).  Next, the court will address the issue

3    of standing.  Third, the court will evaluate Plaintiffs' claims under the CLRA and Song-Berverly

4    Act.

5                    **A.  Judicial Notice**

6            Federal Rule of Evidence 201 provides that a court may take judicial notice of "a fact that

7    is not subject to reasonable dispute."  Fed. R. Evid. 201(b).  A fact is not subject to reasonable

8    dispute when the fact: "(1) is generally known within the trial court's territorial jurisdiction; or (2)

9    can be accurately and readily determined from sources whose accuracy cannot reasonably be

10   questioned."  *Id.*

11           Apple requests that the court take judicial notice of: (1) Exhibit A, an apple.com webpage

12   that describes the Program as it existed on December 3, 2018, (2) Exhibit B, an apple.com

13   webpage that describes the Program as it existed on June 4, 2019, (3) "[t]he fact that Apple made

14   the statements in Exhibits A and B to the public through the apple.com website," and (4) that

15   Apple is offering free service for certain models of the MacBook, MacBook Pro, and MacBook

16   Air as listed on the website.  *See* RJN at 2; *see also* Patel Decl. (Dkt. No. 130-1), Exs. A-B.

17           In Exhibit A, Apple states it has found that "a small percentage of the keyboards in certain

18   MacBook and MacBook Pro models may exhibit one or more of the following behaviors:"

19                ▪ Letters or characters repeat unexpectedly
                  ▪ Letters or characters do not appear
20                ▪ Key(s) feel "sticky" or do not respond in a consistent manner

21   Patel Decl., Ex. A.  Apple represents that it will provide free service to eligible MacBooks, model

22   years 2015-2017, and MacBook Pros, model years 2016-2017, that exhibit such behavior.  *Id.*

23   Service "may involve the replacement of one or more keys or the whole keyboard."  *Id.*  Apple

24   also represents that consumers who "believe [their] MacBook or MacBook Pro was affected by

25   this issue," and who paid for keyboard repairs, "can contact Apple about a refund."  *Id.*  In Exhibit

26   B, Apple makes these same representations, but includes the MacBook Air, model year 2018, and

27   MacBook Pro, model years 2018-2019, in the Program.  *See* Patel Decl., Ex. B.

28   Case No.: 5:18-cv-02813-EJD
     ORDER DENYING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1       The court takes judicial notice of the following facts: (1) Exhibit A is an accurate depiction

2   of the apple.com webpage for the Program for MacBook and MacBook Pro laptops as it existed on

3   December 3, 2018, (2) Exhibit B is an accurate depiction of the apple.com webpage for the

4   Program for MacBook, MacBook Pro, and MacBook Air laptops as it existed on June 4, 2019, (3)

5   "[t]he fact that Apple made the statements in Exhibits A and B to the public through the apple.com

6   website," and (4) that Apple is offering free service under the Program for eligible models of

7   MacBook, MacBook Pro, and MacBook Air laptops as listed on the website. *See* RJN at 2; *see*

8   *also* Patel Decl., Exs. A-B; Fed. R. Evid. 201.

9       These facts are "not subject to reasonable dispute" because they "can be accurately and

10  readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R.

11  Evid. 201(b). Also, with respect to Exhibits A and B, Plaintiffs refer extensively to the Program in

12  their FAC. In reviewing a Rule 12(b)(6) motion, the court may "consider[ ]" "[d]ocuments whose

13  contents are alleged in a complaint and whose authenticity no party questions, but which are not

14  physically attached to the pleading." *Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir.

15  2018) (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by*

16  *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)) (quotations omitted).

