December 16, 2019

**Via ECF and Hand Delivery**

The Honorable Virginia K. DeMarchi
United States District Court
Northern District of California
280 South 1st Street, Ctrm 2 - 5th Floor
San Jose, CA 95113

      Re:    *In re MacBook Keyboard Litigation*
                Case No. 5:18-cv-02813-EJD-VKD

**REDACTED - FILED UNDER SEAL**

Dear Judge DeMarchi:

      Plaintiffs and Defendant Apple Inc. respectfully submit this Discovery Letter Brief regarding the discovery dispute set forth below in accordance with Your Honor's Standing Order for Civil Cases.

**I.      STATEMENT OF THE DISPUTE**

      The parties' dispute relates to Plaintiffs' 30(b)(6) Notice, which contains 13 topics.  *See* Ex. A.  Apple has produced a witness who testified on four topics (Topics 2 (in part), 7, 8, and 12).  Plaintiffs contend that Apple has not agreed to produce a witness for six other topics (Topics 4-6, and 9-11).  Apple contends that only Topic 10 requires Court intervention, as the parties have made progress with regard to Topics 4-6, 9, and 11.  Apple believes that further discussion can either narrow or resolve the remaining dispute.  Plaintiffs contend that these discussions have reached an impasse.

**II.     THE PARTIES' POSITIONS**

      **A.**      **Plaintiffs' Position**

           1.      Background

      The parties met and conferred regarding Plaintiffs' Rule 30(b)(6) Notice (served May 28) on July 11, August 9, August 23, September 27, October 21 (lead counsel conference), November 20 (lead counsel conference), and December 4 (lead counsel conference). To date, Apple has produced a single corporate witness to testify on Topics 2 (in part), 7, 8, and 12 in Plaintiffs' Rule 30(b)(6) Notice. Apple did not provide additional deposition dates until the parties' conference on November 20, and did so only after Plaintiffs sent a prior draft of this letter brief on October 17.

To: The Honorable Virginia K. DeMarchi
Re: *In re MacBook Keyboard Litigation*
December 16, 2019
Page **2** of **10**

During the November 20 conference, Apple informed Plaintiffs, for the first time, of its position that Plaintiffs waived the right to depose a witness on the remaining Rule 30(b)(6) topics—Topics 4-6 and 9-11. Plaintiffs never withdrew these topics, though, in the spirit of compromise, Plaintiffs did withdraw Topics 3 and 13 (subject to the right to conduct any follow-up discovery on those topics if needed).

    2.    <u>Argument</u>

        *a.*    *There was no waiver of any Rule 30(b)(6) topics.*

- On July 11, Apple asked Plaintiffs to suggest which Rule 30(b)(6) topics were suitable for "an early deposition." Plaintiffs identified Topics 7, 8, and 12.

- On August 23, the parties discussed Plaintiffs' Rule 30(b)(6) notice in detail, topic-by-topic. Apple's counsel found the discussion on each topic "helpful."

- Apple then provided dates for the deposition on Topics 7, 8, and 12, and stated: "Regarding the remaining 30(b)(6) topics, we are still assessing those topics in light of our meet and confer, and will follow up separately about those topics." (09/05/19 Email from M. Mayo to A. Ornelas.)

- During the parties' conference on September 27, Apple's counsel did not have an update as to its client's position on Plaintiffs' Rule 30(b)(6) topics but committed to "move it forward in the next few weeks."

- On October 3, Apple took the position that "as a result of our various meet and confers, the parties agreed to move forward with some limited topics." (10/03/19 Email from M. Mayo to A. Ornelas.) And, while Apple maintained its position that "*most of the originally noticed topics are premature*," its counsel represented they "*would speak with our client regarding the timing of depositions on the remaining topics (that we are not going to object to in full) and get back to you.*" *Id.* Apple acknowledged receiving "*Plaintiffs' clarifications regarding certain of those topics about a month ago*[.]" *Id.* (emphasis added).

- On October 21, lead counsel conferred about the remaining Rule 30(b)(6) topics.

- On October 25, after receiving a last-minute request from Apple to reschedule the deposition covering Topics 2 (in part), Topics 7-8, and Topic 12, Plaintiffs served a re-notice, setting the deposition for October 30, as requested by Apple. *See* Ex. B. The re-

To: The Honorable Virginia K. DeMarchi
Re: *In re MacBook Keyboard Litigation*
December 16, 2019
Page **3** of **10**

> notice states: "Based on the parties' meet and confer discussions, this notice is limited to the topics listed above . . . . Other topics in the original notice will be noticed on separate dates, as agreed by the parties."

