UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE MACBOOK KEYBOARD LITIGATION

Case No. 18-cv-02813-EJD (VKD)

**ORDER RE MARCH 4, 2020 DISCOVERY DISPUTE**

Re: Dkt. No. 189

The parties ask the Court to resolve a dispute concerning Apple's request to clawback deposition testimony on the ground that the testimony inadvertently disclosed a privileged communication. Dkt. No. 189. The Court conducted a hearing on March 10, 2020. Dkt. No. 195. Following the hearing, and with the Court's permission, Apple made a supplemental submission of deposition testimony that it contends bears on this dispute. *See* Dkt. No. 197.

Having considered the parties' submissions and counsel's arguments at the hearing on this matter, the Court concludes that some relief is warranted to address the possible inadvertent disclosure of privileged information.

## I. BACKGROUND

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Apple designated an employee, Jeffrey LaBerge, to testify on its behalf concerning topics relating to Apple's handling of the alleged keyboard defect at issue in this action. Following a series of questions and answers regarding the repair options Apple offered, plaintiffs' counsel asked Mr. LaBerge the following question:

Before the witness answered, counsel for Apple interposed the following objection:

> Counsel: Object to the extent any of the discussion was with legal. You can answer to the extent it didn't involve advice from legal.

After this instruction, Mr. LaBerge answered as follows:

[REDACTED]

Dkt. No. 189-6 at 102:12-22.

Apple argues that Mr. LaBerge's answer inadvertently discloses an attorney-client privileged communication. Apple moves to strike and redact from the transcript of the deposition the entirety of Mr. LaBerge's answer. Dkt. No. 189 at 6. Plaintiffs argue that the testimony is not privileged. *Id.* at 1.

## II. LEGAL STANDARD

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients . . . ." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The parties agree that California law governs application of the privilege in this diversity action. Dkt. No. 189 at 2, 4–6.

In California, the attorney-client privilege is set out in the California Evidence Code, Cal. Evid. Code §§ 950 *et seq*. According to that code, a client has the privilege "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer." Cal. Evid. Code § 954. The attorney-client privilege protects only confidential communications between attorney and client made for the purpose of seeking or delivering legal advice or representation. *Los Angeles Cty. Bd. of Supervisors v. Superior Court*, 2 Cal. 5th 282, 293–94 (2016). A "confidential communication" is:

> information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other that those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

2

1  Cal. Evid. Code § 952.

2  "The party claiming the privilege has the burden of establishing the preliminary facts
3  necessary to support its exercise, i.e., a communication made in the course of an attorney-client
4  relationship." *Costco Wholesale Corp. v. Superior Court,* 47 Cal. 4th 725, 733 (2009). "Once that
5  party establishes facts necessary to support a prima facie claim of privilege, the communication is
6  presumed to have been made in confidence and the opponent of the claim of privilege has the
7  burden of proof to establish the communication was not confidential or that the privilege does not
8  for other reasons apply." *Id.*

9  The parties stipulated to a protective order that includes a procedure for clawing back
10 inadvertent disclosures of privileged information, as permitted under Federal Rule of Civil
11 Procedure 16(b)(5)(B). *See* Dkt. No. 84 ¶ 12.

### III. DISCUSSION

#### A. Whether the Disputed Testimony Discloses a Privileged Communication

The Court first considers whether the disputed testimony discloses a privileged communication. For the purposes of this dispute, the Court accepts Apple's representation that it consulted legal counsel about whether to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. However, it is not clear that Mr. LaBerge's testimony discloses any privileged communication.

The question plaintiffs asked did not call for the disclosure of privileged information; it called for a "yes" or "no" answer about whether Apple had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Apple's objection ("Object to the extent any of the discussion was with legal. You can answer to the extent it didn't involve advice from legal.") was prophylactic and cautionary—an instruction to the witness about protecting Apple's privilege rather than an objection to the question itself. Following this instruction, Mr. LaBerge acknowledged that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as Apple's counsel had suggested might be the case, and then volunteered what "▮▮▮▮▮▮▮▮."

Apple argues that Mr. LaBerge revealed privileged information when he said ▮▮▮▮▮▮ ▮▮▮▮▮▮▮" referring to plaintiffs' question about whether Apple had ▮▮▮▮▮▮

3

1 ███████. Dkt. No. 189 at 4–5. But Mr. LaBerge's statement is hardly more revealing than Apple's counsel's own objection/instruction, which suggested that such a discussion had in fact taken place and warned the witness not to reveal what had been discussed. Even without counsel's objection/instruction, the Court is not persuaded that Mr. LaBerge's acknowledgement that Apple discussed this topic with legal counsel reveals a privileged communication. In *Coy v. Superior Court of Contra Costa Cty.*, 58 Cal. 2d 210 (1962), the California Supreme Court considered whether an interrogatory that asked defendants, "When did you first discuss [plaintiff's] obligation to you with [counsel]?" sought privileged information. *Id.* at 219. On its face, the interrogatory does not merely seek the date of a discussion with counsel, but the date on which defendants discussed *a particular topic* (i.e., "[plaintiff's] obligation to you") with counsel. The *Coy* court concluded the interrogatory did not seek disclosure of a privileged communication. *Id.* at 219–20. It is difficult to distinguish Mr. LaBerge's acknowledgement that Apple discussed ███████ with legal counsel from the response solicited by the interrogatory in *Coy*.[1]

