Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*sgrille@girardsharp.com*

Steven A. Schwartz (*pro hac vice*)
Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
Beena M. McDonald (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
*sas@chimicles.com*
*bfj@chimicles.com*
*awf@chimicles.com*
*bmm@chimicles.com*

*Interim Class Counsel*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE: MACBOOK KEYBOARD LITIGATION | Case No. 5:18-cv-02813-EJD-VKD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Judge:     Hon. Edward J. Davila<br>Date:      December 3, 2020<br>Time:      9:00 a.m.<br>Courtroom: 4 – 5th Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ......................................................................................ix

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.     INTRODUCTION ............................................................................................................ 1

II.    STATEMENT OF THE ISSUE TO BE DECIDED ...................................................... 2

III.   STATEMENT OF FACTS ............................................................................................. 2

      A.    Apple's Butterfly Keyboard Is Defective. ....................................................... 2

      B.    Apple Knew the Butterfly Keyboard Was Defective. ...................................... 4

      C.    Apple Did Not Disclose That the Butterfly Keyboard Is Defective. .................. 7

      D.    Apple Was Unable to Fix the Defect. ............................................................... 7

      E.    Plaintiffs' Keyboards Failed, and Apple Did Not Provide Them
           Functioning Laptops. ...................................................................................... 8

IV.   LEGAL STANDARD ...................................................................................................... 9

V.    ARGUMENT .................................................................................................................. 9

      A.    Plaintiffs Satisfy the Prerequisites of Rule 23(a). ......................................... 11

           1.    The Class Members Are Sufficiently Numerous to Make Joinder
               Impracticable. ..................................................................................... 11

           2.    The Claims Involve Common Issues of Fact and Law. ........................ 11

           3.    Plaintiffs' Claims Are Typical of the Claims of Other Class
               Members. ............................................................................................. 13

           4.    Plaintiffs and Their Counsel Will Adequately Represent the Class. ....... 13

      B.    Plaintiffs Satisfy the Prerequisites of Rule 23(b)(3). ...................................... 14

           1.    Common Issues Predominate as to the Claims of the California
               Subclass. ............................................................................................. 14

               a.    Apple's Liability Under the Song-Beverly Act Turns on
                   Common Evidence of Unmerchantability. ............................... 15

               b.    Apple's Liability Under the CLRA Turns on Whether the
                   MacBook Is Defective and When Apple Knew It Was
                   Defective. ................................................................................ 16

           2.    Common Evidence Will Drive the Resolution of the Claims
                Against Apple Under the Consumer Laws of New York, Florida,
                Illinois, New Jersey, Washington, and Michigan. ............................... 18

           3.    All Class Members Were Injured at the Point of Sale. ......................... 20

           4.    A Class Action Is a Superior Method of Adjudicating This
                Controversy. ....................................................................................... 23

      C.    Plaintiffs Satisfy the Prerequisites of Rule 23(b)(2). ...................................... 24

VI.   CONCLUSION ............................................................................................................. 25

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Aldapa v. Fowler Packing Co., Inc.*
    323 F.R.D. 316 (E.D. Cal. 2018) ........................................................................ 10, 11, 24
4

5

*Alger v. FCA US LLC*
    2020 WL 799175 (E.D. Cal. Feb. 18, 2020) ................................................................ 16, 18
6

*Allen v. Hyland's Inc.*
    300 F.R.D. 643 (C.D. Cal. 2014) .................................................................................... 24
7

8

*Am. Timber & Trading Co. v. First Nat'l Bank of Or.*
    690 F.2d 781 (9th Cir. 1982) .......................................................................................... 11
9

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997) ....................................................................................................... 14
10

11

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*
    568 U.S. 455 (2013) ......................................................................................................... 9
12

*Banks v. Nissan N. Am., Inc.*
    301 F.R.D. 327 (N.D. Cal. 2013) ................................................................................... 12
13

14

*Briseno v. ConAgra Foods, Inc.*
    674 F. App'x 654 (9th Cir. 2017) .............................................................................. 21, 24
15

16

*Briseno v. ConAgra Foods, Inc.*
    844 F.3d 1121 (9th Cir. 2017) ........................................................................................ 24
17

*Broomfield v. Craft Brew All., Inc.*
    2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) .......................................................... 17, 25
18

19

*Carriuolo v. Gen. Motors Co.*
    823 F.3d 977 (11th Cir. 2016) ........................................................................................ 20
20

21

*Chamberlan v. Ford Motor Co.*
    402 F.3d 952 (9th Cir. 2005) .......................................................................................... 16
22

23

*Cirone-Shadow v. Union Nissan of Waukegan*
    955 F. Supp. 938 (N.D. Ill. 1997) .............................................................................. 19, 24
24

25

*Clay v. CytoSport, Inc.*
    2018 WL 4283032 (S.D. Cal. Sept. 7, 2018) ......................................................... 19, 20, 23
26

*Comcast Corp. v. Behrend*
    569 U.S. 27 (2013) .............................................................................................. 20, 21, 22
27

28

*Connick v. Suzuki Motor Co.*
    174 Ill. 2d 482 (1996) ............................................................................................... 20, 24

*Daniel v. Ford Motor Co.*
   2016 WL 8077932 (E.D. Cal. Sept. 23, 2016) .......................................................... 15, 16

*Daniel v. Ford Motor Co.*
   806 F.3d 1217 (9th Cir. 2015) ................................................................................. 18

*Davis v. Powertel, Inc.*
   776 So.2d 971 (Fla. Dist. Ct. App. 2000) ............................................................... 20

*Day v. AT & T Corp.*
   63 Cal. App. 4th 325 (1998) ................................................................................... 16

*Deegan v. Windermere Real Estate/Ctr.-Isle, Inc.*
   391 P.3d 582 (Wash. Ct. App. 2017) ...................................................................... 20

*Dei Rossi v. Whirlpool Corp.*
   2015 WL 1932484 (E.D. Cal. Apr. 28, 2015) .......................................................... 17

*Edwards v. Ford Motor Co.*
   603 F. App'x 538 (9th Cir. 2015) ............................................................................ 12

*Engalla v. Permanente Med. Grp., Inc.*
   15 Cal. 4th 951 (1997) ............................................................................................. 17

*Falco v. Nissan N. Am., Inc.*
   2016 WL 1327474 (C.D. Cal. Apr. 5, 2016) ........................................................... *passim*

*Forcellati v. Hyland's, Inc.*
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ........................................................... 16

*Gaudet v. Am. Home Shield Corp.*
   2013 WL 12238499 (E.D. La. Sept. 10, 2013) ........................................................ 10

*Gold v. Lumber Liquidators, Inc.*
   323 F.R.D. 280 (N.D. Cal. 2017) ............................................................. 12, 13, 17, 19

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*
   317 F.R.D. 374 (S.D.N.Y. 2016) ......................................................................... 19, 22

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*
   242 F.R.D. 568 (W.D. Wash. 2007) ........................................................................ 20

*Guido v. L'Oreal, USA, Inc.*
   2013 WL 3353857 (C.D. Cal. July 1, 2013) ............................................................ 23

*Guido v. L'Oreal, USA, Inc.*
   2014 WL 6603730 (C.D. Cal. July 24, 2014) .......................................................... 22

*Gutierrez v. Carmax Auto Superstores Cal.*
   19 Cal. App. 5th 1234 (2018) ................................................................................. 16

iii

*Hadley v. Kellogg Sales Co.*
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) .................................................................. 17, 22

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ................................................................................ 13

*Hasemann v. Gerber Prod. Co.*
   331 F.R.D. 239 (E.D.N.Y. 2019) ........................................................................... 20, 22

*Holt v. Noble House Hotels & Resort, LTD*
   2018 WL 5004996 (S.D. Cal. Oct. 16, 2018) ......................................................... 16

*In re Arris Cable Modem Consumer Litig.*
   2018 WL 3820619 (N.D. Cal. Aug. 10, 2018) ....................................................... 21

*In re Arris Cable Modem Consumer Litig.*
   327 F.R.D. 334 (N.D. Cal. 2018) ........................................................................... 18, 22, 24

*In re Coca-Cola Prod. Mktg. & Sales Practices Litig.*
   2020 WL 759388 (N.D. Cal. Feb. 14, 2020) ......................................... 18, 19, 20, 24

*In re ConAgra Foods, Inc.*
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ..................................................... 13, 17, 19

*In re Facebook Biometric Info. Privacy Litig.*
   326 F.R.D. 535 (N.D. Cal. 2018) ........................................................................... 9

*In re IKO Roofing Shingle Prod. Liab. Litig.*
   757 F.3d 599 (7th Cir. 2014) ................................................................................. 23

*In re Intuitive Surgical Sec. Litig.*
   2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ....................................................... 13

*In re Lenovo Adware Litig.*
   2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ....................................................... 16

*In re Lidoderm Antitrust Litig.*
   2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ......................................................... 21

*In re MacBook Keyboard Litig.*
   2019 WL 6465285 (N.D. Cal. Dec. 2, 2019) ......................................................... 13, 23

*In re MyFord Touch Consumer Litig.*
   291 F. Supp. 3d 936 (N.D. Cal. 2018) ................................................................... 22

*In re Porsche Cars N. Am., Inc.*
   880 F. Supp. 2d 801 (S.D. Ohio 2012) .................................................................. 18

*In re Sony Vaio Computer Notebook Trackpad Litig.*
   2013 WL 12116137 (S.D. Cal. Sept. 25, 2013) ..................................................... 12, 15

iv

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*
  722 F.3d 838 (6th Cir. 2013) ................................................................. 21

*J.P. v. Sessions*
  2019 WL 6723686 (C.D. Cal. Nov. 5, 2019) ......................................... 11

*Jimenez v. Allstate Ins. Co.*
  765 F.3d 1161 (9th Cir. 2014) .............................................................. 11

*Just Film, Inc. v. Buono*
  847 F.3d 1108 (9th Cir. 2017) .............................................................. 20

*Keegan v. Am. Honda Motor Co.*
  284 F.R.D. 504 (C.D. Cal. 2012) ................................................... *passim*

*Korolshteyn v. Costco Wholesale Corp.*
  2017 WL 1020391 (S.D. Cal. Mar. 16, 2017) ....................................... 24

*Kurtz v. Kimberly-Clark Corp.*
  321 F.R.D. 482 (E.D.N.Y. 2017) .......................................................... 24

*Kwikset Corp. v. Super. Ct.*
  51 Cal. 4th 310 (2011) ................................................................... 21, 25

*Leyva v. Medline Indus. Inc.*
  716 F.3d 510 (9th Cir. 2013) ................................................................ 20

