UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: MACBOOK KEYBOARD LITIGATION | Case No. 5:18-cv-02813-EJD<br><br>**ORDER DENYING APPLE'S MOTIONS TO STRIKE EXPERT OPINIONS**<br><br>Re: Dkt. Nos. 333, 335, 336 |

Plaintiffs Kyle Barbaro, Joseph Baruch, Steve Eakin, Lorenzo Ferguson, Benjamin Gulker, Michael Hopkins, Adam Lee, Kevin Melkowski, and Zixuan Rao bring this class action against Defendant Apple, Inc. ("Apple") on behalf of purchasers of MacBook laptops equipped with allegedly defective "butterfly" keyboards. Before the Court are Apple's motion to strike and exclude the opinions of Plaintiffs' expert witnesses, Hal J. Singer, Ph.D., David V. Niebuhr, Ph.D., and Charles M. Curley. Apple Inc.'s Mot. to Exclude Expert Opinions of Hal. J. Singer, Ph.D. ("Singer Mot."), Dkt. No. 333; Apple Inc.'s Mot. to Exclude Expert Opinions of David V. Niebuhr, Ph.D. ("Niebuhr Mot."), Dkt. No. 335; Apple Inc.'s Mot. to Exclude Expert Opinions of Charles M. Curley and Mot. to Strike Portions of Curley's Reply Expert Report ("Curley Mot."), Dkt. No. 336. Plaintiffs oppose the motions. Dkt. Nos. 343, 345, 348.

The Court finds the matter suitable for resolution without oral argument. Civ. L.R. 7-1(b). Having considered the parties' submissions, the Court DENIES the motions to strike and exclude the opinions of Dr. Singer, Dr. Niebuhr, and Mr. Curley.

Case No.: 5:18-cv-02813-EJD
ORDER DENYING APPLE'S MOTION TO STRIKE EXPERT OPINIONS
1

## I. BACKGROUND

Plaintiffs are eleven consumers from California, Massachusetts, New York, Illinois, Florida, Washington, New Jersey, and Michigan. Second Am. Consolidated Class Action Compl. ("SAC"), Dkt. No. 219 ¶¶ 8-18. Plaintiffs assert this class action against Apple on behalf of purchasers of MacBook laptops equipped with allegedly defective "butterfly" keyboards. The facts concerning the alleged defect are well-known to the parties and the Court need not revisit them here. *See In re: MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2021 WL 1250378, at *1–3 (N.D. Cal. Apr. 5, 2021).

On March 8, 2021, the Court granted Plaintiffs' motion to certify a class consisting of "all persons who purchased, other than for resale, within California, New York, Florida, Illinois, New Jersey, Washington, or Michigan, an Apple MacBook from any of the model years 2015-2017, an Apple MacBook Pro from any of the model years 2016-2019 (excluding the 16 [inch] MacBook Pro released in November 2019), or an Apple MacBook Air from any of the model years 2018-2019." *Id.* at *15. At that time, the Court also granted Apple's motion to strike Dr. Singer's regression analysis but denied the motion to strike his choice-based conjoint analysis. *Id.* at *4–6. The Court further found Dr. Niebuhr was qualified as an expert witness but granted Apple's motion to exclude his report because his opinions were duplicative and irrelevant at the class certification stage. *Id.* at *6–8.

Apple filed the motions now before the Court on July 15, 2021. Dkt. Nos. 333, 335, 336.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 permits opinion testimony by an expert if the proponent demonstrates that: (i) the expert is qualified; (ii) the evidence is relevant to the suit; and (iii) the evidence is reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–90 (1993); *Young v. Cree Inc.*, No. 4:17-CV-06252-YGR, 2021 WL 292549, at *4 (N.D. Cal. Jan. 28, 2021). An expert witness may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. To be considered reliable, scientific opinions must be based on scientifically valid principles. *Daubert*, 509 U.S. at 589. The proponent of expert testimony has the burden of

