# Exhibit 1

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*sgrille@girardsharp.com*

Steven A. Schwartz (*pro hac vice*)
Benjamin F. Johns (*pro hac vice*)
Beena M. McDonald (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
*sas@chimicles.com*
*bfj@chimicles.com*
*bmm@chimicles.com*

*Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE: MACBOOK KEYBOARD LITIGATION | Case No. 5:18-cv-02813-EJD-VKD |
| | **PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE EXPERT OPINIONS OF CHARLES M. CURLEY AND MOTION TO STRIKE PORTIONS OF CURLEY'S REPLY EXPERT REPORT** |
| | Judge:      Hon. Edward J. Davila |
| | Date:       November 18, 2021 |
| | Time:       9:00 a.m. |
| | Courtroom: 4 – 5th Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF OPPOSITION ........................................................ 1

II.     SUMMARY OF MR. CURLEY'S OPINIONS. ...................................................................... 2

III.    LEGAL STANDARD ............................................................................................................ 5

IV.     ARGUMENT ......................................................................................................................... 6

       A.      Mr. Curley's Opinions Satisfy the Requirements of Rule 703 and *Daubert* .................... 6

               1.      Mr. Curley Was Not Required to Conduct His Own Root Cause Analysis. ......... 7

               2.      Mr. Curley's Used a Reliable Methodology to Reach His Conclusions. ........... 10

               3.      Mr. Curley Did Not Begin with a Predetermined Conclusion. ......................... 12

       B.      Mr. Curley's Reply Report Does Not Introduce New Theories. ..................................... 16

       C.      Mr. Curley Qualifies as an Expert Under the Protective Order. ..................................... 19

V.      CONCLUSION ..................................................................................................................... 21

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE AND MOTION TO STRIKE
CASE NO. 5:18-cv-02813-EJD

## TABLE OF AUTHORITIES

**Cases**

*Aberin v. Am. Honda Motor Co., Inc.*
   2021 WL 1320773 (N.D. Cal. Mar. 23, 2021) ............................................................... 8

*Alvarado v. Oakland Cty.*
   809 F. Supp. 2d 680 (E.D. Mich. 2011) ...................................................................... 13

*Apple iPod iTunes Antitrust Litig.*
   2014 WL 4809288 (N.D. Cal. Sept. 26, 2014) .............................................................. 8

*Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*
   2011 WL 197811 (N.D. Cal. Jan. 20, 2011) ................................................................ 21

*Botnick v. Zimmer, Inc.*
   484 F. Supp. 2d 715 (N.D. Ohio 2007) ....................................................................... 12

*Clemons v. Burlington N. Santa Fe Ry.*
   2016 WL 9752053 (C.D. Cal. May 3, 2016) ............................................................... 11

*Clicks Billiards, Inc. v. Sixshooters, Inc.*
   251 F.3d 1252 (9th Cir. 2001) ..................................................................................... 11

*Companhia Energetica Potiguar v. Caterpillar Inc.*
   2017 WL 10775768 (S.D. Fla. June 12, 2017) .............................................................. 9

*Cypress Ins. Co. v. SK Hynix Am., Inc.*
   2019 WL 634684 (W.D. Wash. Feb. 14, 2019) ........................................................... 11

*Daubert v. Merrell Dow Pharm., Inc.*
   509 U.S. 579 (1993) ....................................................................................................... 5

*Doyle v. Chrysler Grp. LLC*
   2015 WL 353993 (C.D. Cal. Jan. 21, 2015) .................................................................. 9

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*
   2018 WL 10472794 (N.D. Cal. Sept. 25, 2018) .......................................................... 18

*GSI Tech., Inc. v. Cypress Semiconductor Corp.*
   2015 WL 364796 (N.D. Cal. Jan. 27, 2015) ............................................................... 11

*Hangarter v. Provident Life & Acc. Ins. Co.*
   373 F.3d 998 (9th Cir. 2004) ................................................................................. 10, 14

*Haskins v. First Am. Title Ins. Co.*
   2013 WL 5410531 (D.N.J. Sept. 26, 2013) ................................................................ 18

*Hewlett-Packard Co. v. EMC Corp.*
   330 F. Supp. 2d 1087 (N.D. Cal. 2004) ...................................................................... 21

*Hilsley v. Ocean Spray Cranberries, Inc.*
   2018 WL 5617701 (S.D. Cal. Oct. 30, 2018) ................................................................... 9

*Hoopes v. Gulf Stream Coach, Inc.*
   2016 WL 1165683 (N.D. Ind. Mar. 25, 2016) ................................................................. 13

*Hsingching Hsu v. Puma Biotechnology, Inc.*
   2018 WL 4945703 (C.D. Cal. Oct. 5, 2018) ................................................................... 15

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*
   87 F. Supp. 3d 928 (N.D. Cal. 2015) ............................................................................ 12

*In re Arris Cable Modem Consumer Litig.*
   327 F.R.D. 334 (N.D. Cal. 2018) .................................................................................... 7

*In re Bard IVC Filters Prod. Liab. Litig.*
   2018 WL 495607 (D. Ariz. Jan. 22, 2018) ................................................................... 14

*In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) ........................................................................ 16

*In re Front Loading Washing Mach. Class Action Litig.*
   2013 WL 3466821 (D.N.J. July 10, 2013) ..................................................................... 9

*In re High-Tech Emp. Antitrust Litig.*
   2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) ................................................................. 6

*In re Incretin-Based Therapies Prod. Liab. Litig.*
   721 F. App'x 580 (9th Cir. 2017) ................................................................................. 21

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II) MDL 2502*
   892 F.3d 624 (4th Cir. 2018) ...................................................................................... 16

*In re Pac. Fertility Ctr. Litig.*
   2021 WL 842739 (N.D. Cal. Mar. 5, 2021) ............................................................. 6, 18

*In re Packaged Seafood Prod. Antitrust Litig.*
   2020 WL 5739316 (S.D. Cal. Sept. 24, 2020) ............................................................. 14

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*
   978 F. Supp. 2d 1053 (C.D. Cal. 2013) ........................................................................ 12

*In re Twitter, Inc. Sec. Litig.*
   2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) .............................................................. 18

*In re: MacBook Keyboard Litig.*
   2021 WL 1250378 (N.D. Cal. Apr. 5, 2021) ................................................................. 7

*Kennedy v. Collagen Corp.*
   161 F.3d 1226 (9th Cir. 1998) ...................................................................................... 6

iii

*Kirola v. City & Cty. of San Francisco*
  2010 WL 373817 (N.D. Cal. Jan. 29, 2010) ................................................ 17, 18

*Leadership Stud., Inc. v. Blanchard Training & Dev., Inc.*
  2018 WL 1989554 (S.D. Cal. Apr. 27, 2018)
  *report & rec. adopted*, 2018 WL 3752373 (S.D. Cal. Aug. 7, 2018) ............................... 18

*Lewert v. Boiron, Inc.*
  212 F. Supp. 3d 917 (C.D. Cal. 2016)
  *aff'd*, 742 F. App'x 282 (9th Cir. 2018) ....................................................... 14

*Lin v. KIA Motors Am., Inc.*
  2013 WL 12129608 (C.D. Cal. Jan. 22, 2013) .................................................. 14

*Linares v. Crown Equip. Corp.*
  2017 WL 10403454 (C.D. Cal. Sept. 13, 2017) ................................................. 9

*Maldonado v. Apple, Inc.*
  2021 WL 1947512 (N.D. Cal. May 14, 2021) .................................................... 6

*Matthew Enter., Inc. v. Chrysler Grp. LLC*
  2016 WL 4272430 (N.D. Cal. Aug. 15, 2016) .................................................. 17

*McCoy v. Whirlpool Corp.*
  2003 WL 1923016 (D. Kan. Apr. 21, 2003) ..................................................... 7

*Medisim Ltd. v. BestMed LLC*
  861 F. Supp. 2d 158 (S.D.N.Y. 2012) ......................................................... 14

*Mendoza v. Intuitive Surgical, Inc.*
  2020 WL 1976472 (N.D. Cal. Apr. 24, 2020) ................................................... 10

*Metal Conversion Techs., LLC v. Env't Integrity Co., LLC*
  2016 WL 11409557 (N.D. Ga. Aug. 25, 2016) ................................................... 11

*Nat'l Med. Imaging, LLC v. U.S. Bank N.A.*
  2019 WL 9809616 (E.D. Pa. Jan. 31, 2019) .................................................... 18

