# Exhibit 3

1   JESSICA L. GRANT (SBN 178138)
    JGrant@mofo.com
2   PENELOPE A. PREOVOLOS (SBN 87607)
    PPreovolos@mofo.com
3   CLAUDIA M. VETESI (SBN 233485)
    CVetesi@mofo.com
4   CAMILA A. TAPERNOUX (SBN 299289)
    CTapernoux@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California  94105-2482
    Telephone:  (415) 268-7000
7   Facsimile:  (415) 268-7522

8   Attorneys for Defendant
    APPLE INC.
9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

13

14                                          Case No. 5:18-cv-02813-EJD

15   IN RE:  MACBOOK KEYBOARD                **APPLE INC.'S REPLY IN SUPPORT OF**
     LITIGATION                              **MOTION TO EXCLUDE EXPERT**
16                                           **OPINIONS OF CHARLES M. CURLEY**
                                             **AND MOTION TO STRIKE PORTIONS**
17                                           **OF CURLEY'S REPLY EXPERT REPORT**

18                                           Date:    November 18, 2021
                                             Time:    9:00 a.m.
19                                           Judge:   Honorable Edward J. Davila
                                             Ctrm:    4 – 5th Floor
20
                                             Consol. Compl. Filed:  October 11, 2018
21                                           Am. Consol. Compl. Filed: May 13, 2019
                                             2nd Consol. Compl. Filed:  July 2, 2020
22

23

24

25          **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

4   I.    INTRODUCTION ................................................................................................ 1

    II.   ARGUMENT ...................................................................................................... 2
5
            A.    Mr. Curley's Opinions Are Irrelevant and Unreliable .......................... 2
6
                  1.    The Complete Lack of Any Root Cause Analysis or Testing
                        Renders Mr. Curley's Opinions Irrelevant and Unreliable ........ 2
7
                  2.    Mr. Curley's Opinions Are Not the Result of Reliable Methodology
8                       and Are Not Supported by the Evidence ..................................... 6

                  3.    Mr. Curley's Opinions Are Based on Predetermined Conclusions
9                       and Cherry-Picked Information .................................................... 7

            B.    Mr. Curley's Testimony Should be Excluded Because He Does Not
10                Qualify As an Expert Under the Stipulated Protective Order .............. 10

11          C.    Mr. Curley's Reply Report Contains New Evidence and New Opinions
                  That Were Previously Undisclosed and Should Be Stricken ............... 13
12
    III.  CONCLUSION ................................................................................................ 15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2
                                                                                          **Page**

3   **Cases**

4   *Applied Signal Technology v. Emerging Markets Communications Inc.*,
5       No. C–09–02180 SBA (DMR), 2011 WL 197811 (N.D. Cal. Jan. 20, 2011) ..............11, 12, 13

6   *Avago Techs., Inc. v. IPtronics Inc.*,
        No. 5:10-cv-02863-EJD, 2015 WL 3640626 (N.D. Cal. June 11, 2015)...................13
7
    *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*,
8       524 F. Supp. 2d 1166 (N.D. Cal. 2007) ...................10

9   *Botnick v. Zimmer, Inc.*,
        484 F. Supp. 2d 715 (N.D. Ohio 2007) ...................7
10
    *Campbell Indus. v. M/V Gemini*,
11      619 F.2d 24 (9th Cir. 1980) ...................13

12  *Companhia Energetica Potiguar v. Caterpillar Inc.*,
13      No. 14-24277-CIV, 2017 WL 10775768 (S.D. Fla. June 12, 2017)...................3, 5

14  *Companhia Energetica Potiguar v. Caterpillar Inc.*,
        No. 14-CV-24277, 2016 WL 7507848 (S.D. Fla. Aug. 1, 2016)...................3
15
    *Daubert v. Merrell Dow Pharm., Inc.*,
16      509 U.S. 579 (1993) ...................1, 3, 5, 7

17  *Emerson Electric Co. v. Sipco, LLC*,
18      No.16-mc-80164-DMR, 2016 WL 6833741 (N.D. Cal. Nov. 21, 2016)...................13

19  *Feliciano v. CoreLogic Saferent, LLC*,
        No. 17 CIV. 5507 (AKH), 2020 WL 6205689 (S.D.N.Y. June 11, 2020) ...................5, 8
20
    *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*,
21      No. 17-cv-00564-NC, 2018 WL 5793479 (N.D. Cal. Nov. 2, 2018) ...................4

22  *In re Ford Tailgate Litig.*,
23      No. 11-cv-02953-RS, 2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) ...................3

24  *Gen. Elec. Co. v. Joiner*,
        522 U.S. 136 (1997) ...................3
25
    *GPNE Corp. v. Apple, Inc.*,
26      No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014)...................3, 6

27  *Hewlett-Packard Co. v. EMC Corp.*,
        330 F. Supp. 2d 1087 (N.D. Cal. 2004) ...................13
28

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502,*
892 F.3d 624 (4th Cir. 2018)..................................................................10

*Matthew Enter., Inc. v. Chrysler Grp. LLC,*
No. 13-cv-04236-BLF, 2016 WL 4272430 (N.D. Cal. Aug. 15, 2016).....................................15

*Pooshs v. Phillip Morris USA, Inc.,*
287 F.R.D. 543 (N.D. Cal. 2012) ..............................................................4

