Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
(415) 981-4800
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*sgrille@girardsharp.com*

Steven A. Schwartz (*pro hac vice*)
Benjamin F. Johns (*pro hac vice*)
Beena M. McDonald (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
*sas@chimicles.com*
*bfj@chimicles.com*
*bmm@chimicles.com*

*Co-Lead Class Counsel*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: MACBOOK KEYBOARD LITIGATION | Case No. 5:18-cv-02813-EJD-VKD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:    Hon. Edward J. Davila<br>Date:     January 19, 2023<br>Time:     9:00 a.m.<br>Courtroom: 4 – 5th Floor |

---

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-CV-02813-EJD-VKD

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................................. XIII

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.     INTRODUCTION ....................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED ........................................ 3

III.   FACTUAL AND PROCEDURAL BACKGROUND ................................ 3

     A.    Plaintiffs' Allegations and Early Case Activities. ............................... 3

     B.    Apple's Motions to Dismiss. ............................................................... 4

     C.    Fact and Expert Discovery ................................................................... 5

     D.    Class Certification Proceedings ........................................................... 5

     E.    *Daubert* Motions and Trial Setting .................................................... 6

     F.    The Settlement Negotiations. .............................................................. 6

IV.   SUMMARY OF SETTLEMENT TERMS ............................................... 7

     A.    The Settlement Class ........................................................................... 7

     B.    Settlement Consideration ..................................................................... 7

     C.    Distribution of Settlement Fund. ......................................................... 8

     D.    Class Notice and CAFA Notice ......................................................... 11

     E.    Release of Claims. ............................................................................. 12

     F.    Attorneys' Fees and Expenses, and Service Awards for the Class
          Representatives ................................................................................... 12

     G.    The Settlement Administrator. ........................................................... 13

V.    ARGUMENT ........................................................................................... 13

     A.    The Settlement Is Fair, Reasonable, and Adequate. .......................... 13

          1.    The Proposed Settlement Is the Product of Arm's Length
               Negotiations Among Experienced Counsel .......................... 14

          2.    The Settlement Treats All Settlement Class Members Equitably. ......... 15

i

3. The Relief Under the Proposed Settlement Is Adequate. ....................... 16

B. The Court Will Be Able to Certify the Class for Purposes of Settlement. ......... 21

1. The Settlement Class Members Are Too Numerous to Be Joined. ......... 22

2. There Are Common Questions of Law and Fact. .................................. 22

3. Plaintiffs' Claims Are Typical of the Class. ............................................ 22

4. Plaintiffs and Class Counsel Will Fairly and Adequately Protect
the Interests of the Class. ........................................................................ 22

5. The Requirements of Rule 23(b)(3) Are Met. ....................................... 23

a. Common Issues of Law and Fact Predominate for
Settlement Purposes. .................................................................... 23

b. A Class Action Is a Superior Means of Resolving This
Controversy. .................................................................................. 24

C. The Proposed Class Notice and Plan for Dissemination Are Reasonable
and Should Be Approved. ........................................................................................ 24

VI. CONCLUSION ............................................................................................................... 25

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Aarons v. BMW of N. Am., LLC*
  2014 WL 4090564 (C.D. Cal. 2014) ........................................................................... 19

4

*Allen v. Bedolla*
  787 F.3d 1218 (9th Cir. 2015) .................................................................................... 13

5

*Banh v. Am. Honda Motor Co., Inc.*
  2021 WL 3468113 (C.D. Cal. 2021) ........................................................................... 16

6

7

*Bellinghausen v. Tractor Supply Co.*
  306 F.R.D. 245 (N.D. Cal. 2015) ................................................................................ 12

8

9

*Carlotti v. ASUS Computer Int'l*
  2019 WL 6134910 (N.D. Cal. 2019) ........................................................................... 17

10

*Carlotti v. ASUS Computer Int'l*
  2020 WL 3414653 (N.D. Cal. 2020) ........................................................................... 10

11

12

*Chess v. Volkswagen Grp. of Am., Inc.*
  2021 WL 5507177 (N.D. Cal. Nov. 24, 2021) ............................................................ 14

13

14

*Churchill Vill., L.L.C. v. Gen. Elec.*
  361 F.3d 566 (9th Cir. 2004) ...................................................................................... 18

15

*Date v. Sony Elecs., Inc.*
  2013 WL 3945981 (E.D. Mich. July 31, 2013) ........................................................... 11

16

17

*Deaver v. Compass Bank*
  2015 WL 8526982 (N.D. Cal. 2015) ........................................................................... 17

18

*Dickey v. Advanced Micro Devices, Inc.*
  2019 WL 4918366 (N.D. Cal. 2019) ........................................................................... 21

19

20

*Federal Ins. Co. v. Caldera Med., Inc.*
  2016 WL 5921245 (C.D. Cal. Jan. 25, 2016) ............................................................. 14

21

22

*Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.*
  No. 5:17-cv-00564 (N.D. Cal. Jan. 10, 2019) ............................................................ 16

23

*Fleming v. Impax Lab'ys Inc.*
  2021 WL 5447008 (N.D. Cal. 2021) ........................................................................... 17

24

25

*Foster v. Adams & Assocs., Inc.*
  2021 WL 4924849 (N.D. Cal. 2021) ........................................................................... 21

26

*Free Range Content, Inc. v. Google, LLC*
  2019 U.S. Dist. LEXIS 47380 (N.D. Cal. Mar. 21, 2019) .......................................... 16

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-CV-02813-EJD-VKD

*Gascho v. Global Fitness Holdings, LLC*
  2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) ............................................................... 11

*Gold v. Lumber Liquidators, Inc.*
  323 F.R.D. 280 (N.D. Cal. 2017) ...................................................................... 22, 23

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ........................................................................ 22, 24

*Hefler v. Wells Fargo & Co.*
  2018 WL 6619983 (N.D. Cal. 2018) ........................................................................ 15

*Hendricks v. StarKist Co.*
  2015 WL 4498083 (N.D. Cal. July 23, 2015) ............................................................. 18

*Horvath v. LG Electronics MobileComm U.S.A., Inc.*
  Case No. 3:11-cv-01576-H-RBB (S.D. Cal. Jan. 14, 2014) ............................................. 18

*Huey v. Apple Inc.*
  Case No. 2018 CA 004200 B (Sup. Ct. Dist. D.C.) ...................................................... 12

*In re American Express Financial Advisors Litigation*
  No. 04 Civ. 1773 (DAB) (S.D.N.Y.) ........................................................................ 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
  2016 WL 3648478 (N.D. Cal. July 7, 2016) ............................................................... 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
  2016 WL 6778406 (N.D. Cal. Nov. 16, 2016) ............................................................. 15

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*
  2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ...................................................... 13, 18, 22

*In re Haier Freezer Consumer Litig.*
  2013 WL 2237890 (N.D. Cal. 2013) ........................................................................ 21

*In re Hyundai & Kia Fuel Econ. Litig.*
  926 F.3d 539 (9th Cir. 2019) .............................................................................. 21

*In re Lenovo Adware Litig.*
  2018 WL 6099948 (N.D. Cal. 2018) ........................................................................ 20

*In re Lidoderm Antitrust Litig.*
  No. 3:14-md-02521-WHO (N.D. Cal. Feb. 21, 2017) ...................................................... 23

*In re Lithium Ion Batteries Antitrust Litig.*
  2017 WL 1086331 (N.D. Cal. 2017) ........................................................................ 17

*In re MacBook Keyboard Litig.*
  2019 WL 1765817 (N.D. Cal. Apr. 22, 2019) ............................................................... 4

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-CV-02813-EJD-VKD

*In re MacBook Keyboard Litig.*
2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ........................................................................ 5

*In re MacBook Keyboard Litig.*
2021 WL 1250378 ................................................................................................................ 23

*In re Magsafe Apple Power Adapter Litig.*
2015 WL 428105 (N.D. Cal. 2015) ...................................................................................... 19

*In re Mego Fin. Corp. Sec. Litig.*
213 F.3d 454 (9th Cir. 2000) ............................................................................................... 21

*In re MyFord Touch Consumer Litig.*
2019 WL 1411510 (N.D. Cal. 2019) .................................................................................... 17

*In re MyFord Touch Consumer Litig.*
No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019) .............................................................. 16

*In re Nexus 6P Prod. Liab. Litig.*
2019 WL 6622842 (N.D. Cal. 2019) .................................................................................... 16

*In re Nissan Radiator/Transmission Cooler Litig.*
2013 WL 4080946 (S.D.N.Y. May 30, 2013) ...................................................................... 18

*In re Oracle Sec. Litig.*
1994 WL 502054 (N.D. Cal. June 16, 1994) ....................................................................... 15

*In re Samsung Top-load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*
2020 WL 2616711 (W.D. Okla. 2020) ................................................................................. 20

*In re Seagate Tech. LLC*
326 F.R.D. 223 (N.D. Cal. 2018) ........................................................................................ 19

*In re Sony VAIO Computer Notebook Trackpad Litigation*
No. 3:09-cv-02109 (S.D. Cal. Aug. 7, 2017) ....................................................................... 16

*In re Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*
2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ................................................................... 20

*J.L. v. Cissna*
2019 WL 415579 (N.D. Cal. 2019) ...................................................................................... 22