17      The court, however, does not take judicial notice of whether the Program effectively

18  remedies the behavior associated with the allegedly defective keyboards—a question the parties

19  vigorously dispute. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018)

20  ("Just because the document itself is susceptible to judicial notice does not mean that every

21  assertion of fact within that document is judicially noticeable for its truth."). In sum, the court

22  takes judicial notice of the apple.com webpages describing the Program (Exhibits A-B) and

23  Apple's representations to the public on those webpages.

24          **B.  Plaintiffs Establish Standing Because The Program Does Not Moot Their
25              Claims.**

26      Apple argues that "Plaintiffs cannot establish Article III or prudential standing because the

27  Keyboard Service Program addresses and remediates the alleged keyboard defect on which all of

28  Case No.: 5:18-cv-02813-EJD
    ORDER DENYING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    their claims depend." Mot. to Dismiss at 5.  Thus, Apple argues that the Program moots Plaintiffs'

2    claims.  *Id.*  And therefore, Plaintiffs "cannot establish injury or standing."  *Id.*  Specifically,

3    Apple contends that Plaintiffs do not demonstrate injury or standing because Plaintiffs did not

4    personally participate in the Program.  *Id.* at 5-6.  Rather, Plaintiffs "rely on supposed issues with

5    the Program allegedly experienced by others and not themselves."  *Id.* at 5 (footnote omitted).

6            Plaintiffs argue that the Program does not moot their claims, and thus, they can establish

7    injury and standing.  Plaintiffs claim the law does not require them to personally participate in "a

8    repair program that leaves them no better off and which does not provide complete relief."  Opp'n

9    at 9.

10           Article III of the Constitution provides that federal courts only have jurisdiction over

11   "cases" and "controversies."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992); *Whitmore v.*

12   *Arkansas*, 495 U.S. 149, 154-55 (1990).  "[T]he doctrine of standing serves to identify those

13   disputes which are appropriately resolved through the judicial process."  *Whitmore*, 495 U.S. at

14   155.  Plaintiffs have the burden of showing that they have Article III standing to sue in federal

15   court.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

16           To establish Article III standing, Plaintiffs must satisfy three elements – the "irreducible

17   constitutional minimum of standing."  *Lujan*, 504 U.S. at 560.  Plaintiffs must show they "have (1)

18   suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

19   and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo*, 136 S. Ct. at 1547

20   (citation omitted).  Injury-in-fact constitutes "an invasion of a legally protected interest which is

21   (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."

22   *Lujan*, 504 U.S. at 560 (citations and quotations omitted).  "Concrete" means that the injury,

23   whether tangible or intangible, "actually exist[s]."  *Spokeo*, 136 S. Ct. at 1548-49.

24   "Particularized" means that the injury has harmed Plaintiffs "in a personal and individual way."

25   *See id.* at 1548 (citations and quotations omitted).  Named representatives in class actions "must

26   allege and show that they personally have been injured, not that injury has been suffered by other,

27   unidentified members of the class to which they belong and which they purport to represent."

28   Case No.: 5:18-cv-02813-EJD
     ORDER DENYING DEFENDANT'S MOTION TO DISMISS
                                     11

United States District Court
Northern District of California

1   *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting *Pence v.*

2   *Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978)).

3         At the pleading stage, as is the case here, Plaintiffs "must 'clearly . . . allege facts

4   demonstrating' each element" of standing. *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*,

5   422 U.S. 490, 518 (1975)). If Plaintiffs do not have Article III standing, then the court must

6   dismiss their suit for lack of subject matter jurisdiction. *See Robertson v. Republic of Nicar.*, 2017

7   WL 2730177, at *2 (N.D. Cal. June 26, 2017) (citing *Cetacean Cmty. v. Bush*, 386 F.3d 1169,

8   1174 (9th Cir. 2004)).

9         With respect to mootness, "[t]wo varieties of mootness exist: Article III mootness and

10   prudential mootness." *Philips v. Ford Motor Co.*, 2016 WL 693283, at *5 (N.D. Cal. Feb. 22,

11   2016) (citing *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (en banc)) (quotations omitted).