### b. Apple should be required to produce witnesses to testify on Topics 4-6 and 9-11.

Topic 4 seeks testimony regarding market research and competitive and pricing analyses concerning the MacBook, including its keyboard-related components and features. Apple's pricing strategies, including analysis of competitor pricing, will be necessary to a damages analysis in this case. *See, e.g.*, *Davidson v. Apple, Inc.*, 2018 WL 2325426, at *22-*23 (N.D. Cal. May 8, 2018) (noting the importance of incorporating pricing information into a conjoint study, which proceeds from the standpoint "that consumers' preferences for a particular product are driven by features or descriptions of features associated with that product"). Apple's consumer research and marketing decisions also "may be relevant to [its] intent, motive, and knowledge" and are therefore discoverable. *Martin v. Monsanto Co.*, 2017 WL 5172205, at *4 (C.D. Cal. Apr. 10, 2017). "[A] plaintiff may seek discovery into how a defendant perceived its own representations, including how it intended consumers to perceive them because it relates to impact on consumer choice and purchasing." *Id.* (citation omitted). Apple's own website[1] and its marketing chief, Phil Schiller, reference and rely on marketing research concerning the MacBook keyboard.[2]

Plaintiffs' fraud by omission and consumer protection claims center on Apple's failure to disclose the MacBook's defective nature, despite opportunities to do so. Testimony about Topics 5 (packaging, marketing, and advertising) and 6 (representations) is therefore directly relevant to the elements of Plaintiffs' claims. *See, e.g.*, *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 875 (N.D. Cal. 2018), *order clarified*, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018) ("The proper focus in an omission case such as this is, therefore, what channels of information customers depend upon and whether the defendant could have taken action to disseminate information through those channels").

For example, when announcing the new 16-inch MacBook Pro, Mr. Schiller acknowledged there were "quality issues" with the butterfly keyboards:[3]

---

[1] *See* https://www.apple.com/newsroom/2019/11/apple-introduces-16-inch-macbook-pro-the-worlds-best-pro-notebook/ (last visited Dec. 10, 2019).

[2] *See* https://www.cnet.com/news/apples-phil-schiller-on-reinventing-the-new-macbook-pro-keyboard/ (last visited Dec. 10, 2019).

[3] *See* https://www.cnet.com/news/apples-phil-schiller-on-reinventing-the-new-macbook-pro-keyboard/ (last visited Dec. 10, 2019). In light of Apple's November 13 announcement, and to the extent Apple disputes that such matters are not included within the scope of the already

To: The Honorable Virginia K. DeMarchi
Re: *In re MacBook Keyboard Litigation*
December 16, 2019
Page **4** of **10**

> Schiller: As you know, a number of years ago we started a new keyboard technology with this butterfly keyboard and began it with MacBook. It had some things it did really well, like creating a much more stable key platform. It felt more firm and flat under your finger -- some people really like that, but other people weren't really happy with that. We got sort of a mixed reaction. We had some quality issues we had to work on. Over the years we've been refining that keyboard design, and we're now on the third generation, and a lot of people are much happier with that as we've advanced and advanced it.

  Mr. Schiller's statement[4] and any similar messages are directly relevant to Plaintiffs' claims that the laptops equipped with such keyboards are defective, that Apple had promoted its laptops as possessing particular qualities that were inconsistent with the company's knowledge of the defect, and that Apple had ample opportunity to disclose the defect, which one of Apple's Rule 30(b)(6) designees, ███████████████████████████████████████████ *See* FAC ¶¶ 145-46, 154, 198, 202, 211, 214, 226-27, 251, 277, 287, 309.

  Testimony regarding Topics 9, 10, and 11 is also likely to reveal what information Apple knew about the defect and when, how and when it conveyed that knowledge to its authorized resellers and nonparty repair providers (or how and when these nonparties reported keyboard problems to Apple), the guidelines governing the manner in which these nonparties were to respond to consumers who complained of butterfly keyboard problems, or the steps manufacturers and suppliers had to take to respond to the keyboard problems at issue in this case. Given the testimony of corporate designee Plaintiffs deposed on October 30, who used the phrase ███████████████████████████████████████████████████████████ the interactions, communications and agreements between Apple and nonparties are relevant to test Apple's assertion that its repair options provide consumers complete relief. *See* 10/30/19 Dep. of J. LaBerge at 138:11-141:13.