The more difficult question is whether, when read in context, Mr. LaBerge's further statement ("███████") reveals a privileged communication. Apple insists that it reveals counsel's legal advice. Dkt. No. 189 at 5. Plaintiffs argue that it discloses only Apple's decision about how to handle keyboard issues as a fact in the world, and not any advice of counsel. *Id.* at 3. The Court agrees with plaintiffs that, standing alone, the fact that Apple determined ███████ is not privileged, even if that decision was informed by advice from legal counsel. The privilege protects only communications, not facts. *Upjohn*, 449 U.S. at 396; *see also Matter of Fischel*, 557 F.2d 209, 212 (9th Cir. 1977) ("An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction."). Indeed, had Mr. LaBerge simply answered the question

---

[1] Apple's argument that the "interrogatory . . . merely sought the date when defendant met with an attorney" (*see* Dkt. No. 189 at 5) is not an accurate characterization of the interrogatory in *Coy*.

4

affirmatively and volunteered Apple's ultimate decision without commenting on whether the matter was discussed with counsel, as follows:

> ███████████████████████████████████████████████
> ████████████████████████
> ███████████████████████████████████████
> ████████████████████████████████████████
> ████████████████

it would be difficult to conclude that such testimony reveals a privileged communication.[2] The problem is that Mr. LaBerge's statement regarding Apple's decision does not stand alone; it was made in the context of a reference to a discussion with counsel. As Apple argues, it is possible to understand Mr. LaBerge's testimony as disclosing that Apple's counsel advised Apple to make this decision. But it is equally possible to understand his testimony as carefully *not* revealing any such communications (per counsel's instructions) and specifically disclosing only what Apple decided to do.[3]

Resolution of this dispute does not depend on whether Apple and plaintiffs have met their respective burdens; rather, it turns on an interpretation of what Mr. LaBerge said in his deposition. Mr. LaBerge's testimony is ambiguous, a point neither side addresses or even acknowledges. In these circumstances, and to address the plausible inference that Mr. LaBerge disclosed advice of counsel, the Court concludes that some remedy is warranted.

### B. Consideration of Possible Remedies

The Court next considers how best to address Mr. LaBerge's testimony and the possibility that it could be understood to disclose a privileged communication. Apple moves to strike and redact the entirety of Mr. LaBerge's answer at page 102, lines 19-22 of the deposition transcript.

---

[2] Apple emphasizes that communications between attorney and client may not be parsed into privileged and non-privileged bits. Dkt. No. 189 at 6. This is a correct statement of the law, but inapplicable here. No one contends that Mr. LaBerge's deposition testimony was *itself* a privileged communication, and the Court does not attempt to parse in any way the privileged communication the Court assumes occurred between Apple and its legal counsel. The Court considers only Mr. LaBerge's deposition testimony and whether he inadvertently disclosed the contents of a privileged communication that occurred at some other time.

[3] The Court notes that Mr. LaBerge uses passive voice to describe the company's actions ("██████████████████"). He uses this same construction elsewhere in his deposition when talking about how Apple implemented its repair program. *See, e.g.*, Dkt. No. 189-6 at 95:7-19.

5

That remedy certainly eliminates any concerning inferences, but it does not address the fact that plaintiffs are entitled to discover what Apple decided (or at least should not be prevented from discovering it on grounds of privilege) and were prevented from doing so because of Apple's objections and its instructions to the witness during deposition.

The Court has identified two alternative remedies that it believes address both parties' legitimate interests. Apple may elect one of the following options:

Option 1: Redact the transcript of Mr. LaBerge's deposition testimony at page 102, line 19 ("████████████████") *only*, leaving the following testimony intact: ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████" The Court proposed this remedy at the hearing, and it is consistent with plaintiffs' interpretation of Mr. LaBerge's deposition testimony as a factual answer to the question asked.

Option 2: Redact the entirety of Mr. LaBerge's answer at page 102, lines 19-22 of the deposition transcript as Apple requests, but permit plaintiffs to further depose Mr. LaBerge. This further deposition would be limited to no more than 30 minutes. Plaintiffs may ask essentially the same question of Mr. LaBerge as reflected at page 102, lines 21-14 of the deposition transcript and may also ask reasonable follow up questions regarding Apple's decision to ████████████ ████████████. Plaintiffs may not inquire about what advice Apple's legal counsel gave or how that advice informed Apple's decision.

**IV. CONCLUSION**

The Court's resolution of this dispute requires Apple to elect a remedy from two options identified above. Apple shall make this election and so advise plaintiffs in writing no later than **March 24, 2020**. Thereafter, the parties shall cooperate to promptly implement the chosen option.

In the event either side wishes to seek review of this order by the presiding judge, as permitted by Rule 72(a), the March 24, 2020 deadline shall be stayed pending such review.

Nothing in this order precludes the parties from stipulating to a remedy that differs from the two options described above, if they so agree.

///

**IT IS SO ORDERED.**

Dated: March 17, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge

7