*Lynch v. Tropicana Prod., Inc.*
  2013 WL 2645050 (D.N.J. June 12, 2013) ........................................... 23

*Makaeff v. Trump Univ., LLC*
  2014 WL 688164 (S.D. Cal. Feb. 21, 2014) ......................................... 18

*Maldonado v. Apple, Inc.*
  333 F.R.D. 175 (N.D. Cal. 2019) ......................................................... 20

*Martin v. Monsanto Co.*
  2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ...................................... 17

*Marty v. Anheuser-Busch Cos., LLC*
  43 F. Supp. 3d 1333 (S.D. Fla. 2014) .................................................. 22

*Mazza v. Am. Honda Motor Co.*
  666 F.3d 581 (9th Cir. 2012) ................................................................ 10

*McKell v. Wash. Mut., Inc.*
  142 Cal. App. 4th 1457 (2006) ............................................................ 25

*Mednick v. Precor, Inc.*
  320 F.R.D. 140 (N.D. Ill. 2017) ........................................................... 19

v

*Mexia v. Rinker Boat Co.*
   174 Cal. App. 4th 1297 (2009) ................................................................. 15

*Mirkin v. Wasserman*
   5 Cal. 4th 1082 (1993) ........................................................................... 18

*Morgan v. U.S. Soccer Fed'n, Inc.*
   2019 WL 7166978 (C.D. Cal. Nov. 8, 2019) ........................................... 11

*Ms. L. v. ICE*
   331 F.R.D. 529 (S.D. Cal. 2018) ............................................................. 25

*Nelson v. Mead Johnson Nutrition Co.*
   270 F.R.D. 689 (S.D. Fla. 2010) ............................................................. 19

*Nguyen v. Nissan N. Am., Inc.*
   932 F.3d 811 (9th Cir. 2019) ................................................... 20, 21, 22

*Nieberding v. Barrette Outdoor Living, Inc.*
   302 F.R.D. 600 (D. Kan. 2014) ............................................................... 24

*Norwood v. Raytheon Co.*
   237 F.R.D. 581 (W.D. Tex. 2006) ............................................................ 11

*Office of the AG v. Wyndham Int'l, Inc.*
   869 So.2d 592 (Fla. Dist. Ct. App. 2004) ............................................... 19

*Pac. Bell Tel. Co. v. 88 Connection Corp.*
   2014 WL 4063148 (S.D. Cal. Aug. 14, 2014) ......................................... 25

*Parsons v. Ryan*
   754 F.3d 657 (9th Cir. 2014) ........................................................... 11, 25

*Petersen v. Costco Wholesale Co.*
   312 F.R.D. 565 (C.D. Cal. 2016) ............................................................. 10

*Pierce v. NovaStar Mortg., Inc.*
   238 F.R.D. 624 (W.D. Wash. 2006) ......................................................... 20

*Pulaski & Middleman, LLC v. Google, Inc.*
   802 F.3d 979 (9th Cir. 2015) ................................................................... 21

*Racies v. Quincy Bioscience, LLC*
   2017 WL 6418910 (N.D. Cal. Dec. 15, 2017)........................................... 24

*Rikos v. Procter & Gamble Co.*
   799 F.3d 497 (6th Cir. 2015) ................................................................... 19

*Rodriguez v. Hayes*
   591 F.3d 1105 (9th Cir. 2010) ................................................................. 13

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:18-CV-02813-EJD-VKD

*Roy v. Cty. of Los Angeles*
2018 WL 3436887 (C.D. Cal. July 11, 2018) ........................................................ 23

*Salas v. Toyota Motor Sales, U.S., Inc.*
2019 WL 1940619 (C.D. Cal. Mar. 27, 2019) ............................................ 13, 15, 18

*Schneider v. Chipotle Mexican Grill, Inc.*
328 F.R.D. 520 (N.D. Cal. 2018) ......................................................................... 17

*Sloan v. Gen. Motors LLC*
287 F. Supp. 3d 840 (N.D. Cal. 2018) .................................................................. 18

*State v. Living Essentials, LLC*
436 P.3d 857 (Wash. Ct. App. 2019) .................................................................... 19

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003) ............................................................................... 13

*Stutman v. Chem. Bank*
95 N.Y.2d 24 (2000) ..................................................................................... 19, 20

*Suchanek v. Sturm Foods, Inc.*
764 F.3d 750 (7th Cir. 2014) ............................................................................... 19

*Tait v. BSH Home Appliances Corp.*
289 F.R.D. 466 (C.D. Cal. 2012) .................................................................... 15, 21

*Torres v. Mercer Canyons Inc.*
835 F.3d 1125 (9th Cir. 2016) ....................................................................... 10, 14

*True Health Chiropractic, Inc. v. McKesson Corp.*
896 F.3d 923 (9th Cir. 2018) ............................................................................... 14

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*
593 F.3d 802 (9th Cir. 2010) ................................................................................. 9

*Velasco v. Chrysler Grp. LLC*
2014 WL 4187796 (C.D. Cal. Aug. 22, 2014) ...................................................... 18

*Victorino v. FCA US LLC*
2019 WL 5268670 (S.D. Cal. Oct. 17, 2019) ................................................. 15, 24

*Wolin v. Jaguar Land Rover N. Am., LLC*
617 F.3d 1168 (9th Cir. 2010) ............................................................. 12, 13, 15, 23

*Wolph v. Acer Am. Corp.*
272 F.R.D. 477 (N.D. Cal. 2011) .................................................................... 12, 17

*Wortman v. Air New Zealand*
326 F.R.D. 549 (N.D. Cal. 2018) ......................................................................... 10

vii

**Statutes**

CAL. BUS. & PROF. CODE § 17200 *et seq.* ............................................................. 9, 25

CAL. CIV. CODE § 1750 *et seq.* .......................................................................... 10, 16

CAL. CIV. CODE § 1770(a) ...................................................................................... 16

CAL. CIV. CODE § 1792 ....................................................................................... 9, 15

FLA. STAT. § 501.201 *et seq.* ................................................................................. 10

ILL. COMP. STAT. § 505/1 *et seq.* .......................................................................... 10

MICH. COMP. LAWS § 445.901 *et seq.* .................................................................. 10

N.J. STAT. ANN. § 56:8-1 *et seq.* ........................................................................... 10

New York General Business Law § 349 ................................................................. 10

U.C.C. § 2-714(2) ................................................................................................... 23

WASH. REV. CODE § 19.86.010 *et seq.* ................................................................. 10

**Other Authorities**

3 Newberg on Class Actions § 7:29 (5th ed.) ........................................................ 11

Amy J. Schmitz, *Introducing the "New Handshake" to Expand Remedies and Revive
    Responsibility in Ecommerce,*
    26 St. Thomas L. Rev. 522 (2014) .................................................................. 6

**Rules**

Fed. R. Civ. P. 23(a) .................................................................................... *passim*

Fed. R. Civ. P. 23(a)(1) .......................................................................................... 11

Fed. R. Civ. P. 23(a)(2) .......................................................................................... 11

Fed. R. Civ. P. 23(a)(3) .......................................................................................... 12

Fed. R. Civ. P. 23(b) .................................................................................... *passim*

Fed. R. Civ. P. 23(b)(2) ................................................................................. i, 24, 25

Fed. R. Civ. P. 23(b)(3) ..................................................................... i, 1, 14, 20, 25

Fed. R. Civ. P. 23(c)(2) .......................................................................................... 10

Fed. R. Civ. P. 23(c)(5) .......................................................................................... 10

1

## NOTICE OF MOTION AND MOTION

2      **PLEASE TAKE NOTICE** that on December 3, 2020 at 9:00 a.m., before the Honorable

3   Edward J. Davila of the United States District Court for the Northern District of California, Plaintiffs

4   Zixuan Rao, Joseph Baruch, Bo Laurent, Ashley Marin, Kyle Barbaro, Steve Eakin, Michael Hopkins,

5   Adam Lee, Kevin Melkowski, Lorenzo Ferguson, and Benjamin Gulker (collectively, "Plaintiffs"),

6   will and do hereby move the Court, pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of

7   Civil Procedure, for an order certifying a class of all persons who purchased, other than for resale,

8   within California, New York, Florida, Illinois, New Jersey, Washington, or Michigan, an Apple

9   MacBook from any of the model years 2015-2017, an Apple MacBook Pro from any of the model

10  years 2016-2019 (excluding the 16" MacBook Pro released in November 2019), or an Apple MacBook

11  Air from any of the model years 2018-2019 (the "Class"). Excluded from the Class are Defendant

12  Apple Inc. ("Apple"), its parents, subsidiaries, affiliates, officers and directors; any entity in which

13  Apple has a controlling interest; governmental entities; and all judges assigned to hear any aspect of

14  this litigation, as well as their staff and immediate family members.

15      Plaintiffs will also move the Court to certify subclasses of purchasers in the seven states listed

16  in the definition, and to appoint them as class and subclass representatives and to appoint the law firms

17  of Girard Sharp LLP and Chimicles Schwartz Kriner & Donaldson-Smith LLP as class counsel. This

18  motion is based upon this Notice of Motion and Motion, the incorporated Memorandum of Law, the

19  Joint Declaration of Daniel C. Girard and Steven A. Schwartz ("Joint Decl."), the Declarations of

20  Zixuan Rao ("Rao Decl."), Joseph Baruch ("Baruch Decl."), Bo Laurent ("Laurent Decl."), Ashley

21  Marin ("Marin Decl."), Kyle Barbaro ("Barbaro Decl."), Steve Eakin ("Eakin Decl."), Michael

22  Hopkins ("Hopkins Decl."), Adam Lee ("Lee Decl."), Kevin Melkowski ("Melkowski Decl."),

23  Lorenzo Ferguson ("Ferguson Decl."), and Benjamin Gulker ("Gulker Decl."), the Expert Reports of

24  Dr. David Niebhur ("Niebuhr Rpt.") and Dr. Hal Singer ("Singer Rpt."), Plaintiffs' Trial Plan, the

25  evidence submitted in support of the motion, any additional evidence submitted on reply, and any

26  further argument presented to the Court.