1  proving admissibility in accordance with Rule 702.  Fed. R. Evid. 702 advisory committee's note
2  to 2000 amendment.
3       Under *Daubert*, the Court exercises a gatekeeping function to ensure an expert's proffered
4  testimony is relevant and reliable.  *United States v. Valencia-Lopez*, 971 F.3d 891, 897–98 (9th
5  Cir. 2020).  "[T]he case law—particularly Ninth Circuit case law—emphasizes that a trial judge
6  should not exclude an expert opinion merely because he thinks it's shaky, or because he thinks the
7  jury will have cause to question the expert's credibility.  So long as an opinion is premised on
8  reliable scientific principles, it should not be excluded by the trial judge."  *In re Roundup Prods.*
9  *Liab. Litig.*, 390 F. Supp. 3d 1102, 1109 (N.D. Cal. 2018).  "Rule 702 and Daubert are not
10 'guarantees of correctness;' rather, they are safeguards against unreliable or irrelevant expert
11 opinions."  *NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352- EJD, 2020 WL 1274985, at *2
12 (N.D. Cal. Mar. 17, 2020) (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 855 (Fed.
13 Cir. 2010)).

## III. DISCUSSION

### A. Motion to Strike Dr. Singer's Opinion

Plaintiffs retained Dr. Singer to opine on damages the Class has suffered as the result of the alleged defect.  Merits Expert Report of Hal J. Singer, Ph.D. ("Singer Merits Report"), Dkt. No. 331-6 ¶ 3.  Dr. Singer is a Managing Director at Econ One, a Senior Fellow at George Washington University's Institute for Public Policy, and an Adjunct Professor at Georgetown University's McDonough School of Business, where he has taught Advanced Pricing to MBA candidates since 2014.  *Id.* ¶ 7.  Apple does not challenge Dr. Singer's qualifications, and the Court finds that he is qualified to testify as an expert economist.

As he did at the class certification stage, Dr. Singer engaged in a choice-based conjoint ("CBC") analysis.  CBC analysis is a well-recognized economic method used to study and quantify consumer preferences.  *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 373 (N.D. Cal. 2018) ("[C]onjoint analysis is a generally reliable, well recognized method for estimating how consumers value different attributes of a product.").  A CBC analysis is based on a

Case No.: 5:18-cv-02813-EJD
ORDER DENYING APPLE'S MOTION TO STRIKE EXPERT OPINIONS
3

survey in which consumers are asked to pick between products, each of which is comprised of a bundle of features. Singer Merits Report ¶ 15. Through a series of these choices, respondents indirectly reveal the value they attribute to an individual feature, without knowing what feature was being tested. *Id.* Here, Dr. Singer designed and conducted a survey in which adult consumers who had previously purchased MacBooks were presented with a "choice set" of alternative laptops, each with a set of attributes including the model, price, and presence or absence of various defects. *Id.* ¶¶ 17-23. By determining the price at which a consumer would choose a laptop with a keyboard defect over laptops with no defects, Dr. Singer's analysis measures the discount a customer would demand before purchasing a MacBook with a disclosed keyboard defect. *Id.* ¶¶ 24-27. To calculate damages, Dr. Singer further used repair rate data from Apple to estimate the defect risk rate over time for each affected MacBook model. *Id.* ¶¶ 28-30.

Apple contends that Dr. Singer's survey design is flawed for numerous reasons, and that as a result, it is unreliable and therefore inadmissible under Rule 702 and *Daubert*. In particular, Apple complains that the survey omitted or provided incomplete descriptions of what Apple believes are the most significant MacBook features; the survey offered choices among non-keyboard defects that resulted in respondents choosing among different defect options; the survey did not measure the value of any MacBook features; and the survey results were "illogical." Singer Mot. at 5–19. Apple also takes issue with Dr. Singer's repair rate calculations as based on skewed, cherry-picked data. *Id.* at 19–23. Finally, Apple argues that Dr. Singer's CBC analysis is inconsistent with Plaintiffs' theory of liability and should be excluded under Rules 401 and 402 as irrelevant. *Id.* at 23–25.

At this stage of the litigation, Apple's arguments ultimately go to the weight of the evidence, not the admissibility of Dr. Singer's CBC analysis. "Disputes as to the strength of an expert's credentials, faults in his use of a particular methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (citation, quotation marks, and alterations omitted). The Ninth Circuit has long abided by the general rule that "[c]hallenges to survey methodology go to

Case No.: 5:18-cv-02813-EJD
ORDER DENYING APPLE'S MOTION TO STRIKE EXPERT OPINIONS
4

the weight given the survey, not its admissibility." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997). "'[T]echnical inadequacies' in a survey, 'including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (citation omitted); *see also Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) (recognizing general rule that "objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence").