*Neale v. Volvo Cars of N. Am., LLC*
  2017 WL 1217145 (D.N.J. Apr. 3, 2017) ....................................................... 9

*Oddo v. Arocaire Air Conditioning & Heating*
  2020 WL 5267917 (C.D. Cal. May 18, 2020) .................................................... 9

*Olivia v. Airbus Ams., Inc.*
  2021 WL 1195968 (N.D. Ohio Mar. 30, 2021) ................................................... 8

*Paeschke v. Gen. Motors LLC*
  2017 WL 4003382 (E.D. Wash. Aug. 18, 2017) .................................................. 8

*Perez v. State Farm Mut. Auto. Ins. Co.*
   2011 WL 8601203 (N.D. Cal. Dec. 7, 2011) .................................................................. 5

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*
   2011 WL 5417090 (N.D. Cal. Oct. 27, 2011) ............................................................... 11

*Puente v. City of Phoenix*
   2021 WL 1208895 (D. Ariz. Mar. 31, 2021) ................................................................ 13

*Ryan v. Nat. Union Fire Ins. Co. of Pittsburgh, P.A.*
   2010 WL 2232670 (D. Conn. June 2, 2010) ................................................................ 13

*Salas v. Toyota Motor Sales, U.S.A., Inc.*
   2017 WL 11247885 (C.D. Cal. Sept. 29, 2017) ............................................................ 8

*Schall v. Suzuki Motor of Am., Inc.*
   2020 WL 1159756 (W.D. Ky. Mar. 10, 2020) ............................................................... 9

*Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*
   927 F. Supp. 2d 1069 (D. Or. 2013) ........................................................................... 14

*State Farm Fire & Cas. Co. v. Hewlett-Packard Co.*
   2015 WL 5821898 (E.D. Wash. Oct. 5, 2015) ............................................................. 10

*United States ex rel. Ji v. Pac. Chem. Int'l*
   2018 WL 6163114 (C.D. Cal. Sept. 24, 2018) ............................................................. 10

*United States v. Hankey*
   203 F.3d 1160 (9th Cir. 2000) .................................................................................... 10

*United States v. Sandoval-Mendoza*
   472 F.3d 645 (9th Cir. 2006) ...................................................................................... 10

*Van Alfen v. Toyota Motor Sales, U.S.A., Inc.*
   2012 WL 12930456 (C.D. Cal. Nov. 9, 2012) ............................................................. 18

*Verigy US, Inc. v. Mayder*
   2008 WL 4183493 (N.D. Cal. Sept. 8, 2008) .............................................................. 21

*Victorino v. FCA US LLC*
   2017 WL 2578794 (S.D. Cal. 2017) ........................................................................ 8, 14

*Wadler v. Bio-Rad Labs., Inc.*
   2016 WL 6070530 (N.D. Cal. Oct. 17, 2016) ............................................................. 17

*Walton v. Bridgestone/Firestone, Inc.*
   2009 WL 2778441 (D. Ariz. Jan. 16, 2009) .................................................................. 8

*Wendell v. GlaxoSmithKline LLC*
   858 F.3d 1227 (9th Cir. 2017) ...................................................................................... 5

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE AND MOTION TO STRIKE
CASE NO. 5:18-cv-02813-EJD

*Young v. Cree Inc.*
  2021 WL 292549 (N.D. Cal. Jan. 28, 2021)........................................................................ 9

**Rules**

Fed. R. Evid. 702........................................................................................................ 5, 11

Fed. R. Evid. 703......................................................................................................... 5, 6

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE AND MOTION TO STRIKE
CASE NO. 5:18-cv-02813-EJD

## I.    <u>INTRODUCTION AND SUMMARY OF OPPOSITION</u>

Apple's motions to exclude the opinions of Plaintiffs' keyboard expert Charles M. Curley and strike portions of his reply report are without merit and should be denied.  Apple does not dispute Mr. Curley's qualifications as a mechanical and electrical engineer with 40 years of experience in designing and manufacturing keyboards.  Mr. Curley has applied his relevant knowledge and experience to a close examination of each of the 16 MacBook models within the Class, as well as to Apple's root cause analysis, employee testimony, and patents including those Apple procured for its butterfly keyboard.  His conclusion is that the butterfly-equipped MacBooks fail to meet engineering and industry standards.  Mr. Curley's opinions are well-anchored in the record and will assist the jury in resolving Plaintiffs' claims.

Apple, relying on its rebuttal expert Professor Darran Cairns, claims that Mr. Curley's opinions are irrelevant and unreliable because he did not perform a full-blown root cause analysis. But Mr. Curley found there was no engineering justification for doing that, given Apple's voluminous technical documents and ███████████████████████████████████████ ████████████████████████████████.  Unlike Mr. Curley, Professor Cairns has no experience designing and manufacturing keyboards, performed no independent testing of his own, and did not examine even a single MacBook.  Professor Cairns nonetheless opined that the MacBooks are not "inherently" defective—even though he also acknowledged the problem of particle contamination failures.  Apple's and Professor Cairns's challenges to Mr. Curley's engineering analysis deserve little weight.

Apple's criticisms go to the weight of Mr. Curley's opinions, and its bare assertion that he started with a predetermined conclusion is wrong.  Mr. Curley assessed each of Apple's failed efforts to mitigate the contamination failures in the MacBooks and explained why its remediation efforts were futile—for all of the Class MacBooks, particles become trapped within and under the butterfly mechanism because of the low-travel design, tight gaps, and absence of anti-contamination best practices.  Mr. Curley analyzes not only the vulnerabilities of Apple's low-travel design but also the shortcomings of its attempted remedies, such as the ████████████████████████████████ ████████████████████████████████████.  His red-dye test shows that the

1

1  ███████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ██████████████████████. Apple faults Mr. Curley for not ruling out other possible causes

4  of the keyboard failures yet fails to provide any evidence of plausible alternative explanations for the

5  failures that were not already eliminated (*e.g.*, ██████████) or treated separately (*e.g.*, ██████

6  ██████ in ████████████████. Apple also incorrectly dismisses Mr. Curley's decades of

7  keyboard experience, contending that his knowledge of industry best practices is outdated.  In recent

8  patent filings, however, Apple itself made use of the traditional anti-contamination practices

9  identified in Mr. Curley's report that Apple says are outdated in defending this litigation.

10      Apple further contends that Mr. Curley should be viewed as a competitor of Apple and asserts

11  he does not qualify as an expert under the Protective Order.  But Apple never identified Mr. Curley or

12  his company as a competitor as required under the Protective Order, despite having encountered Mr.

13  Curley as an expert in several prior cases.  And while Apple complains of keyboard work Mr. Curley

14  may have performed in August 2020, any such work would not violate the Protective Order because it

15  occurred more than six months before Plaintiffs retained him.  Thus, there is no basis to disqualify

16  him as an expert.

17      Apple also moves to strike portions of Mr. Curley's reply report because it includes a

18  computer-aided design model of a butterfly keyboard to explain his analysis.  But this model responds

19  directly to Apple's expert's critique that Mr. Curley assumed that the particles found in keyboards

20  were responsible for the keyboard failures.  Setting aside the fact that Apple's own engineers ████

21  ███████████████████████████████████████████████, use of the

22  computer model is proper because it does not introduce a new theory of defect but instead directly

23  rebuts the unsupported claims of Apple's expert.

24      For these reasons, and as further discussed below, Apple's motion should be denied.

25  **II.    SUMMARY OF MR. CURLEY'S OPINIONS.**

26      Mr. Curley concludes that all models of Apple's butterfly-equipped MacBooks are defective

27  because they share a low ██████ travel design and tight keycap gaps, and lack adequate design

28

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE AND MOTION TO STRIKE
CASE NO. 5:18-cv-02813-EJD

safeguards against particle contamination. Declaration of Simon S. Grille ("Grille Decl."),[1] Ex. 1 ( Report of Charles M. Curley ("Curley Rpt.") ¶¶ 137-54). Apple does "not dispute[]" that the low travel and tight gaps are common design elements. Mot. at 6. Further, Apple did not implement anti-contamination best practices that have proven effective for decades. *Id.* ¶¶ 138-45. Because of the defective design and lack of anti-contamination safeguards, the butterfly-equipped MacBooks do not meet industry and engineering standards, as they expose users to keyboard failures from ordinary usage. *Id.* ¶¶ 146-51; Ex. 2 (Reply Report of Charles M. Curley ("Curley Reply Rpt."), ¶¶ 71-88.)