*Sumotext Corp. v. Zoove, Inc.,*
No. 16-CV-01370-BLF, 2020 WL 264701 (N.D. Cal. Jan. 17, 2020) ..........................5, 8

*Young v. Cree Inc.,*
No. 4:17-cv-06252-YGR, 2021 WL 292549 (N.D. Cal. Jan. 28, 2021) .....................2, 3, 15

**Other Authorities**

Federal Rule of Evidence 702 ...........................................................1, 2

1

## I.    INTRODUCTION

2       Charles Curley does not qualify as an expert in this matter and his opinions do not meet

3   the standards set forth in Federal Rule of Evidence 702 and *Daubert*.  *See* Fed. R. Evid. 702;

4   *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  Similar to Dr. Niebuhr's Class

5   Reports that were previously stricken by the Court, Mr. Curley did not perform any root cause

6   analysis or testing on the butterfly keyboards at issue in this case, nor do his reports contain any

7   data to support his conclusion that a "low travel design" and the absence of his so-called "anti-

8   contamination best practices" (which are based on Mr. Curley's antiquated, decades-old

9   experience in the keyboard industry) result in a common "defect" across all models.  Further, as

10  Apple demonstrated in its opening brief, Mr. Curley's opinions are based on a predetermined

11  conclusion and Mr. Curley ignores or attempts to explain away any evidence that contradicts it.

12  Due to the lack of any methodology or data to support Mr. Curley's conclusions, they are nothing

13  more than impermissible *ipse dixit* and speculation.  Plaintiffs' Opposition fails to meaningfully

14  rebut Apple's arguments; therefore, Mr. Curley's opinions and testimony should be excluded.

15      Apple has established that Mr. Curley is considered a competitor under the Protective

16  Order entered in this case and is therefore disqualified from serving as an expert witness.  (*See*

17  ECF No. 84.)  Nothing in Plaintiffs' Opposition changes this conclusion, and Mr. Curley's

18  opinions should therefore be excluded for this additional reason.

19      Finally, the new evidence, opinions and theories introduced for the first time in

20  Mr. Curley's Reply Report should be stricken as improper rebuttal testimony.  Mr. Curley

21  proffers new opinions based on a computer-aided design ("CAD") model in his Reply Report that

22  do not directly respond to any "unforeseen" arguments raised by Apple's expert witness as

23  Plaintiffs claim.  Instead, the new CAD model is used by Mr. Curley as an attempt to introduce

24  new theories and "data" related to his previous opinion regarding the alleged common "defect."

25  As such, this evidence falls outside the scope of proper rebuttal testimony, and Mr. Curley should

26  be precluded from testifying at trial regarding any such testimony and opinions.

27

28

II.    **ARGUMENT**

A.    **Mr. Curley's Opinions Are Irrelevant and Unreliable**

Plaintiffs fail to rebut the arguments raised in Apple's opening brief regarding the flaws in Mr. Curley's reports.  As Apple has demonstrated, Mr. Curley's opinions are irrelevant and unreliable because he did not perform any root cause analysis or testing on the MacBooks equipped with butterfly keyboards; his reports do not contain any data to support his conclusions that a "low travel design" and the absence of his "anti-contamination best practices" result in a common defect; and his opinions were based on a predetermined conclusion that improperly ignores all evidence to the contrary.  Plaintiffs attempt to refute these arguments by claiming that Mr. Curley did not need to conduct his own root cause analysis or testing, that his opinions were based on his "industry knowledge and experience," and that he appropriately considered and rejected relevant evidence.  These arguments are without merit, and Plaintiffs fail to meet their burden of showing that Mr. Curley meets the requisite admissibility requirements for expert testimony.  *See Young v. Cree Inc.*, No. 4:17-cv-06252-YGR, 2021 WL 292549, at *13 (N.D. Cal. Jan. 28, 2021) ("Under Federal Rule of Evidence 702, [t]he burden is on the proponent of the expert testimony to show, by a preponderance of the evidence, that the expert is qualified and meets the necessary admissibility requirements.").

1.    **The Complete Lack of Any Root Cause Analysis or Testing Renders Mr. Curley's Opinions Irrelevant and Unreliable**

Mr. Curley's opinions should be excluded for the same reasons the Court struck Dr. Niebuhr's reports at class certification.  (*See* ECF No. 298 at 15 (noting that Dr. Niebuhr did not conduct his own root cause analysis to support his conclusions about the alleged "defect," and stating that "if Dr. Niebuhr's report simply relays his own interpretation of Apple's internal testing, it is unclear why his testimony is necessary at all").)  Mr. Curley did not perform any root cause analysis on MacBooks equipped with butterfly keyboards, and his reports do no more than relay his own interpretation of Apple's internal documents and present a biased and unhelpful summary of keyboard design history that is not supported by the record evidence.