*K.H. v. Secretary of Dep't of Homeland Sec.*
2018 WL 6606248 (N.D. Cal. Dec. 17, 2018) ..................................................................... 12

*Kacsuta v. Lenovo (United States) Inc.*
2014 WL 12585783 (C.D. Cal. Sept. 15, 2014) ................................................... 15, 19, 23, 24

*Kearney v. Hyundai Motor Am.*
2012 WL 13049699 (C.D. Cal. Dec. 17, 2012) ................................................................... 18

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-CV-02813-EJD-VKD

*Khoja v. Orexigen Therapeutics, Inc.*
 2021 WL 5632673 (S.D. Cal. 2021) ...................................................................... 15

*Kulesa v. PC Cleaner, Inc.*
 2014 WL 12581769 (C.D. Cal. Feb. 10, 2014) ..................................................... 15

*LaGarde v. Support.com, Inc.*
 2012 WL 13034899 (N.D. Cal. Nov. 2, 2012) ....................................................... 14

*Linney v. Cellular Alaska P'ship*
 151 F.3d 1234 (9th Cir. 1998) ....................................................................... 14, 18

*Lockabey v. Am. Honda Motor Co.*
 No. 37-100-00087755-CBU-BT-CTL (Cal. Super.) ............................................ 10

*Looper v. FCA US LLC*
 2017 WL 11650429 (C.D. Cal. 2017) .................................................................... 20

*Lynch v. Motorola Mobility LLC d/b/a Motorola, et al.*
 No. 1:16-cv-04524 (N.D. Ill.) ............................................................................... 11

*Mazzei v. Money Store*
 829 F.3d 260 (2d Cir. 2016) .................................................................................. 20

*Mergens v. Sloan Valve Co.*
 2017 WL 9486153 (C.D. Cal. Sept. 18, 2017) ...................................................... 23

*Mullins v. Premier Nutrition Corp.*
 2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ....................................................... 24

*Norcia v. Samsung Telecommunications Am., LLC*
 2021 WL 3053018 (N.D. Cal. 2021) ...................................................................... 10

*One Unnamed Deputy Dist. Attorney v. Cty. of Los Angeles*
 2011 WL 13128375 (C.D. Cal. Jan. 24, 2011) ...................................................... 24

*Parsons v. Ryan*
 754 F.3d 657 (9th Cir. 2014) ................................................................................. 22

*Rodriguez v. Hayes*
 591 F.3d 1105 (9th Cir. 2010) ............................................................................... 22

*Schaffer v. Litton Loan Servicing, LP*
 2012 WL 10274679 (C.D. Cal. 2012) .................................................................... 18

*Shin v. Plantronics, Inc.*
 2020 WL 1934893 (N.D. Cal., 2020) ..................................................................... 21

*Sonner v. Premier Nutrition Corp.*
 962 F.3d 1072 (9th Cir. 2020) ................................................................................. 4

xi

*Spann v. J.C. Penney Corp.*
    314 F.R.D. 312 (C.D. Cal. 2016) ..................................................................... 18

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) .......................................................................... 23

*Theodore Broomfield v. Craft Brew All., Inc.*
    2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ................................................... 13

*Tyson Foods, Inc. v. Bouaphakeo*
    136 S. Ct. 1036 (2016) ................................................................................... 23

*Van Lith v. iHeartMedia + Entm't, Inc.*
    2017 WL 1064662 (E.D. Cal. Mar. 20, 2017) ................................................. 15

*Wahl v. Yahoo! INC.*
    2018 WL 6002323 (N.D. Cal. Nov. 15, 2018) ................................................. 25

*Walker v. Life Ins. Co. of the Sw.*
    2021 WL 1220692 (C.D. Cal. 2021) ............................................................... 20

*Walsh v. CorePower Yoga LLC*
    2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ................................................... 25

*Wolin v. Jaguar Land Rover North Am., LLC*
    617 F.3d 1168 (9th Cir. 2010) ........................................................................ 24

*Youth Just. Coalitions v. City of Los Angeles*
    2020 WL 9312377 (C.D. Cal. 2020) ............................................................... 21

**Statutes**

28 U.S.C. § 1715 ................................................................................................... viii, 11

815 Ill. Comp. Stat. § 505/1 ...................................................................................... 3

Cal. Bus. & Prof. Code § 17200 ................................................................................ 3

Cal. Civ. Code § 1750 ................................................................................................ 3

Cal. Civ. Code § 1791.1 ............................................................................................. 3

Cal. Civ. Code § 1792 ................................................................................................ 3

Fla. Stat. § 501.204 .................................................................................................... 3

Mich. Comp. Laws § 445.901 .................................................................................... 4

N.J. Stat. Ann. § 56:8-1 ............................................................................................. 3

N.Y. Gen. Bus. Law § 349 ......................................................................................... 3

Wash. Rev. Code § 19.86 ........................................................................................... 3

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-CV-02813-EJD-VKD

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on January 19, 2023 at 9:00 a.m., before the Honorable Edward J. Davila of the United States District Court for the Northern District of California, Plaintiffs Zixuan Rao, Joseph Baruch, Bo Laurent, Ashley Marin, Kyle Barbaro, Steve Eakin, Michael Hopkins, Adam Lee, Kevin Melkowski, Lorenzo Ferguson, and Benjamin Gulker, will and do hereby move the Court, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for entry of the proposed Preliminary Approval Order, and request that the Court set the following schedule:

| Event | [Proposed] Deadline |
|---|---|
| Class Action Fairness Act notice to state and federal officials, under 28 U.S.C. § 1715 | Within 10 days after filing of the motion for preliminary approval |
| Notice Date | No later than 25 days after entry of preliminary approval order |
| Notice to be substantially completed | No later than 60 days after entry of preliminary approval order |
| Plaintiffs to move for final approval of the settlement | 60 days after entry of preliminary approval order |
| Plaintiffs to move for attorneys' fees, expenses, and service awards | 60 days after entry of preliminary approval order |
| Deadline for the submission of objections and requests for exclusion, and opposition or objections to Plaintiffs' motion for attorneys' fees, expenses, and service awards | 95 days after entry of preliminary approval order |
| Reply briefs in support of final approval and motion for attorneys' fees, expenses, and service awards, and responses to any timely objections | 120 days after entry of preliminary approval order |
| Deadline to file a claim | 120 days after entry of preliminary approval order |
| Final Fairness Hearing | At least 130 days after entry of preliminary approval order |

1    The Motion is based on this Notice of Motion, the incorporated memorandum of points and

2    authorities, the Joint Declaration of Simon S. Grille and Steven A. Schwartz ("Joint Decl.") filed

3    herewith, the record in this action, the argument of counsel, and any other matters the Court may

4    consider.

5    **MEMORANDUM OF POINTS AND AUTHORITIES**

6    **I.      INTRODUCTION**

7          After four years of litigation and intensive settlement negotiations, Plaintiffs seek preliminary

8    approval of a $50,000,000 non-reversionary cash settlement to resolve this class action litigation and

9    compensate consumers who experienced keyboard failures after purchasing an Apple MacBook

10   computer manufactured from 2015 to 2019 with a "butterfly" keyboard—the allegedly defective

11   component at issue in this case. The settlement meets all the criteria for preliminary approval under

12   Rule 23 of the Federal Rules of Civil Procedure and the Northern District's Procedural Guidance for

13   Class Action Settlements ("Guidelines").[1] The settlement was reached after more than two years of

14   arm's length negotiations, supervised first by Hon. Jay Gandhi (Ret.) and most recently by Hon.

15   Edward Infante (Ret.). The settlement follows three motions to dismiss by Apple, the Court's class

16   certification and *Daubert* rulings, FED. R. CIV. P. 23(f) briefing in the Ninth Circuit, the review of 1.2

17   million pages of documents, and 38 depositions, including 12 expert depositions. The well-developed

18   record gave the parties a thorough understanding of the strengths and weaknesses of their positions.

19   But for the settlement, the case was scheduled to proceed to trial in March 2023.

20         All persons and entities within the United States who purchased, other than for resale, an

21   Apple MacBook from model years 2015-2017, an Apple MacBook Pro from model years 2016-2019

22   (excluding the 16" MacBook Pro released in November 2019), or an Apple MacBook Air from model

23   years 2018-2019 (the "Class Computers")[2] and experienced a keyboard issue, are eligible to claim a

24   share of the proposed settlement. Settlement Class Members also will remain eligible for Apple's

25   Keyboard Service Program ("KSP"), which provides free keyboard repairs for four years from the

26

27   [1] https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

28   [2] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement
     Agreement, filed concurrently herewith as Exhibit 1.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-CV-02813-EJD-VKD

1   date of purchase. The plan of allocation for the fund provides for greater compensation to Settlement

2   Class Members who experienced multiple issues resulting in two or more keyboard replacements.

3   These Settlement Class Members will be paid based on Apple's records without having to file a

4   claim. The plan reserves a more modest recovery for Settlement Class Members who received a

5   keyboard repair with which they were unsatisfied but who did not return to Apple or an Authorized

6   Service Provider for a second free keyboard replacement. Given typical participation rates in class

7   action settlements, Class Counsel anticipate $300 payments to Settlement Class Members who had to

8   obtain multiple keyboard replacements, payments of up to $125 to Settlement Class Members who

9   had to obtain a single keyboard replacement, and payments of up to $50 to Settlement Class Members

10  who obtained key cap replacements only.