12   Article III mootness concerns the constitutional requirement that federal courts have jurisdiction

13   over only "cases and controversies." *Philips*, 2016 WL 693283, at *5 (citation and quotations

14   omitted). Federal courts lack jurisdiction when an action becomes "moot." *Forest Guardians v.*

15   *Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) (citations omitted). "An action is moot if it has lost its

16   character as a present, live controversy." *Id.* (citing *Am. Rivers v. Nat'l Marine Fisheries Serv.*,

17   126 F.3d 1118, 1123 (9th Cir. 1997)) (quotations omitted). A dispute is live when the parties

18   maintain "a personal stake in the outcome of the lawsuit." *Maldonado v. Lynch*, 786 F.3d 1155,

19   1160-61 (9th Cir. 2015) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990))

20   (quotations omitted). A case can "become moot" when "an opposing party has agreed to

21   everything the other party has demanded." *GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*, 650

22   F.3d 1257, 1267 (9th Cir. 2011) (citations omitted). The Supreme Court has stated that mootness

23   "can be described as the doctrine of standing set in a time frame." *Friends of the Earth, Inc. v.*

24   *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citations and quotations omitted).

25   The party raising a mootness challenge, in this case Apple, carries the "heavy" burden of showing

26   that the court can grant "no effective relief." *See Forest Guardians*, 450 F.3d at 461 (citations

27   omitted).

28   Case No.: 5:18-cv-02813-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

*United States District Court*
*Northern District of California*

1    Prudential mootness is a doctrine that "permits a court to dismiss an appeal not technically

2    moot if circumstances have changed since the beginning of litigation that forestall any occasion

3    for meaningful relief." *J.F. v. New Haven Unified Sch. Dist.*, 2014 WL 6485643, at *4 (N.D. Cal.

4    Nov. 19, 2014) (citing *Deutsche Bank. Nat. Trust. Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir.

5    2014)) (citation and quotations omitted).  However, the Ninth Circuit has not adopted the

6    prudential mootness doctrine "*per se*."  *Maldonado*, 786 F.3d at 1161 n.5 (citing *Hunt v. Imperial*

7    *Merch. Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009)).  The Ninth Circuit has "applied

8    prudential mootness only in the bankruptcy context, when there are no assets left to distribute."

9    *Maldonado*, 786 F.3d at 1161 n.5 (citing *Deutsche Bank*, 744 F.3d at 1135).  Thus, the court will

10    not apply the prudential mootness doctrine here in the context of a consumer protection and breach

11    of warranty case.

12    Here, Plaintiffs adequately plead standing.  Plaintiffs sufficiently allege they have suffered

13    an injury-in-fact: Apple's alleged failure to repair the defective keyboards, including through the

14    Program, has caused a concrete, particularized, and actual injury to each Plaintiff.  *See Lujan*, 504

15    U.S. at 560; *see also* FAC ¶¶ 28, 36, 43, 51, 57, 65, 75, 83, 90, 158.  This injury "is fairly

16    traceable" to Apple's alleged conduct, and the injury-in-fact "is likely to be redressed by a

17    favorable judicial decision."  *See Spokeo*, 136 S. Ct. at 1547 (citation omitted).

18    Plaintiffs sufficiently plead that the Program is ineffective in remedying the allegedly

19    defective design of the butterfly keyboards.  *See* FAC ¶¶ 5, 166-84.  The fact that Plaintiffs did not

20    personally participate in the Program does not moot their claims, depriving them of standing.  *See*

21    *Luong v. Subaru of Am., Inc.*, 2018 WL 2047646, at *4 (N.D. Cal. May 2, 2018) (finding that

22    plaintiffs, who did not obtain replacement windshields from defendant, adequately pled an injury-

23    in-fact by claiming "the value of their vehicles was affected as a result of their defective original

24    windshields.").  Apple cites no binding case law that requires plaintiffs to participate in a program

25    similar to Apple's program to have standing.  Apple cites several cases where courts found that

26    recall or refund programs mooted plaintiffs' claims.  But, these cases are distinguishable.