---

noticed topics, Plaintiffs reserve their right to add a Rule 30(b)(6) topics on the design differences between the new laptop and its butterfly keyboard-equipped predecessor and the decision to revert to a traditional scissor mechanism keyboard.

 [4] Other examples may be found in Plaintiffs complaint. *See, e.g.,* FAC ¶¶ 4, 24, 30, 38, 45, 53, 59, 67, 77, 91, 99, 104-06, 108-09, 137. Another example is an apology by an Apple executive. *See* https://www.wsj.com/graphics/apple-still-hasnt-fixed-its-macbook-keyboard-problem/ (last visited Dec. 10, 2019).

To:  The Honorable Virginia K. DeMarchi
Re:  *In re MacBook Keyboard Litigation*
December 16, 2019
Page **5** of **10**

      **B.**      **Defendant's Position**

As an initial matter, Apple explained to Plaintiffs that it is not taking the position that Plaintiffs have waived their ability to pursue the topics in dispute.  The parties have met and conferred, most recently, on December 4, regarding the scope of Plaintiffs' topics, and have significantly narrowed the open issues.  Apple produced a 30(b)(6) witness on several topics in October (Topics 2, 7, 8, and 12), and two individual Apple employee depositions are scheduled in December and January.  Two further 30(b)(6) depositions have been scheduled to occur in January.[5]  Apple believes the issues can be narrowed and resolved with further meet and confer.

      1.      <u>Background</u>

Apple addresses some of the inaccuracies with Plaintiffs' characterization of the dispute below:

- Plaintiffs provided 30(b)(6) topics at the end of May 2019 for the purpose of meeting and conferring with Apple.
- In early July, Apple informed Plaintiffs that most of the topics were premature given the posture of the case, and asked Plaintiffs to narrow and identify topics that would be amenable to an early deposition while postponing the other topics.
- Plaintiffs identified Topics 7, 8, and 12, and asked that the parties continue to meet and confer regarding the remaining topics.  Apple agreed to a deposition on the identified topics (which took place in October) and to meet and confer further.
- On September 27, Plaintiffs took the position that they had never agreed to postpone depositions on the remaining topics and requested that they be scheduled before yearend.
- On October 21,[6] Apple agreed to produce witnesses on Topics 1 and 2.
- Plaintiffs did not raise the other topics again until November 18, when they demanded a lead counsel meet and confer within two days.  Apple obliged, and during the November 20 meet and confer, stated that it would review the remaining topics to see if further progress could be made before the next meet and confer call.
- Instead of further meeting and conferring, Plaintiffs provided Apple with a draft joint letter on Friday, November 22, and insisted on filing it 5 days later, the day before Thanksgiving.  Plaintiffs ultimately agreed to "extend" their unilateral deadline.
- On December 4, the parties met and conferred on Topics 4-6 and 9-11.

---

[5] Plaintiffs have recently requested to expand the scope of the agreed-upon Topics 1 and 2, such that those depositions will need to be rescheduled to accommodate additional document production and to avoid multiple depositions of the same witnesses.

[6] During that meet and confer, Apple offered witnesses on Topics 1 and 2, and Plaintiffs did not raise any other topics.

To:  The Honorable Virginia K. DeMarchi
Re:  *In re MacBook Keyboard Litigation*
December 16, 2019
Page **6** of **10**

        2.        <u>Response to Relief Requested by Plaintiffs</u>

Apple believes that the parties can narrow or resolve Topics 4-6, 9, and 11 through further meet and confer but the parties are at impasse for Topic 10.

**Topic 4**.  This topic seeks information regarding "market research and competitive and pricing analyses concerning the MacBook, including the MacBook's keyboard-related components and keyboard-related features)."  This topic is overbroad.  Apple is investigating witnesses with knowledge regarding market research studies relating to use of the MacBook keyboard.  Plaintiffs, however, have yet to articulate why "competitive and pricing analyses" is relevant here.  Plaintiffs cite *Davidson v. Apple, Inc.*, 2018 WL 2325426, for the proposition that discovery regarding "pricing strategies" are necessary to a damages analysis.  Plaintiffs' reliance on that case is misplaced because it stands only for the proposition that "actual prices" paid by consumers should be incorporated into a conjoint study.  *See id.* at *22.  Plaintiffs' citation to *Martin v. Monsanto Co.*, 2017 WL 5172205, is similarly off base because it involved document requests for marketing research—not deposition testimony.  Apple has already produced documents sufficient to show its advertising regarding the "butterfly" keyboard (RFP 28), and agreed to investigate whether there are relevant market research documents (RFP 29).  Given Apple's agreement to investigate this deposition topic, there is no issue ripe for Court intervention.