27

28

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.     INTRODUCTION**

3      Plaintiffs' consumer protection claims against Apple are well-suited for class treatment and

4   satisfy Rule 23's requirements for certification. Beginning in 2015, ███████ of Americans bought a

5   MacBook laptop computer equipped with a thin "butterfly" keyboard. ████████████████ had the

6   keyboard fail on them, preventing their laptops from functioning as laptops. Plaintiffs move to certify a

7   class of these purchasers in the seven states where they made their purchase. Joinder of all these

8   consumers is impracticable, and the claims turn on common questions of law and fact, including the core

9   questions of whether the butterfly design is defective and whether Apple engaged in deceptive trade

10  practices by failing to disclose the keyboard problems. Plaintiffs assert claims that are typical of those of

11  other Class members. They will fairly and adequately represent the interests of the Class, and have

12  retained experienced counsel to prosecute the claims. Plaintiffs meet the requirements of Rule 23(a).

13      The predominance and superiority requirements of Rule 23(b)(3) are met because Plaintiffs'

14  claims will stand or fall based on common proof concerning the defect, Apple's concealment of it, and

15  the classwide effects of Apple's violations. Plaintiffs' consumer claims have the same or similar

16  elements, and proof of these elements will not vary by class member. For example, Apple's documents

17  show that, even as it continued to sell the butterfly-equipped MacBooks ("Butterfly Laptops"), ███████

18  ████████████████████████████████████████████████████████████████████

19  ████████████████ In November 2019, after years of ████████████, Apple abandoned ████████

20  ████████ the butterfly mechanism ████████████████████████████ and reverted to the

21  traditional scissor keyboard design. By May 2020, none of Apple's laptops on the market still had the

22  butterfly keyboard. Apple will be liable to the Class if the jury accepts Plaintiffs' evidence that the

23  Butterfly Laptops are unmerchantable (for the Song-Beverly warranty claim) and that Apple knew of

24  yet failed to disclose the defective nature of the butterfly keyboard (for the consumer fraud claims).

25  Plaintiffs' damages expert Dr. Hal Singer has estimated classwide damages using standard regression

26  analysis and has also constructed a conjoint survey measuring the point-of-sale harm derived from the

27  undisclosed keyboard problems.

28      Plaintiffs expect Apple to argue that individual issues of reliance or manifestation will swamp

1

the common issues that predominate here. But a reasonable consumer's reliance on a material omission is presumed, and if Plaintiffs establish that all class members overpaid as a result of Apple's violations, whether the defect already manifested for a class member is irrelevant because the harm was incurred at purchase. To the extent Apple attempts to manufacture other individual issues by pointing to minor changes in the three generations of laptops, its own documents show that all of these computers have the same underlying defective design, making it efficient to adjudicate the related claims in one proceeding. Because the common questions at the heart of this case can be answered by common proof, they overwhelm any individualized issues and certification should be granted.

## II.   STATEMENT OF THE ISSUE TO BE DECIDED

Whether the Court should certify the proposed Class under Rule 23(a), (b)(2), and (b)(3).

## III.   STATEMENT OF FACTS

### A.   Apple's Butterfly Keyboard Is Defective.

Apple recognizes that the keyboard, the primary user interface with a computer, is "███████ ███████████████████" Ex. A (Rule 30(b)(6) Deposition of Laura Metz ("Metz Dep.") at 126:5-12).[1] In 2015, Apple introduced a "butterfly" mechanism keyboard that differed from the standard "scissor" mechanism, in which keys are attached to the keyboard via two pieces that interlock in a scissor-like fashion. The design of the butterfly keyboard makes the keys prone to fail ███████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Ex. 1 (APL-MBKeyboard_00780296); *see also* Exs. 2, 3, 4 (APL-MBKeyboard_00039038; APL-MBKeyboard_00161356; APL-MBKeyboard_00060808); Ex. B (Rule 30(b)(6) Deposition of Shelly Goldberg ("Goldberg Dep.") at 104:13-18, 104:19-22, 107:1-15).

---

[1] Exhibits are appended to the Joint Declaration of counsel submitted herewith.

2

1   The butterfly mechanism █████████████████████████████████████████

2   ████████████████████████████████████████████████████████████████

3   ███████████████   *See* Exs. 5, 6 (APL-MBKeyboard_00031197; APL-MBKeyboard_00493517). The

4   ███████████████████████████████████████████████

5   ████████████████████████████████████████████

6   █████████████████████████████." Exs. 7, 8 (APL-MBKeyboard_00661650 at -54; APL-

7   MBKeyboard_00203431-35). The ██████████████████████████████████████

8   ███████████████████████" Ex. B (Goldberg Dep. at 105:16-106:3). The

9   trapped particles "█████████████████████████████████████

10  ████████   *Id*. at 130:21-131:21. ████████████████████

11  ████████████████████████████████████   Exs. 9, 10, 11, 12 (APL-

12  MBKeyboard_00040489; APL-MBKeyboard_00204786; APL-MBKeyboard_00704493; APL-

13  MBKeyboard_00570607). ██████████████████████████████████████

14  ███████████████████████████████████████████   Ex. B (Goldberg

15  Dep. at 133:5-135:13); Ex. 13 (APL-MBKeyboard_00695303 at -19).

16  An Apple executive bluntly acknowledged that Apple's ███████████████████

17  █████████████   Ex. 14 (APL-MBKeyboard_00666974). "████████████████████████

18  ██████████████████████████████" Ex. 15 (APL-MBKeyboard_00238336) (parenthetical

19  in original). Despite butterfly keyboard ██████████████████████████████

20  ████████████████████████—Apple continued to sell these laptops for five

21  years, ████████████████████████████████████████████████

22  ████████████████████████████████   Ex. 16 (APL-MBKeyboard_00662916).

23  Plaintiffs' metallurgical engineering expert, Dr. David Niebuhr, examined five Butterfly

24  Laptops, including a model with the under-key membrane that represented Apple's attempted fix for

25  later models. *See* Niebuhr Rpt., ¶¶ 47-65. Dr. Niebuhr confirmed Apple's conclusion that ████████

26  █████████████████████████████████████████████████

27  ████████████████████████████████████████████████████   Dr. Niebuhr's

28  examination of Butterfly Laptops showed that ██████████████████████████████

1  ███████████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████

4  ████████████████. Niebuhr Rpt., ¶¶ 23, 29, 43, 66. Dr. Niebuhr further found that Apple's

5  ████████████████████████████████████████████ (Ex. 27 (Suppl. Resp. to

6  Interrogs. 7, 8)) do ███████████████████████████████████████

7  ████████████████████████. Niebuhr Rpt., ¶¶ 25-26, 39, 46; Exs. 18, 19 (APL-

8  MBKeyboard_00686248 at -277; APL-MBKeyboard_00698206 at -245).

9      Apple announced in November 2019 that it was returning to the higher-travel, traditional

10  scissor mechanism—which an Apple witness testified "██████████████████████████████

11  █████████████" Ex. A (Metz Dep. at 136:5-138:16).

12      **B.    Apple Knew the Butterfly Keyboard Was Defective.**

13      In June 2013, nearly two years before releasing the first Butterfly Laptop in spring 2015

14  (model "J92"), Apple's ████████████████████████████████████████

15  █████████████████████████████████████ Ex. 8 (APL-MBKeyboard_00203431-

16  35). ████████████████████████████████████

17  ███████████████████████████████████████████████

18  ████████████ *Id.* ██████████████████████████████████

19  ████████████████████████████████████████

20  ███████████████████████████████████████████████

21  ████████████████████ Ex. 20 (APL-MBKeyboard_00493487 at -488). ███████

22  ██████████████████████████████████████████████████████

23  ██████████████████████████████████████ Ex. 21 (APL-

24  MBKeyboard_00245412). █████████████████████████████

25  ███████████████████████████████████████████████████████

26  ██████████████████████████████ Exs. 8, 22, 23 (APL-MBKeyboard_00203431-35;

27  APL-MBKeyboard_00331849; APL-MBKeyboard_00494576).

28      Apple's patent applications further show its awareness while selling Butterfly Laptops that

---

4

their keyboard design is defective. In a patent application filed on May 13, 2015, Apple proposed a method by which electrical contacts under the keys "may be sealed and/or protected from contaminants," recognizing that a thinner keyboard architecture can degrade the "strength, and ultimately the operational life of the component."[2] Apple acknowledged in its May 13, 2016 application: (a) that operation of the butterfly mechanism "may allow debris or other contaminants to fall under the keycap"; (b) that "a piece of debris, such as sand, crumbs, dust . . . may interfere with the movement of the butterfly hinge during the actuation of the key"; and (c) that "[i]f even one key in a fully assembled keyboard is not working properly, the entire keyboard may be deemed defective."[3] Apple's September 8, 2016 patent application also states that "contaminants (such as dust, dirt, food crumbs, and the like) may lodge under keys, blocking electrical contacts, getting in the way of key movement, and so on."[4] ███████████████████████████████████████████
███████████████████████████████████████████████████████████████
█████████████████" Ex. 24 (APL-MBKeyboard_00302205).

Predictably, MacBooks equipped with butterfly keyboards failed early and often. Consumers began posting complaints to support forums within a month after Apple released its first Butterfly Laptop (Dkt. No. 219, 2d Am. Consol. Compl., ¶ 145 ("SAC")), and Apple's Rule 30(b)(6) corporate witness admitted ████████████████████████████████████████" Ex. C (Rule 30(b)(6) Deposition of Jeffrey LaBerge ("LaBerge Dep.") at 57:7-9). Another Apple employee reported ██████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████" Ex. 25 (APL-MBKeyboard_00046505); *see also* Ex. C (LaBerge Dep. at 70:6-15; 185:16-186:8; 191:2-9) (███████████████████████████████████████████
████████████████████). ███████████████ a Change.org petition that by June 2020 had amassed over 40,000 signatures. Ex. C (LaBerge Dep at 56:22-23; 119:3-6).████████████████████

[2]https://patentscope.wipo.int/search/en/detail.jsf?docId=WO2016183488&tab=PCTDESCRIPTION&maxRec=1000 (last visited May 8, 2019).
[3] https://patents.google.com/patent/US20160351360A1/en?q=keyboard&q=butterfly&assignee=Apple (last visited May 8, 2019).
[4] https://patents.google.com/patent/US20180068808A1/en?oq=US2018%2f0068808 (last visited May 8, 2019).

1   ████████████████████████████████████████████████████████████████

2   ████████████████████████████████████████████ Ex. 26 (APL-MBKeyboard_00766209).