As to Dr. Singer's repair rate calculations, both parties acknowledge that Dr. Singer used primarily data for the oldest models of affected MacBooks, as opposed to newer models implementing various design changes intended to mitigate butterfly keyboard issues. Dr. Singer chose to rely on the former because those models have been in use the longest and thus offered more robust and complete repair data, whereas the latter have been in use for less time. Apple does not dispute Plaintiffs' assertion that Dr. Singer used standard statistical regression techniques; rather, it takes issue with the data he chose to use to conduct those regression calculations.[1] *Compare* Plfs.' Opp'n to Apple Inc.'s Mot. to Strike Expert Opinions of Hal J. Singer, Ph.D., Dkt. No. 350, at 12–14 *with* Apple Inc.'s Reply in Supp. of Mot. to Exclude Expert Opinions of Hal J. Singer, Ph.D., Dkt. No. 356, at 12–14. But "[t]rained experts commonly extrapolate from existing data," *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997), and Dr. Singer's decision to rely on only the older models with more complete data is more appropriately probed through cross-examination and rebuttal expert evidence. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("Even if [the expert]'s conclusions were 'shaky,' they should be attacked by 'cross examination, contrary evidence, and attention to the burden of proof, not exclusion.'") (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)).

Finally, as to Apple's contention that Dr. Singer's opinion is not relevant under Rules 401

---

[1] To the extent Apple challenges Dr. Singer's qualifications as a statistician despite being an expert economist, this argument is not well-developed. *See* Singer Mot. at 19 n.10.

Case No.: 5:18-cv-02813-EJD
ORDER DENYING APPLE'S MOTION TO STRIKE EXPERT OPINIONS
5

and 402, that argument is a repeat of an unsuccessful argument brought at the class certification stage and based on a misapprehension of Plaintiffs' theory of liability. As the Court has already explained, "Plaintiffs allege that Apple failed to disclose the existence of the defect not the risk that the defect would manifest. Based on that alleged omission, they contend that every Class member was damaged at the point of sale." *In re: MacBook Keyboard*, 2021 WL 1250378, at \*14.

While Apple's criticisms may have some merit, the Court cannot say that Dr. Singer's opinion was so flawed as to be entirely unreliable. Ultimately, Apple's complaints amount to a disagreement with the expert's conclusions. Apple will have an opportunity to cross-examine Dr. Singer and offer rebuttal evidence which the jury may consider.

**B.     Motion to Strike Dr. Niebuhr's Opinion**

Plaintiffs retained Dr. Niebuhr, a metallurgical engineering specialist, to review and assess the existence of the alleged keyboard defect. Report of David V. Niebuhr, Ph.D. ("Niebuhr Merits Report"), Dkt. No. 334-8 ¶¶ 1-2. Dr. Niebuhr is an Adjunct Professor in the Mechanical Engineering department at California Polytechnic State University in San Luis Obispo, California, with 25 years of experience in the field of mechanical engineering and metallurgy. *Id.* ¶¶ 4-5. Apple does not challenge Dr. Niebuhr's qualifications, and the Court finds that he is qualified to testify as an expert metallurgical engineer.

First, Apple moves to strike Dr. Niebuhr's merits report, which it says is "virtually identical" to the report the Court already struck. Niebuhr Mot. at 2–3. While the Court did indeed find that Dr. Niebuhr's decision to not conduct his own independent root cause analysis rendered his report duplicative of other evidence and therefore unhelpful to the Court, the Court's order made clear that its ruling was made in the specific context of class certification. *In re: MacBook Keyboard*, 2021 WL 1250378, at \*7–9 ("Regardless of whether Dr. Niebuhr's opinions will ultimately prove useful in reaching factual findings or conclusions on the merits, the Court finds it irrelevant *at the class certification stage*. . . . Having not conducted separate root cause analysis to support his conclusions about the alleged defect, the Court finds Dr. Niebuhr's opinions duplicative of the other evidence before *the Court* and therefore, unhelpful *for the purposes of*

Case No.: 5:18-cv-02813-EJD
ORDER DENYING APPLE'S MOTION TO STRIKE EXPERT OPINIONS
6

*class certification*.") (emphases added).  At this stage of the litigation, however, the question before the Court is whether Dr. Niebuhr's opinion will assist a jury.[2]  While an independent root cause analysis might very well be helpful, Apple cites to no authority requiring that analysis in this situation, and the Court cannot say that its absence renders Dr. Niebuhr's merits opinion entirely useless to a jury.