Mr. Curley explains that keyboard manufacturers have known for decades that keyboards are highly susceptible to contamination from salt, sugar, and other particles that can disrupt the keycap guide surfaces, switch mechanisms, and electrical contacts of a keyboard, resulting in key failure. Ex. 1 (Curley Rpt., ¶¶ 16-19). Because, for example, consumers routinely snack and eat while using their computers, contaminants are expected and manufacturers must implement design techniques to manage particle interference from both external and internal sources. *Id.* ¶ 19. Mr. Curley outlines three anti-contamination "best practices" that the keyboard industry has long since adopted and which have proven highly effective at preventing particle failures: (1) keycap skirts—a protective shroud protruding downward from the top keycap surface to protect the keycap guide surfaces; (2) keycap gutters—a recessed region below the mouth of the keycap guide surface that works with the keycap skirts to collect contaminants; and (3) sealed switches—typically rubber domes that completely surround the electrical switch. *Id.* ¶¶ 20-30.

Drawing from his many years of designing keyboards, as well as his study of patents from Apple and other keyboard manufacturers, Mr. Curley describes how anti-contamination best practices have for decades been implemented to protect computer keyboards. *Id.* ¶¶ 31-46. He then reviews the butterfly keyboard design, noting that variations of the butterfly design have existed for at least 20 years before Apple's introduction of the butterfly-equipped MacBooks. *Id.* ¶¶ 47. Major keyboard manufacturers have implemented traditional anti-contamination best practices such as keycap skirts and sealed switches into their keyboards, including on relatively low-travel designs. *Id.* ¶¶ 47-61. Mr. Curley then contrasts these designs with Apple's butterfly keyboard design, explaining that Apple

---

[1] All subsequent citations to exhibits refer to exhibits to the Grille Declaration, filed herewith.

abandoned these proven anti-contamination safeguards when it introduced the butterfly keyboard

MacBooks in 2015 to achieve its objective of an exceptionally thin keyboard profile.  *Id.* ¶¶ 64-79.

To form his opinions, Mr. Curley examined 16 butterfly-equipped MacBook laptops covering

all three generations of the butterfly keyboard design and each MacBook model in the Class.  *Id.* ¶¶

80-85.  His review of two first-generation butterfly MacBook models confirmed that Apple did not

implement any of the anti-contamination safeguards and that each model shares the same low-travel

design with tight keycap gaps, leaving very little space for trapped particles to escape.  *Id.* ¶¶ 87-94.

Mr. Curley also considered Apple's attempts to modify the butterfly keyboard to address the problems

with particle contamination but found the remedial measures ineffective.  For instance, Apple

introduced ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████  *Id.* ¶ 93.  Apple █████████████

████████████████████████████████████.  *Id.* ¶ 94.

Mr. Curley examined seven different second-generation butterfly MacBook models that

include Apple's ██████████████████████████████████████████."  *Id.* ¶¶ 95-96.  As

he explains, these attempted fixes were again ineffective.  While the ████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████.  *Id.* ¶ 99.  In addition, the ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████  interfere with the electrical

contact.  *Id.* ¶ 100.  Thus, ████████████████████████████████████████

██████████████████████████████████.  Ex. 2 (Curley Reply Rpt., ¶¶ 101-10).  This finding is

consistent with ████████████████████████████████████████████████████████████

██████████████████████████████████████████.  *Id.*  Apple engineers

also ████████████████████████████████████████████████████

██████████████████████████████████████████████████████.  Ex. 1

(Curley Rpt., ¶¶ 101, 141).  Apple also ████████████████████████████████████

4

coverlay (diaphragm over the switch housing) but soon learned that these materials can produce "double click" failures by causing internal wear and generating internal debris. *Id.* ¶ 102.

Mr. Curley examined seven MacBooks comprising each model of the third-generation butterfly design with a "membrane under key" or "MUK." *Id.* ¶ 104.  The ███████████████████ ███████████████████████████████████████████████ *Id.* ¶¶ 106-08.  To confirm that the MUK membrane is not completely sealed, Mr. Curley performed a test with red dye, which showed that the MUK still leaves the butterfly pivots exposed with openings through which particles enter the butterfly mechanism. *Id.* ¶¶ 108-09.

Apple's patent filings also confirm that the anti-contamination best practices Mr. Curley has identified continue to be relevant in the industry.  For instance, in a September 2016 patent application, Apple outlined a butterfly keyboard design intended to prevent particle contamination that uses both keycap skirts and gutters, as well as protective membranes without openings (unlike the MUK). *Id.* ¶¶ 121-25.  Apple also applied for another patent claiming a modified butterfly design with a gutter and sealed switch. *Id.* ¶¶ 127.  These patent filings demonstrate that it was feasible to implement industry best practices and protective measures in the Apple butterfly design; however, Apple decided to abandon the butterfly design altogether in 2019, reverting to a scissor keyboard design with ████████████████ *Id.* ¶¶ 129-35.

## III.    LEGAL STANDARD

"Pursuant to the Federal Rules of Evidence, the district court judge must ensure that all admitted expert testimony is both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). An expert witness "is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation[,]" a principle "premised on the assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592 (citing Fed. R. Evid. 702, 703).  Expert testimony is reliable "if the expert is qualified to render the opinion" and "the opinion offered has adequate support." *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2011 WL 8601203, at *3 (N.D. Cal. Dec. 7, 2011) (citing *Daubert*, 509 U.S. at 588-90).  "To satisfy the relevance requirement, the proffered expert testimony must assist the

1  trier of fact in understanding or determining a fact in issue." *Id.* (citation omitted).  "Only if the

2  expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such

3  testimony be excluded."  *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL

4  1351040, at *22 (N.D. Cal. Apr. 4, 2014) (citation omitted).

5  **IV.    ARGUMENT**

6      **A.    Mr. Curley's Opinions Satisfy the Requirements of Rule 703 and *Daubert*.**

7          Apple argues Mr. Curley's opinions should be excluded primarily on the grounds that he did

8  not perform a separate root cause analysis, he began his analysis with a predetermined conclusion, and

9  he relied on Dr. Niebuhr's reports.  Mot. at 4-5.  None of these arguments has any merit.

10          First, independent testing is not required for an expert's opinion to be reliable.  Even Apple's

11  expert performed no testing of his own.  *See Maldonado v. Apple, Inc.*, No. 3:16-CV-04067-WHO,

12  2021 WL 1947512, at *11 (N.D. Cal. May 14, 2021) (finding an expert's opinions were reliable as

13  based in the fundamental principles of reliability engineering even though he did not physically test

14  devices at issue).  Second, Mr. Curley did not begin with a predetermined conclusion but reviewed

15  Apple's root cause analysis and—based on his decades of industry experience—concluded there was

16  no engineering justification for performing ██████████████████████████████████████████

17  ████████████████████████████████████████████████████.  Third, while

18  Mr. Curley reviewed Dr. Niebuhr's reports and relied on their photographs and raw data, Mr. Curley

19  does not simply parrot Dr. Niebuhr's findings but instead relied his background and experience as well

20  as extensive microscopic analysis of the butterfly components to independently arrive at his

21  conclusions.  Apple's remaining arguments criticize Mr. Curley's methodology and dispute his

22  conclusions, but "the question at this phase is not whether the plaintiffs' experts are right," *In re Pac.*

23  *Fertility Ctr. Litig.*, No. 18-CV-01586-JSC, 2021 WL 842739, at *4 (N.D. Cal. Mar. 5, 2021), and

24  "[d]isputes as to . . . faults in his use of a particular methodology . . . go to the weight, not the

25  admissibility, of his testimony."  *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998)

26  (citation and alterations omitted).  Apple's motion to exclude Mr. Curley's opinions should therefore

27  be denied.