Plaintiffs do not dispute that Mr. Curley failed to perform any root cause analysis on the

APPLE'S REPLY ISO MOTION TO EXCLUDE EXPERT OPINIONS OF CURLEY AND MTS PORTIONS OF CURLEY'S RPT
CASE NO. 5:18-CV-02813-EJD
sf-4545046

2

1    butterfly keyboards at issue in this case (nor could they). Instead, they claim that Mr. Curley's

2    decision not to conduct a root cause analysis goes to the credibility and weight of his opinions

3    rather than admissibility. (ECF No. 344-4 at 8.) Not so. Courts have excluded expert

4    testimony—like Mr. Curley's—that "merely relays observations rather than performing true

5    expert analysis." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016

6    WL 7507848, at *8 (S.D. Fla. Aug. 1, 2016); *see also Young*, 2021 WL 292549, at *12

7    (excluding expert opinion under *Daubert* where expert failed to "link the defect with the ultimate

8    liability" in that action); *In re Ford Tailgate Litig.*, No. 11-cv-02953-RS, 2015 WL 7571772, at

9    *7 (N.D. Cal. Nov. 25, 2015) (stating that the "most critical problem" with expert's testimony

10   was that he was not able to provide a "causal nexus" between the alleged issue and the expert's

11   theory of defect); *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *4

12   (N.D. Cal. Apr. 16, 2014) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))

13   ("Significantly, 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district

14   court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the

15   expert. A court may conclude that there is simply too great an analytical gap between the data

16   and the opinion proffered.'"); *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-24277-

17   CIV, 2017 WL 10775768, at *15 (S.D. Fla. June 12, 2017), report and recommendation adopted,

18   No. 14-24277-CIV, 2017 WL 10775767 (S.D. Fla. Dec. 14, 2017) (expert not permitted to testify

19   about his opinion on the root cause of the products' failure where he testified that he did not

20   perform a root cause analysis).

21           Mr. Curley did not attempt to do any testing on the butterfly keyboards whatsoever.[1]  His

22   reports simply relay observations from his "examinations" of MacBook models equipped with

23   butterfly keyboards, in which Mr. Curley purports to have confirmed the design elements in the

24

25           [1] Mr. Curley briefly describes one "red dye test" in his report, which he says involved
     pouring liquid dye into a keyboard to observe how the liquid would flow around the MUK.
26   (Vetesi Decl. Ex. 8 (Curley Rpt.) ¶ 108.) No other details regarding this "test" were provided,
     and as explained in Apple's opening brief, pouring liquid dye into a keyboard cannot be used to
27   show that solid particles would behave in the same manner. (*See* Vetesi Decl. Ex. 4 (Cairns
     Rebuttal Rpt.) ¶ 96.)
28

1   various models and measured the keycap gaps.  (Vetesi Decl. Ex. 8 (Curley Rpt.) ¶ 81.)[2]

2   Plaintiffs argue that Mr. Curley's summary of design elements does not render his reports

3   duplicative because they provide "factual underpinning" necessary for his opinions.  (ECF No.

4   344-4 at 9.)  But Mr. Curley's Merits Report consists *entirely* of a summary of keyboard design

5   history and his summary of Apple's internal documents regarding butterfly keyboard designs.

6   His conclusions are not based on any testing, data, methodology or root cause analysis; therefore,

7   his opinions are merely *ipse dixit,* speculative and do not add anything of value and—similar to

8   Dr. Niebuhr's reports—are duplicative of other evidence before the Court and unhelpful.  (*See*

9   ECF No. 298.)  *See Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 547-48 (N.D. Cal. 2012)

10  (excluding expert testimony where expert's "testimony 'interpreting' [the defendant's] documents

11  would not assist the jury because those documents speak for themselves," and recognizing that "a

12  court may exclude expert testimony on the ground that an expert's purported methodology fails to

13  explain his final conclusion."); *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, No. 17-cv-00564-

14  NC, 2018 WL 5793479, at *3 (N.D. Cal. Nov. 2, 2018) (excluding expert testimony as

15  cumulative and speculative where sections of the expert report "simply summarize[d]"

16  defendants' internal documents, which the court noted "speak for themselves").  Plaintiffs further

17  claim that Mr. Curley's decision not to perform a root cause analysis does not affect his

18  credibility because Apple has not questioned the accuracy of its "conclusions or its employees'

19  testimony."  (ECF No. 344-4 at 8.)  However, this argument is a red herring. The testimony of

20  Apple's witnesses is not the issue.  Rather, Mr. Curley's interpretation of a limited set of Apple's

21  documents does not satisfy the standards for reliable expert testimony.  As explained in further

22  detail below, Mr. Curley has cherry-picked information that supports his conclusions and ignored

23  evidence to the contrary rendering his opinions unreliable.

24        And as Apple noted in its opening brief, Mr. Curley admitted that in forming his opinions,

25  he relied on Dr. Niebuhr's report that was stricken by the Court.  (*See* Vetesi Decl. Ex. 8 (Curley

26

27        [2] All subsequent citations to exhibits refer to exhibits to the Declaration of Claudia M.
      Vetesi in Support of Apple's Motions to Exclude Expert Opinions of Dr. David V. Niebuhr and
      Charles M. Curley ("Vetesi Decl.") (ECF No. 335-1).