11          Continued litigation carried considerable risk of a lesser recovery or none at all. Apple

12  vigorously denies liability and has argued that changes it implemented to the butterfly keyboard

13  components and varying repair rates across Class Computer models show there is no common defect.

14  Plaintiff would have to maintain class certification through entry of judgment and overcome

15  numerous defenses including Apple's arguments that it lacked sufficient presale knowledge to give

16  rise to a duty to disclose the alleged defect, that it owes no damages because it provided adequate

17  service through its KSP, and that the vast majority of purchasers did not experience keyboard issues.

18  Even if Plaintiffs were to maintain a class and prevail at trial, fairly allocating a trial judgment would

19  require some form of claims procedure to ensure adequate compensation for Settlement Class

20  Members who experienced one or more keyboard issues (in contrast to those who used their Class

21  Computer throughout its useful life without incident). The settlement represents 10% of Plaintiffs'

22  most optimistic damages estimate and close to 30% of a more conservative estimate. The settlement

23  provides Settlement Class Members with the opportunity to achieve a certain recovery with the

24  benefit of a claimant-friendly procedure supervised by an experienced claims administrator. It also

25  ensures they will be compensated now, as opposed to waiting years for an uncertain recovery. The

26  settlement is a win for Settlement Class Members and meets all criteria for preliminary approval.

27          Therefore, as set forth in further detail below, Plaintiffs respectfully request that the Court

28  enter the proposed order to authorize notice to the class and schedule further settlement proceedings.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-02813-EJD-VKD

## II.   STATEMENT OF ISSUES TO BE DECIDED

Should the Court, pursuant to Fed. R. Civ. P. 23(e)(1)(B), preliminarily approve the parties'

settlement, authorize notice to the proposed class and schedule further settlement proceedings?

## III.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs respectfully refer the Court to the Joint Declaration of Simon S. Grille and Steven A.

Schwartz in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement ("Joint

Decl.") for additional description of the factual and procedural history of this case, the claims,

counsel's investigation and settlement negotiations, the risks and uncertainties presented in this

litigation, the course of motion practice and discovery, including expert witness proceedings, and other

factors bearing on the settlement's fairness and adequacy. As described therein and below, the parties

vigorously litigated this case for nearly four years before agreeing to a settlement in principle.

### A.   Plaintiffs' Allegations and Early Case Activities.

Beginning in May 2018, four lawsuits against Apple were filed in this District asserting claims

arising out of an alleged defect in Apple's MacBook computers equipped with "butterfly" keyboards.

On June 26, 2018, the Court consolidated these actions and on September 24, the Court appointed

Girard Sharp LLP (then Girard Gibbs LLP) and Chimicles Schwartz Kriner & Donaldson-Smith LLP

(then Chimicles & Tikellis LLP) as Interim Class Counsel. Dkt. Nos. 27, 62; *see also* Dkt. No. 33.

Plaintiffs filed their Consolidated Class Action Complaint on October 11, 2018 asserting

claims against Apple for violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et*

*seq.* ("UCL"); violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

("CLRA"); fraudulent concealment; breach of the covenant of good faith and fair dealing; violations

of the Song-Beverly Consumer Warranty Act for breach of the implied warranty of merchantability,

Cal. Civ. Code §§ 1791.1 & 1792; violations of the Washington Consumer Protection Act, Wash. Rev.

Code §§ 19.86, *et seq.* ("WCPA"); violations of the Florida Deceptive and Unfair Trade Practices Act,

Fla. Stat. § 501.204, *et seq.* ("FDUTPA"); violations of the Illinois Consumer Fraud and Deceptive

Business Practices Act, 815 Ill. Comp. Stat. §§505/1, *et seq.* ("ICFA"); violations of the New Jersey

Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.* ("NJCFA"); violations of New York General

Business Law § 349, N.Y. Gen. Bus. Law § 349 ("GBL section 349"); and violations of the Michigan

Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq*. ("MCPA"). Dkt. No. 66.

**B.    Apple's Motions to Dismiss.**

Apple moved to dismiss the Consolidated Class Action Complaint on December 3, 2018, arguing, among other things, that the KSP it implemented after this action commenced mooted Plaintiffs' CLRA and Song-Beverly claims. Dkt. No. 72. The Court heard arguments on February 21, 2019 (Dkt. No. 92), and on April 22, 2019, the Court granted in part and denied in part the motion to dismiss with leave to amend. *In re MacBook Keyboard Litig.*, 2019 WL 1765817, at *1 (N.D. Cal. Apr. 22, 2019). The Court dismissed Plaintiffs' claim for breach of the covenant of good faith and fair dealing, and concluded that Plaintiffs had not pled "any facts showing that the Keyboard Service Program does not moot their claims under the CLRA and the Song-Beverly Act" and therefore dismissed those claims as well as the claim under the UCL's unlawful prong. *Id.* at *4 & 8-9. The Court, however, declined to dismiss the fraud by omission claims, finding that Plaintiffs had adequately alleged that Apple had a duty to disclose the alleged defect and that the defect would be material to a reasonable consumer. *Id.* at *5-7. The Court also found that Plaintiffs had sufficiently pleaded a claim under the UCL's unfair prong. *Id.* at *9.

On May 13, 2019, Plaintiffs filed their First Amended Consolidated Class Action Complaint ("FAC"), electing not to replead the claim for breach of the covenant of good faith and fair dealing, but otherwise asserting the same claims as in the Consolidated Class Action Complaint. Dkt. No. 117. Apple then moved to dismiss the FAC on June 4, arguing that Plaintiffs lacked standing to pursue their claims and that the CLRA and Song-Beverly claims should again be dismissed because the KSP mooted the claims. Dkt. No. 130. The Court heard arguments on November 21 (Dkt. No. 161), and on November 22 it denied Apple's motion to dismiss. Dkt. No. 164.

Over Apple's opposition, on July 2, 2020, the Court granted Plaintiffs leave to file a Second Amended Consolidated Class Action Complaint ("SAC") to add several named plaintiffs and to modify the proposed class definition to specify the models of MacBook laptops included as Class Computers. Dkt. No. 218. On July 16, Apple moved to dismiss the UCL and equitable relief claims in the SAC under *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir. 2020). Dkt. No. 221. On October 13, the Court granted Apple's motion and dismissed with prejudice Plaintiffs' UCL claims

4

1    and all other claims seeking an injunction, restitution, or other equitable relief. *In re MacBook*

2    *Keyboard Litig.*, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020).

3        **C.  Fact and Expert Discovery**

4            The parties' settlement negotiations were informed by extensive discovery. Class counsel

5    propounded four sets of document requests and three sets of interrogatories to Apple and served ten

6    subpoenas *duces tecum* on non-party resellers and repair providers. Joint Decl., ¶¶ 16-17. After

7    extensive negotiation, Apple produced about 1.2 million pages of documents, and non-parties

8    produced an additional 1,237 pages. *Id.* Class Counsel reviewed, analyzed, and coded all of these

9    documents, which informed class certification, expert analysis, and settlement discussions. Class

10   counsel also negotiated responses and multiple rounds of supplemental responses to Plaintiffs'

11   interrogatories, which provided critical information concerning sales volume and repair rates. Class

12   counsel deposed 15 Apple employees, including its Rule 30(b)(6) designees, and defended depositions

13   of each of the 11 Class Representatives. *Id.* Each Plaintiff responded to 19 document requests, 8

14   interrogatories, a request for inspection of their MacBooks, and produced documents. Expert

15   discovery included two rounds of depositions and document productions, with Plaintiffs taking 7

16   depositions of Apple's experts and Apple taking 5 depositions of Plaintiffs' experts. The parties also

17   engaged in significant discovery motion practice before Judge DeMarchi. Dkt. Nos. 87, 89, 95, 98,

18   101, 170, 183, 189, 198.

19       **D.  Class Certification Proceedings**

20           In August 2020, Plaintiffs moved to certify a seven-state class of Class Computer purchasers

21   (as well as seven constituent state subclasses of purchasers of Class Computers in California, New

22   York, Florida, Illinois, New Jersey, Washington, and Michigan for case management purposes) as to

23   their claims for: (1) breach of implied warranty in violation of the Song-Beverly Act; (2) violations of

24   the UCL[3]; (3) violations of the CLRA; (4) violations of the WCPA; (5) violations of the FDUTPA; (6)

25   violations of the ICFA; (7) violations of the NJCFA; (8) violations of GBL section 349; and (9)

26   violations of the MCPA. Dkt. No. 229. Apple opposed the motion and also moved to strike the

27   opinions of Plaintiffs' experts Hal J. Singer, Ph.D. and David Niebuhr, Ph.D. Dkt. Nos. 235, 238, 239.