27    First, Apple cites cases involving refund programs that offered plaintiffs full relief, such as

full refunds.  *See, e.g., Hamilton v. General Mills, Inc.*, 2016 WL 6542840, at *1-2 (D. Or. Nov. 2, 2016) (dismissing plaintiff's claims for lack of standing because plaintiff's "only alleged injury is the economic loss of $15.98, an alleged injury that has been dispelled through defendant's voluntary recall program"); *Tosh-Surryhne v. Abbott Labs. Inc.*, 2011 WL 4500880, at *5 (E.D. Cal. Sept. 27, 2011) (finding defendant's full refund offer mooted plaintiff's claims, depriving the court of jurisdiction); *Vavak v. Abbott Labs. Inc.*, 2011 WL 10550065, at *3 (C.D. Cal. June 17, 2011) (dismissing plaintiff's request for restitution as moot because defendant "offered a full refund to consumers who purchased infant formula from the affected lots").

Plaintiffs argue the Program does not moot their claims because the Program does not offer full monetary relief.  Plaintiffs cite *Verde v. Stoneridge, Inc.*, 137 F. Supp. 3d 963 (E.D. Tex. 2015) and *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673 (E.D. Pa. 2011), which offer reasoning the court finds persuasive.  In *Verde*, a court in the Eastern District of Texas found that a recall program did not moot plaintiff's claims on grounds that "a live controversy remains because [plaintiff] seeks recovery that exceeds what [defendant] offers in the recall."  137 F. Supp. 3d at 972.  Plaintiff sought "additional relief such as the diminished value of the vehicle, incidental damages, and replacement of the entire clutch hydraulic assembly."  *Id.*

Similarly, in *Martin*, the Eastern District of Pennsylvania found that a recall program did not moot plaintiff's claims because the court could award money damages and order "a more expansive remedy than the one proposed in the Recall."  765 F. Supp. 2d at 682.  There, plaintiff claimed the recall program was insufficient because "the proposed solution would not remedy the defect in its entirety, and would not result in an award of money damages."  *Id.* at 681-82.

Under the reasoning of *Verde* and *Martin*, the Program does not moot Plaintiffs' claims because Plaintiffs seek relief beyond what the Program offers, including monetary damages and injunctive relief.  *See* FAC ¶ 312.  Therefore, Apple does not meet its "heavy" burden of demonstrating that the court can award Plaintiffs "no effective relief."  *See Forest Guardians*, 450 F.3d at 461 (citation omitted).

Second, Apple cites distinguishable cases where the effectiveness of recall programs was

United States District Court
Northern District of California

1    not at issue.  *See Cheng v. BMW of N. Am., LLC*, 2013 WL 3940815, at *1-2, *4 (C.D. Cal. July

2    26, 2013) (dismissing the claims of plaintiff, who did not dispute the effectiveness of the recall

3    program, based on the doctrine of prudential mootness where the program offered plaintiff

4    "precisely the relief [ ]he seeks") (citations and quotations omitted); *Hadley v. Chrysler LLC*, 2014

5    WL 988962, at *6-7 (E.D. Mich. Mar. 13, 2014) (finding plaintiffs lacked standing because

6    "Plaintiffs do not allege that a repair has not cured the defect" and "nothing suggests that

7    [defendant] is offering an illusory fix").  Unlike in *Cheng* and *Hadley*, however, Plaintiffs allege

8    that the Program is ineffective.

9          Plaintiffs claim the Program does not resolve the design defect in the butterfly keyboards.

10    FAC ¶ 184.  For support, Plaintiffs point to Apple's internal documents and the experiences of

11    other consumers who did not obtain relief through the Program.  FAC ¶ 5.  As Apple indicates,

12    Plaintiffs cannot rely on the experiences of other people who participated in the Program to show

13    that the Program is ineffective, and thus establish injury.  *See In re McNeil Consumer Healthcare*

14    *Mktg. & Sales Practices Litig.*, 877 F. Supp. 2d 254, 276 (E.D. Pa. 2012) (finding that "to the

15    extent that this set of plaintiffs relies on the experiences of others to argue that seeking a refund

16    would be pointless, such allegations are inadequate because the named plaintiffs must establish an

17    injury that is particularized to them").  But, Plaintiffs rely on Apple's internal documents allegedly

18    acknowledging a design defect and Apple's multiple failed attempts to repair their allegedly

19    defective keyboards in the past.