**Topics 5-6**.  These topics, which seek information about ***all*** "product packaging, marketing, and advertising materials for the MacBook" (Topic 5) and ***all*** "representations Apple made to the public concerning the MacBook" (Topic 6), are overbroad and unduly burdensome.[7]  They are not targeted in any way to a particular type of representation made in advertising or otherwise.[8]  These topics are not even limited to representations about the keyboard or the alleged defect, but rather extend to ***all*** representations about the MacBook.  While overbroad as drafted, the parties should continue to meet and confer to narrow the scope of the topics.

Apple suggested to Plaintiffs that such inquiries would be better suited to written discovery (e.g., an interrogatory attaching the marketing materials at issue).  Apple also proposed that Plaintiffs identify specific types of representations (e.g., representations regarding the butterfly keyboard's features) or specific advertising materials, including those Apple has produced.  Plaintiffs refused either proposal and did not suggest any of their own.  Apple believes that there can be a reasonable narrowing of these topics though further meet and confer.

---

      [7] *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d at 874-5, is inapposite; that case involved whether plaintiffs had adequately pled an omissions claims where they did not identify any specific documents that should have contained the omitted material.  It had nothing to do with deposition testimony about advertising or public statements.
      [8] Plaintiffs include a footnote with a string cite to paragraphs of the FAC, and cite a news article, but they provide no explanation for why these citations are relevant.

To:  The Honorable Virginia K. DeMarchi
Re:  *In re MacBook Keyboard Litigation*
December 16, 2019
Page **7** of **10**

Moreover, the information requested in these topics is not relevant.  Plaintiffs argue that these topics relate to Apple's knowledge of the alleged defects, but none of the product packaging, marketing, advertising, or public statements on their face will reveal anything about Apple's knowledge regarding the alleged defects.  Moreover, Apple has already produced voluminous documentation on testing performed pre-product launch and post-launch analyses and agreed to supplement this production for the new models.  While Plaintiffs give Phil Schiller's statement about "quality issues" with the early butterfly keyboard models as an example that Apple had full knowledge of "the defect," that example is inapposite.  Quality issues are not evidence of a design defect.  If Plaintiffs can appropriately narrow the scope of the topics, Apple can investigate a potential witness.

**Topics 9-11**.  These topics seek information regarding Apple's agreements, communications, and interactions with:

- Authorized resellers concerning the alleged Keyboard Defect (Topic 9);
- Manufacturers and suppliers concerning the MacBook Keyboards (Topic 10); and
- Nonparty repair providers concerning the MacBook Keyboards (Topic 11).

These topics are impermissibly broad, irrelevant, and cumulative of other discovery.  Plaintiffs are effectively asking Apple to provide a single witness to testify about every communication Apple has had with hundreds of these third parties over a five-year time period.  Moreover, as discussed further with regard to Topic 10, Plaintiffs claims are based solely on an alleged design defect, not a manufacturing defect.  Plaintiffs claim these topics are necessary because they are "likely to reveal" information Apple knew about the alleged keyboard defect and when Apple knew that information.  Apple, however, has performed an extensive ESI collection, review, and voluminous production that included documents discussing the alleged defect, including pre-launch testing documentation and post-launch analyses.  To the extent these documents included communications with resellers, manufacturers, suppliers, or AASPs regarding the alleged defect, those documents were produced.

Topic 9 is particularly cumulative of other discovery because Plaintiffs have independently subpoenaed a number of resellers and Apple Authorized Service Providers (AASPs), and asked for, among other things, training materials or instructions Apple provided related to the Program.  Apple has also produced training materials to AASPs related to the Program.  Apple is willing to further investigate if it is feasible to search for and locate communications with resellers and AASPs relating to the announcement of the Program.  Searching for communications with hundreds of third parties would be unduly burdensome and disproportionate to the needs of the case.  There is no central repository Apple is currently aware of and to the extent Plaintiffs seek these communications to determine when Apple purportedly knew about the alleged defect, Plaintiffs already have thousands of Apple internal documents on that subject.

Topics 10 and 11 are overbroad for the additional reason that they are not limited to the alleged defect but purport to include communications about ***all*** aspects of the butterfly keyboards.