3   Apple kept on selling the laptops.

4         Apple's repair records show ██████████████████████████. *See* Ex. 27

5   (Suppl. Resp. to Interrog. 9). For models with four years of service data,[5] ██████████████

6   ███████████ Singer Rpt., ¶¶ 24-25. ███████████████████████████████

7   █████████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████████████

9   ██████████████████. *See* Ex. D (Deposition of Cheri Gandy at 53:19-54:8; 57:3-58:23;

10   105:10-15; 106:22-108:11; 109:18-110:3; 113:4-10; 115:4-20; 118:19-21; 120:2-8); Ex. E (Rule

11   30(b)(6) Deposition of Jared Williams ("Williams Dep.") at 86:8-87:9; 94:15-23; 108:3-21; 117:21-

12   118:5); *see also* Exs. 28, 29, 30, 31, 32 (APL-MBKeyboard_00673583 at -586; APL-

13   MBKeyboard_00046528; APL-MBKeyboard_00238774; APL-MBKeyboard_00238782; APL-

14   MBKeyboard_00024223). Apple's repair rates also do not account for customers who experienced the

15   defect but never reported it to Apple.[6]

16         Apple concedes ███████████████████████████. *See* Williams Dep. at 161:7-15.

17   The Butterfly Laptop ████████████████████████████████████████████

18   ████████████████████████ Ex. 27 (Suppl. Resp. to Interrog. 10); *see also* Williams

19   Dep. at 161:3-162:15 (████████████████████████████████████████

20   ████████████████████████ ███████████████████████████████████

21   ██████████████████████████████████████████ *Id.* at 160.

22

23

---

24   [5] Apple expects its customers to use its Mac products for at least four years. *See*
https://www.apple.com/environment/answers/ ("[Y]ears of use, which are based on first owners, are

25   modeled to be four years for macOS . . . . Most Apple products last longer . . . ."); *see also*
https://support.apple.com/keyboard-service-program-for-mac-notebooks (KSP includes MacBooks for

26   "4 years after the first retail sale of the unit").

27   [6] *See* Amy J. Schmitz, *Introducing the "New Handshake" to Expand Remedies and Revive
Responsibility in Ecommerce*, 26 St. Thomas L. Rev. 522, 526–27 (2014) (noting that "reported

28   complaints are only the 'tip-of-the-iceberg' to the extent that many consumers—especially those of
lower socioeconomic status—do not even realize their rights to complain.").

**C.**     **Apple Did Not Disclose That the Butterfly Keyboard Is Defective.**

Apple has now sold ███████████ Butterfly Laptops. Ex. 33 (APL-MBKeyboard_01178967). They sold at premium prices ranging from ███████████, with Apple advertising the butterfly keyboard as "one of [the laptop's] most dominant features."[7] Ex. 34 (APL-MBKeyboard_00959676). Apple claimed that the butterfly mechanism provides "███████████████████████████████████████████████████████████████████████████ Ex. A (Metz Dep. at 58:3-6 & Ex. 99 thereto at p. 3). During the March 2015 launch event, an Apple senior marketing executive said the butterfly keyboard provides "a key that is much more precise and accurate. In fact, it's four times more stable than the scissor mechanism. Yet, it is 40% thinner . . . ."[8]

Apple marketed the Butterfly Laptops through ███████████████████████████████████████████████████████████████ Ex. A (Metz Dep. at 38:4-15; 87:17-22; 89:11-15; 113:22-115:25). Each computer was sold in packaging that ████████████████████████████████████████████████. *Id.* at 54:11-21; 66:2-67:3; 128:10-131:20. Each computer also presents users with ██████████████████████████ *Id.* None of Apple's ██████████████████████████████████████████████████████████████████████████████████████ *Id.* at 152:24-155:23. Instead, with each successive generation of the component, Apple touted upgrades to the keyboard. With the second-generation Butterfly Laptops, Apple advertised a "redesign[] to include the new . . . second-generation butterfly mechanism." *Id.* at Ex. 100 thereto. For the third generation, Apple emphasized a "quieter typing experience" while continuing to claim "four times more key stability." *Id.* at Ex. 101.

**D.**     **Apple Was Unable to Fix the Defect.**

In June 2017, Apple posted a self-help webpage with recommended steps to clean butterfly

---

[7] https://www.youtube.com/watch?v=LQ-0Lyy58g4 at 33:50-34:25; https://web.archive.org/web/20150311182233/http://www.apple.com/live/2015-mar-event/ (last visited May 27, 2020); *see also* https://singjupost.com/apple-watch-macbook-keynote-march-2015-spring-forward-event-full-transcript/?singlepage=1

[8] https://www.youtube.com/watch?v=LQ-0Lyy58g4 at 35:05-25. Similarly, Apple's advertisements, product pages, and other marketing materials consistently promised a "more responsive keyboard . . . providing four times more key stability than a traditional scissor mechanism, along with great . . . responsiveness." *E.g.*, Ex. A (Metz Dep. at Ex. 101 thereto at p. 3).

keyboards with compressed air canisters █████████████████████████████████
████████████████████████████████████████████████████. Ex. 21 (APL-
MBKeyboard_00245412). Thousands of consumers report that the use of compressed air does not
make the keyboard work again. ██████████████████████████████████████

████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Ex. 14 (APL-MBKeyboard_00666974) (emphasis added).

      In June 2018, ████████████████████████ and about a month after Plaintiffs filed this
case, Apple announced a special Keyboard Service Program ("KSP" or "Program"). Ex. 35 (APL-
MBKeyboard_00001158). Apple has since ████████████████████████████████
████████████████████████████████████████████████ Exs. 36, 37 (APL-
MBKeyboard_00684097; APL-MBKeyboard_00661606). The KSP does nothing to prevent
recurrence of the keyboard problems because it does not address the underlying defect.

      Under the KSP, ████████████████████████████████████████
████████████████████████████████████████. Ex. 38 (APL-MBKeyboard_00997438). The
program also ████████████████████████████████████████████████████████
████████████████ *Id.*; *see* Ex. 39 (APL-MBKeyboard_00040472) (admitting ████████████
████████████████████████). Apple internally refers ████████████████████████
████████████████████████████." Ex. F (Deposition of Bryan McDonald at 167:25-
168:1). ████████████████████████████████████████████████████████████
████████████████████████████████████████. Ex. 37 (APL-MBKeyboard_00661606-08).

    **E.**    **Plaintiffs' Keyboards Failed, and Apple Did Not Provide Them Functioning Laptops.**

      Plaintiffs each purchased a new MacBook with a butterfly keyboard that failed. They all
purchased a Butterfly Laptop after seeing Apple's advertising, product pages, or other marketing
materials that, for example, represented that the butterfly keyboard is "highly responsive" and provides

1    "four times more key stability." Like millions of others, when they bought their laptops Plaintiffs had

2    no idea about the severe design flaws in the keyboard mechanism. Had Plaintiffs known of the

3    butterfly keyboard problems, they would not have bought these computers or would have bought them

4    only at a much lower price. Rao Decl., ¶¶ 2-3, 7; Baruch Decl., ¶¶ 2-3, 9; Laurent Decl., ¶¶ 2-3, 12;

5    Marin Decl., ¶¶ 2-3, 8; Barbaro Decl., ¶¶ 2-3, 8; Eakin Decl., ¶¶ 2-3, 11; Hopkins Decl., ¶¶ 2-3, 8; Lee

6    Decl., ¶¶ 2-3, 10; Melkowski Decl., ¶¶ 2-3, 9; Ferguson Decl., ¶¶ 2-3, 10; Gulker Decl., ¶¶ 2-3, 10.

7         Each Plaintiff's keyboard failed within the one-year limited warranty period. Individual keys

8    began to stick and stop responding, causing repeated typing errors and preventing the laptops from

9    being used normally. Even after seeking help from Apple or its retail stores or service providers,

10   Plaintiffs continued to experience the same key failures. Apple offered only ineffective workarounds

11   like compressed air or other cleaning attempts. Rao Decl., ¶¶ 4-6; Baruch Decl., ¶¶ 4-8; Laurent Decl.,

12   ¶¶ 4-11; Marin Decl., ¶¶ 4-7; Barbaro Decl., ¶¶ 4-7; Eakin Decl., ¶¶ 4-10; Hopkins Decl., ¶¶ 4-7; Lee

13   Decl., ¶¶ 4-9; Melkowski Decl., ¶¶ 4-8; Ferguson Decl., ¶¶ 4-9; Gulker Decl., ¶¶ 4-9.

14   **IV.    LEGAL STANDARD**

15        "[T]he ultimate goal of Rule 23 is to determine whether efficiency and justice are best served

16   by plaintiffs pursuing their claims on behalf of a class[.]" *Fitzhenry-Russell v. Dr. Pepper Snapple*

17   *Grp., Inc.*, 326 F.R.D. 592, 607 (N.D. Cal. 2018), *leave to appeal denied*, No. 18-80081, 2018 WL

18   4922825 (9th Cir. Sept. 18, 2018). "The proposed class action must satisfy all four requirements of

19   Rule 23(a), and at least one of the sub-sections of Rule 23(b)." *In re Facebook Biometric Info.*

20   *Privacy Litig.*, 326 F.R.D. 535, 541 (N.D. Cal. 2018). At class certification, "the question is not

21   whether the . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather

22   whether the requirements of Rule 23 are met[.]" *United Steel, Paper & Forestry, Rubber, Mfg.*

23   *Energy v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (citation omitted). As such,

24   "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to

25   determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v.*

26   *Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

27   **V.    ARGUMENT**

28        Plaintiffs move to certify the Class defined below as to their claims for (1) breach of implied

warranty in violation of the Song-Beverly Consumer Warranty Act, CAL. CIV. CODE § 1792 *et seq.*,
and for violations of (2) the Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.*
("UCL"); (3) the Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* ("CLRA"); (4) the
Washington Consumer Protection Act ("WCPA"), WASH. REV. CODE § 19.86.010 *et seq.*; (5) the
Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. § 501.201 *et seq.*; (6) the
Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), ILL. COMP. STAT. § 505/1 *et
seq.*; (7) the New Jersey Consumer Fraud Act ("NJCFA"), N.J. STAT. ANN. § 56:8-1 *et seq.*; (8) New
York General Business Law § 349 ("GBL section 349"); and (9) the Michigan Consumer Protection
Act ("MCPA"), MICH. COMP. LAWS § 445.901 *et seq.*

> All persons who purchased, other than for resale, within California, New York,
> Florida, Illinois, New Jersey, Washington, or Michigan, an Apple MacBook
> from any of the model years 2015-2017, an Apple MacBook Pro from any of the
> model years 2016-2019 (excluding the 16" MacBook Pro released in November
> 2019), or an Apple MacBook Air from any of the model years 2018-2019.

Notice to this Class can be sent in a single mailing. *See* Fed. R. Civ. P. 23(c)(2). Class membership "can
be established by means of objective, verifiable criteria," *Wortman v. Air New Zealand*, 326 F.R.D. 549,
555 (N.D. Cal. 2018),[9] and the proposed "definition is reasonably co-extensive with Plaintiffs' chosen
theory of liability."[10] *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136-37 (9th Cir. 2016).