Second, Apple contends that Dr. Niebuhr's opinion is irrelevant and unreliable because he did not perform a root cause analysis, his opinions are based on predetermined conclusions and cherry-picked data, and he relied on a limited sample size skewed toward earlier MacBook models that did not include Apple's design changes and thus had lower repair rates.[3]  Niebuhr Mot. at 3–11.  Again, such disputes about the data on which Dr. Niebuhr based his opinion go to the weight of the evidence, not its admissibility.  Apple's remedy is to cross-examine Dr. Niebuhr and put forward its own rebuttal expert evidence.  *City of Pomona*, 750 F.3d at 1049 ("A factual dispute is best settled by a battle of the experts before the fact finder, not by judicial fiat.  Where two credible experts disagree, it is the job of the fact finder, not the trial court, to determine which source is more credible and reliable.").

### C.   Motion to Strike Mr. Curley's Opinion

Plaintiffs retained Mr. Curley to inspect and analyze the butterfly keyboard design and to opine on whether the MacBook laptops with butterfly keyboards are defective and whether they meet industry and engineering standards.  Report of Charles M. Curley ("Curley Opening Report"), Dkt. No. 344-6 ¶ 1.  Mr. Curley is the Principal Consultant and founder of Innotek, a consulting firm specializing in mechanical engineering design services, as well as the co-founder,

---

[2] The Court makes no ruling at this time on whether Dr. Niebuhr's opinion is cumulative of other evidence before the jury under Rule 403.  That issue is more appropriately raised on a motion in limine.

[3] Apple further argues that Dr. Niebuhr should be precluded from presenting testimony or evidence that he analyzed "alternate theories" for the cause of the defect because that analysis is not contained in his merits report and was discussed solely at his deposition.  Niebuhr Mot. at 7–8.  This argument appears to be one concerning timely disclosure as opposed to Rule 702 requirements and is thus better suited to a motion in limine than a *Daubert* motion.

Case No.: 5:18-cv-02813-EJD
ORDER DENYING APPLE'S MOTION TO STRIKE EXPERT OPINIONS
7

1  Vice President, and General Manager of Impact-Echo Instruments, a manufacturer of portable
2  electronic instruments for civil engineers. *Id.* ¶¶ 8-10, App'x A.  He has over 40 years of
3  experience in commercial development of electromechanical product and machine designs. *Id.* ¶
4  6.
5       Apple seeks to strike Mr. Curley's reports and exclude him from testifying at trial.  Apple
6  argues that: (1) Mr. Curley is unqualified to serve as an expert witness because he is a competitor;
7  (2) his opinions are irrelevant and unreliable under Rule 702 and *Daubert*; and (3) Section IV of
8  Mr. Curley's reply report contains new evidence and opinions that should be stricken.  Curley
9  Mot. at 3–13.  The Court addresses each argument in turn.

### 1.  Whether Mr. Curley is a competitor

11  Apple first challenges Mr. Curley's qualifications as an expert witness based not on his
12  professional credentials, but rather on his status as a competitor under the terms of the parties'
13  Stipulated Protective Order ("the SPO").  Curley Mot. at 3–4.  The relevant portion of the SPO
14  prohibits a person from serving as an expert witness or consultant if they are "a current officer,
15  director, or employee of a Party or of a competitor of a Party, [or are] anticipated at the time of
16  retention to become an officer, director or employee of a Party or of a competitor of a Party."
17  Stip. Prot. Order, Dkt. No. 84 § 2.6.  The SPO requires Apple to provide Plaintiffs with a list of
18  competitors by January 11, 2019 for the purpose of compliance with this provision.  *Id.*
19  Additionally, the SPO requires that Plaintiffs engage in a "good faith inquiry into whether the
20  Expert has performed any work (as an employee or consultant) related to computers (e.g.,
21  desktops, notebooks/laptops) and keyboards installed in or used with computers for an entity not
22  listed on the competitors' list (see Section 2.6) in the past six (6) months," and if so, Plaintiffs
23  must make certain disclosures to Apple so that Apple can evaluate whether good cause exists to
24  object to the expert witness.  *Id.* § 7.4.
25       Apple says that it learned for the first time at Mr. Curley's June 10, 2021 deposition that he
26  had worked in 2020 on an external "Bluetooth alphanumeric keyboard intended to be a substitute
27  keyboard for people that don't like their laptop keyboards."  Curley Mot. at 3–4 (citing Dep. of
28  Case No.:   5:18-cv-02813-EJD
ORDER DENYING APPLE'S MOTION TO STRIKE EXPERT OPINIONS
8