28

1          **1.      Mr. Curley Was Not Required to Conduct His Own Root Cause Analysis.**

2          Apple argues that because Mr. Curley did not perform his own root cause analysis, his reports

3  suffer from the same flaw as the reports of Dr. David Niebuhr that the Court excluded at class

4  certification.  Mot. at 5-6.  In its prior ruling, the Court recognized that expert opinions may be based

5  on testing performed by others but concluded that Dr. Niebuhr's reports only interpreted Apple

6  documents and therefore his opinions were "irrelevant at the class certification stage."  *In re: MacBook*

7  *Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2021 WL 1250378, at *7 (N.D. Cal. Apr. 5, 2021).  Here,

8  Mr. Curley's reports go to the merits of Plaintiffs' claims.  They do not consist solely of his

9  interpretations of Apple's findings, but reflect opinions based on his decades of experience designing

10  and developing keyboards.  Apple's expert, in contrast, has no professional experience in keyboard

11  design, manufacturing, or reliability testing and performed no testing or examinations of his own.  *See*

12  Ex. 3  (Rebuttal Expert Report of Darran Cairns ("Cairns Rpt.") at Ex. A); Ex. 4 (Deposition of Darran

13  Cairns ("Cairns Dep.") at 114:14-18; 143:23-143:3; 146:18-21; 152:7-11; 152:15-25; 193:18-20;

14  193:25-194:4; 195:20-25).

15          Apple's insistence that independent root cause analysis is necessary overlooks that

16  "independent testing is not the *sine qua non* of admissibility under *Daubert*," *McCoy v. Whirlpool*

17  *Corp.*, No. CIV.A. 02-2064-KHV, 2003 WL 1923016, at *3 (D. Kan. Apr. 21, 2003), a principle

18  Apple's own expert necessarily assumed by not doing any testing at all.  *See In re Arris Cable Modem*

19  *Consumer Litig.*, 327 F.R.D. 334, 363 (N.D. Cal. 2018) ("[N]othing requires that an expert conduct

20  independent testing in every case.").  Professor Cairns performed no root cause analysis yet opines that

21  there is "no inherent defect" in the butterfly MacBooks, relying entirely on Apple's own documents.

22  Ex. 3 (Cairns Rpt., ¶ 10).  Like Professor Cairns, Mr. Curley did not undertake an independent root

23  cause analysis because he had access to "volumes of root cause analysis" from Apple.  Ex. 5

24  (Deposition of Charles M. Curley ("Curley Dep.") at 26:3-10); *see also* Curley Reply Rpt., ¶¶ 12-18

25  (citing ████████████████████████████████████████

26  ██████████████).  Also unlike Professor Cairns, Mr. Curley has decades of experience actually

27  designing and manufacturing keyboards, and he personally examined the butterfly keyboard,

28  documenting his inspections with 250 micro-photographs of the butterfly components.  *See* Ex. 1

(Curley Rpt., ¶ 7); Ex. 5 (Curley Dep. at 161:16-24); *Victorino v. FCA US LLC*, 2017 WL 2578794, *11 (S.D. Cal. 2017) (declining to exclude expert because he did not examine the allegedly defective components at issue where he relied on "records as well as his knowledge, experience, training and education"); *Olivia v. Airbus Ams., Inc.*, No. 1:19 CV 1701, 2021 WL 1195968, at *7 (N.D. Ohio Mar. 30, 2021) (expert properly formed his conclusions "by comparing the evidence before him against the expertise and knowledge he has as both a mechanical engineer and professional in the aviation industry.").

      At most, the absence of independent testing goes to the credibility and weight of an expert's opinions, not their admissibility. *See Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (EX), 2017 WL 11247885, at *5 n.9 (C.D. Cal. Sept. 29, 2017) (arguments regarding the sufficiency of expert's testing went to the weight of his testimony); *Paeschke v. Gen. Motors LLC*, No. 4:16-CV-5050-LRS, 2017 WL 4003382, at *3 (E.D. Wash. Aug. 18, 2017) (same). Here, Mr. Curley's decision not to perform a separate root cause analysis does nothing to affect his credibility given that neither Apple nor Professor Cairns has questioned ███████████████████████████████ ██████████ And in further contrast to Professor Cairns, who makes no effort to reconcile Apple's ███████████████████████ with his conflicting conclusion that the butterfly MacBooks are not "inherently" defective, Mr. Curley's analysis matches that of ██████████████████████ ████████████████████████████████████████. *See Walton v. Bridgestone/Firestone, Inc*., No. CV-05-3027-PHX-ROS, 2009 WL 2778441, at *12 (D. Ariz. Jan. 16, 2009) ("Mr. Ochs is not required to conduct independent testing or firsthand inquiry to satisfy *Daubert*; he may rely on compiled data or other second-hand reports, if reliable."). Thus, Mr. Curley's decision not to perform a separate root cause analysis is not grounds for excluding his reports as unreliable. *See, e.g.*, *Apple iPod iTunes Antitrust Litig.*, No. 05-CV-0037 YGR, 2014 WL 4809288, at *7 (N.D. Cal. Sept. 26, 2014) (expert relied on "internal Apple documents, employee testimony, and discovery responses."); *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2021 WL 1320773, at *9 (N.D. Cal. Mar. 23, 2021) (plaintiffs' experts properly "relied on Honda's own records and data, as well as HFL supplier documents, employee depositions, and other discovery, to reach

1    their conclusions."); *Doyle v. Chrysler Grp. LLC*, No. SACV 13-00620 JVS, 2015 WL 353993, at *6

2    (C.D. Cal. Jan. 21, 2015) (similar).[2]

3          The cases Apple relies on are readily distinguishable because unlike Mr. Curley, the plaintiffs'

4    experts in those cases did not have the benefit of the defendant's own extensive analysis. *See, e.g.*,

5    *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-24277-CIV, 2017 WL 10775768, at *15

6    (S.D. Fla. June 12, 2017).  In *Young v. Cree Inc.*, the excluded expert's opinions were fatally flawed

7    because—unlike Mr. Curley—he "overlook[ed]" the plaintiff's theory of liability.  No. 4:17-CV-

8    06252-YGR, 2021 WL 292549, at *12 (N.D. Cal. Jan. 28, 2021).  Mr. Curley specifically "link[s] the

9    defect with the ultimate liability in this action," *Id*., detailing why the common design elements—low

10   ███████ travel, tight keycap gaps, and a failure to implement adequate anti-contamination design

11   measures—render the butterfly MacBooks defective and below acceptable engineering and industry

12   standards.  *See* Ex. 1 (Curley Reply Rpt., ¶¶ 12-18).

13         Mr. Curley's discussion of these design elements scarcely renders his report duplicative (Mot.

14   at 6) as it is necessary to provide the "factual underpinning" for his opinions, including why Apple's

15   remedial measures were ineffective.  *See Schall v. Suzuki Motor of Am., Inc.*, No. 4:14-CV-00074-

16   JHM, 2020 WL 1159756, at *6 (W.D. Ky. Mar. 10, 2020) (rejecting argument that expert's opinions

17   were "no more than a summary of documentary evidence that the jury could review themselves").

18         Mr. Curley also properly considered Dr. Niebuhr's reports as part of his analysis.  Experts may

19   "appropriately rely on the opinions of others if other evidence supports his opinion and the record

20   demonstrates that the expert conducted an independent evaluation of that evidence." *State Farm Fire*

21   *& Cas. Co. v. Hewlett-Packard Co.*, No. 13-CV-0328-TOR, 2015 WL 5821898, at *6 (E.D. Wash.

22   Oct. 5, 2015).  Mr. Curley reviewed Dr. Niebuhr's report and testified that he relied on the

23

24   ─────────────────
     [2] *See also, e.g.*, *Oddo v. Arocaire Air Conditioning & Heating*, No. 218-CV-07030-CAS (Ex), 2020

25   WL 5267917, at *10 (C.D. Cal. May 18, 2020) (expert could rely on the defendants' "own documents
     and studies"); *Linares v. Crown Equip. Corp.*, No. EDCV16-1637-JGB-KKx, 2017 WL 10403454, at

26   *12 (C.D. Cal. Sept. 13, 2017) (independent testing was "unnecessary for the admission of this
     opinion"); *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2018 WL 5617701,

27   at *9 (S.D. Cal. Oct. 30, 2018) (similar); *Neale v. Volvo Cars of N. Am., LLC*, No. CV 10-4407 (JLL),
     2017 WL 1217145, at *2 (D.N.J. Apr. 3, 2017) (similar); *In re Front Loading Washing Mach. Class*

28   *Action Litig.*, No. CIV.A. 08-51 FSH, 2013 WL 3466821, at *5 (D.N.J. July 10, 2013) (similar).