28

APPLE'S REPLY ISO MOTION TO EXCLUDE EXPERT OPINIONS OF CURLEY AND MTS PORTIONS OF CURLEY'S RPT
CASE NO. 5:18-CV-02813-EJD
sf-4545046

4

1    Rpt.) at ¶¶ 3, 13, 110, 114; Vetesi Decl. Ex. 9 (Curley Reply Rpt.) at ¶¶ 2, 17, 116; Vetesi Decl.

2    Ex. 7 (Curley Dep.) at 27:11-14.)  Plaintiffs argue that an expert may rely on inadmissible

3    evidence in forming his opinions, and that Mr. Curley therefore properly considered

4    Dr. Niebuhr's Class Reports as part of his analysis.  (ECF No. 344-4 at 10, fn.3.)  But even if

5    Mr. Curley may technically rely on Dr. Niebuhr's reports, the Court previously struck those

6    opinions because it deemed them "unhelpful."  Therefore, to the extent Mr. Curley bases his

7    opinions on Dr. Niebuhr's previously stricken reports, such opinions are likewise unhelpful to the

8    trier of fact and should be excluded.

9          Plaintiffs attack Apple's expert Dr. Cairns in their Opposition brief, arguing that

10   Dr. Cairns lacks relevant experience and, like Mr. Curley, did not conduct a root cause analysis.

11   (ECF No. 344-4 at 7.)  However, an opposition brief is not a proper vehicle to attack an opposing

12   expert's report, and Plaintiffs' arguments regarding Dr. Cairns should be disregarded.  *Sumotext*

13   *Corp. v. Zoove, Inc.*, No. 16-CV-01370-BLF, 2020 WL 264701, at *4 (N.D. Cal. Jan. 17, 2020)

14   (disregarding defendant's attacks on plaintiff's expert raised in *Daubert* opposition brief, except

15   as relevant to the reliability and admissibility of defendant's expert opinions).  Moreover, it is

16   irrelevant that Dr. Cairns did not conduct a root cause analysis because his role as a *rebuttal*

17   expert is different than Mr. Curley's role as an affirmative expert proffering opinions in support

18   of Plaintiffs' case.  The purpose of Mr. Curley's reports is to set forth reliable and relevant

19   evidence supporting Plaintiffs' theory of an alleged common defect.  In contrast, rebuttal experts

20   such as Dr. Cairns "need not conduct a root cause analysis" of the products at issue.  *Companhia*,

21   2017 WL 10775768, at *24.  "[R]ebuttal can be properly undertaken by poking holes in another's

22   argument; rebuttal does not require deploying a ground-up analysis of the very same argument."

23   *Feliciano v. CoreLogic Saferent, LLC*, No. 17 CIV. 5507 (AKH), 2020 WL 6205689, at *3

24   (S.D.N.Y. June 11, 2020) (citations omitted).

25          Mr. Curley did not conduct a root cause analysis or any testing of the MacBook models

26   equipped with butterfly keyboards, nor did he include any relevant or reliable evidence in support

27   of his opinions.  Because his opinions are based solely on improper *ipse dixit*, speculation and his

28   interpretation of Apple's internal documents, they should be excluded

1       **2.      Mr. Curley's Opinions Are Not the Result of Reliable**
        **Methodology and Are Not Supported by the Evidence**

2

3          As Apple established in its opening brief, Mr. Curley did not employ any reliable

4    methodology—or for that matter, any methodology at all—to reach his conclusions that a "low

5    travel design" and the absence of his so-called "anti-contamination best practices" resulted in a

6    common "defect," and his opinions are not supported by the evidence.  Mr. Curley purports to

7    conclude that all MacBook models equipped with a butterfly keyboard share a common "defect."

8    His opinion is based solely on an anecdotal summary of decades-old keyboard design history and

9    a summary of Apple's internal documents related to butterfly keyboard designs.  Mr. Curley's

10   opinions regarding a "common defect" are not based on any testing, data, methodology or root

11   cause analysis.  In his Reply Report, Mr. Curley adds observations about a new CAD model that

12   were not validated with any testing or experimentation, and do nothing to bolster his opinions.[3]

13   Plaintiffs argue that Mr. Curley's testimony should not be excluded because he provides a

14   technical opinion that is "reliably based on his industry knowledge and experience" (although that

15   industry knowledge is extremely outdated), and that Apple's critiques of Mr. Curley's

16   "methodology" concern only its weight.  (ECF No. 344-4 at 10-11.)  Each of these arguments is

17   without merit.

18         First, Plaintiffs' argument that Mr. Curley's opinion is "reliably based on his industry

19   knowledge and experience" and will assist the jury validates Apple's argument that Mr. Curley

20   did not employ any data or methodology whatsoever in reaching his conclusions.  Rather, his

21   opinions are merely based on his "knowledge and experience" in the keyboard industry from

22   more than 25 years ago, and in any event, "industry knowledge and experience" are not

23   substitutes for a reliable methodology.  *See Young*, 2021 WL 292549, at \*10 ("Experience and

24   engineering practices alone do not convert a made-up methodology into one that meets the

25   threshold requirements of admissibility."); *GPNE Corp.*, 2014 WL 1494247, at \*4 (finding that

26   the expert's "30 years of experience" alone did not "constitute a sufficiently reliable and testable

27   ─────────────
          [3] Apple argues that this CAD model constitutes inappropriate reply evidence and should
     not be considered.  (*See infra*, § II.C.)