28

---

[3] As noted above, the Court later dismissed Plaintiffs' UCL claims.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-02813-EJD-VKD

The Court held a hearing on the motions on February 4, 2021. Dkt. No. 287. On March 8, the Court granted Plaintiffs' motion and certified the seven-state class and subclasses under Rules 23(a) and 23(b)(3). Dkt. No. 298 at 29-30. The Court also granted in part and denied in part Apple's motion to exclude the expert opinions of Plaintiffs' damages expert, Dr. Singer, excluding his regression analysis but finding that his conjoint analyses was sufficiently reliable and relevant. *Id.* at *4-6. Although the Court found that Dr. Niebuhr was qualified to offer his opinions, the Court excluded them as "irrelevant at the class certification stage" but did so "without prejudice" to offering him "as an expert witness for other purposes at trial." *Id.* at *8. Apple filed a petition with the Ninth Circuit for permission to appeal the Court's Class Certification Order pursuant to Federal Rule of Civil Procedure 23(f), which Plaintiffs opposed. The Ninth Circuit denied Apple's petition on October 12, 2021.

**E.    *Daubert* Motions and Trial Setting**

Following class certification, Plaintiffs served merits expert reports on April 13, Apple served rebuttal expert reports on May 13, and Plaintiffs served reply expert reports on May 27, 2021. Joint Decl., ¶ 13. On July 15, 2021, Apple moved to strike the expert opinions of Plaintiffs' experts Dr. Singer, Charles Curley, and Dr. Niebuhr. Dkt. Nos. 333, 334, 336. On January 25, 2022, the Court denied all of Apple's motions to strike. Dkt. No. 386. The Court next held a Trial Setting Conference on January 27, 2022 and set a trial date for March 21, 2023. Dkt. Nos. 390, 398.

**F.    The Settlement Negotiations.**

After a period of factual development, the parties began discussing settlement in the spring of 2020. Judge Gandhi conducted full-day mediation sessions with the parties in June and August 2020. The parties then continued to engage in settlement discussions under Judge Gandhi's supervision leading up to the February 4, 2021 class hearing, but reached an impasse. The parties did not re-engage on settlement until June 2021, after the Court decided class certification. The parties exchanged multiple proposals and counter-proposals but made limited progress. After the Court denied Apple's *Daubert* motions, the parties appeared before Judge Infante for a third mediation, on February 8, 2022. The parties reached agreement in principle at the mediation and signed a term sheet on February 10. The parties then negotiated the settlement agreement and executed it on July 18, 2022. *See generally* Joint Decl., ¶¶ 19-20.

## IV.    SUMMARY OF SETTLEMENT TERMS

### A.    The Settlement Class

The proposed Settlement Class consists of all persons and entities in the United States who purchased, other than for resale, one or more MacBooks manufactured from 2015 to 2019 with a "butterfly" keyboard.[4] These are the same MacBooks that are subject to Apple's KSP and covered in Plaintiffs' operative complaint. Dkt. No. 219.

The Settlement Class excludes Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns; all judges assigned to this case and any members of their immediate families; the Parties' counsel in this litigation; and all persons who validly request exclusion from the Settlement Class. SA at §§ JJ, KK.

### B.    Settlement Consideration

Under the Settlement, Apple will pay $50,000,000 to create a non-reversionary settlement fund for Settlement Class Members. *Id.* at § 2.1. Notice costs, administration expenses, attorneys' fees and costs, and service awards awarded by the Court will be deducted from the fund. *Id.* at § 2.3. The balance (the "Net Settlement Fund") will be applied to pay claims. Plaintiffs will seek up to 30% of the fund in attorneys' fees, up to $2 million in reimbursement of expenses and a $5,000 service award for each of the class representatives. *Id.* at §§ 8.1-8.2; Joint Decl., ¶¶ 53-58. Based on information provided by the parties to date, the Settlement Administrator has agreed to perform all settlement notice and administration duties required by the Settlement Agreement at a cost not expected to exceed $1,400,000.  Joint Decl., ¶ 44.

Settlement Class Members will also remain eligible for Apple's KSP, which provides four years of protection from the date of purchase for all of the symptoms of the alleged defect such as stuck keys or nonresponsive keys. SA at § 3.1.1. Depending on the keyboard issues presented, Settlement Class

---

[4] The MacBook (Retina, 12-inch, Early 2015), MacBook (Retina, 12-inch, Early 2016), MacBook (Retina, 12-inch, 2017), MacBook Air (Retina, 13-inch, 2018), MacBook Air (Retina, 13-inch, 2019), MacBook Pro (13-inch, 2016, Two Thunderbolt 3 Ports), MacBook Pro (13-inch, 2017, Two Thunderbolt 3 Ports), MacBook Pro (13-inch, 2019, Two Thunderbolt 3 Ports), MacBook Pro (13-inch, 2016, Four Thunderbolt 3 Ports), MacBook Pro (13-inch, 2017, Four Thunderbolt 3 Ports), MacBook Pro (15-inch, 2016), MacBook Pro (15-inch, 2017), MacBook Pro (13-inch, 2018, Four Thunderbolt 3 Ports), MacBook Pro (15-inch, 2018), MacBook Pro (13-inch, 2019, Four Thunderbolt 3 Ports), and MacBook Pro (15-inch, 2019). Ex. 1 (Settlement Agreement ("SA")) at §§ H, JJ, KK.

7

Members may receive a free replacement of their computer topcase, which is the laptop assembly that contains the entire keyboard as well as the battery, trackpad, speakers. Joint Decl., ¶ 24.  The KSP thus provides Settlement Class Members with a new keyboard and other major components. *Id*.

**C.**      **Distribution of Settlement Fund.**

All Settlement Class Members who went to Apple or an Authorized Service Provider and received a "Topcase Replacement" or a "Keycap Replacement" within four years after the date they purchased their Class Computer are eligible for a cash payment. SA at § 3.2. A "Topcase Replacement" refers to the replacement of the full keyboard module (including the battery, trackpad, speakers, top case, and keyboard), performed by Apple or an Apple Authorized Service Provider.  *Id*. at § 3.2.1 A "Keycap Replacement" refers to the replacement of one or more keycaps on a keyboard, performed by Apple or an Apple Authorized Service Provider, and does not involve replacement of the full keyboard module. *Id.*. Apple has records of the Settlement Class Members who received Topcase and Keycap Replacements and will provide them to the Settlement Administrator. *Id.* at § 3.2.2. Settlement Class Members can receive compensation for each Class Computer they purchased. *Id.* at § 3.1.3.

The allocation plan is apt and well-tailored. To determine payment amounts, the Settlement Administrator will divide Claimants into three groups. Group 1 consists of Settlement Class Members who received two or more Topcase Replacements from Apple or an Authorized Service Provider within four years of purchase based on Apple's records. Group 1 Claimants do not need to submit a claim to receive compensation. *Id.* at § 3.4.3.1. Settlement Class Members may become eligible for Group 1 payment until two years from preliminary approval. *Id.* at § 3.4.4. Group 1 payments will be initially set at $300 but may increase up to a cap of $395. *Id.* at §§ 3.4.3.1; 3.4.4. Group 2 consists of Settlement Class Members who obtained a single Topcase Replacement from Apple or an Authorized Service Provider within four years of purchase, and who attest on the Claim Form that the repair did not resolve their keyboard issues. *Id.* at § 3.4.3.2. Group 3 consists of Settlement Class Members who obtained one or more Keycap Replacements (but not Topcase Replacements) within four years of purchase, and who attest on the Claim Form that the repair did not resolve their keyboard issues. *Id.* at § 3.4.3.3.

Unlike Group 1, Group 2 and Group 3 claimants must submit a Claim Form to receive

payment. *Id.* at § 3.3.1. Group 2 Claimants can receive up to $125 while Group 3 Claimants can receive up to $50. *Id.* at §§ 3.4.3.2; 3.4.3.3. The Claim Form will be pre-populated with Class Member contact information to the extent it is reasonably practicable and Settlement Class Members will be able to update or confirm their current contact information. *Id.* at §§ 3.3.2-3.3.3. To be eligible for payment, Group 2 and 3 Settlement Class Members must confirm under oath that (1) they purchased a Class Computer in the United States, (2) they did not purchase the Class Computer for resale, (3) they received a Topcase or Keycap Replacement, and (4) the repair did not resolve their keyboard issues. *Id.* at § 3.3.4. If a Class Member receives a Claim Form with pre-populated responses to (1) and (3) (indicating that Apple has their records), they will not be required to submit supporting documentation. *Id.* at § 3.3.5. If a Settlement Class Member's Claim Form is not pre-populated, they will need to submit reasonable documentation or information to support their claims and the Settlement Administrator will make a determination regarding the sufficiency of the documentation or information provided. *Id.* at §§ 3.3.5-3.3.6.

After the Claim Period ends, the Settlement Administrator will deduct from the Net Settlement Fund the amount sufficient to pay $300 to each Group 1 Claimant. *Id.* at § 3.4.4. The Settlement Administrator will also set aside a reserve amount sufficient to pay $300 to the number of Settlement Class Members projected to become a future Group 1 Claimant within two years after the Court grants preliminary approval. The Settlement Administrator will consult with the parties to determine the reserve amount using Apple's records and projections. *Id.*

The amount remaining in the settlement fund after the above amounts are set aside for Group 1 claimants will then be divided among eligible Group 2 and 3 claimants on a proportionate basis using a set of formulas that account for the number of claims in each group and the maximum value of those claims. *Id.* at § 3.4.5. Group 2 Claimants will receive up to $125 and Group 3 Claimants will receive between up to $50. Joint Decl., ¶ 35. If, however, the payment amount for each Group 3 Claimant exceeds the $50 limit, any excess will be redistributed to Group 2 Claimants up to the $125 cap. SA at § 3.4.5.5. If a Group 2 payment would exceed the $125 cap, any such excess will be redistributed to Group 1 Claimants up to the $395 cap, including a proportional increase of the amount to be paid to Settlement Class Members who become Group 1 Claimants within two years after Preliminary

9

Approval. *Id.* Any Class Member who qualifies as a Group 1 Claimant within two years after preliminary approval and who did not receive a Group 1 payment, or was paid as a Group 2 Claimant in the first round of payments, will be paid up to the Group 1 amount, subject to a *pro rata* increase or reduction discussed above. *Id.* at § 3.5.1.