20         Therefore, Apple does not meet its "heavy" burden of showing that the Program moots

21    Plaintiffs' claims and deprives them of standing.  *See Forest Guardians*, 450 F.3d at 461 (citation

22    omitted).  The court DENIES Apple's Motion to Dismiss Plaintiffs' claims under Rule 12(b)(1).

23         **C.  Plaintiffs State Plausible Claims Under the CLRA and Song-Berverly Act.**

24         In the court's prior order, the court dismissed Plaintiffs' claims under the CLRA and Song-

25    Beverly Act.  Order at 15.  Because Plaintiffs "allege[d] no facts about the Keyboard Service

26    Program," the court found that Plaintiffs failed to demonstrate that the Program did not moot their

27    claims under the CLRA and Song-Beverly Act.  *Id.*

28    Case No.: 5:18-cv-02813-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

Here, Apple argues the court should dismiss Plaintiffs' CLRA and Song-Berly Act claims under Rule 12(b)(6) for failure to state a claim.  Mot. to Dismiss at 2-3.  First, Apple argues that Plaintiffs cannot recover damages under the CLRA because Apple has "offered an appropriate 'correction, repair, replacement, or other remedy of the goods and services'" under Cal. Civ. Code § 1782(c).  *Id.* at 8.  Thus, Apple argues that its compliance with § 1782(c) bars Plaintiffs' CLRA claim.  *Id.* at 8-9.  Second, Apple contends the Program moots Plaintiffs Rao and Baruch's claim under the Song-Berly Act because the Program "provides the exact remedy required by the statute."  *Id.* at 9.  For the reasons below, the court DENIES Apple's Motion to Dismiss Plaintiffs' claims under the CLRA and Song-Berly Act.

### 1. Plaintiffs' CLRA Claim for Damages Is Not Barred.

Plaintiffs allege that Apple violated Cal. Civ. Code §§ 1770(a)(5), (7), and (9) by performing unfair and deceptive acts and practices when selling defective laptops.  FAC ¶ 211. Specifically, Plaintiffs claim that Apple violated the CLRA by: (1) "represent[ing] that the MacBook had characteristics, uses, and benefits it does not have;" (2) "represent[ing] that the MacBook is of a standard, quality, or grade when in fact it is not;" and (3) "advertis[ing] the MacBook with intent not to sell it as advertised."  *Id.*

Pursuant to the statutory requirement under Cal. Civ. Code § 1782 to provide notice of alleged CLRA violations, Plaintiffs Rao and Barbaro sent individual CLRA notices to Apple's principal place of business, on their behalf and on behalf of the class, on May 10, 2018.  *Id.* ¶¶ 216-17.  Plaintiff Baruch sent a CLRA notice to Apple on July 30, 2018.  *Id.*  Plaintiffs claim that Apple "failed to correct its business practices or provide the requested relief within 30 days."  *Id.* ¶ 217.  Thus, Plaintiffs seek actual damages, reasonable attorneys' fees and costs, declaratory relief, and punitive damages for these alleged violations.  *Id.* ¶ 218.

Apple argues that the court should dismiss Plaintiffs' CLRA claim because the Program moots Plaintiffs' individual claims and putative class claims under Cal. Civ. Code §§ 1782(b) and (c).  Reply (Dkt. No. 152) at 6.  Apple claims to have satisfied its statutory obligations by offering "correction, repair, replacement, or other remedy of the goods and services."  Mot. to Dismiss at 8

United States District Court
Northern District of California

1   (citing Cal. Civ. Code §§ 1782(c), 1782(b), and 1784).  Apple contends: "The Program is an

2   appropriate remedy under the CLRA because Plaintiffs can have their keyboards fixed free of

3   charge and/or receive a refund for repair expenses if Plaintiffs paid to have their keyboards

4   repaired."  *Id.* at 9.

5          Apple primarily relies on *Arthur v. Louis Vuitton N. Am. Inc.*, 2010 WL 11463276, at *1,

6   *9 (C.D. Cal. May 6, 2010), where the court found that defendant's offer to get a refund or

7   corrected certificates precluded plaintiff's claim for damages under the CLRA.  But, that case is

8   factually distinguishable because Plaintiffs here dispute the effectiveness of the Program, and

9   argue that it is unclear to what extent the Program even offers a refund.  *See* FAC ¶¶ 182-83.