To:  The Honorable Virginia K. DeMarchi
Re:  *In re MacBook Keyboard Litigation*
December 16, 2019
Page **8** of **10**

With respect to Topic 10, Plaintiffs provide no basis for seeking testimony regarding communications with manufacturers and suppliers given that Plaintiffs' claims are based solely on an alleged design defect, not a manufacturing defect.  (*See*, *e.g.*, ECF No. 110 at 7-8 (finding that Plaintiffs' complaint alleges a product design defect, and does not allege a manufacturing or production defect).)

Finally, Plaintiffs provide no basis for seeking testimony regarding Apple's agreements with these third parties.  Apple has objected to producing reseller agreements because they are irrelevant.[9]  As written, Topics 9-11 are also overbroad.  Plaintiffs seek testimony on hundreds of agreements with individual manufacturers, suppliers, resellers, and AASPs, who may or may not have any involvement with the products at issue in this case.

### III.   HEARING

#### A.   Plaintiffs' Position

Plaintiffs believe that the Court can resolve this dispute without a hearing.

#### B.   Defendant's Position

As Apple has communicated to Plaintiffs' counsel, Apple believes continuing progress can be made regarding this dispute through further meet and confer.  To the extent the Court is inclined to rule on these issues, Apple respectfully requests a hearing.

### IV.   FACT AND EXPERT DISCOVERY CUT-OFF DATES

The Court has not set cut-off dates for fact and expert discovery.

### V.   COMPLIANCE WITH CONFERENCE OF LEAD COUNSEL REQUIREMENT

Lead trial counsel met and conferred on November 20, 2019 and December 4, 2019.  Plaintiffs were represented by Steve Schwartz (lead trial counsel), Beena McDonald, and Angelica Ornelas.  Apple was represented by Penelope Preovolos (lead trial counsel), Claudia Vetesi, and Margaret Mayo.

| | |
|---|---|
| By:  */s/ Steven A. Schwartz*<br>      Daniel C. Girard<br>      Jordan Elias | By:  */s/ Penelope A. Preovolos*<br>      Penelope A. Preovolos (State Bar No. 87607)<br>      Claudia M. Vetesi (State Bar No. 276330) |

---

[9] To the extent Plaintiffs seek the reseller agreements for the price paid by resellers to Apple, the price paid is neither relevant nor proportionate to the needs of the case (RFP No. 27), and, in any event, Plaintiffs have subpoenaed certain resellers for sales information, including purchase price.

To:  The Honorable Virginia K. DeMarchi
Re:  *In re MacBook Keyboard Litigation*
December 16, 2019
Page **9** of **10**

Angelica M. Ornelas
Simon S. Grille
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*aornelas@girardsharp.com*
*sgrille@girardsharp.com*

Steven A. Schwartz (*pro hac vice*)
Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone:  (610) 642-8500
Facsimile:  (610) 649-3633
*sas@chimicles.com*
*bfj@chimicles.com*
*awf@chimicles.com*

*Interim Class Counsel*

Robert C. Schubert
Willem F. Jonckheer
Miranda P. Kolbe
Noah M. Schubert
**SCHUBERT JONCKHEER & KOLBE LLP**
3 Embarcadero Ctr., Ste. 1650
San Francisco, California 94111
Telephone:  (415) 788-4220
Facsimile:  (415) 788-0161
*rschubert@sjk.law*
*wjonckheer@sjk.law*
*mkolbe@sjk.law*
*nschubert@sjk.law*

Margaret E. Mayo (State Bar No. 259685)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, California 94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
*ppreovolos@mofo.com*
*cvetesi@mofo.com*
*mmayo@mofo.com*

Purvi G. Patel (State Bar No. 270702)
**MORRISON & FOERSTER LLP**
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone:  (213) 892-5200
Facsimile:  (213) 892-5454
*ppatel@mofo.com*

*Attorneys for Defendant Apple Inc.*

E. Michelle Drake
Joseph C. Hashmall
**BERGER & MONTAGUE, P.C.**
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone:  (612) 594-5999
Facsimile:  (215) 875-4604
emdrake@bm.net
jhashmall@bm.net

Esfand Nafisi
**MIGLIACCIO & RATHOD LLP**
388 Market Street, Suite 1300
San Francisco, California 94111
enafisi@classlawdc.com

*Plaintiffs' Executive Committee*


## ATTESTATION STATEMENT

I, Steven A. Schwartz, am the ECF User whose identification and password are being used to file this document pursuant to Civil L.R. 5-1(i)(3).  I attest under penalty of perjury that counsel has concurred in this filing.

DATED:  December 16, 2019                    */s/ Steven A. Schwartz*