Plaintiffs also propose certification of the seven constituent state subclasses for purposes of case
management. *See* Fed. R. Civ. P. 23(c)(5); *Aldapa v. Fowler Packing Co., Inc.*, 323 F.R.D. 316, 326
(E.D. Cal. 2018) ("Subclasses may be used to more efficiently resolve common issues during the
proceeding"). While each of these subclasses independently satisfies Rule 23 because relief will turn on

---

[9] Apple's records contain sales data which can be used to identify the number of MacBooks it sold by
date and model number; Apple's warranty database also contains class member names and contact
information; and third-party retailers likewise have produced transaction-level data reflecting their
sales of Butterfly Laptops. Joint Decl., ¶ 13.

[10] Plaintiffs' proposed class definition is co-extensive with the definition proposed in their SAC, which
lists the 16 specific MacBook models that contain the butterfly keyboard. SAC ¶ 205; Ex. 37 (APL-
MBKeyboard_00661606). Plaintiffs are not presently moving to certify a class with respect to their
restitution and common-law fraudulent concealment claims. *See Petersen v. Costco Wholesale Co.*,
312 F.R.D. 565, 578 (C.D. Cal. 2016); *Gaudet v. Am. Home Shield Corp.*, Nos. 11-1857 & 12-1781,
2013 WL 12238499, at *1 (E.D. La. Sept. 10, 2013) ("It is routine for plaintiffs to move for class
certification on fewer than all claims asserted."). In addition, Plaintiffs' proposed certification
presumes that the law of the state where purchases occurred governs the claims arising out of those
transactions. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).

---

10

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:18-cv-02813-EJD

1  an assessment of Apple's common conduct, the Court should evaluate Rule 23 with respect to the Class
2  as a whole because the subclasses are "permissive"—i.e., they are being proposed to aid in case
3  management and not due to a fundamental conflict. *See* 3 Newberg on Class Actions § 7:29 (5th ed.)
4  (discussing management subclassing and noting that, "[b]ecause there is no conflict of interest at issue,
5  there is no necessity that each subclass have different representation and independently comply with all
6  of the requirements of Rule 23(a), (b), and (g)"); *Aldapa*, 323 F.R.D. 326-27 (holding that management
7  subclasses "need not be evaluated separately for commonality, numerosity, typicality, and adequacy")
8  (citing, *inter alia*, *Am. Timber & Trading Co. v. First Nat'l Bank of Or.*, 690 F.2d 781, 787 n.5 (9th Cir.
9  1982); *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 589 n.14 (W.D. Tex. 2006)); *J.P. v. Sessions*, No.
10 LACV18-06081-JAK (SKx), 2019 WL 6723686, at *16 n.20 (C.D. Cal. Nov. 5, 2019) (same).

**A.  Plaintiffs Satisfy the Prerequisites of Rule 23(a).**

Plaintiffs satisfy each requirement for class certification under Rule 23(a). Their claims revolve around a common defect in Apple's butterfly keyboard design, and uniform proof will resolve the elements of Plaintiffs' consumer protection claims by showing whether the keyboard is defective and whether Apple knowingly sold defective laptops without alerting purchasers to the problem.

**1.  The Class Members Are Sufficiently Numerous to Make Joinder Impracticable.**

Numerosity under Rule 23(a)(1) is established because Apple sold ███████ Butterfly Laptops, including ███████ in each of the Plaintiff states, making it impracticable to join all claims. Ex. 33 (APL-MBKeyboard_01178967); Singer Rpt. at p. 1, fn. 6; Joint Decl., ¶ 14.

**2.  The Claims Involve Common Issues of Fact and Law.**

Plaintiffs satisfy the commonality requirement of Rule 23(a)(2) because class members' claims "depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central the validity of each claim in one stroke." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (internal quotation marks and citation omitted). Commonality is "construed permissively," *Morgan v. U.S. Soccer Fed'n, Inc.*, No. 2:19-CV-01717-RGK, 2019 WL 7166978, at *7 (C.D. Cal. Nov. 8, 2019) (citation omitted), and is satisfied even when "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the

1    class[.]" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).

2         Commonality is "easily" met here, as the claims of all Plaintiffs and class members "involve

3    the same alleged defect[.]" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir.

4    2010); *see, e.g.*, *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 523 (C.D. Cal. 2012) ("The central

5    dispute concerning commonality in this case turns on the nature of the purported defect."); *Banks v.*

6    *Nissan N. Am., Inc.*, 301 F.R.D. 327, 332-33 (N.D. Cal. 2013) (recognizing common issues of whether

7    and when the defendant knew its product was "defective in its design"). While Plaintiffs need not

8    prove the merits of their claims at this juncture, the existing record contains substantial evidence of the

9    existence of a common defect. *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 541 (9th Cir. 2015).

10        Each Butterfly Laptop relies on ███████████████████████████████████

11   ████████████████████████████████████████████████████████████████████

12   ███████████████████████████████████████████████. Ex. 18 (APL-

13   MBKeyboard_00686248). ███████████████████████████████████████████

14   ███████████████████████████████ Exs. 18, 19 (APL-MBKeyboard_00686248; APL-

15   MBKeyboard_00698206). Both Apple's documents and Dr. Niebuhr's inspections of Butterfly

16   Laptops show ████████████████████████████████████████████████

17   ████████████████████████████ *See* Niebuhr Rpt., ¶¶ 38-44, 47-65; Exs. 10, 11, 12, 13

18   (APL-MBKeyboard_00204786; APL-MBKeyboard_00704493; APL-MBKeyboard_00570607; APL-

19   MBKeyboard_00695303; APL-MBKeyboard_00695319); *see also* Ex. B (Goldberg Dep. at 133:5-

20   135:13); Ex. C (LaBerge Dep. at 204:10-13). Each of the butterfly keyboard models is ███████████

21   ███████████. Ex. B (Goldberg Dep. at 130:21-131:21); Niebuhr Rpt., ¶¶ 25-26, 39, 46.

22        Commonality is satisfied, in short, because "the claims of all prospective class members

23   involve the same alleged defect . . . in the same product" such that the defect is "central to the validity

24   of the claims of all class members" and therefore "capable of resolution in one stroke." *Gold v.*

25   *Lumber Liquidators, Inc.*, 323 F.R.D. 280, 287 (N.D. Cal. 2017) (internal quotation marks and citation

26   omitted); *see also Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 484 (N.D. Cal. 2011); *In re Sony Vaio*

27   *Computer Notebook Trackpad Litig.*, No. 09 CV-2109 AJB (MDD), 2013 WL 12116137, at *10 (S.D.

28   Cal. Sept. 25, 2013) ("[T]he nature of the purported defect" was the "central dispute at issue").

### 3.     Plaintiffs' Claims Are Typical of the Claims of Other Class Members.

Plaintiffs' and class members' claims are typical under Rule 23(a)(3) because they arise from the same defect and Apple's course of conduct in continuing to sell products without disclosing known problems impairing their operation. *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2019 WL 6465285, at *1, *6 (N.D. Cal. Dec. 2, 2019) (noting that the "functionality of a keyboard" is "central to a laptop" because "entering keyboard commands" is "one of its basic functions.").

Rule 23(a)'s "typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Typicality is satisfied where the plaintiffs and class members "have the same or similar injury" arising from the defendant's "same course of conduct." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 973 (C.D. Cal. 2015) (citation omitted).

The claims of Plaintiffs and all class members will rise or fall on the same evidence of Apple's common course of conduct and on whether the jury finds that Apple's failure to disclose the defect injured Plaintiffs at the point of sale by causing them to overpay for the Butterfly Laptops. Under Ninth Circuit law, "different factual circumstances surrounding the manifestation of the defect" do not defeat typicality. *Wolin*, 617 F.3d at 1175; *see Gold*, 323 F.R.D. at 289.  Therefore, typicality is met. *See, e.g.*, *Salas v. Toyota Motor Sales, U.S., Inc.*, No. 15-cv-8629, 2019 WL 1940619, at *5 (C.D. Cal. Mar. 27, 2019) (finding typicality met "because plaintiffs' claims are based on the same facts, an alleged . . . defect . . . that Toyota failed to disclose, and the same legal and remedial theories"); *Falco v. Nissan N. Am., Inc.*, No. 13-cv-00686, 2016 WL 1327474, at *7 (C.D. Cal. Apr. 5, 2016) (similar).

### 4.     Plaintiffs and Their Counsel Will Adequately Represent the Class.

As Rule 23(a)(4) requires, Plaintiffs and their counsel will "fairly and adequately protect the interests of the class." Courts ask two questions here: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). "To establish adequacy, class representatives generally need only to be familiar with the basis for the suit and their responsibilities as lead plaintiffs such that they

1    can uphold their obligations to other class members." *In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-

2    01920-EJD, 2016 WL 7425926, at *7 (N.D. Cal. Dec. 22, 2016) (quotations and citation omitted).

3        Plaintiffs have demonstrated that they are adequate class representatives, and they will

4    continue to vigorously prosecute these claims at their depositions and trial. Each Plaintiff purchased a

5    Butterfly Laptop and has already made significant contributions to the litigation, including by

6    retaining counsel, assisting in preparing the complaints, gathering records, responding to written

7    discovery requests, consulting with counsel on case developments and strategy, and preparing

8    declarations in support of this motion. Rao Decl., ¶¶ 2, 8-11; Baruch Decl., ¶¶ 2, 9-12; Laurent Decl.,

9    ¶¶ 2, 13-16; Marin Decl., ¶¶ 2, 9-12; Barbaro Decl., ¶¶ 2, 9-12; Eakin Decl., ¶¶ 2, 12-15; Hopkins

10   Decl., ¶¶ 2, 9-12; Lee Decl., ¶¶ 2, 11-14; Melkowski Decl., ¶¶ 2, 10-13; Ferguson Decl., ¶¶ 2, 11-14;

11   Gulker Decl., ¶¶ 2, 11-14.

12       Class Counsel have also demonstrated their adequacy. The attorneys working on this case, whom

13   this Court appointed as interim co-lead counsel, are experienced in prosecuting consumer class actions.

14   *See* Dkt. Nos. 30, 62. They have dedicated ample time and resources to investigating, pleading, and

15   pursuing these claims and will continue to devote the resources necessary to prosecute the litigation to

16   judgment. Joint Decl., ¶¶ 12, 15-17. Accordingly, as provided under Rule 23(g), Plaintiffs request that

17   the Court appoint the Girard and Chimicles firms to serve as co-lead class counsel.