Charles M. Curley ("Curley Dep."), Dkt. No. 334-18 at 44:17–46:17). Mr. Curley testified that he had a utility patent application "in the process of being filed," and that he hoped to one day obtain a design patent and monetize the invention. Curley Dep. at 45:8-21, 210:3–211:2. When asked when he planned to file that utility patent application, Mr. Curley responded: "As soon as my patent attorney gets the time to work on it." *Id.* at 210:10-17. Mr. Curley could not remember exactly when he conceived of this new keyboard design but estimated that it was before August 2020, when he began working on the project. *Id.* at 46:15-17, 208:13–209:12. Mr. Curley further testified that the existence of a new market for wireless Bluetooth substitute keyboards aimed at consumers who preferred the feel of a desktop keyboard over their laptop keyboard "attracted [him] to the possibility of developing a Bluetooth keyboard that can compete in that market." *Id.* at 210:3-16. Based on this testimony, Apple argues that Mr. Curley is a competitor within the meaning of the SPO and that he is therefore disqualified from serving as an expert witness.

As an initial matter, there is no evidence before the Court that Apple and Mr. Curley are competitors in the same space. Contrary to Apple's assertions, the SPO does not specifically define a "competitor." *See* Stip. Prot. Order § 2. Apple provides no evidence that it has developed and marketed or intends to develop and market a wireless Bluetooth substitute keyboard for laptops. (Indeed, it is difficult to tell from Mr. Curley's deposition what his purported invention involves except in the broadest of terms.) Apple relies heavily on *Applied Signal v. Emerging Markets Communications Inc.*, No. C–09–02180 SBA (DMR), 2011 WL 197811 (N.D. Cal. Jan. 20, 2011) for the proposition that an expert witness can be considered a competitor, but that case is inapposite. The *Applied Signal* court considered competing proposals about whether a prosecution bar provision could apply to expert witnesses in a patent infringement case and concluded based on Federal Circuit law that it could. That is not the situation the Court faces here.[4]

---

[4] The parties veer off on a tangent concerning whether the SPO's prosecution bar applies, but that is not the question here. A prosecution bar provision is forward-looking; the question before the Court is retrospective. Here, the parties have already stipulated to the SPO's prosecution bar provision, and all parties acknowledge that it applies to Mr. Curley. Curley Opp'n at 21; Apple Inc.'s Reply in Supp. of Mot. to Exclude Expert Opinions of Charles M. Curley and Mot. to Strike

Case No.: 5:18-cv-02813-EJD
ORDER DENYING APPLE'S MOTION TO STRIKE EXPERT OPINIONS
9

United States District Court
Northern District of California

Assuming for the sake of argument that Apple and Mr. Curley occupy the same market space, Mr. Curley's statements on this point do not give the Court much confidence on the issue. His deposition testimony was phrased in a way that suggested he was actively and currently engaged in pursuing the invention. *See, e.g.*, Curley Dep. at 44:11-17 ("Q. And other than these two patents for keyboard[s] for cell phone, is there anything else, any other keyboard designs or patents that you worked on after you left Smith Corona? . . . A. So I have a patent pending right now."), 45:8-13 ("Q. And when you say the patent is pending, does that mean that you've filed an application for the patent and you're waiting for approval?  A. It's – there's actually three patents. Two have been filed, and one is in the process of being filed."), 46:11-14 ("Q. Is it -- is the design something that's new to the -- new to the market in the sense that it's a design that has not been sold by anyone else?  A. Absolutely.  That's why I'm pursuing the patent."), 210:13-17 ("Q. And when did you file that patent?  A. It's not been filed yet.  Q. When do you plan to file it?  A. As soon as my patent attorney gets the time to work on it."). If it is indeed true that Mr. Curley ceased working on this invention, he apparently never explained that at his deposition. Mr. Curley's subsequent declaration heavily implies that he ceased that work but does not expressly state so.[5] Decl. of Charles M. Curley ("Curley Decl."), Dkt. No. 345-8 ¶¶ 3, 7, 9.