photographs Dr. Niebuhr took of the laptops he disassembled showing the presence of particles in failed keyboards as well as documents Dr. Niebuhr cited in his report. Ex. 5 (Curley Dep. at 26:11-27:2).  Mr. Curley also reviewed Apple's documents, employee testimony, and patents, as well as patents from other keyboard manufacturers.  He then independently arrived at his conclusions based on his extensive knowledge and experience with designing and manufacturing keyboards.  This is all entirely proper.  *See Mendoza v. Intuitive Surgical, Inc.*, No. 18-CV-06414-LHK, 2020 WL 1976472, at *7 (N.D. Cal. Apr. 24, 2020) (declining to exclude expert who considered other experts reports to familiarize himself with the relevant facts and examined additional evidence to independently arrive at his conclusions).[3]

### 2.    Mr. Curley's Used a Reliable Methodology to Reach His Conclusions.

Apple also contends that Mr. Curley's methodology is unreliable because, among other things, he created a CAD model for only one butterfly MacBook model and used a liquid red dye test even though solid particles behave differently.[4]  Mot. at 8-9.  These criticisms of Mr. Curley's methodology are incorrect and miss the mark under *Daubert* because Mr. Curley provides a technical opinion that will assist the jury and is reliably based on his industry knowledge and experience.  *See United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) ("When evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus upon personal knowledge or experience.") (quotation marks and citation omitted); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 n. 14 (9th Cir. 2004) (recognizing that testimony as to whether Defendants met "insurance industry standards" was "dependent upon the witness's knowledge of, and experience within, the insurance industry"); *see also United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000).  Mr. Curley's keyboard knowledge and experience, combined with his review of Apple's internal documents, deposition testimony, Dr. Niebuhr's reports, patent filings, and his observations

---

[3] The Court's exclusion of Dr. Niebuhr's opinions in connection with class certification does not preclude Mr. Curley from considering Dr. Niebuhr's reports or the information contained in them—an expert may rely on even inadmissible evidence in forming his opinions.  *See United States ex rel. Ji v. Pac. Chem. Int'l*, No. CV14-7203-MWF-PJWx, 2018 WL 6163114, at *2 (C.D. Cal. Sept. 24, 2018) (facts or data used in forming an opinion "need not be admissible for the opinion to be admitted).

[4] Apple's argument that the CAD model exceeds the proper scope of Mr. Curley's reply report is addressed below in section IV.B, *infra*.

and data obtained from his examinations of 16 MacBook laptops, provide a more than sufficient basis for his opinions. Ex. 1 (Curley Rpt., ¶¶ 3, 7); Fed. R. Evid. 702; *see, e.g.*, *Metal Conversion Techs., LLC v. Env't Integrity Co., LLC*, No. 4:14-CV-0163-HLM, 2016 WL 11409557, at *12 (N.D. Ga. Aug. 25, 2016) (expert's methodology of examining photographs, reviewing the investigative report, reading deposition testimony, and visiting the site of the failure was sufficiently reliable); *Clemons v. Burlington N. Santa Fe Ry.*, No. CV15-01788-SJO-JCX, 2016 WL 9752053, at *13 (C.D. Cal. May 3, 2016) (accepting expert analysis based on expert's 45 years of experience, inspection of allegedly defective part, and review of photographs on website); *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, 2015 WL 364796, at *2 (N.D. Cal. Jan. 27, 2015) (similar); *Cypress Ins. Co. v. SK Hynix Am., Inc.*, No. 2:17-CV-00467-RAJ, 2019 WL 634684, at *3 (W.D. Wash. Feb. 14, 2019) (permitting expert testimony on semiconductor industry practices).

Mr. Curley developed a methodology to disassemble, measure, and microscopically examine components from the 16 models of butterfly-equipped MacBooks,[5] and Apple's critiques of this methodology concern only its weight. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001). Apple does not dispute that Mr. Curley relied on industry standard tests in examining the laptops. Ex. 2 (Curley Reply Rpt., ¶¶ 89-94). Nor does Apple suggest that he departed from this methodology. While Apple criticizes Mr. Curley's use of a single CAD model (Mot. at 7), Apple does not contend that his CAD model is inaccurate or present any evidence suggesting that the other MacBook models are not similarly susceptible to fail from particle contamination. *Cf. PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, No. C 10-00544 JW, 2011 WL 5417090, at *8 (N.D. Cal. Oct. 27, 2011) (rejecting challenge to expert's opinion that devices at issue were "similar in many significant regards" based on a review of the technical specifications and defendant's

---

[5] After repeatedly taking the position that there are 16 relevant MacBook models, Apple now claims that there are "20 distinct keyboard models" apparently in an effort to undermine Mr. Curley's analysis. Mot. at 6 n.6. Apple identified only 16 models in its opposition to class certification and during the February 4, 2021 hearing. *See* Ex. 6 (2/4/21 Hr'g Tr. at 10:14-17 (referencing "16 different Macbook models"); *id.* at 12:4-6, 13:14-19). Apple's previous expert, Dr. Parnell, also submitted a report claiming there were 16 relevant MacBook models. *See* Parnell Report, Dkt. No. 236-31, ¶ 27. Apple's Keyboard Service Program likewise lists "16 Eligible Models" while also stating that "no other Mac notebook models are a part of this program." Hence, Apple's attempt to attack Mr. Curley's credibility serves only to undermine its own.

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE AND MOTION TO STRIKE
CASE NO. 5:18-cv-02813-EJD

1  patents); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 941 (N.D. Cal.

2  2015) (similar).

3         Apple only cites a single case to support its critique of Mr. Curley's methodology, but the facts

4  of the case are again readily distinguishable.  The plaintiff's expert was a mechanical engineer but had

5  no experience with the medical device at issue—a bone plate—and admitted he "had no familiarity

6  with the manufacturing processes which generated the Device, alternative designs, or the use of the

7  Device in the marketplace." *Botnick v. Zimmer, Inc.*, 484 F. Supp. 2d 715, 720 (N.D. Ohio 2007).  Far

8  from lacking experience relevant to issues in the case (and unlike Apple's own expert), Mr. Curley has

9  decades of experience in the design and manufacture of keyboards and also has the benefit of Apple's

10 extensive internal analysis.  *Id*.

11        Apple further asserts that the red-dye test Mr. Curley performed on a third-generation butterfly

12 MacBook with a protective membrane does not "show that solid particles would behave in the same

13 manner."  Mot. at 6 n.5.  But this argument misunderstands the purpose of the red-dye test, which

14 sought to illustrate that unlike traditional sealed switches, the MUK still leaves gaps in the butterfly

15 keyboard that allow particles to enter the keyboard mechanism and get trapped due to the low-travel

16 design and tight keycap gaps in all butterfly models.  Thus, the red dye simply highlights the gaps in

17 the MUK and supports Mr. Curley's conclusion that Apple's remedial measure was ineffective

18 because the key switch is not completely sealed.  Ex. 2 (Curley Reply Rpt., ¶¶ 114-15).

19        Apple also points out that Mr. Curley does not identify specific industry standards in support of

20 the best practices he discusses (Mot. at 8-9), but there is no such requirement and neither Apple nor

21 Professor Cairns identified any other relevant industry standards.  *See In re Toyota Motor Corp.*

22 *Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1075 (C.D.

23 Cal. 2013) (declining to exclude plaintiff's expert for not citing "any professional standards that he

24 complied with in his expert report").

25            **3.    Mr. Curley Did Not Begin with a Predetermined Conclusion.**

26        Apple claims that Mr. Curley's opinions are unreliable and irrelevant because he began with

27 the "predetermined conclusion" "that the presence of debris results in failures" while ignoring

28 evidence to the contrary, including its revisions to the butterfly keyboard and other possible causes of

1   the keyboard failures.  Mot. at 9.  But Apple fails to substantiate its charge that Mr. Curley began his

2   analysis with a conclusion in mind.  The fact that he was provided with Apple's internal reports to

3   review does not mean he approached his task with a preconceived conclusion.  *See Hoopes v. Gulf*

4   *Stream Coach, Inc.*, No. 1:10-CV-365, 2016 WL 1165683, at *6 n.3 (N.D. Ind. Mar. 25, 2016)

5   (defendant's disclosure of possible cause of failure did not mean expert had a "preconceived theory"

6   because the expert verified the defendant's conclusion and drew on "years of experience designing and

7   testing" similar systems).  Apple also fails to identify any relevant keyboard design history that Mr.

8   Curley overlooked, provides no plausible alternative explanation for the widespread keyboard failures,

9   and ignores that Mr. Curley did account for Apple's iterative changes in his report.