28

1   methodology to prevent exclusion under *Daubert*").  As Apple has previously shown,

2   Mr. Curley's summary of keyboard design history is based on external desktop keyboards that are

3   not comparable to Apple's butterfly keyboards, a small "thumb-typing keyboard" that Mr. Curley

4   designed as a "flip phone Bluetooth case" that was never commercialized, and keyboard designs

5   described in patents, which Mr. Curley admitted may have never been incorporated into

6   commercial products or sold on the market.  (*See* Vetesi Decl. Ex. 8 (Curley Rpt.) ¶¶ 16-46;

7   Vetesi Decl. Ex. 7 (Curley Dep.) at 44:5-7, 109:10-12, 110:19-22, 112:12-14, 114:9-11.)

8   Mr. Curley's conclusion that Apple should have implemented one of the three specific "anti-

9   contamination measures" that Mr. Curley identified in these patents is not supported by the record

10  evidence or any methodology.

11          Second, Plaintiffs argue that Mr. Curley developed a "methodology to disassemble,

12  measure, and microscopically examine components from the 16 models of butterfly-equipped

13  MacBooks," and that Apple does not "suggest that he departed from this methodology."  (ECF

14  No. 334-4 at 11.)  But as Plaintiffs acknowledge, Mr. Curley's entire protocol consists of

15  disassembling and "examining" components in the butterfly keyboards, and measuring the key

16  gaps.  A simple disassembly and visual examination does not constitute a reliable methodology,

17  and cannot be used to support Mr. Curley's conclusion regarding an alleged common "defect"

18  across all MacBook models equipped with butterfly keyboards. *See Botnick v. Zimmer, Inc.*, 484

19  F. Supp. 2d 715, 720 (N.D. Ohio 2007) (expert's opinions excluded where the expert's

20  methodology consisted of a visual inspection that included no testing and no inquiry into failure

21  rates).  Mr. Curley's opinions are not supported by any methodology, are therefore unreliable,

22  speculative and irrelevant under *Daubert*, and should be excluded.

23                      **3.    Mr. Curley's Opinions Are Based on Predetermined**
                             **Conclusions and Cherry-Picked Information**
24

25          Mr. Curley's opinions should be excluded because they are based on his cherry-picked

26  evidence to fit his predetermined conclusion that the presence of debris results in "failures" in all

27  MacBooks equipped with butterfly keyboards.

28          Plaintiffs claim that "[t]he fact that [Mr. Curley] was provided with Apple's internal

1    reports to review does not mean he approached his task with a preconceived conclusion." (ECF

2    No. 334-4 at 13.)  But Plaintiffs misunderstand Apple's argument, which is that Mr. Curley began

3    with the theory of common defect offered by Plaintiffs, purported to support this theory with

4    cherry-picked information, and failed to account for evidence that did not support or actively

5    contradicted this theory.  Plaintiffs argue that Apple did not provide alternative explanations for

6    the keyboard "failures," but that is not Apple's burden, and a rebuttal expert need not offer

7    alternative theories in order to expose the weaknesses in the plaintiff's expert's methodology or

8    conclusions.  *See Sumotext Corp*, 2020 WL 264701, at \*3 ("A defendant may present expert

9    rebuttal of the plaintiff's expert 'by putting forth its own expert who either claims that (1) the

10   plaintiff's expert's methodology was conducted improperly in some way; or (2) the ultimate

11   conclusion the plaintiff's expert makes is flawed because a superior methodology provides a

12   different result.'"); *see also Feliciano*, 2020 WL 6205689, at \*3 (citations omitted) ("[R]ebuttal

13   can be properly undertaken by poking holes in another's argument; rebuttal does not require

14   deploying a ground-up analysis of the very same argument.")  Further, Apple's expert Dr. Cairns

15   noted that several of the photographs depicting butterfly keyboards that Dr. Niebuhr "inspected,"

16   and upon which Mr. Curley claims to rely, showed clear evidence of liquid damage.[4]  (Vetesi

17   Decl. Ex. 4 (Cairns Rpt.) ¶¶ 52-58.)  Dr. Cairns explained that ███████████████████

18   ██████████████████████████████  Dr. Niebuhr claims to have observed, as opposed to

19   Dr. Niebuhr's theory related to particle ingress.  (*Id.*)

20          Next, Plaintiffs argue that "Apple mistakenly claims that Mr. Curley's keyboard

21   experience and understanding of industry best practices is outdated," and contend that Apple's

22   "patent filings belie its contention that Mr. Curley's keyboard experience and understanding of

23   'best practices' is outdated."  (ECF No. 344-4 at 13.)  This argument fails for a number of

24   reasons.  First, merely relying on an expert's "experience" is insufficient and does not constitute a

25   _____

26          [4] Dr. Cairns explained that ███████████████████████
      ████████████████████████████████████████████████████████

27          ███████████████  Dr. Niebuhr's analysis missed the clear presence of liquid and instead
      focused on debris to support his theory of alleged common "defect."  (Vetesi Decl. Ex. 4 (Cairns
      Rpt.) ¶¶ 52-53.)

28

1    methodology. *See GPNE Corp.*, 2014 WL 1494247, at *4 (expert's "30 years of experience"

2    alone did not "constitute a sufficiently reliable and testable methodology to prevent exclusion

3    under *Daubert*"). Second, Mr. Curley's opinions are based on his experience in the keyboard

4    industry from when he left Smith Corona in 1993, over 25 years ago. Plaintiffs point to the fact

5    that Mr. Curley was granted a patent for a "thumb-typing keyboard" in 2016, but this limited

6    attempt to develop a phone case with a mini keyboard does not transform Mr. Curley's outdated

7    experience into recent, relevant knowledge. Finally, Apple's patent filings do not contradict its

8    argument that Mr. Curley's keyboard design history was biased and outdated. While Apple has

9    incorporated the three anti-contamination measures described by Mr. Curley in certain of its

10   keyboard patents, the point Apple makes is that these are not the *only* three anti-contamination

11   measures available. There are many other methods for contaminant prevention, and the most

12   appropriate design elements or contaminant prevention methods will vary by product and design.