With respect to the mechanics of payment, after awards to Claimants are calculated following the conclusion of the Claims Period (120 days after preliminary approval), Class Counsel will submit a proposed Order to the Court directing payment be made to eligible Claimants and providing that the payments to Settlement Class Members who may become Group 1 Claimants within two years of preliminary approval may be reduced if the actual number exceeds Apple's projections. *Id.* at § 3.4.6. If, after that Order is entered and carried out, there are still sufficient funds remaining in the settlement fund, the Settlement Administrator will pay up to $395 to Group 1 Claimants. *Id.* at § 3.5.2. Any remaining funds may be directed to supplemental payments to Group 2 and 3 Claimants up to the $125 or $50 caps or in a manner the Court approves, including *cy pres*. *Id.*

Because all Group 1 Settlement Class Members will receive payment based on Apple's records, the effective claims rate for this group will be at or near 100%. Joint Decl., ¶ 38. For Group 2 and 3 Claimants, Class Counsel expect a claims rate of 15% to 25% for Settlement Class Members who appear in Apple's records and do not need to submit documentation or information in support of their claim. *Id.* For Settlement Class Members required to submit documentation or information, the claims rate will be lower, an estimated 5% or less. *Id.* These claims rate estimates are based on discussions with the Settlement Administrator. *Id.*, ¶¶ 39-40.

The projected claims rates are consistent with Class Counsel's experience, which includes cases with claims rates ranging from less than 1% to 50%, as well as rates in comparable product defect cases. *Id.*; *see also Carlotti v. ASUS Computer Int'l*, 2020 WL 3414653, at *4 (N.D. Cal. 2020) (noting that in several defect cases the claims rate was between 4.7 to 10.9% and approving settlement with 4% claims rate in case involving allegedly defective laptops); *Norcia v. Samsung Telecommunications Am., LLC*, 2021 WL 3053018, at *3 (N.D. Cal. 2021) (approving settlement involving smartphones with 2% claims rate); *see also Lockabey v. Am. Honda Motor Co.*, No. 37-100-00087755-CBU-BT-CTL (Cal. Super.); *Lynch v. Motorola Mobility LLC d/b/a Motorola, et al.*, No.

1:16-cv-04524 (N.D. Ill.); *In re Am. Express Fin. Advisors Litig.*, No. 04 Civ. 1773 (DAB) (S.D.N.Y.);

Joint Decl., ¶ 41 & Ex. A (N.D. Cal. Guidance Chart). Claim submission rates are highly fact

dependent and driven by factors such as the nature of the case, the severity of the issue, the cost of the

underlying product or service, the methods for notice, and the accessibility of the claim form. *See Date

v. Sony Elecs., Inc.*, 2013 WL 3945981, at *9-10 (E.D. Mich. July 31, 2013) ("[M]any factors affect

response rates and this ratio should not be given great significance.") (citation omitted); *Gascho v.

Global Fitness Holdings, LLC*, 2014 WL 1350509, at *30 (S.D. Ohio Apr. 4, 2014). Class Counsel in

this case have worked to simplify and streamline the claims process, recognizing the need both to limit

recovery to eligible claimants to prevent fraud while also optimizing recovery for those who

experienced repeat issues. Joint Decl., ¶ 40.

**D.      Class Notice and CAFA Notice.**

Based on Apple's purchase, registration, and other databases, Apple has records of contact

information (either email address or physical mailing address) for more than 95% of the Settlement

Class. Joint Decl., ¶ 46. Apple will provide this information to the Settlement Administrator. *Id.* The

Settlement Administrator will send direct email notice to each Class Member for whom Apple has a

valid email address. SA at § 7.3.3. Class Counsel has worked with the Claims Administrator to

format these emails in a manner that maximizes the likelihood they will be received and understood

by Settlement Class Members. If Apple does not have a valid email address for a Class Member, or

the Settlement Administrator is able to determine the email notice was returned as undeliverable, the

Settlement Administrator will mail a postcard version of the Notice. *Id.* at § 7.3.4. If a postcard

Notice is returned by the U.S. Postal Service with a forwarding address, the Settlement Administrator

will re-mail the postcard notice to that address. *Id.* Notice will also be posted on the settlement

website and the Settlement Administrator will establish a toll-free telephone number Settlement Class

Members can call for assistance in filing a claim. *Id.* at §§ 7.3.1-7.3.2. Apple will direct the

Settlement Administrator to provide notice to governmental enforcement authorities, consistent with

28 U.S.C. § 1715. SA at § 4.2.

---

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-02813-EJD-VKD

1          **E.**      **Release of Claims.**

2          The proposed release applies to claims arising from the facts underlying the claims and

3    allegations in this action. SA at § 10.1 In accordance with the Guidelines, the release appropriately

4    tracks the claims in the SAC. *See, e.g.*, *K.H. v. Secretary of Dep't of Homeland Sec.*, 2018 WL

5    6606248, at *4 (N.D. Cal. Dec. 17, 2018) ("Because the release is appropriately limited to claims

6    related to those litigated in this lawsuit, the Court finds it is sufficiently narrow to support

7    approval."). The release also extends to *Huey v. Apple Inc.*, Case No. 2018 CA 004200 B, pending in

8    the Superior Court of the District of Columbia—a parallel suit against Apple pending in the Superior

9    Court of the District of Columbia. Plaintiff Huey joins in the settlement agreement.

10         **F.**      **Attorneys' Fees and Expenses, and Service Awards for the Class Representatives.**

11         Class Counsel will apply for an award of attorneys' fees and reimbursement of litigation costs,

12   together with service awards for the class representatives, at least 35 days before the due date for

13   objections. SA at §§ 8.1-8.7. The fee application will be posted immediately on the settlement

14   website. *Id.* at § 7.3.1. Class Counsel expect to apply for a fee of up to 30% of the common fund.

15   Joint Decl., ¶¶ 53-55.  Class Counsel's total lodestar, through May 2022, is approximately

16   $13,599,113 using current rates and representing 27,358.8 hours of work on this matter. *Id.* Thus if

17   Class Counsel were to submit their fee application now, the multiplier corresponding to an award of

18   30% of the fund would be approximately 1.1. *Id.* Class Counsel also will seek reimbursement of case

19   expenses, which include expert witness fees, in an amount not to exceed $2 million. *Id*. The parties

20   have reached no agreement on the amount of Attorneys' Fees, and Apple has reserved the right to

21   object or oppose Class Counsel's requests for Attorneys' Fees and Expenses or for Service Awards.

22   SA at § 8.2.

23         Class Counsel also intend to apply for service awards of up to $5,000 for each of the Class

24   Representatives. SA at § 8.6; *see Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D.

25   Cal. 2015) ("In this district, a $5,000 payment is presumptively reasonable."). Each Plaintiff devoted

26   substantial time to this case, including by assisting counsel in preparing the complaints,

27   communicating with Class Counsel about case developments, responding to written discovery

28   requests, gathering and producing documents, and (except plaintiff Huey) sitting for a deposition.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-02813-EJD-VKD

1

**G.      The Settlement Administrator.**

2        Class Counsel retained JND as the settlement administrator after sending requests for proposal

3   to four leading class action administrators and receiving proposals from each of them. Joint Decl., ¶

4   42-45. After reviewing all the proposals and consulting with Apple, Class Counsel selected JND

5   based on its qualifications and competitive bid. *Id*. The Court previously approved the parties'

6   selection of JND to distribute class notice. Dkt. No. 389 at 3. Administrative costs will be paid from

7   the settlement fund. Based on information provided by the parties to date, the Settlement Administrator

8   has agreed to perform all settlement notice and administration duties required by the Settlement

9   Agreement at a cost not expected to exceed $1,400,000. Joint Decl., ¶ 44. In addition to managing the

10  notice program and receiving and processing claims and opt-outs, JND will maintain a dedicated

11  settlement website containing links to the notice, claim form, and all other relevant settlement

12  documents. *Id*. ¶ 45.

13  **V.      ARGUMENT**

14       **A.      The Settlement Is Fair, Reasonable, and Adequate.**

15       All of the requirements for preliminary approval are met in this case. "[T]here is a strong

16  judicial policy that favors settlements, particularly where complex class action litigation is

17  concerned.'" *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,

18  2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223

19  (9th Cir. 2015)). Moreover, the heightened scrutiny that applies to settlements entered into prior to

20  formal class certification "does not apply to this case because the Court previously certified a class."

21  *Theodore Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505, at *6 (N.D. Cal. Feb. 5, 2020).