10  Plaintiffs counter that they have adequately pled a CLRA claim by establishing that the Program

11  neither fixes the defect nor offers Plaintiffs all the relief they seek in accordance with Cal. Civ.

12  Code § 1782(c).  Opp'n at 19; *see also In re Toyota Motor Corp. Hybrid Brake Mktg., Sales,*

13  *Practices and Prods. Liab. Litig.*, 890 F. Supp. 2d 1210, 1218 (C.D. Cal. 2011) (finding

14  defendant's recall program did not moot the CLRA claim, where plaintiffs alleged the recall

15  program does not "cure" the vehicle defect; and finding that "[t]he truth of whether the recall

16  cured the defect in the Class Vehicles cannot be determined at the pleading stage").  The court

17  agrees with Plaintiffs.  Because Plaintiffs have adequately pled that the Program is ineffective, the

18  court DENIES Apple's Motion to Dismiss Plaintiffs' CLRA claim.

19              **2. The Program Does Not Moot Plaintiffs Rao and Baruch's Song-**
                    **Beverly Act Claim.**
20

21         Plaintiffs Rao and Baruch claim that Apple breached the implied warranty of

22  merchantability under the Song-Beverly Act "by producing, manufacturing, and selling laptops

23  that were not of merchantable quality."  FAC ¶ 239.  Plaintiffs allege a "latent" keyboard defect

24  interferes with the "core function of typing."  *Id.* ¶ 239-40.  Thus, Plaintiffs argue, "The MacBook

25  is therefore unfit for the ordinary purposes for which a laptop computer is used and would not pass

26  without objection in the laptop computer trade."  *Id.* ¶ 239.  Plaintiffs seek costs and expenses,

27  including attorneys' fees, under Cal. Civ. Code § 1794, for Plaintiffs' alleged violations of the

28  Case No.: 5:18-cv-02813-EJD
    ORDER DENYING DEFENDANT'S MOTION TO DISMISS
                          17

United States District Court
Northern District of California

1    Song-Beverly Act.  *Id.* ¶ 243.

2         Apple requests the court to dismiss Plaintiffs' Song-Beverly Act claim as moot because the

3    Program "provides the exact remedy required by the statute," and Plaintiffs have not participated

4    in the Program. Mot. to Dismiss at 9-10.  Plaintiffs counter that the law does not require them to

5    provide Apple with the opportunity to repair their laptops for a breach of implied warranty claim.

6    Opp'n at 20; *see also Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 404 (2003) (affirming

7    trial court's ruling "that, where the implied warranty of merchantability is breached, applicable

8    statutes do not require a buyer to give the seller an opportunity to repair before rescinding the

9    purchase" because "there is no requirement the seller be given an opportunity to repair when the

10   implied warranty of merchantability is breached").  "[T]he implied warranty of merchantability

11   arises by operation of law." *Mocek*, 114 Cal. App. 4th at 406 (citations and quotations omitted).

12   Because Plaintiffs sufficiently plead that their laptops are "unfit for the ordinary purposes for

13   which a laptop computer is used," and Plaintiffs are not required to participate in the Program,

14   Plaintiffs sufficiently plead a claim under the Song-Beverly Act.  *See* FAC ¶ 239; *see also Mocek*,

15   114 Cal. App. 4th at 404, 406.  Therefore, the court DENIES Apple's Motion to Dismiss

16   Plaintiffs' claim under the Song-Beverly Act.

17   **V.    ORDER**

18        For the reasons above, the court DENIES Apple's Motion to Dismiss in its entirety.

19        **IT IS SO ORDERED.**

20   Dated: November 22, 2019

21

22                                                    EDWARD J. DAVILA
                                                      United States District Judge
23

24

25

26

27

28   Case No.: 5:18-cv-02813-EJD
     ORDER DENYING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California