18       **B.    Plaintiffs Satisfy the Prerequisites of Rule 23(b)(3).**

19       **1.    Common Issues Predominate as to the Claims of the California Subclass.**

20       The predominance inquiry asks whether "common questions present a significant aspect of the

21   case and they can be resolved for all members of the class in a single adjudication." *True Health*

22   *Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018). Predominance does not

23   focus on the sheer number of common questions, but, rather, on whether they are "apt to drive the

24   resolution of the litigation[.]" *Torres*, 835 F.3d at 1134 (citation omitted). The predominance

25   requirement can be "readily met" in consumer cases like this one, *Amchem Prods., Inc. v. Windsor*,

26   521 U.S. 591, 625 (1997), and is met here because the central questions in the case are common to the

27   Class: whether the Butterfly Laptops are defective, when Apple knew of the defect, whether Apple had

28   opportunities to disclose it, and how much class members overpaid because of Apple's concealment.

1

2

                        **a.**      **Apple's Liability Under the Song-Beverly Act Turns on Common Evidence of Unmerchantability.**

3

       The predominance standard is met with respect to Plaintiffs' California implied warranty claim,

4

which turns on whether the Butterfly Laptops suffer from a defect that renders them unmerchantable.

5

The Song-Beverly Act "provides that 'every sale of consumer goods that are sold at retail in this state

6

shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are

7

merchantable.'" *Victorino v. FCA US LLC*, No. 16-1617, 2019 WL 5268670, at *4 (S.D. Cal. Oct. 17,

8

2019) (quoting CAL. CIV. CODE § 1792); *see Sony Vaio*, 2013 WL 12116137, at *16 (holding that the

9

"the implied warranty of merchantability is breached if the product is defective or not fit for its ordinary,

10

intended purpose"). Further, "[i]n the case of a latent defect, a product is rendered unmerchantable, and

11

the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent

12

discovery." *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1304-05 (2009). Thus, "proof of the

13

manifestation of a defect is not a prerequisite to class certification." *Wolin*, 617 F.3d at 1173; *see also*

14

*Victorino*, 2019 WL 5268670, at *5 ("[O]n class certification, Plaintiff does not have to demonstrate a

15

manifestation of a current defect or that there is a substantial certainty of manifestation in the future").

16

       Courts "routinely certify implied warranty classes" "[b]ecause an implied warranty claim

17

requires an objective standard" of proof. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485

18

(C.D. Cal. 2012), *leave to appeal denied*, No. 13-80000, 2013 WL 1395690 (9th Cir. Apr. 1, 2013),

19

*cert. denied*, 571 U.S. 1196 (2014); *see, e.g.*, *Falco*, 2016 WL 1327474, at *10; *Salas*, 2019 WL

20

1940619, at *10; *Daniel v. Ford Motor Co.*, No. 11-2890, 2016 WL 8077932, at *6 (E.D. Cal. Sept.

21

23, 2016). As Plaintiffs' Song-Beverly claim "is grounded in a defective design common to all

22

[Butterfly Laptops], the breach of implied warranty claim is susceptible of common proof." *Tait*, 289

23

F.R.D. at 485 (internal quotations and citation omitted). Either the Butterfly Laptops are merchantable

24

or they aren't. Plaintiffs contend the keyboard defect renders these laptops unsuitable for their ordinary

25

purpose by making them unreliable for typing. Apple's own senior manager described ███████████

26

████████████████████████████████████████████████████" Ex. 14. "Therefore,

27

whether the alleged defect existed and caused the product to be unfit . . . would be identical across all

28

class members and subject to common proof." *Sony Vaio*, 2013 WL 12116137, at *16.

b.      **Apple's Liability Under the CLRA Turns on Whether the MacBook**
**Is Defective and When Apple Knew It Was Defective.**

Predominance is likewise readily met with respect to Plaintiffs' claim under California's

CLRA, which "prohibits certain unfair methods of competition in connection with consumer sales[.]"

*Holt v. Noble House Hotels & Resort, LTD*, No. 17:CV-2246-MMA (BLM), 2018 WL 5004996, at *9

(S.D. Cal. Oct. 16, 2018) (citing CAL. CIV. CODE § 1770(a)). Consistent with the legislative intent,

omissions may be actionable under the CLRA. *See Gutierrez v. Carmax Auto Superstores Cal.*, 19

Cal. App. 5th 1234, 1249–57 (2018). The CLRA accordingly "allows Plaintiffs to establish the

required elements of reliance, causation, and damages by proving that Defendants made what a

reasonable person would consider a material [omission]." *Forcellati v. Hyland's, Inc.*, No. CV 12-

1983-GHK MRWx, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014). Plaintiffs' "CLRA claim is

particularly suited to class treatment because it applies an objective, reasonable consumer standard."

*Brickman v. Fitbit, Inc.*, No. 3:15-CV-02077-JD, 2017 WL 5569827, at *6 (N.D. Cal. Nov. 20, 2017).

Common issues predominate in the CLRA cause of action because "the central issues . . . turn

on [Apple's] uniform conduct and the questions key to Plaintiff's claims will be answered by reference

to the same set of facts." *Alger v. FCA US LLC¸* No. 2:18-CV-00360-MCE-EFB, 2020 WL 799175, at

*6 (E.D. Cal. Feb. 18, 2020); *see Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005)

(predominant issues were "whether [the defendant] was aware of alleged . . . defect"; "whether [the

defendant] had a duty to disclose its knowledge" and "whether it failed to do so"; "whether the facts

that [the defendant] allegedly failed to disclose were material"; and "whether the alleged failure to

disclose violated the CLRA."). Uniform evidence that does not vary from purchaser to purchaser will

establish whether Apple violated the CLRA by knowingly concealing the keyboard problems. *See*

*Gutierrez*, 19 Cal. App. 5th at 1256-57; *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998).

In addition to the evidence of defect, common evidence, ████████████████████

shows that it had superior knowledge of the defect and, with it, an obligation to disclose. Because the

evidence of Apple's knowledge is entirely common, the fact finder "can determine what defendant

knew about the alleged defect, when it knew what, and at what point that knowledge was no longer

exclusive *once for all class members*." *Daniel*, 2016 WL 8077932, at *7 (emphasis added); *see In re*

*Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245, at *20 (N.D. Cal. Oct. 27, 2016).

16

1    Similarly, the issues of reliance and materiality are susceptible to classwide proof under an

2   objective standard. Courts have repeatedly held that because materiality "concerns objective features

3   of allegedly fraudulent representations and omissions, not subjective questions of how those

4   representations and omissions were perceived by each individual consumer, materiality presents

5   common questions of fact suitable for class litigation." *Martin v. Monsanto Co.*, No. EDCV-16-2168

6   JFW (SPx), 2017 WL 1115167, at *6 (C.D. Cal. Mar. 24, 2017). Materiality therefore does not require

7   individualized proof but "create[s] common questions of fact and law that predominate." *Broomfield v.*

8   *Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *11 (N.D. Cal. Sept. 25, 2018);

9   *see also Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018).

10   California's test for whether a fact is material is whether "a reasonable man [or woman] would

11   attach importance to its existence or nonexistence in determining his choice of action in the transaction

12   in question." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997). The CLRA thus

13   permits "plaintiffs to establish materiality and reliance . . . by showing that a reasonable person would

14   have considered the defendant's representation material." *In re ConAgra*, 90 F. Supp. 3d at 983; *see*

15   *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 536 (N.D. Cal. 2018) ("This reasonable

16   consumer inquiry encompasses materiality and reliance."). As such, a plaintiff "suing under the state's

17   consumer protection statutes need not show individualized reliance if it can establish" that the omitted

18   fact would have been important "to a reasonable consumer." *In re ConAgra*, 90 F. Supp. 3d at 983.

19   Apple itself considered the reliability of its keyboards to be important, as its internal

20   documents and implementation of its Keyboard Service Program reflect. *See, e.g.*, *Dei Rossi v.*

21   *Whirlpool Corp.*, No. 2:12-CV-00125-TLN, 2015 WL 1932484, at *7 (E.D. Cal. Apr. 28, 2015)

22   (materiality could be shown by reference to the defendant's documents and statements). Apple

23   concedes ███████████████████████████████████████████████

24   ██████████████████████████████ Ex. A (Metz Dep. at 68:23-69:25). While Apple

25   may argue that individual reliance issues preclude certification, courts routinely reject this argument

26   because the import and effect of disclosures for a reasonable consumer are common questions. *See,*

27   *e.g.*, *Gold*, 323 F.R.D. at 290; *Wolph*, 272 F.R.D. at 488 (reiterating that CLRA "claims do not require

28   individualized showing of reliance.").

1   Plaintiffs' CLRA claims arise from Apple's material omissions, so reliance may be established

2   by "simply proving 'that, had the omitted information been disclosed, one would have been aware of it

3   and behaved differently.'" *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (quoting

4   *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)). Hence the "proper focus" "is on whether the

5   Defendant *could have* disclosed the information to Plaintiffs through the exercise of reasonable care,

6   and whether Plaintiffs *would have* received it had Defendant done so." *Sloan v. Gen. Motors LLC*, 287

7   F. Supp. 3d 840, 874 (N.D. Cal. 2018). Apple had many opportunities to disclose the keyboard

8   problems to Plaintiffs and other prospective purchasers—███████████████████████████

9   █████████████████████████████████████████████████████████████████████████████████

10  █████—but failed to do so. Ex. A (Metz Dep. at 152:24-155:23); *see, e.g.*, *In re Arris Cable Modem*

11  *Consumer Litig.*, 327 F.R.D. 334, 366 (N.D. Cal. 2018).

12  To prove Apple's deceit, Plaintiffs will use common evidence to show a design defect, its

13  "effect on the class . . . what [Apple] knew and disclosed, and what [Apple] knew and did not

14  disclose"—and "[t]hese questions predominate over any individual concerns[.]" *Alger*, 2020 WL

15  799175, at *7 (citing *Keegan*, 284 F.R.D. at 534); *see also Salas*, 2019 WL 1940619, at *5.