Mr. Curley's deposition testimony and his subsequent declaration are confusing and contradictory in multiple respects. For example, when asked about any pending keyboard patents, Mr. Curley stated that he had filed two patent applications already, with the third "in the process of being filed"—but he later clarified that the third had not actually been filed yet, and the two filed applications did not relate to keyboards at all and instead concerned massage guns. Curley

---

Portions of Curley's Reply Expert Report at 12.  Mr. Curley has signed Exhibit A-2 to the SPO, and in the event he violates the prosecution bar, Apple has other recourses available to it.

[5] Mr. Curley's declaration does not directly address whether he ceased working on the keyboard invention at issue. Instead, his declaration appears to be very carefully worded to state that he did not perform any work related to computers or keyboards as an employee or consultant for any entity within the six months prior to his retention as Plaintiffs' expert witness. Curley Decl. ¶¶ 3, 7. These statements do not necessarily preclude Mr. Curley performing computer- or keyboard-related work for himself. *See* Curley Dep. at 46:20 ("I'm an individual inventor.").

Case No.: 5:18-cv-02813-EJD
ORDER DENYING APPLE'S MOTION TO STRIKE EXPERT OPINIONS
10

Dep. at 44:17–45:21, 210:3-13. Additionally, at his deposition, Mr. Curley repeatedly referred to his patent prosecution counsel as "she," but his declaration states that his "sole patent counsel" is one Christopher A. Michaels.[6] *Compare* Curley Dep. at 210:16-21 *with* Curley Decl. ¶ 9. The Court finds these inconsistencies between Mr. Curley's statements in his deposition and declaration concerning.

Ultimately, however, the evidence before the Court suggests that it is possible that Mr. Curley performed work on his keyboard patent in August and September 2020 but ceased that work before September 22, 2020—six months before he signed the engagement letter with Plaintiffs' counsel. The parties do not dispute that Mr. Curley has yet to obtain a patent on his keyboard invention, much less publicize, market, or profit from it. The Court is left to take Mr. Curley at his word at peril of perjury that he did not work on his keyboard invention after September 22, 2020.

Accordingly, on the record before it, the Court finds that Mr. Curley is not disqualified from serving as an expert witness under the SPO as a competitor to Apple. The development of further evidence at trial may warrant revisiting this issue.

## 2. Whether Mr. Curley's opinion is irrelevant and unreliable

Apple contends that Mr. Curley's opinion is irrelevant and unreliable for reasons similar to the reasons it puts forward concerning Dr. Niebuhr's opinion: Mr. Curley did not perform an independent root cause analysis and instead relied on Dr. Niebuhr's reports submitted at class certification and stricken by the Court; Mr. Curley did not base his opinions on any reliable

---

[6] The parties submitted a document purporting to be a letter from Mr. Michaels to Apple's counsel stating that neither Mr. Michaels nor his firm has opened any new matters, received any information, or discussed with Mr. Curley any information on any potential patents concerning keyboards since 2016. Dkt. No. 335-11, Ex. B; Dkt. No. 345-9. Mr. Michaels's statements contradict Mr. Curley's testimony indicating that he had already contacted his patent prosecution attorney about filing an application for his keyboard invention. *Id.* at 210:13-21 ("Q. And when did you file that patent? A. It's not been filed yet. Q. When do you plan to file it? A. As soon as my patent attorney gets the time to work on it. So she's pretty backed up right now . . . . At least that's what she tells me."). At any rate, this letter constitutes inadmissible hearsay, and the Court does not consider it.

methodology; and his opinions are based on a predetermined conclusion and cherry-picked information that ignored design changes and improved repair rates. Curley Mot. at 5–11. For the same reasons the Court found these arguments unpersuasive as to Dr. Niebuhr, they are likewise unpersuasive as to Mr. Curley. *See supra* Section III.B. To the extent Apple contends that Mr. Curley's disassembly and examination of the keyboard components did not constitute a reliable methodology, Apple Inc.'s Reply Br. in Supp. of Mot. to Exclude Expert Opinions of Charles M. Curley, Dkt. No. 360 at 7, such product tear-downs can satisfy *Daubert*'s requirements. *See, e.g.*, *Fontem Ventures, B.V. v. NJOY, Inc.*, CV 14-1645-GW(MRWX), 2015 WL 12743861, at *11–12 (C.D. Cal. Oct. 22, 2015) (disassembly of accused products combined with expert's visual and manual inspection, review of documentary evidence, and expert's expertise met *Daubert*'s requirements); *Icon-IP Pty Ltd. v. Specialized Bicycle Components*, 87 F. Supp. 3d 928, 940 (N.D. Cal. 2015) (finding "'it to be a matter of common sense' that a visual and manual inspection would be one acceptable way for a mechanical engineer to assess the structural characteristics" of an accused product). Again, Apple's complaints are best addressed through cross-examination and rebuttal evidence. *City of Pomona*, 750 F.3d at 1049.