10          Apple mistakenly claims that Mr. Curley's keyboard experience and understanding of industry

11   best practices is outdated, and Apple's claim in any event raises another issue of evidentiary weight.

12   *See Puente v. City of Phoenix*, No. CV-18-02778-PHX-JJT, 2021 WL 1208895, at *2 (D. Ariz. Mar.

13   31, 2021) ("To the extent Defendants argue that Mr. Clark's experience is outdated, they will have the

14   opportunity to cross-examine him.  But in this instance, the age of Mr. Clark's experience and training

15   does not make them irrelevant."); *Alvarado v. Oakland Cty.*, 809 F. Supp. 2d 680, 692 (E.D. Mich.

16   2011) (similar).  Regardless, Apple's own patent filings belie its contention that Mr. Curley's

17   keyboard experience and understanding of "best practices" is outdated.  Mot. at 10.  Apple applied for

18   several patents for a low-travel butterfly design adopting several of the best practices noted by Mr.

19   Curley—but Apple never used that design.  Ex. 1 (Curley Rpt., ¶¶ 126-27).  In other words, despite

20   claiming in litigation that these safeguards are "outdated," Apple itself treated them as relevant in

21   addressing the particle contamination flaw in the butterfly design.  Mot. at 9.  And while it is true that

22   Mr. Curley left his previous company, Smith Corona, in 1993, Apple overlooks that he continued to

23   work on keyboard products and was granted his last keyboard patent in 2016.  Ex. 5 (Curley Dep. at

24   42:24-43:4).  Thus, Apple's contention that Mr. Curley's anti-contamination best practices opinion "is

25   largely dependent on work he performed in the 1980s" ignores Mr. Curley's experience as well as the

26   conclusions of its own product engineers.  *See Ryan v. Nat. Union Fire Ins. Co. of Pittsburgh, P.A.*,

27   No. 3:03-CV-0644 CFD, 2010 WL 2232670, at *5 (D. Conn. June 2, 2010) (expert's knowledge of

28   insurance industry was not outdated even though he had last worked in the industry 17 years ago

1    because he "kept abreast" of developments while working as an expert consultant); *Medisim Ltd. v.*

2    *BestMed LLC*, 861 F. Supp. 2d 158, 168 (S.D.N.Y. 2012) (similar).

3         Moreover, while Apple claims Mr. Curley was biased because he did not consider other

4    explanations for the keyboard failures, "[t]here is no rule that an expert must consider and discuss all

5    of the evidence on the record in order to proffer admissible testimony." *In re Packaged Seafood Prod.*

6    *Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2020 WL 5739316, at *4 (S.D. Cal. Sept. 24, 2020);

7    *Victorino*, 2017 WL 2578794, at *11 (same). Instead, the nature and extent of the evidence Mr.

8    Curley considered go to "the weight of his testimony—an issue properly explored during direct and

9    cross-examination." *Hangarter*, 373 F.3d at 1017 n.14 (rejecting challenge to the expert's

10   "methodology" based on the "selection of documents to review"); *see Siring v. Or. State Bd. of Higher*

11   *Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1069, 1075 (D. Or. 2013) ("Assessing the reliability of

12   expert testimony based on specialized knowledge, unlike scientific or technical expert testimony, is

13   not contingent upon a particular methodology or technical framework.").

14        Apple offers no evidence of any other plausible explanations for the widespread failures in its

15   butterfly design or why—if its remedial measures were as effective as it claimed—it (1) stopped using

16   various measures such as ███████████████████████ and (2) ultimately abandoned the design

17   altogether. Nor does it attempt to reconcile its litigation argument with the fact that its ███████████

18   ████████████████████████████████████ *See* Ex. 1 (Curley Reply Rpt., ¶¶

19   13-14). Therefore, Apple's argument that Mr. Curley had a predetermined conclusion because he did

20   not adequately account for other explanations fails. *See Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917,

21   929 (C.D. Cal. 2016) (defendants failed to show that expert did not consider "obvious alternative

22   explanations"), *aff'd*, 742 F. App'x 282 (9th Cir. 2018); *Lin v. KIA Motors Am., Inc.*, No. SACV11-

23   01662-JVS-SHx, 2013 WL 12129608, at *6 (C.D. Cal. Jan. 22, 2013) (rejecting argument when there

24   was "no suggestion of obvious alternative causes which [the expert] should have addressed"); *In re*

25   *Bard IVC Filters Prod. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 495607, at *4 (D. Ariz.

26   Jan. 22, 2018) (similar).

27        Nor did Mr. Curley ignore Apple's ineffective remedial measures as Apple claims. Mot. at 10.

28   While Apple stresses the significance of its stopgap changes, Mr. Curley considered them in detail and

14

concluded they were ineffective because none addresses the fundamental low-travel design flaws.  Ex.

1 (Curley Rpt., ¶¶ 93-94, 98-103, 106-109, 139-145).  For instance, ████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████  *Id.*

¶ 93.  ████████████████████████████████████████  *Id.* ¶ 94.

Mr. Curley ████████████████████████████████████████████████████

████" *Id.* ¶¶ 95-96.  ██████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████  *Id.*  In addition, ████████████

████████████████████  *Id.* ¶ 100.  Similarly, ████████████████████████

██████████████████████████████████████████████████

████████████████  *Id.* ¶ 101.  And as Mr. Curley's red-dye test shows, the MUK in third

generation MacBooks does not completely seal the butterfly switches, meaning particles can still enter

the keyboard and become stuck.  *Id.* ¶¶ 104-09; Ex. 2 (Curley Reply Rpt., ¶¶ 111-17).

Apple falls back on its refrain about repair rates, claiming they rebut Mr. Curley's conclusion

that Apple's remedial changes were ineffective.  Apple is free to cross-examine Mr. Curley in this

area.  He explains that Apple's and Professor Cairns's reliance on repair rates is misleading for

multiple reasons: (1) it ignores that Apple's data ██████████████████████████████

█████; (2) many of the models ██████████████████████████████

█████; (3) the reported repair rates exceed ██████████████████████ and the failure

rates Mr. Curley observed while working in the keyboard industry; and (4) Professor Cairns ignores

the true scale of the failures in light of the number of MacBooks sold.  Ex. 2 (Curley Reply Rpt., ¶¶

71-88).  Although Apple disagrees with Mr. Curley's conclusions, that is not a basis for exclusion and

the jury should resolve the dispute.  *See Hsingching Hsu v. Puma Biotechnology, Inc.*, No. SACV15-

00865-AGJ-CGx, 2018 WL 4945703, at *7 (C.D. Cal. Oct. 5, 2018) (rejecting argument that expert

reached a predetermined conclusion and noting that defendant's disagreements with his conclusions

were not grounds for excluding his testimony).

Mr. Curley's extensive experience with keyboard design and anti-contamination practices, and

his close scrutiny of Apple's design changes, distinguish this case from *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166 (N.D. Cal. 2007). There, Judge Breyer found that the plaintiff's cardiology expert lacked "specialized epidemiology training" and was "therefore not qualified to opine" regarding whether certain studies were correct. *Id.* at 1176. Moreover, the expert's opinions were not scientifically sound because he rejected methods employed by other plaintiffs' experts and adopted by the American Health Association, and his testimony as to why he relied on certain studies and rejected others was inconsistent. *Id.* at 1176-77. Apple has not identified any similar inconsistencies in Mr. Curley's analysis or testimony. And unlike the plaintiff's expert in Apple's other case authority, Mr. Curley did not "exclude the results" of testing that contradicted his conclusions while including only favorable results in his report or use a different value to return a more favorable result. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II) MDL 2502*, 892 F.3d 624, 634 (4th Cir. 2018).

Thus, none of Apple's criticisms call into doubt Mr. Curley's representation that he did not undertake his work with a predetermined conclusion. Ex. 2 (Curley Reply Rpt., ¶¶ 19-20).