13   (*See* Vetesi Decl. Ex. 4 (Cairns Rebuttal Rpt.) ¶ 84.) Apple has incorporated many other

14   contamination mitigation measures in its butterfly keyboards, including the ███████████

15   █████████████████████████████████████████████████████████

16   ██████) design elements. Although Mr. Curley admitted that that there are several other

17   methods for preventing contaminant ingress aside from the three he identified, he erroneously

18   maintains that a keyboard must contain these three elements in order to be successful. (*See* Vetesi

19   Decl. Ex. 7 (Curley Dep.) at 218:2-219:12, 224:16-17.) Mr. Curley's biased and self-serving

20   basis for choosing these three elements was likely because all three were included in a keyboard

21   he worked on in 1988. (*See* Vetesi Decl. Ex. 8 (Curley Rpt.) ¶ 31.)

22         Apple also notes in its opening brief that Mr. Curley ignored the significance of the

23   various design changes implemented across the 20 MacBook models equipped with butterfly

24   keyboards. Plaintiffs claim that Mr. Curley did in fact consider these design changes but

25   concluded they were ineffective. (ECF No. 344-4 at 14-15.) However, it is unclear how

26   Mr. Curley was able to conclude that each of these design changes were "ineffective" when

27   Mr. Curley did not perform any testing whatsoever to support his conclusions. Mr. Curley

28   ignores all repair rate evidence which contradicts his finding and shows the impact of various

1  design changes, including the ███████ example raised by Dr. Cairns. (*See* Ex. 4 (Cairns

2  Rebuttal Rpt.) ¶¶ 66-70.) (describing data that shows the ████████████████████

3  ████████████████████████████████████).)

4      Plaintiffs further claim that Mr. Curley accounted for the MUK design element by

5  conducting his "red dye test," which was meant to shows that "the MUK still leaves gaps in the

6  butterfly keyboard that allow particles to enter the keyboard mechanism." (ECF No. 344-3 at 19.)

7  But it is common sense that liquid will flow more easily and will more readily enter gaps than

8  solid particles. (*See* Vetesi Decl. Ex. 4 (Cairns Rpt.) at 54.) This test is completely irrelevant to

9  Plaintiffs' theory that solid particles interfere with the electrical connection within Apple's

10  butterfly keyboards, resulting in "failures."

11      Plaintiffs' arguments do nothing to rebut Apple's claim that Mr. Curley's opinions are

12  based on a predetermined conclusion and cherry-picked information. His testimony is therefore

13  unreliable and should be excluded. *See In re Bextra & Celebrex Mktg. Sales Pracs. & Prod.*

14  *Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) (finding expert opinion was

15  inadmissible where the expert first identified his conclusion and then cherry-picked evidence that

16  supported his theory while ignoring evidence that contradicted his conclusion); *see also In re*

17  *Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892

18  F.3d 624, 634 (4th Cir. 2018) ("Result-driven analysis, or cherry-picking, undermines principles

19  of the scientific method and is a quintessential example of applying methodologies (valid or

20  otherwise) in an unreliable fashion.").

**B.  Mr. Curley's Testimony Should be Excluded Because He Does Not Qualify As an Expert Under the Stipulated Protective Order**

23      As Apple explained in its opening memorandum, Mr. Curley is disqualified from serving

24  as an expert in this case because he is a competitor as that term is defined under the Stipulated

25  Protective Order ("Protective Order").

26      In their Opposition brief, Plaintiffs argue that Apple did not identify Mr. Curley or his

27  company Innotek on a list of competitors it sent to Plaintiffs' counsel in January 2019 pursuant to

28  the Protective Order. (*See* ECF No. 344-4 at 19; ECF No. 84.) However, Apple expressly

1   reserved the right to add to its list of competitors and Mr. Curley revealed *for the first time* at his

2   deposition in June 2021 that he has been working on a patent for a "Bluetooth alphanumeric

3   keyboard," and that he intends to sell the keyboard design and "compete" in the keyboard market.

4   (Vetesi Decl. Ex. 7 (Curley Dep.) at 44:23-45:1, 45:19-21, 211:3-16.)  Prior to this admission,

5   Apple was unaware that Mr. Curley was developing a keyboard design and was either in the

6   process of filing or intended to file a related patent application. Thus, Apple would have had no

7   way of knowing that Mr. Curley may qualify as a competitor to Apple at the time it sent its list of

8   known competitors to Plaintiffs' counsel in January 2019.  Further, the Protective Order specifies

9   that before disclosing to any expert any of Apple's confidential material, Plaintiffs' counsel must

10  determine whether the expert has "performed any work (as an employee or consultant) related to .

11  . . *keyboards installed in or used with computers for an entity not listed on the competitors' list* . .