22       Rule 23(e)(2) directs the Court to consider whether "the class representatives and class

23  counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the

24  relief provided for the class is adequate"; and "the proposal treats class members equitably relative to

25  each other." These enumerated factors under Rule 23(e)(2) "focus the court and the lawyers on the

26  core concerns of procedure and substance that should guide the decision whether to approve the

27  proposal." FED. R. CIV. P. 23(e)(2) advisory committee's note (2018). Thus, at preliminary approval,

28  courts generally ask whether "the proposed settlement (1) appears to be the product of serious,

13

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br>CASE NO. 5:18-cv-02813-EJD-VKD

1   informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class

2   representatives or other segments of the class; (3) falls within the range of possible approval; and (4)

3   has no obvious deficiencies." *Chess v. Volkswagen Grp. of Am., Inc.*, 2021 WL 5507177, at *7 (N.D.

4   Cal. Nov. 24, 2021) (citation omitted); *see also* FED. R. CIV. P. 23(e)(1)(B) (question at preliminary

5   approval is whether "giving notice is justified by the parties' showing that the court will likely be able

6   to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on

7   the proposal."). Application of these factors demonstrates that the settlement here is fair, reasonable,

8   and adequate, in the best interests of the class, and will likely merit final approval.

9           **1.**      **The Proposed Settlement Is the Product of Arm's Length Negotiations**

10                      **Among Experienced Counsel.**

11        Under Rule 23(e)(2), the Court considers whether the class representatives and class counsel

12  adequately represented the class and whether the settlement proposal was negotiated at arm's length.

13  To negotiate a fair and reasonable settlement, "the parties [must] have sufficient information to make

14  an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th

15  Cir. 1998).

16        This Settlement followed over two years of hard-fought negotiations supervised by two retired

17  judges. *See* FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment (stating that

18  "involvement of a neutral" in negotiations "may bear on whether they were conducted in a manner

19  that would protect and further the class interests."); *Federal Ins. Co. v. Caldera Med., Inc.*, 2016 WL

20  5921245, at *5 (C.D. Cal. 2016). Moreover, as discussed in Section III(C) above, the parties reached

21  their settlement after extensive document, deposition and expert discovery that addressed the essential

22  factual questions in this case: the scope of the alleged keyboard issues, technical details concerning

23  their source, the extent and timing of Apple's knowledge of the alleged keyboard defect, the means

24  by which Apple could have disclosed it to class members, and Apple's procedures for responding to

25  Class Computer customer complaints and warranty claims, including the KSP and its efficacy. *See,*

26  *e.g.*, *LaGarde v. Support.com, Inc.*, 2012 WL 13034899, at *7 (N.D. Cal. Nov. 2, 2012) (existence of

27  robust discovery indicates plaintiffs were sufficiently informed during settlement negotiations).

28  Before the parties reached their agreement, Plaintiffs' experts had (1) developed a class-wide

---

14

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-02813-EJD-VKD

1    damages model through the use of a choice-based conjoint survey, and (2) investigated the alleged

2    defect by reviewing failure analysis documents and examining and testing the internal components of

3    each of the Class Computers. *See Kacsuta v. Lenovo (U.S.) Inc.*, 2014 WL 12585783, at *5 (C.D. Cal.

4    2014) (that class counsel hired engineering experts to test and analyze the computers at issue weighed

5    in favor of the settlement).

6        Class Counsel's discovery and expert work, further informed by this Court's opinions on a

7    series of motions, enabled Class Counsel to "enter[] the settlement discussions with a substantial

8    understanding of the factual and legal issues from which they could advocate for their respective

9    positions and which are necessary for a robust negotiation." *Kulesa v. PC Cleaner, Inc.*, 2014 WL

10   12581769, at *10 (C.D. Cal. 2014); *Van Lith v. iHeartMedia + Entm't, Inc.*, 2017 WL 1064662, at

11   *16 (E.D. Cal. 2017) ("The adversarial nature of these negotiations and the discovery performed by

12   the parties indicate that the settlement process is procedurally adequate."). Thus, the first factor is

13   satisfied.

14            **2.        The Settlement Treats All Settlement Class Members Equitably.**

15       "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by

16   the same standards of review applicable to approval of the settlement as a whole: the plan must be

17   fair, reasonable and adequate." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 6778406, at

18   *3 (N.D. Cal., 2016) (quoting *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1-2 (N.D. Cal. 1994)).

19   The Plan of Allocation, which was negotiated between the parties with the assistance of Judge Infante

20   (Joint Decl., ¶ 20), readily meets this standard because it treats all class members fairly in relation to

21   the strength of their claims. *See Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *7 (S.D.

22   Cal. 2021) ("A plan of allocation that reimburses class members based on the extent of their injuries

23   is generally reasonable."); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *12 (N.D. Cal. 2018).

24       For purposes of setting recovery amounts, the plan of allocation establishes a uniform,

25   objective method for distributing awards that accounts for structural differences among claims, based

26   on their value and evidentiary support, including by making common-sense distinctions between: (1)

27   Settlement Class Members who received two or more Topcase Replacements from Apple or an

28   Authorized Service Provider; and (2) Settlement Class Members who received only one Topcase or

Keycap Replacements from Apple or an Authorized Service Provider and who attest that the repair did not resolve their keyboard issues. SA § 3.4.3; Joint Decl. ¶¶ 25-38. The plan protects the interests of all parties by directing relief to the most significantly affected Settlement Class Members—awarding more to those whose keyboards required multiple repairs—while also paying Settlement Class Members who received at least one repair and submit a claim attesting that the repair did not resolve their keyboard issues (but who did not bring their Class Computer in for another repair). *See In re Nexus 6P Prod. Liab. Litig.*, 2019 WL 6622842, at *9 (N.D. Cal. 2019) ("Here, the Plan of Allocation was proposed by experienced counsel and has a reasonable and rational basis. The plan divides claimants into different groups based on the relative size of their potential claims and distributes funds based on these groups."); *see also* Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. 2019), Dkt. No. 526 at 4-5 (approving settlement paying lower dollar amount based on the strength of their claims).[5] The plan of allocation will deter fraudulent claims and reasonably accounts for the differing experiences across the class. Thus, because the plan ensures the Settlement Class Members will be treated equitably relative to each other, it should be approved as fair, reasonable, and adequate. *See Banh v. Am. Honda Motor Co., Inc.*, 2021 WL 3468113, at *7 (C.D. Cal. 2021) (approving settlement that gave some class members extended coverage if they made more than one service visit that did not resolve their problems with vehicle "infotainment" system).

### 3.    The Relief Under the Proposed Settlement Is Adequate.

In determining whether the class-wide relief is adequate under Rule 23(e)(2), the Court considers "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the

---

[5] *See also Free Range Content, Inc. v. Google, LLC*, 2019 U.S. Dist. LEXIS 47380, at *7-8 (N.D. Cal. 2019) (approving settlement which paid as low as $10 per class member); Order Granting Motion for Final Approval of Class Action Settlement, *In re: Sony VAIO Computer Notebook Trackpad Litigation*, No. 3:09-cv-02109 (S.D. Cal. Aug. 7, 2017), Dkt. No. 378 at 4 (approving settlement paying $5 to class members whose laptops did not manifest the defect); *see also* Order Granting Preliminary Approval of Class Action Settlement, *Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.*, No. 5:17-cv-00564 (N.D. Cal. Jan. 10, 2019), Dkt. No. 335 at 3 (approving settlement which paid class members $2 to $5.20 without proof of purchase or $40 with proof of purchase).

16

terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)."[6] "Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Mendoza v. Hyundai Motor Co., Ltd*, 2017 WL 342059, at *6 (N.D. Cal. 2017) (citation omitted). Further, "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *6 (N.D. Cal. 2016) (cleaned up).

The settlement here ensures that Settlement Class Members will be afforded relief from keyboard issues for the four-year useful life of a laptop by providing monetary compensation in addition to the protection offered by the KSP. *See Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *6 (N.D. Cal. 2019) ("[C]lass members who were affected by the defects can receive a full equitable remedy in the form of repairs while still recovering a significant monetary benefit."). Settlement Class Members who experience multiple repairs will also remain eligible for payment for two years after Preliminary Approval, compensating those who may experience issues in the future.

Plaintiffs believe that if they prevailed at trial and in a post-trial appeal, the class could obtain a judgment in the range of $178 to $569 million. Dkt. No. 395-1 (Merits Expert Report of Hal J. Singer) at ¶ 51 & App'x 4, Table A1. The $50 million settlement fund represents between approximately 9% to 28% of the total estimated damages from a trial verdict and falls within the typical range of recovery in class action settlements. *See Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *10 (N.D. Cal. 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions"); *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *10 (N.D. Cal. 2019) (approving settlement providing for 5.7% of total possible recovery); *Deaver v. Compass Bank*, 2015 WL 8526982, at *7 (N.D. Cal. 2015) (10.7% of total damages); *In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1086331, at *4 (N.D. Cal. 2017) (overruling objections to settlement amount representing between 2.2% and 11.2% of total possible damages). If the Court were to require any form of individualized prove-up following a favorable liability verdict, the total recovery would be greatly reduced.

---

[6] There are no side agreements to disclose under Rule 23(e)(3).