16          **2.    Common Evidence Will Drive the Resolution of the Claims Against Apple**
                    **Under the Consumer Laws of New York, Florida, Illinois, New Jersey,**
17                  **Washington, and Michigan.**

18  The same common evidence will determine Apple's liability under the relevant consumer laws of

19  Plaintiffs' other home states—Florida, Illinois, New York, Washington, Michigan, and New Jersey—

20  whose elements parallel the CLRA's. *See, e.g.*, *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 855

21  (S.D. Ohio 2012) (analyzing claim elements); *Velasco v. Chrysler Grp. LLC*, No. CV 13-08080 DDP

22  VBKx, 2014 WL 4187796, at *10 (C.D. Cal. Aug. 22, 2014) (discussing duty to disclose under the

23  FDUTPA and NJCFA); *Makaeff v. Trump Univ., LLC*, No. 3:10-CV-0940-GPC-WVG, 2014 WL

24  688164, at *14 (S.D. Cal. Feb. 21, 2014) (finding that California, New York, and Florida consumer fraud

25  laws embrace similar standards); *In re Coca-Cola Prod. Mktg. & Sales Practices Litig.*, No. 14-MD-

26  02555-JSW, 2020 WL 759388, at *14 (N.D. Cal. Feb. 14, 2020) (discussing materiality and granting

27  certification under several of the state laws at issue here). That the key common elements of these

28  statutory claims—duty and opportunity to disclose, materiality, and damages—are substantially identical

weighs strongly in favor of a streamlined class trial. *See* Plaintiffs' Trial Plan; *Falco*, 2016 WL 1327474, at *11 (certifying California and Washington classes).

Because Apple uniformly failed to disclose the keyboard problems, proof of causation will be determined based on evidence that is wholly common to the class of purchasers. *See Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 514 (6th Cir. 2015); *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 151 (N.D. Ill. 2017). And because Plaintiffs will demonstrate that the suppressed fact—the butterfly keyboard's defective nature—was material, "they will be able to prove proximate cause on a classwide basis as well." *In re ConAgra*, 90 F. Supp. 3d at 998; *see Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 392 (S.D.N.Y. 2016) (certifying classes under California, New York, and Florida consumer law and rejecting defendant's argument that "consumer buying preferences 'atomiz[e] causation into millions of discreet inquiries'").[11] Like the CLRA, the other state laws at issue embrace the objective "reasonable consumer" standard.[12] *See, e.g.*, *Keegan*, 284 F.R.D. at 541 (concluding that California, Florida, and New York "appear to employ the same causation and reliance standard."). Reliance is not an element of Plaintiffs' FDUTPA, NJCFA, GBL section 349,

---

[11] *See also Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 697 (S.D. Fla. 2010) (class members "need not submit individualized proof to establish causation" under the FDUTPA); *In re Coca-Cola*, 2020 WL 759388, at *12 (causation under the NJCFA requires a showing that the consumer suffered an ascertainable loss as a result of the defendant's unlawful practice); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30 (2000) (overpayment based on defendant's deception establishes causation); *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 291 (N.D. Cal. 2017) (under the ICFA, "[w]here the alleged misconduct is uniform towards the whole class . . . courts have found that individual inquiries into proximate causation do not preclude certification").

[12] *See State v. Living Essentials, LLC*, 436 P.3d 857, 865 (Wash. Ct. App. 2019) ("An act is deceptive if it is likely to mislead a reasonable consumer," and the defendant's intent is irrelevant) (citation omitted); *Hasemann*, 331 F.R.D. at 258 (under GBL section 349, in lieu of reliance, a plaintiff may "simply prove that an objective reasonable person would have been deceived.") (citation omitted); *Goldemberg*, 317 F.R.D. at 389 (section 349 defines "misleading" based on the objective reasonable consumer standard); *Office of the AG v. Wyndham Int'l, Inc.*, 869 So.2d 592, 598 (Fla. Dist. Ct. App. 2004) ("[A] party asserting a [FDUTPA] claim need not show actual reliance" but, rather, that "the practice was likely to deceive a consumer acting reasonably in the same circumstances"); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756-57 (7th Cir. 2014) (consumer statutes of California, Illinois, New Jersey, and New York recognize the same standard); *Clay v. CytoSport, Inc.*, No. 15-00165, 2018 WL 4283032, at *13-14 (S.D. Cal. Sept. 7, 2018) (MCPA is "identical to the CLRA" and recognizes the "reasonable person" standard); *Cirone-Shadow v. Union Nissan of Waukegan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997) (ICFA also embraces "an objective standard" that looks at whether the omitted fact concerns "a matter upon which a 'reasonable person could be expected to rely in determining whether to proceed with the transaction") (citation omitted).

---

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:18-cv-02813-EJD

1    MCPA, and ICFA claims[13] and is presumed for Plaintiffs' WCPA claim.[14]

2         All class members encountered the same omissions—Apple did not disclose the keyboard

3    problems ████████████████████████████████████ or anywhere else. Plaintiffs'

4    consumer protection claims are therefore well-suited for class treatment. *See Hasemann*, 331 F.R.D. at

5    256; *Keegan*, 284 F.R.D. at 542 ("[P]laintiffs allege that defendants did not disclose to any member of

6    the class information regarding the potential for excessive and premature tire wear . . . . Consequently,

7    the court concludes that any potential differences in state law concerning the proof of reliance that is

8    necessary to prevail on consumer protection claims do not defeat predominance in this case.").

9              **3.    All Class Members Were Injured at the Point of Sale.**

10        It is settled, moreover, that "the presence of individualized damages cannot, by itself, defeat

11   class certification under Rule 23(b)(3)." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir.

12   2013). "Although uncertain damages calculations do not alone defeat certification, . . . at the class-

13   certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with

14   its liability case." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019) (emphasis and

15   internal quotation marks omitted) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). It

16   follows that, "[a]t this stage, Plaintiffs need only show that such damages can be determined without

17   excessive difficulty and attributed to their theory of liability[.]" *Just Film, Inc. v. Buono*, 847 F.3d

18   1108, 1121 (9th Cir. 2017). Calculations "need not be exact" and Plaintiffs need not show that the

19   method "will work with certainty[.]" *Maldonado v. Apple, Inc.*, 333 F.R.D. 175, 192 (N.D. Cal. 2019).

20        Where a consumer was deceived into making a purchase, he or she suffered harm by

21

22   ———————————

     [13] *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (the FDUTPA does not
23   require a showing of "actual reliance on the representation or omission at issue") (citing *Davis v.
     Powertel, Inc.*, 776 So.2d 971, 973 (Fla. Dist. Ct. App. 2000)); *Hasemann v. Gerber Prod. Co.*, 331
24   F.R.D. 239, 257-58 (E.D.N.Y. 2019); (reliance is not an element of a section 349 claim) (citing
     *Stutman v. Chem. Bank*, 95 N.Y.2d 24 (2000)); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501
25   (1996) (holding that "reliance is not an element of statutory consumer fraud" under the ICFA); *In re
     Coca-Cola*, 2020 WL 759388, at *12 ("A plaintiff need not prove reliance under the NJCFA"); *Clay*,
26   2018 WL 4283032, at *14 (the MCPA does not require individual proof of reliance).

27   [14] *See Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash.
     2007); *Pierce v. NovaStar Mortg., Inc.*, 238 F.R.D. 624, 629 (W.D. Wash. 2006) (finding that "proof
28   of reliance is not necessary in order to satisfy the [W]CPA's causation element" in an omissions case);
     *Deegan v. Windermere Real Estate/Ctr.-Isle, Inc.*, 391 P.3d 582, 587 (Wash. Ct. App. 2017) (holding
     that causation under the WCPA may be presumed in cases involving concealment).

"purchas[ing] a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 316 (2011)). Thus, Plaintiffs' overpayment model of classwide harm properly "measure[s] only those damages attributable to" the alleged point-of-sale injury. *Comcast*, 569 U.S. at 35; *see Nguyen*, 932 F.3d at 820.

All class members were harmed when they bought a product whose defective nature was concealed. Class members who have not yet suffered a keyboard failure "have actually been harmed in the same way that all class members have been harmed: by paying a price premium for a [product] with the . . . defects when a reasonable consumer would expect to receive a [product] without . . . defects." *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 3820619, at *19 (N.D. Cal. Aug. 10, 2018) (quotations and citation omitted); *see In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013) ("Duet owners were injured at the point of sale upon paying a premium price for the Duets as designed, even those owners who have not experienced a mold problem are properly included within the certified class"); *Nguyen*, 932 F.3d at 819-20; *Tait*, 289 F.R.D. at 479 ("As in *Wolin* and *In re Whirlpool*, Plaintiffs' theory of liability is that they overpaid for a product because Defendant never warned consumers that the product had a defective design . . . . Plaintiffs need only prove that Defendant's products had a common design and the design created a *propensity* for the products to develop an undesirable condition; Plaintiffs need not prove that every product *actually* developed this undesirable condition.").

Plaintiffs' damages expert "Singer has articulated a sound evidence-based methodology" in this case. *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *20 (N.D. Cal. Feb. 21, 2017). Dr. Singer has used two standard economic tools—hedonic regression and conjoint analysis—to isolate the difference in value between the product class members received and the product they reasonably expected to receive. *Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654, 657 (9th Cir. 2017) (describing hedonic regression and conjoint analysis as "well-established damages models" for measuring "the classwide price premium attributable to [plaintiffs'] theory of liability").

First, hedonic regression is widely recognized in economics as a means of isolating the value of a particular attribute, such as a dependable working keyboard. Singer Rpt., ¶¶ 10-12. When a

1   laptop's keyboard fails and cannot be reliably repaired, users who wish to continue using the computer

2   must rely on an external keyboard, forfeiting their laptop's intrinsic mobility. *Id.* ¶ 12. Dr. Singer

3   performed a multiple regression analysis using historical Mac desktop and MacBook pricing to assess

4   the premium consumers are willing to pay for a mobile product. *Id.* ¶¶ 14-28. This premium,

5   considered together with the probability of keyboard failure based on Apple's repair data, yields

6   preliminary estimated classwide damages of $813 million. *Id.* ¶¶ 3, 28, 55.

7       Second, Dr. Singer implemented the conjoint survey technique to assess the point-of-sale

8   overcharge resulting from the undisclosed keyboard problems. Singer Rpt., ¶¶ 29-54. In a conjoint

9   survey, consumers are shown product profiles made up of varying features and asked to indicate their

10  preferred profile. *Id.* ¶¶ 30-40. Statistical analysis of the survey's results then discloses the value that

11  the market places on discrete product attributes (e.g., screen size, price, battery life, reliable keyboard).

12  *Id.*; *see Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2014 WL 6603730, at *10-14 (C.D.