### 3. Whether Section IV of Mr. Curley's rebuttal report contains new evidence and opinions

Rule 26(a)(2)(B) provides that an expert witness's opening report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" together with "the facts or data considered by the witness in forming them" and "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii). Rebuttal disclosures of expert testimony are "intended solely to contradict or rebut evidence on the same subject matter identified by another party" in its expert disclosures. Fed. R. Civ. P. 26(a)(2)(D)(ii). "Rebuttal testimony cannot be used to advance new arguments or new evidence." *Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 340 F. Supp. 3d 934, 995 (N.D. Cal. 2018) (quoting *Wadler v. Bio-Rad Labs., Inc.*, No. 15-CV-02356-JCS, 2016 WL 6070530, at *3 (N.D. Cal. Oct. 17, 2016)) (internal quotation marks omitted).

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). This rule requires the exclusion of untimely expert witness testimony, unless the "part[y's] failure to disclose the required information is substantially justified or harmless." *Id.* (citation omitted). The moving party bears the burden of showing a discovery violation has occurred. *See Hernandez ex rel. TellesHernandez ex rel. Telles-Hernandez v. Sutter Medical Center of Santa Rosa*, No. C 06-03350 SBA, 2008 WL 2156987, at *13 (N.D. Cal. May 20, 2008). Once that burden is satisfied, the burden shifts and the nonmoving party must prove that its failure to comply with Rule 26 was either justified or harmless. *Yeti by Molly*, 259 F.3d at 1107.

Apple contends that Mr. Curley's reply report contains new evidence, new theories, and new opinions that should have been introduced in his opening report—specifically, Section IV of Mr. Curley's reply report containing a CAD model he constructed after his opening report and analysis based on that CAD model. Curley Mot. at 11–13. Plaintiffs disagree, asserting that the CAD model "responds directly" to the criticisms of Apple's rebuttal expert, Darran Cairns, "that Mr. Curley assumed that the particles found in keyboards were responsible for the keyboard failures." Plfs.' Opp'n to Mot. to Exclude Expert Opinions of Charles M. Curley and Mot. to Strike Portions of Curley's Reply Expert Report ("Curley Opp'n"), Dkt. No. 345, at 16–18. Specifically, Plaintiffs point to four paragraphs in Dr. Cairns's rebuttal report stating the following: that Mr. Curley failed to account for keyboard design differences and varying repair rates between MacBook models and did not consider different root causes for each of the problematic keyboard behaviors (Rebuttal Expert Report of Darran Cairns, Ph.D., Dkt. No. 344-10 ¶¶ 12-13); that he did not perform any root cause analysis (*id.*); that Mr. Curley began with a predetermined conclusion that the defect was due to a design that permitted particle ingress, and did not attempt to test any alternative hypotheses (*id.* ¶ 92); that Mr. Curley's analysis did not follow any accepted methodology (*id.*); and that Mr. Curley disregarded the MUK design modification in his analysis and that the red dye test he did perform does not support his

conclusion that MUK is ineffective (*id.* ¶ 96). Curley Opp'n at 16–18.

The Court has reviewed Section IV of Mr. Curley's reply report. There are minor portions of this section that appear to expressly respond to Dr. Cairns by restating his criticisms and denying them, and explaining why Mr. Curley felt conducting his own root cause analysis was unnecessary. Reply Report of Charles M. Curley, Dkt. No. 334-22 ¶¶ 19-20, 48. Mr. Curley then goes on to state, "Nevertheless, in order to further illustrate how the presence of particles can cause the butterfly mechanism to fail and respond to the professor's critiques, I have developed a Computer-aided-design (CAD) model of the butterfly key station from one of the MacBooks I inspected . . . ." *Id.* ¶ 21. It is unclear how the subsequent analysis otherwise directly addresses Dr. Cairns's criticisms identified above. Rather, the remainder of Section IV consists of additional evidence and analysis demonstrating where particles could enter under keys and cause problems. *See id.* ¶¶ 21-48. The primary purpose of Section IV, therefore, appears to be to bolster Mr. Curley's ultimate opinion—as stated in his opening report—that the butterfly keyboard design is vulnerable to particle ingress. At the end of Section IV, Mr. Curley opines that his CAD analysis also shows why MUK was not effective, which could be considered a response to Dr. Cairns's criticism concerning MUK. *Id.* ¶ 47.