**B.    Mr. Curley's Reply Report Does Not Introduce New Theories.[6]**

After Plaintiffs served Mr. Curley's opening merits report, Apple served a rebuttal report from Professor Cairns criticizing Mr. Curley's report and conclusions. In response, Mr. Curley used a CAD model to address Professor Cairns's contention that Mr. Curley merely assumed that the presence of particles found in failed butterfly MacBooks accounted for the failures and that there could be no other cause. Ex. 2 (Curley Reply Rpt., ¶¶ 19-21); *cf.*, Ex. 3 (Cairns Rpt., ¶¶ 12-13, 92). Apple challenges Mr. Curley's use of the CAD model, arguing that it constitutes a new theory or evidence that should have been included in his opening report so the CAD-related portions of his reply report should be stricken. "The test of whether an expert's opinion constitutes rebuttal or a 'new' opinion, however, is *not* whether a rebuttal expert employs new *testing or methodologies* but instead, whether a rebuttal attempts to put forward new *theories* outside the scope of the report it claims to rebut." *Wadler v. Bio-Rad Labs., Inc.*, No. 15-CV-02356-JCS, 2016 WL 6070530, at *3 (N.D. Cal. Oct. 17, 2016) (emphasis

---

[6] The parties agree that the standard for rebuttal expert reports should also be applied to Mr. Curley's reply report. Mot. at 12.

added) (quotation marks and citation omitted).  As Mr. Curley's CAD model directly responds to

Professor Cairns's criticisms and does not introduce a new theory of why the butterfly MacBooks are

defective, inclusion of this model in his reply report is proper and the Court should reject Apple's

request to strike.

In ███████████████████████████████████████████████████

███████████████████████████████████████████████████ Ex. 2

(Curley Reply Rpt., ¶ 13 (citing Apple documents)).  They also determined, among other things, that

███████████████████████████████████████████████████

███████████████████████████████████████████ *Id.* █████

███████████████████████████████████████████████████

████ *Id.* Apple's keyboard design manager, Shelly Goldberg, ████████████████

█████████████████████████████████ *Id.* ¶ 14 (quoting Goldberg testimony).

Professor Cairns never addresses any of these internal root cause findings and provides no plausible

alternative explanation for the failures.  Yet, in his rebuttal report, he argues that Mr. Curley "simply

identif[ies] an alleged correlation between the presence of debris and certain keyboard behaviors."  Ex.

3 (Cairns Rpt., ¶ 92).  As Apple's own case makes clear, it is proper for a reply report to respond to

such unforeseen arguments raised by the opposing party's expert.  Mot. at 11 (citing *Matthew Enter.,

Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 4272430, at *3 (N.D. Cal. Aug. 15,

2016)); *see also Kirola v. City & Cty. of San Francisco*, No. C-07-3685 SBA (EMC), 2010 WL

373817, at *2 (N.D. Cal. Jan. 29, 2010) (rebuttal arguments proper because the plaintiffs could not

"know with any degree of specificity and certainty" the precise position the defendants would take in

defending the case).

To respond to Professor Cairns's criticism, Mr. Curley ran a CAD model for a █████

████████ J79 butterfly MacBook to illustrate how the presence of particles can cause keyboard

failure.  Ex. 2 (Curley Reply Rpt., ¶¶ 19-48); Ex. 5 (Curley Dep. at 180:23-181:10 (explaining that he

included the CAD model to respond to Professor Cairns's claim that he was merely assuming that a

particle embedded in a key can cause it to fail)).  Mr. Curley took microscopic measurements of the

"period" key on a ████████████████ MacBook to create a CAD model and compared it to

17

1  Apple's patent filings for accuracy. Ex. 2 (Curley Reply Rpt., ¶¶ 24, 32).  By slicing the CAD model,

2  he is able to show how certain gaps in the keyboard structure ▮▮▮▮▮▮▮▮ allow particles to enter

3  and obstruct the butterfly mechanism, blocking electrical contacts and resulting in failure.  *Id.* ¶¶ 36-

4  48.  Thus, far from introducing "new theories and opinions" as Apple claims (Mot. at 12), the CAD

5  model confirms Mr. Curley's (▮▮▮▮▮▮) original conclusion that trapped particles cause the

6  butterfly MacBook keyboards to fail.  Ex. 1 (Curley Rpt., ¶¶ 114-20).

7         Unable to show that the CAD model introduces a new theory, Apple resorts to arguing that the

8  model should be excluded because it could have been included in Mr. Curley's initial report.  Mot. at

9  12.  Yet "there is no bright line rule requiring automatic exclusion of a rebuttal report that contains

10  information that could have been included in an initial expert report."  *Leadership Stud., Inc. v.*

11  *Blanchard Training & Dev., Inc.*, No. 15CV1831-WQH(KSC), 2018 WL 1989554, at *9 (S.D. Cal.

12  Apr. 27, 2018), *report & rec. adopted*, No. 15-CV-1831-WQH (KSC), 2018 WL 3752373 (S.D. Cal.

13  Aug. 7, 2018).  Courts have squarely rejected such a narrow reading of Rule 26(a).  *See, e.g.*, *Kirola*,

14  2010 WL 373817, at *2.  Accordingly, that Mr. Curley did not include a CAD model in his opening

15  report is not dispositive of its admissibility.  *See Van Alfen v. Toyota Motor Sales, U.S.A., Inc.*, No.

16  810ML-02151-JVS-FMOx, 2012 WL 12930456, at *7 (C.D. Cal. Nov. 9, 2012); *Nat'l Med. Imaging,*

17  *LLC v. U.S. Bank N.A.*, No. CV 16-5044, 2019 WL 9809616, at *3 (E.D. Pa. Jan. 31, 2019); *Haskins*

18  *v. First Am. Title Ins. Co.*, No. CIV.A. 10-5044 RMB, 2013 WL 5410531, at *4 (D.N.J. Sept. 26,

19  2013).  Because Mr. Curley used the CAD model in response to Professor Cairns's criticisms—

20  including his contention that Mr. Curley does not account for the MUK (Ex. 3 (Cairns Rpt., ¶ 96); Ex.

21  2 (Curley Reply Rpt., ¶ 47))— its use on reply is proper.  *See, e.g.*, *In re Pac. Fertility Ctr. Litig.*, 2021

22  WL 842739, at *5 (analysis in rebuttal was proper because it was limited to responding to the

23  defendant's expert's opinion); *In re Twitter, Inc. Sec. Litig.*, No. 16-CV-05314-JST, 2020 WL

24  9073168, at *4 (N.D. Cal. Apr. 20, 2020) (declining to exclude report that responded to subject matter

25  raised in opposing expert's report); *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, No. 17-CV-00564-

26  NC, 2018 WL 10472794, at *3 (N.D. Cal. Sept. 25, 2018) (expert's use of "new data and methodology

27  does not disqualify his report as rebuttal.").

28

**C.    Mr. Curley Qualifies as an Expert Under the Protective Order.**

In addition to its *Daubert* challenge, Apple also argues that Mr. Curley is or intends to act as a competitor and therefore cannot serve as an expert under the Stipulated Protective Order (Dkt. No. 84) entered by Judge DeMarchi in this case.  Mot. at 3-4.  The Protective Order precludes a "current officer, director, or employee of a Party or of a competitor of a Party" or a person "anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party" from testifying as an expert.  Dkt. No. 84 at 3.  Section 2.6 of the Protective Order requires Apple to identify its competitors.  *Id*. ("Apple will separately provide, by no later than January 11, 2019, Plaintiffs' Counsel with a list of Apple's competitors for purposes of compliance with this Section.").  Apple did not identify Mr. Curley or his company Innotek as competitors in a list it sent Class Counsel in February 2019, even though Mr. Curley previously testified in at least three civil actions against Apple.  *See* Ex. 5 (Curley Dep. at 59:8-14).  Apple now claims that Mr. Curley revealed during his deposition that he is designing a Bluetooth external keyboard and that his work is ongoing, and there is consequently a threat that the information he learns from this case will give him a competitive advantage.  That is implausible.  Apple ignores that Mr. Curley developed his keyboard idea more than six months before being retained in this case and that he is not presently working on any keyboard-related patents.  *See* Protective Order § 7.4, Dkt. No. 84 at 3 (requiring disclosure of any computer- or keyboard-related work of the expert only during "past six (6) months").