12  . in the past six (6) months" in order for Apple to evaluate whether to object to the disclosure to

13  the expert.  (ECF No. 84 § 7.4 (emphasis added).)  Faced with this provision, Plaintiffs argue that

14  Mr. Curley developed his keyboard idea more than six months before being retained in this case.

15  Mr. Curley recently provided a declaration claiming that he developed his keyboard idea in

16  August 2020—*seven* months before being retained by Plaintiffs' counsel in this matter—but this

17  contradicts his earlier sworn deposition testimony, thereby undermining the credibility of this

18  claim.  (*Compare* Vetesi Decl. Ex. 7 (Curley Dep.) at 46:15-17) ("I worked on the project, the

19  design of the project in the fall of 2020.") *with id.* at 210:1-2; ECF No. 344-12 at 209:10-12,

20  209:19-25 (stating that he first memorialized the idea for his keyboard design in writing in August

21  2020 and that he retained patent counsel in September 2020).)

22         To the extent Mr. Curley intends to file a patent application for his keyboard design, he is

23  also considered a competitor under the Protective Order, which would be yet another reason he is

24  disqualified from serving as an expert in this case.  *See Applied Signal Technology v. Emerging*

25  *Markets Communications Inc.*, No. C–09–02180 SBA (DMR), 2011 WL 197811, at *5 (N.D.

26  Cal. Jan. 20, 2011).  Having received Apple's Highly Confidential material related to keyboards,

27  Mr. Curley is prohibited from being involved in the prosecution of patents related to that subject

28

1  matter.[5]  In determining whether experts are subject to prosecution bars, courts evaluate whether

2  "the person is a 'competitive decisionmaker' whose participation in patent prosecution creates a

3  risk of inadvertent disclosure." *Applied Signal Technology Inc.*, 2011 WL 197811, at *3.  Courts

4  have found that "an expert witness who prepares or applies for patents themselves is *undoubtedly*

5  *a competitive decisionmaker.*" *Id.* at *5 (emphasis added).  Mr. Curley testified at his deposition

6  that he intends to file a patent application related to his keyboard design "[a]s soon as [his] patent

7  attorney gets the time to work on it." (Vetesi Decl. Ex. 7 (Curley Dep.) at 210:13-21.)  However,

8  Mr. Curley's recent declaration contradicts his sworn deposition testimony; he now claims he will

9  not "be involved in the prosecution of patents or patent applications relating to the subject matter

10  of any documents or information [he] received as part of [his] work in this case, until two years

11  following the final resolution of it." (Vetesi Decl. Ex. 10 (Plaintiffs' 7/14/2021 Ltr.).)

12  Mr. Curley's testimony was also inconsistent regarding the ongoing nature of his work related to

13  his keyboard patent.  For example, Mr. Curley first testified that he has a "patent pending" for a

14  keyboard, but later changed his testimony, claiming the patent has not yet been filed, and that he

15  intends to file his patent applications as soon as his patent attorney has the time to work on it.

16  (Vetesi Decl. Ex. 7 (Curley Dep.) at 44:11-45:1, 210:10-21.)[6]

17      Plaintiffs and Mr. Curley claim that nothing Mr. Curley has learned from Apple's

18  confidential documents in this case has informed his idea for a keyboard design. (ECF No. 344-4

19  at 19-20.)  However, this argument is unavailing.  Mr. Curley is clearly considered a competitor

20  under the terms of the Protective Order due to his work related to "keyboards installed in or used

21  with computers."  Therefore, under the Protective Order, he is disqualified from serving as an

22

23  [5] "Absent the written consent of the Producing Party, any person who receives one or more items designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" shall not

24  be involved in the prosecution of patents or patent applications relating to the subject matter of the documents reviewed by the individual before any foreign or domestic agency, including the

25  United States Patent and Trademark Office ("the Patent Office"). For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting

26  the scope or maintenance of patent claims." (ECF No. 84 § 7.5.)

27  [6] Mr. Curley also initially testified that there are three relevant patents, and later stated that one patent is related to a keyboard and two of those patents are related to other devices. (ECF No.

28  344-12 at 45:3-13; Vetesi Decl. Ex. 7 (Curley Dep.) at 210:3-9.)

1    expert witness in this case. (ECF No. 84 §§ 2.6, 7.4.)  The fact that Mr. Curley claims he did not

2    learn anything from Apple's confidential information is immaterial.  Courts have recognized the

3    serious concern that experts may use information they have obtained in the course of their expert

4    engagements while prosecuting patents on the same subject matter.  *See Emerson Electric Co. v.*

5    *Sipco, LLC*, No.16-mc-80164-DMR, 2016 WL 6833741 at \*5 (N.D. Cal. Nov. 21, 2016) (noting

6    that "there is a significant risk that [the expert] could inadvertently use [opposing party's] source

7    code to affect the scope and maintenance of . . . patent claims," and stating that "[a]ccess to

8    confidential information can 'provide a tactical advantage to the patent holder in its effort ... to

9    navigate between prior art and its infringement claims'"); *Applied Signal Tech. Inc.*, 2011 WL

10   197811, at \*5 (stating that an "expert witness who acts as an inventor . . . certainly controls the

11   content of his or her own patent applications and thus falls squarely into the parameters of

12   competitive decision-making.").

13        As a result of Mr. Curley's recent work on his own keyboard design, including his sworn

14   deposition testimony stating his intent to patent this design in the future, Mr. Curley does not

15   qualify as an expert under the terms of the Protective Order, and his opinions should be excluded.