17

1   Particularly given Apple's liability and damages defenses and the fact that most Class Computers are

2   now more than four years old—some are seven years old—plus the fact that trial would not occur

3   until March 2023, the settlement delivers a substantial recovery for the class. *See Churchill Vill.,*

4   *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (rejecting challenge to the settlement amount

5   where "the recalled dishwashers had depreciated in value through years of use"); *Linney*, 151 F.3d at

6   1242 (settlement amounting to a fraction of the potential total recovery was reasonable given the

7   significant risks of going to trial); *Hendricks v. StarKist Co.*, 2015 WL 4498083, at *7 (N.D. Cal.

8   2015) (settlement representing "only a single-digit percentage of the maximum potential exposure"

9   was reasonable given the risks). Other product defect cases have resulted in far lower payments to

10  customers than those contemplated here. *Horvath v. LG Electronics MobileComm U.S.A., Inc.*, No.

11  3:11-cv-01576-H-RBB, Dkt. No. 101 (S.D. Cal. Jan. 14, 2014) (approving settlement of $19 per

12  claimant in class action alleging smartphones had a defect).

13          These estimates also do not include the value of the benefits provided by the KSP, which

14  Apple introduced after Plaintiffs filed suit. *See Churchill*, 361 F.3d at 576 (in considering the amount

15  of the settlement, the district court properly considered the fact that "the class members had already

16  received a rebate from GE as part of the recall program"); *In re Chrysler-Dodge-Jeep*, 2019 WL

17  536661, at *3 (noting that settlement provided additional relief in the form of cash payments on top of

18  relief provided under consent decrees with federal and state authorities); *Kearney v. Hyundai Motor*

19  *Am.*, 2012 WL 13049699, at *11 (C.D. Cal. Dec. 17, 2012) (granting preliminary approval to

20  settlement that provided additional relief beyond what was provided by the manufacturer's recall); *In*

21  *re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *9 (S.D.N.Y. May 30, 2013)

22  (settlement was reasonable where it offered additional relief beyond the voluntary extended

23  warranty).

24          Moreover, "[e]stimates of what constitutes a fair settlement figure are tempered by factors

25  such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery

26  (often measured in years)." *Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *11 (C.D.

27  Cal. 2012). While Plaintiffs are confident in the strength of their case, Apple has vigorously denied

28  liability from the outset. *See, e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016)

18

1   ("The settlement the parties have reached is even more compelling given the substantial litigation

2   risks in this case."). As discussed, Plaintiffs faced major risks associated with a motion to decertify

3   the class, trial, and a likely appeal, especially given Apple's vast resources and technical expertise.

4   *See Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *10 (C.D. Cal. 2014) ("In the absence of a

5   settlement, it is very likely that this case could ultimately be decided at trial by a 'battle of the

6   experts' over the existence of a [defect] . . .  taking those issues to trial might be more challenging for

7   Plaintiffs than for BMW, given complex technical nature of the CVT system.").

8        Apple has argued that there are at least 20 different butterfly MacBook models and that the

9   changes it made to the butterfly keyboard components prevent Plaintiffs from establishing a common

10   defect. For instance, Apple argued in opposition to class certification that newer Class Computer

11   models have lower failure rates and most class members have not experienced a keyboard failure.

12   *See, e.g.*, Dkt. No. 235 at 15, 19-22. Although Plaintiffs believe there is sufficient evidence that the

13   butterfly keyboard shares the same underlying design, Apple presented evidence of varied failure

14   rates for the newer models. *See Kacsuta v. Lenovo (U.S.) Inc.*, 2014 WL 12585783, at *5 (C.D. Cal.

15   2014) (noting that plaintiffs had good idea of the relative strengths of their case after engaging in

16   "confirmatory discovery" regarding "an alleged hardware fix implemented by [defendant]"). Apple

17   also argued that its knowledge of the alleged defect evolved over time as the butterfly design changed

18   (Dkt. No. 235 at 2-3), an argument that posed a risk of significantly curtailing the damages period.

19   *See, e.g.*, *In re Seagate Tech. LLC*, 326 F.R.D. 223, 245 (N.D. Cal. 2018) (evidence of defendant's

20   knowledge from later in class period did not show requisite knowledge for class members who

21   purchased earlier in the class period). The difficulties with establishing Apple's liability weigh in

22   favor of settlement approval. *See In re Magsafe Apple Power Adapter Litig.*, 2015 WL 428105, at *6

23   (N.D. Cal. 2015) (Davila, J.) (noting that absent a settlement, Apple would have argued that the

24   "adapters were highly reliable, had low failure rates, and performed without issue for the majority of

25   users, and it would have argued that it made no misrepresentations.").

26        Apple has further argued that the KSP moots Plaintiffs' claims because it offers an effective

27   remedy to the keyboard issues. *See, e.g.*, Dkt. No. 235 at 26 (arguing that class members have no

28   warranty claim because they received relief under the KSP). Although Plaintiffs successfully argued

19

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-02813-EJD-VKD

1  at the pleadings stage that the KSP did not moot their claims because it did not provide *all* of the
2  relief they sought, including monetary relief, Apple would have contended at trial that any damages
3  must account for the value conferred by the KSP, which provides coverage for keyboard issues for
4  four years from purchase and provides for the replacement of not only the keyboard, but also other
5  Topcase components. *See Looper v. FCA US LLC*, 2017 WL 11650429, at *6 (C.D. Cal. 2017)
6  (noting that the manufacturer's recalls made the plaintiffs' recovery uncertain which supported the
7  settlement). In addition, Apple has disputed the severity of the alleged defect and contested Plaintiffs'
8  complex theory of damages, which Plaintiffs would have had to explain to a lay jury. Thus, the risk
9  and uncertainty arising from the KSP and the value it provides to Settlement Class Members further
10 weighs in favor of the settlement. *See In re Samsung Top-load Washing Mach. Mktg., Sales Pracs. &*
11 *Prod. Liab. Litig.*, 2020 WL 2616711, at *14 (W.D. Okla. 2020) ("Plaintiffs would also have to
12 wrestle against the reality that a voluntary recall meant to address the very injuries complained of
13 here was already in place before many of the claims were brought.").

14      There is also no guarantee that a jury would have returned a favorable verdict. *See, e.g.*, *In re:*
15 *Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *11 (N.D. Ohio
16 Sept. 23, 2016) (noting in heavily litigated case involving allegedly defective washing machines that
17 "a jury found for Whirlpool after just two hours of deliberation"). And while the Court granted class
18 certification, Apple's arguments regarding a common defect presented not only a trial risk but also a
19 risk of decertification even if Plaintiffs were to have prevailed. *See Mazzei v. Money Store*, 829 F.3d
20 260, 265-67 (2d Cir. 2016) (court can decertify class even after a jury verdict in favor of a certified
21 class at trial); *In re Lenovo Adware Litig.*, 2018 WL 6099948, at *8 (N.D. Cal. 2018) (risk of
22 decertification favored preliminary approval). Apple would have pressed its arguments about alleged
23 different models and failure rates in any post-trial appeal, just like it did in its petition for appellate
24 review of the Court's class certification order. *See Walker v. Life Ins. Co. of the Sw.*, 2021 WL
25 1220692, at *8 (C.D. Cal. 2021) (noting that the parties' demonstrated willingness to appeal weighed
26 in favor of settlement approval, "because in its absence there will be inevitable costs, high risks and
27 delay.").

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-02813-EJD-VKD

1       In contrast to the significant risks and further delays after four years of hard-fought litigation

2 (which would have continued at least another year), the settlement "relief is directly targeted to the

3 harm suffered by the class and adequately redresses their injuries." *Shin v. Plantronics, Inc.*, 2020

4 WL 1934893, at *3 (N.D. Cal., 2020) (approving settlement allowing class members to receive cash

5 payments or replacement of headphones "with a functional equivalent should defects emerge"). The

6 parties' settlement provides certain relief to the Settlement Class Members, including "a significant,

7 easy-to-obtain benefit to class members" in the form of a cash payment to any Class Computer

8 purchaser with a valid claim. *In re Haier Freezer Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013

9 WL 2237890, at *4 (N.D. Cal. 2013); *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th

10 Cir. 2000) ("difficulties in proving the case" favored settlement approval).

11       Thus, the settlement falls well within the range of reasonableness for preliminary approval.

12     **B.    The Court Will Be Able to Certify the Class for Purposes of Settlement.**

13       The Court already certified a multistate class and will likely be able to certify the proposed

14 nationwide settlement class at final approval. *See* FED. R. CIV. P. 23(e)(1)(B). Plaintiffs' operative

15 complaint has at all times alleged a nationwide class. And where, as here, the Court has already

16 certified a class, "the only information ordinarily necessary is whether the proposed settlement calls

17 for any change in the class certified, or of the claims, defenses, or issues regarding which certification

18 was granted." *Foster v. Adams & Assocs., Inc.*, 2021 WL 4924849, at *3 (N.D. Cal. 2021) (citing

19 FED. R. CIV. P. 23 advisory committee's note to 2018 amendment); *Youth Just. Coalitions v. City of*

20 *Los Angeles*, 2020 WL 9312377, at *2 (C.D. Cal. 2020) (same). The only difference from the

21 certified class is that the Settlement Class includes all purchasers in the United States, consistent with

22 the pleadings. "In settlement cases . . . the district court need not consider trial manageability issues"

23 that typically arise in nationwide classes. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 563

24 (9th Cir. 2019). As there are no other facts that would change the Court's reasoning under Rule 23, it

25 likely will be able to certify the Settlement Class for the same reasons. *See Dickey v. Advanced Micro*

26 *Devices, Inc.*, 2019 WL 4918366, at *3 (N.D. Cal. 2019) (incorporating "prior analysis . . . as set

27 forth in the order certifying the class").