13  Cal. July 24, 2014). "[C]onjoint analysis is widely-accepted as a reliable economic tool for isolating

14  price premia," *Hadley*, 324 F. Supp. 3d at 1110, and "courts within the Ninth Circuit have repeatedly

15  approved conjoint survey techniques as a viable means of calculating class-wide damages. *See, e.g.*,

16  *id.*; *Guido*, 2014 WL 6603730, at *10-14; *Arris Cable,* 327 F.R.D. at 367; *Fitzhenry-Russell*, 326

17  F.R.D. at 606; *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 971-72 (N.D. Cal. 2018).

18  Dr. Singer's conjoint study corroborates the results of his regressions, demonstrating that consumers

19  would pay significantly less for a laptop with a disclosed keyboard defect, even if the manufacturer

20  has offered a free service program, and yields preliminary estimated classwide damages of $460

21  million. Singer Rpt. ¶¶ 3, 36, 53, 55.

22      Dr. Singer's point-of-sale models fit Plaintiffs' liability theories under *Comcast*. *See, e.g.*,

23  *Nguyen*, 932 F.3d at 818-22 (9th Cir. 2019) (reversing denial of class certification and approving of

24  benefit-of-the-bargain damage model under CLRA and Song-Beverly).[15] Thus at this stage, "the

25  _____

26  [15] Plaintiffs' benefit-of-the-bargain models also track their liability theories under the other state laws
    in question. *See, e.g.*, *Hasemann*, 331 F.R.D. at 257 ("A plaintiff may recover damages under the

27  FDUTPA by alleging that the plaintiff 'paid a price premium'"); *Goldemberg*, 317 F.R.D. at 393
    ("Payment of a price premium serves as proof of injury under the laws of" California, Florida, and

28  New York); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1346 (S.D. Fla. 2014); *Lynch v.*

1  question is only whether Plaintiffs have presented a workable method for calculating class-wide

2  damages." *Roy v. Cty. of Los Angeles*, No. 12-9012, 2018 WL 3436887, at *4 (C.D. Cal. July 11, 2018)

3  (alteration and citation omitted). Dr. Singer's methods are both workable and tailored to the case.

4            **4.**     **A Class Action Is a Superior Method of Adjudicating This Controversy.**

5         "[C]lass actions to enforce compliance with consumer protection laws are desirable and should

6  be encouraged." *Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2013 WL 3353857, at *17

7  (C.D. Cal. July 1, 2013) (quotation marks and citations omitted). The class members here have little

8  incentive to pursue their claims individually, as their potential damages are relatively small in

9  comparison to the high costs of litigation. *See Falco*, 2016 WL 1327474, at *13. When, as in this case,

10  individual recoveries would be relatively small and individual litigation would needlessly duplicate

11  discovery and expert work, it is "an inferior method of adjudication." *Wolin*, 617 F.3d at 1176.

12         The KSP is not an alternative, much less a superior one, to a class proceeding. As this Court

13  recognized, the KSP cannot be deemed to address the design defect or its associated problems as a

14  matter of law. *See In re MacBook Keyboard Litig.*, 2019 WL 6465285, at *8 (holding that "Plaintiffs

15  sufficiently plead that the Program is ineffective in remedying the allegedly defective design of the

16  butterfly keyboards, and "[t]he fact that Plaintiffs did not personally participate in the Program does

17  not moot their claims") (internal citation omitted). Apple's corporate designee ▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. C (LaBerge Dep.

19  at 140:21-141:13). He further conceded ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 175:4-5.

21         Moreover, a defendant's voluntary remediation does not generally affect the superiority of class

22  treatment. *See Victorino v. FCA US LLC*, No. 16-1617, 2019 WL 5268670, at *8 (S.D. Cal. Oct. 17,

23  2019); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671 (C.D. Cal. 2014); *Nieberding v. Barrette Outdoor*

24

25  *Tropicana Prod., Inc.*, No. 2:11-CV-07382 DMC, 2013 WL 2645050, at *8 (D.N.J. June 12, 2013)
(holding that "ascertainable loss" under the NJCFA "may occur where a 'consumer received less than

26  what [he] was promised'" and "[t]he payment of a price premium may satisfy the injury requirement.")
(internal quotations and citation omitted); *Clay*, 2018 WL 4283032, at *14 ("The measure of damages

27  under the MCPA is . . . [the] difference in value between the product as promised and product as
sold."); *Falco*, 2016 WL 1327474, at *11 (approving of similar damages measure under the WCPA);

28  *see also In re IKO Roofing Shingle Prod. Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014) (vacating
denial of class certification) (citing U.C.C. § 2-714(2)).

*Living, Inc.*, 302 F.R.D. 600, 619 (D. Kan. 2014); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 553 (E.D.N.Y. 2017). Apple should not be permitted to "effectively immunize[]" itself from suit with a program that "is not an alternative to 'adjudicating' whether" it is liable to class members. *Korolshteyn v. Costco Wholesale Corp.*, No. 15-709, 2017 WL 1020391, at *8 (S.D. Cal. Mar. 16, 2017); *accord Racies v. Quincy Bioscience, LLC*, No. 15-292, 2017 WL 6418910, at *5 (N.D. Cal. Dec. 15, 2017).

There is also a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (citation omitted); *cf. Briseno*, 674 F. App'x at 657 (finding no abuse of discretion in conclusion that "eleven statewide classes involving various state-law claims" did not present manageability issues). As shown above in connection with predominance, Plaintiffs' consumer protection claims are substantially alike. *See, e.g.*, *Keegan*, 284 F.R.D. at 550 (finding, apart from the statutes of limitations, "no material differences in the consumer protection laws" of California, Florida, and New York). Plaintiffs' proposed trial plan, submitted with this brief, demonstrates that both the common elements (e.g., whether Apple's practices were deceptive) and the limited unique elements (e.g., whether Apple intended for consumers to rely on its deceit[16]) can be efficiently tried together for the seven subclasses using overlapping evidence. *See Arris Cable*, 327 F.R.D. at 374 (manageability "depends largely on" whether claims rise or fall on common evidence); *Aldapa*, 323 F.R.D. 326-27. Therefore, certifying these state subclasses poses "no particular difficulties" and will ensure that all claims relating to the butterfly keyboard problems are resolved in a single proceeding, by reference to the common proof. *Falco*, 2016 WL 1327474, at *13; *In re Coca-Cola*, 2020 WL 759388, at *14 (N.D. Cal. Feb. 14, 2020) (certifying UCL, CLRA, ICFA, FDUTPA, GBL, and NJCFA claims).

**C.   Plaintiffs Satisfy the Prerequisites of Rule 23(b)(2).**

Plaintiffs also move to certify their claims for injunctive relief. Rule 23(b)(2) certification is appropriate when a defendant's ongoing practice applies generally to the class as a whole. *Broomfield*

---

[16] The Illinois statute requires a showing that the "defendant intended that a consumer would rely on a deceptive or unfair practice" and Plaintiffs will use common evidence to make this showing as to Apple. *See Connick*, 174 Ill. 2d at 504 (intent can be inferred from the nature of the representation or omission when the defendant knew "many prospective purchasers would read . . . [the] information furnished"); *Cirone-Shadow*, 955 F. Supp. at 944.

1   *v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *8 (N.D. Cal. Sept. 25, 2018);

2   *see Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (holding that the "inquiry does not require an

3   examination of the viability or bases of the class members' claims for relief, does not require that the

4   issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a

5   finding that all members of the class have suffered identical injuries.").

6          Plaintiffs' claims meet the requirements of Rule 23(b)(2). For instance, "[i]njunctions are 'the

7   primary form of relief available under the UCL to protect consumers from unfair business

8   practices[.]'" *Kwikset*, 51 Cal. 4th at 337. All class members remain exposed to Apple's ▄▄▄▄▄▄

9   ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄. Ex. C (LaBerge Dep. at 140:12-141:13). If Plaintiffs show that this practice

10  violates the UCL's balancing test for unfair conduct, *see McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th

11  1457, 1473 (2006), the Court may enter injunctive relief to protect class members whose laptops will

12  fail in the future. An order requiring Apple to provide non-defective replacement laptops, effective

13  repairs (if any can be developed), or other appropriate remedies to those with failed keyboards will

14  redress its continuing violations. Absent such relief, class members seeking to be made whole after

15  entry of judgment could only sue Apple repeatedly, which is disfavored. *See Pac. Bell Tel. Co. v. 88*

16  *Connection Corp.*, No. 13-1157, 2014 WL 4063148, at *2 (S.D. Cal. Aug. 14, 2014).

17         Thus, because the injunctive relief Plaintiffs seek "is prophylactic, inures to the benefit of each

18  class member, and is based on accused conduct that applies uniformly to the class," Rule 23(b)(2) is

19  satisfied. *Ms. L. v. ICE*, 331 F.R.D. 529, 535 (S.D. Cal. 2018).

20  **VI.    CONCLUSION**

21         For the foregoing reasons, Plaintiffs respectfully request that the Court certify the Class and

22  the state subclasses, appoint them as class and subclass representatives, appoint Girard Sharp LLP

23  and Chimicles Schwartz Kriner & Donaldson-Smith LLP as class counsel, and direct the parties to

24  submit a proposed plan of notice.

25  Dated: August 14, 2020              Respectfully submitted,

26

27                           **GIRARD SHARP LLP**

28                           */s/ Jordan Elias*

                         Daniel C. Girard (SBN 114826)

25

Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Fax: (415) 981-4846
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*sgrille@girardsharp.com*

Steven A. Schwartz *(pro hac vice)*
Benjamin F. Johns *(pro hac vice)*
Andrew W. Ferich *(pro hac vice)*
Beena M. McDonald *(pro hac vice)*
**CHIMICLES SCHWARTZ KRINER**
**& DONALDSON-SMITH LLP**
One Haverford Centre
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
*sas@chimicles.com*
*bfj@chimicles.com*
*awf@chimicles.com*
*bmm@chimicles.com*

*Interim Class Counsel*

Robert C. Schubert
Willem F. Jonckheer
Noah M. Schubert
**SCHUBERT JONCKHEER**
 **& KOLBE LLP**
3 Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
*rschubert@sjk.law*
*wjonckheer@sjk.com*
*nschubert@sjk.law*

E. Michelle Drake

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:18-cv-02813-EJD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joseph C. Hashmall
**BERGER & MONTAGUE, P.C.**
43 SE Main Street
Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5999
Facsimile: (215) 875-4604
*emdrake@bm.net*
*jhashmall@bm.net*

Esfand Nafisi
**MIGLIACCIO & RATHOD LLP**
388 Market Street
Suite 1300
San Francisco, CA 94111
Telephone: (415) 489-7004
Facsimile: (202) 800-2730
*enafisi@classlawdc.com*

*Plaintiffs' Executive Committee*

27

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:18-cv-02813-EJD