Based on the above, the Court concludes that Section IV of Mr. Curley's reply report responds—albeit minimally—to Dr. Cairns's rebuttal report. Section IV does not contain new theories or opinions; it merely reiterates Mr. Curley's earlier conclusion that the butterfly keyboard is susceptible to failure due to particle contamination. *See* Curley Opening Report ¶¶ 110-152. "The test of whether an expert's opinion constitutes rebuttal or a 'new' opinion, however, is not whether a rebuttal expert employs new testing or methodologies but instead, whether a rebuttal attempts to put forward new theories outside the scope of the report it claims to rebut." *Huawei Techs*, 340 F. Supp. 3d at 995 (internal quotation marks omitted). And while the CAD model and Mr. Curley's analysis is new evidence, "[a]s a general matter, courts have permitted additional data to be used in a rebuttal report so long as it is of the same subject matter." *Kirola v. City and Cty. of San Francisco*, No. C-07-3685 SBA (EMC), 2010 WL 373817, at *2

Case No.: 5:18-cv-02813-EJD
ORDER DENYING APPLE'S MOTION TO STRIKE EXPERT OPINIONS
14

(N.D. Cal. Jan. 29, 2010); *see also Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) (denying motion to exclude evidence attached to expert reply report submitted to refute criticism in opposing expert's rebuttal report). A rebuttal expert may cite new evidence and data or introduce new methods of analysis in a rebuttal report so long as the new evidence, data, or method is offered to contradict or rebut the opposing party's expert. *Leadership Studies, Inc. v. Blanchard Training and Dev., Inc.*, No. 15CV1831-WQH(KSC), 2018 WL 1989554, at *9–10 (S.D. Cal. Apr. 27, 2018), *report and recommendation adopted*, No. 15-CV-1831-WQH (KSC), 2018 WL 3752373 (S.D. Cal. Aug. 7, 2018). That Mr. Curley could have included the CAD model and accompanying analysis in his opening report does not automatically preclude him from including it in his reply report. *Id.* at *9 ("[T]here is no bright line rule requiring automatic exclusion of a rebuttal report that contains information that could have been included in an initial expert report."); *Crowley*, 322 F. Supp. 2d at 551 (rejecting categorical rule automatically excluding anything an expert could have included in their opening report).

Accordingly, the Court finds that Section IV of Mr. Curley's reply report does not contain new theories, opinions, or evidence that require the Court to strike Section IV or exclude Mr. Curley's testimony at trial.

### D. Apple's Response to Plaintiffs' Statement of Recent Decision

On January 11, 2022, Plaintiffs filed a statement of recent decision from the Ninth Circuit pursuant to Civil Local Rule 7-3(d)(2). Dkt. No. 378. On January 21, 2022, Apple filed a response to Plaintiffs' statement consisting entirely of legal argument concerning that recent decision. Dkt. No. 384. Apple's response is inappropriate for multiple reasons. First, Civil Local Rule 7-3(d) prohibits the filing of further papers after the reply brief is filed. Apple did not seek permission to submit—nor did the Court authorize—any further argument on motions already taken under submission. Dkt. No. 379. Additionally, Apple's response does not comply with the provision concerning footnotes in the Court's Standing Order for Civil Cases.

Accordingly, the Court STRIKES Apple's response in its entirety. Future submissions must comply with the Civil Local Rules and the Court's Standing Orders.

Case No.: 5:18-cv-02813-EJD
ORDER DENYING APPLE'S MOTION TO STRIKE EXPERT OPINIONS
15

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the motions to strike and exclude the opinions of Dr. Singer, Dr. Niebuhr, and Mr. Curley.

**IT IS SO ORDERED.**

Dated: January 25, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-02813-EJD
ORDER DENYING APPLE'S MOTION TO STRIKE EXPERT OPINIONS
16