The only evidence Apple offers to support its claim that Mr. Curley is a competitor is a portion of his deposition in which he stated that in August 2020, he had an idea for a wireless external keyboard for laptops—more than six months before he was retained by Class Counsel in March 2021.  Ex. 5 (Curley Dep. at 44:20-45:7, 46:15-17; 208:22-209:9).  According to Apple, Mr, Curley qualifies as a competitor because he was "attracted . . . . to the possibility of developing a Bluetooth keyboard" for the market "of wireless Bluetooth substitute keyboards[.]"  *Id.* at 211:3-16.  But Mr. Curley testified that he did not perform any work on any keyboard technology in the six months before being retained in this case, is not prosecuting any keyboard patent and has no pending patent applications relating to keyboards.  *Id.* at 208:19-209:02.  His last keyboard-related patent was granted in February 2016.  *Id*. at 43:3-44:4.  He further testified that nothing he has learned in this case has informed his

1    idea for a wireless external keyboard.  *Id.* at 212:3-214:23.  Nor has he discussed the keyboard design

2    with any laptop or keyboard manufacturer.  *Id.* at 214:24-215:1.  Mr. Curley has also provided a

3    declaration reiterating that he has never used any confidential information in this case for any purpose

4    other than for his assigned work.[7]  Ex. 7 (7/14/21 Declaration of Charles M. Curley ("Curley Decl.")).

5    Also consistent with his testimony, Mr. Curley's patent counsel sent Apple a letter confirming that,

6    "since 2016, and to date," Mr. Curley's patent counsel has "not opened any new matters, received any

7    information, or even discussed with Mr. Curley any information on potential patents 'related to

8    computers (e.g., desktops, notebooks/laptops) or keyboards installed in or used with computers' per

9    the Protective Order."  Ex. 8 (7/14/21 Letter from Christopher Michaels).

10            Apple suggests in a footnote that, before disclosing protected material to Mr. Curley, Class

11    Counsel did not adequately inquire into whether he performed keyboard-related work in the past six

12    months for an entity not listed on Apple's list of competitors.  Mot. at 4 n.2.  That is incorrect.  Before

13    providing Mr. Curley with any confidential information, Class Counsel asked him directly whether he

14    had performed any work related to computers and keyboards in the preceding six months.  Ex. 9

15    (6/30/21 Letter to Apple's Counsel at 1-2).  Mr. Curley represented that he had not, and then executed

16    the Expert/Consultant Acknowledgement of Confidentiality and Agreement to be Bound pursuant to

17    the Protective Order on March 21, 2021.  *Id.*; Ex. 7 (Curley Decl., ¶¶ 2-4).  Putting to rest any doubt

18    about the fact that Class Counsel met their Protective Order obligations, Mr. Curley last performed any

19    keyboard-related work in August 2020, more than six months before he was retained or received any

20    protected material in this case.  Ex. 5 (Curley Dep. at 208:19-209:02); Dkt. No. 84 at 15.  Moreover,

21    by signing the Confidentiality Agreement, Mr. Curley affirmed that he was "not and [did] not

22    anticipate becoming an officer, director, or employee of a competitor of a Party."  Ex. 7 (Curley Decl.

23    at Ex. A).  He further agreed that he will not accept a position as an employee of a competitor of any

24

25    [7] Apple acknowledges Mr. Curley's declaration in a footnote but claims that it is "unclear" whether he
     will forgo involvement in the prosecution of patents related to keyboards.  Mot. at 4 n.3.  There is
26    nothing unclear about his agreement not to be involved in the prosecution of patents relating to "the
     subject matter of any documents or information," consistent with section 7.5 of the Protective Order.
27    Ex. 7 (Curley Decl., ¶ 8).  Mr. Curley also attests that he agreed and will continue to abide by the
     terms of the Protective Order and attaches his signed agreement.  *Id.* ¶ 4.  Apple does not identify any
28    statement in his declaration that is not supported by his deposition testimony.

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE AND MOTION TO STRIKE
CASE NO. 5:18-cv-02813-EJD

1    party "during the pendency of these proceedings and the pendency of any appeals" or, if he withdraws

2    as an expert in the litigation, "for a period of two (2) years after [such] withdrawal." *Id.*

3        In short, Mr. Curley is not a competitor to Apple and did not work on any keyboard-related

4    work in the six months prior to being retained in the case. He therefore qualifies as an expert under

5    the Protective Order and there is no basis for excluding him. *See Verigy US, Inc. v. Mayder*, No. C07-

6    04330-RMW-HRL, 2008 WL 4183493, at *1 (N.D. Cal. Sept. 8, 2008) ("[B]oth Gillette and West

7    have signed the Acknowledgment and Agreement to be Bound by the Stipulated Protective Order in

8    this case. Defendants have not argued, much less shown, that either West or Gillette are likely to

9    make unauthorized disclosure of defendants' claimed proprietary information."); *see also In re*

10   *Incretin-Based Therapies Prod. Liab. Litig.*, 721 F. App'x 580, 584 (9th Cir. 2017) (district court

11   abused its discretion in partially disqualifying expert as a competitor when there was no breach of the

12   "express terms" of the protective order). Neither of the two cases Apple cites supports a contrary

13   conclusion. Mot. at 4. One concerns the imposition of a patent prosecution bar, but section 7.5 of the

14   Protective Order already contains a "Patent Prosecution Bar," with which Mr. Curley agreed to

15   comply. His declaration confirms that he will not be involved in the prosecution of patents or patent

16   applications relating to documents and information he received in this case until two years after its

17   final resolution. *See Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, No. C-09-02180

18   SBA DMR, 2011 WL 197811, at *5 (N.D. Cal. Jan. 20, 2011). Apple's other case is similarly

19   irrelevant, as it concerns disqualification of an expert who had previously consulted for the opposing

20   party. *See Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1090-93 (N.D. Cal. 2004)

21   (defendant sought to disqualify expert who previously served as a consultant for the company and was

22   privy to confidential information relevant to the lawsuit). Apple has not moved to disqualify Mr.

23   Curley and he has never been in a confidential relationship with Apple. *See id.* at 1093

24   (disqualification only appropriate where "adversary had a confidential relationship with the expert"

25   *and* "disclosed confidential information to the expert that is relevant to the current litigation").

26   **V.    CONCLUSION**

27        For all the reasons stated above, Apple's motion to exclude and motion to strike should be

28   denied.

1    Dated: August 12, 2021

2                                                  Respectfully submitted,

3                                                  **GIRARD SHARP LLP**

4                                                  /s/ *Simon S. Grille*

5                                                  Daniel C. Girard (SBN 114826)
                                                   Jordan Elias (SBN 228731)
6                                                  Adam E. Polk (SBN 273000)
                                                   Simon S. Grille (SBN 294914)
7                                                  **GIRARD SHARP LLP**
                                                   601 California Street, Suite 1400
8                                                  San Francisco, CA 94108
                                                   Telephone: (415) 981-4800
9                                                  Fax: (415) 981-4846
                                                   *dgirard@girardsharp.com*
10                                                 *jelias@girardsharp.com*
                                                   *apolk@girardsharp.com*
11                                                 *sgrille@girardsharp.com*

12

13                                                 Steven A. Schwartz *(pro hac vice)*
                                                   Benjamin F. Johns *(pro hac vice)*
14

15                                                 Beena M. McDonald *(pro hac vice)*
                                                   **CHIMICLES SCHWARTZ KRINER**
16                                                 **& DONALDSON-SMITH LLP**
                                                   One Haverford Centre
17                                                 361 W. Lancaster Avenue
                                                   Haverford, Pennsylvania 19041
18                                                 Telephone: (610) 642-8500
                                                   Facsimile: (610) 649-3633
19                                                 *sas@chimicles.com*
                                                   *bfj@chimicles.com*
20

21                                                 *bmm@chimicles.com*

22

23                                                 *Class Counsel*

24                                                 Robert C. Schubert
                                                   Willem F. Jonckheer
25                                                 Noah M. Schubert
                                                   **SCHUBERT JONCKHEER**
26                                                 **& KOLBE LLP**
                                                   3 Embarcadero Center, Suite 1650
27                                                 San Francisco, CA 94111
                                                   Telephone: (415) 788-4220
28                                                 Facsimile: (415) 788-0161

22

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE AND MOTION TO STRIKE
CASE NO. 5:18-cv-02813-EJD

*rschubert@sjk.law*
*wjonckheer@sjk.com*
*nschubert@sjk.law*

E. Michelle Drake
Joseph C. Hashmall
**BERGER & MONTAGUE, P.C.**
43 SE Main Street
Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5999
Facsimile: (215) 875-4604
*emdrake@bm.net*
*jhashmall@bm.net*

Esfand Nafisi
**MIGLIACCIO & RATHOD LLP**
388 Market Street
Suite 1300
San Francisco, CA 94111
Telephone: (415) 489-7004
Facsimile: (202) 800-2730
*enafisi@classlawdc.com*

*Plaintiffs' Executive Committee*

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE AND MOTION TO STRIKE
CASE NO. 5:18-cv-02813-EJD