16   *See Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-cv-02863-EJD, 2015 WL 3640626, at \*3 (N.D.

17   Cal. June 11, 2015) ("Violation of a prosecution bar also may require a return of any confidential

18   information and a limitation on testimony."); *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp.

19   2d 1087, 1092 (N.D. Cal. 2004) (citing *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir.

20   1980)) ("Federal courts have the inherent power to disqualify expert witnesses to protect the

21   integrity of the adversary process, protect privileges that otherwise may be breached, and promote

22   public confidence in the legal system.").

23        **C.    Mr. Curley's Reply Report Contains New Evidence and New Opinions
             That Were Previously Undisclosed and Should Be Stricken**

24

25        Mr. Curley's Reply Report includes new evidence, new opinions and new theories related

26   to a newly proffered computer-aided-design ("CAD") model that were improperly introduced for

27   the first time on rebuttal, and should be stricken.  In their Opposition, Plaintiffs argue that

28   Mr. Curley created his CAD model in direct response to Apple's expert Dr. Cairns' "unforeseen"

1    criticisms, and that in any event, Mr. Curley's Reply Report does not introduce a new theory.

2    Each of these arguments fails.

3         First, Mr. Curley's new CAD model did not directly respond to "unforeseen" arguments

4    as Plaintiffs claim.  (ECF No. 344-4 at 17.)  In his rebuttal report, Dr. Cairns argued that

5    Mr. Curley "simply identif[ied] an alleged correlation between the presence of debris and certain

6    keyboard behaviors."  (Vetesi Decl. Ex. 4 (Cairns Rebuttal Rpt.) at 48.)  Plaintiffs argue that

7    Dr. Cairns' criticism was "unforeseen," and that it was therefore proper for Mr. Curley to respond

8    to this argument with his new CAD model on reply.  (ECF No. 334-4 at 17.)  This criticism by

9    Dr. Cairns should not have been a surprise, as Apple's experts have previously raised this same

10   criticism of Plaintiffs' other technical expert Dr. Niebuhr, and Mr. Curley claims to have

11   reviewed and relied upon reports and briefs containing those arguments.  (*See* Vetesi Decl. Ex. 7

12   (Curley Rpt.) at Appendix B.)  Further, even if Mr. Curley claims that Dr. Cairns' argument was

13   "unforeseen," his CAD model still does not directly respond to any argument asserted by Dr.

14   Cairns.  Plaintiffs argue that "[b]ecause Mr. Curley used the CAD model in response to Professor

15   Cairns's criticisms—*including his contention that Mr. Curley does not account for the MUK . . .*

16   its use on reply is proper."  (ECF No. 334-3 at 25 (emphasis added).)  However, Mr. Curley ran a

17   CAD model for a ▮▮ MacBook model, which does *not* incorporate the MUK design element and

18   therefore does not respond to Dr. Cairns' criticisms that Mr. Curley did not account for MUK in

19   his reports.[7]  (*See* Vetesi Decl. Ex. 6 (Apple's March 12, 2021 Suppl. Resp. to Interrog. Nos. 7-8)

20   at Ex. D.)

21        Finally, Plaintiffs argue that Mr. Curley's CAD model does not introduce a new theory of

22   defect and simply confirms Mr. Curley's original conclusion.  (ECF No. 334-4 at 18.)  But

23   Mr. Curley purports to identify various ▮▮▮▮ for the first time using his ▮▮ CAD model,

24   which he claims "illustrate specific gaps in the butterfly mechanism that can obstruct the butterfly

25   movement when invaded by particulate debris."  (Vetesi Decl. Ex. 9 (Curley Reply Rpt.) ¶¶ 21,

26

---

[7] The ▮▮ is a 2016 MacBook Pro model that uses ▮▮▮▮▮▮ and also does not

27   incorporate ▮▮▮▮▮▮▮▮▮▮ design elements.  (*See* Vetesi Decl. Ex. 6

(Apple's March 12, 2021 Suppl. Resp. to Interrog. Nos. 7-8) at Ex. D.)

28

1  33.) This constitutes new evidence, new arguments and new theories regarding a purported

2  theory of "defect." Because a rebuttal expert report "cannot be used to advance new arguments or

3  new evidence," Section IV of Mr. Curley's Reply Report related to his CAD model constitutes

4  improper rebuttal testimony and should be stricken. *Matthew Enter., Inc. v. Chrysler Grp. LLC*,

5  No. 13-cv-04236-BLF, 2016 WL 4272430, at *2 (N.D. Cal. Aug. 15, 2016) (citation omitted).

6  *See also Young*, 2021 WL 292549, at *12 (striking expert "opinions incorporating . . . additional

7  citations and arguments [that] were not properly raised or disclosed in its opening brief, and . . .

8  d[id] not respond to any of the opinions of defendant's expert witnesses").

9      **III.    CONCLUSION**

10        For the foregoing reasons and the reasons stated in Apple's opening memorandum, Apple

11  requests that the Court exclude the opinions and testimony of Charles Curley.

12

13    Dated:  August 26, 2021            MORRISON & FOERSTER LLP

14

15                            By: /s/ *Claudia M. Vetesi*
                                  Claudia M. Vetesi
16
                                  Attorneys for Defendant
17                                APPLE INC.

18

19

20

21

22

23

24

25

26

27

28