28

21

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-02813-EJD-VKD

**1.      The Settlement Class Members Are Too Numerous to Be Joined.**

The Class includes purchasers of approximately 15 million Class Computers. Numerosity under Rule 23(a)(1) is therefore satisfied because joinder would be "impracticable."

**2.      There Are Common Questions of Law and Fact.**

Commonality under Rule 23(a)(2) "is construed 'permissively' and is satisfied when class members share 'some . . . legal issues or a common core of facts.'" *J.L. v. Cissna*, 2019 WL 415579, at *9 (N.D. Cal. 2019) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010)). The common questions include whether the butterfly keyboard within the Class Computers is defective, whether Apple had knowledge of the alleged defect (and if so, when), and whether Apple had a duty to disclose the alleged defect. These questions are capable of class-wide resolution and would "resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Chrysler-Dodge-Jeep*, 2019 WL 536661, at *5 (citation omitted). Hence, commonality is satisfied.

**3.      Plaintiffs' Claims Are Typical of the Class.**

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality" under Rule 23(a)(3) is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). In this case, Plaintiffs and Settlement Class Members have the same types of claims stemming from the same alleged violations concerning the same products, satisfying typicality. *See Gold v. Lumber Liquidators, Inc*., 323 F.R.D. 280, 288 (N.D. Cal. 2017).

**4.      Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class.**

Two questions are relevant to adequacy of representation under Rule 23(a)(4): "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the

---

22

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-02813-EJD-VKD

1  class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiffs and their counsel do not

2  have any conflicts with Settlement Class Members and have vigorously prosecuted this case.

3     Plaintiffs agreed to serve in a representative capacity, communicated with their attorneys,

4  fulfilled their discovery obligations and have acted in the best interests of the other Settlement Class

5  Members. *See Mergens v. Sloan Valve Co.*, 2017 WL 9486153, at *6 (C.D. Cal. Sept. 18, 2017)

6  (adequacy requirement met where plaintiff had no interests antagonistic to the class). Class Counsel

7  collectively have decades of experience successfully representing plaintiffs and classes in complex

8  class action litigation, including in consumer product defect cases. *See In re MacBook Keyboard*

9  *Litig.*, 2021 WL 1250378, at *15 (appointing Class Counsel); Dkt. No. 62 (appointing interim class

10  counsel); Dkt. No. 30 (firm resumes); *see also In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521

11  (N.D. Cal. Feb. 21, 2017), Dkt. No. 670 at 29 n.24 ("These firms have ably and vigorously litigated

12  this case, and nothing has occurred to undermine my initial determination of their experience and

13  adequacy.").

14     **5.     The Requirements of Rule 23(b)(3) Are Met.**

15     **a.     Common Issues of Law and Fact Predominate for Settlement**
16     **Purposes.**

17     The predominance inquiry tests the cohesion of the class, "ask[ing] whether the common,

18  aggregation-enabling, issues in the case are more prevalent or important than the non-common,

19  aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045

20  (2016) (citation omitted). Predominance is ordinarily satisfied, for settlement purposes, when the

21  claims arise out of the defendant's common conduct. *Gold*, 323 F.R.D. at 288 (predominance

22  satisfied where claims were based on "the same deceptive conduct"); *Kacsuta*, 2014 WL 12585783,

23  at *3 (common issues "significantly outweigh any individual questions" where the claims arise out of

24  the "same alleged course of conduct" by the defendant).

25     This settlement class is cohesive: All Settlement Class Members purchased Class Computers

26  that allegedly contain a common design defect that Apple is alleged to have fraudulently concealed;

27  the common questions noted above present a significant aspect of the litigation and predominate. *See,*

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-02813-EJD-VKD

*e.g.*, *Kacsuta*, 2014 WL 12585783, at *3 (predominant common issue was "the knowing sale of defective Class Computers"). Thus, common questions predominate for settlement purposes.

                **b.**      **A Class Action Is a Superior Means of Resolving This Controversy.**

      The superiority inquiry "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *One Unnamed Deputy Dist. Attorney v. Cty. of Los Angeles*, 2011 WL 13128375, at *4 (C.D. Cal. 2011); *see Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010). Here, given the relatively low amount of the individual claims, Settlement Class Members are unlikely to bring individual lawsuits against Apple. And, because the Settlement Class Members number in the millions, class-wide resolution of their claims in a single action is efficient. *See Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *8 (N.D. Cal. 2016) ("Cases, such as this, 'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for classwide prosecution.") (citing *Hanlon*, 150 F.3d at 1023).

      Therefore, consistent with Rule 23(e)(1)(B), the Court will likely be able to certify the settlement class in this case.

      **C.**      **The Proposed Class Notice and Plan for Dissemination Are Reasonable and Should Be Approved.**

      Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Under Rule 23(b)(3), the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B).

      The notices here comport with Rule 23 and the due process mandates. Using plain language, these proposed notices provide all information required under Rule 23(c)(2)(B). SA, Exs. 1-3. In crafting these notices Plaintiffs followed the notice language suggested in the Guidelines as well as the Federal Judicial Center models. The proposed notice program provides for direct email notice as well as follow-up mechanisms for directly notifying Settlement Class Members of the settlement. The settlement website will also be a useful resource for Settlement Class Members—consistent with the Guidelines, it will post the Claim Form, the long-form notice, and key documents in the case, including Class Counsel's attorneys' fee application once it is filed. The Settlement Administrator

will also establish a toll-free number for class members to call with questions. This plan provides the best notice practicable under the circumstances and can begin upon the Court's approval. *See, e.g.*, *Wahl v. Yahoo! INC.*, 2018 WL 6002323, at *3 (N.D. Cal. 2018) (concluding that a notice plan calling for direct email notice, followed by mailed notice to individuals to whom emails "bounced," constituted "the best notice practicable under the circumstances"); *Walsh v. CorePower Yoga LLC*, 2017 WL 589199, at *12 (N.D. Cal. 2017) (approved notice plan provided for a combination of mail and email using the most recent contact information available).

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the proposed settlement, (2) direct notice to the Settlement Class, and (3) set a schedule for settlement proceedings, including the final fairness hearing.


Dated: July 18, 2022                                    Respectfully submitted,

                                                        **GIRARD SHARP LLP**

                                                        /s/ *Simon Grille*

                                                        Daniel C. Girard (SBN 114826)
                                                        Jordan Elias (SBN 228731)
                                                        Adam E. Polk (SBN 273000)
                                                        Simon S. Grille (SBN 294914)
                                                        **GIRARD SHARP LLP**
                                                        601 California Street, Suite 1400
                                                        San Francisco, CA 94108
                                                        Tel: (415) 981-4800
                                                        Fax: (415) 981-4846
                                                        *dgirard@girardsharp.com*
                                                        *jelias@girardsharp.com*
                                                        *apolk@girardsharp.com*
                                                        *sgrille@girardsharp.com*

                                                        Steven A. Schwartz *(pro hac vice)*
                                                        Benjamin F. Johns *(pro hac vice)*
                                                        Beena M. McDonald *(pro hac vice)*
                                                        **CHIMICLES SCHWARTZ KRINER
                                                        & DONALDSON-SMITH LLP**
                                                        One Haverford Centre
                                                        361 W. Lancaster Avenue
                                                        Haverford, PA 19041

Tel: (610) 642-8500
Fax: (610) 649-3633
*sas@chimicles.com*
*bfj@chimicles.com*
*bmm@chimicles.com*

*Plaintiffs' Co-Lead Class Counsel*

Robert C. Schubert
Willem F. Jonckheer
Noah M. Schubert
**SCHUBERT JONCKHEER
 & KOLBE LLP**
3 Embarcadero Center, Suite 1650
San Francisco, CA 94111
Tel: (415) 788-4220
Fax: (415) 788-0161
*rschubert@sjk.law*
*wjonckheer@sjk.com*
*nschubert@sjk.law*

E. Michelle Drake
Joseph C. Hashmall
**BERGER & MONTAGUE, P.C.**
43 SE Main Street
Suite 505
Minneapolis, MN 55414
Tel: (612) 594-5999
Fax: (215) 875-4604
*emdrake@bm.net*
*jhashmall@bm.net*

Esfand Y. Nafisi
**LAW OFFICES OF ESFAND NAFISI**
330 Sir Francis Drake Blvd., Suite B
San Anselmo, CA 94960
Tel: (415) 747-7466
Fax: (415) 363-3753
*enafisi@classlawdc.com*

*Counsel for Plaintiffs in In re MacBook Keyboard
Litig.*

Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.
Washington, D.C. 20002
Office: (202) 470-3520

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fax: (202) 800-2730
www.classlawdc.com

*Counsel for Plaintiffs in Huey v. Apple Inc.*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-02813-EJD-VKD