Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
(415) 981-4800
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*sgrille@girardsharp.com*

Steven A. Schwartz (*pro hac vice*)
Beena M. McDonald (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER**
 **& DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
*sas@chimicles.com*
*bmm@chimicles.com*

*Co-Lead Class Counsel*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

IN RE: MACBOOK KEYBOARD
LITIGATION

Case No. 5:18-cv-02813-EJD-VKD

**PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

Judge: Hon. Edward J. Davila
Date: March 16, 2023
Time: 9:00 a.m.
Courtroom: 4 – 5th Floor

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................ 1

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF THE ISSUE TO BE DECIDED .................................................. 3

III.    OVERVIEW OF WORK PERFORMED BY CLASS COUNSEL .............................. 3

        A.      Investigating the Case and Defending the Pleadings ........................... 3

        B.      Fact and Expert Discovery .................................................................... 5

        C.      Obtaining and Protecting the Class Certification Order......................... 6

        D.      Prevailing Under *Daubert* and Obtaining a Trial Date ........................ 7

        E.      Negotiating the Settlement for the Benefit of the Class ....................... 7

        F.      Ensuring Adequate Relief and Distribution of the Fund ....................... 7

IV.     ARGUMENT .............................................................................................................. 9

        A.      The Requested Fee Is Reasonable and Should Be Awarded. ............... 9

                1.      The Court Should Determine Class Counsel's Fee as a Percentage
                        of the Common Fund. ................................................................. 9

                2.      The Court Should Award a Fee of 30% of the Fund. ..................... 10

                        a.      The Relief Obtained for the Class Is Excellent. ......................... 11

                        b.      The Product Liability Claims Against Apple Were Highly
                                Complex and Risky. .................................................................... 12

                        c.      Class Counsel Litigated the Case on a Fully Contingent
                                Basis to the Eve of Trial. ............................................................ 15

                        d.      Successfully Prosecuting the Case Against Apple
                                Required a High Level of Skill.................................................... 16

                        e.      A Comparison to Awards in Similar Cases Demonstrates
                                That the Requested Fee Is Reasonable. ...................................... 18

                3.      A Lodestar Cross-Check Confirms the Reasonableness of the Fee
                        Application. .................................................................................. 19

i

B.    The Expense Reimbursements Should Be Approved..........................................21

C.    The Court Should Award $5,000 Service Awards for the Class
Representatives...........................................................................................................22

V.    CONCLUSION ..............................................................................................................23

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-CV-02813-EJD-VKD

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Aarons v. BMW of N. Am., LLC*,
4
  2014 WL 4090564 (C.D. Cal. 2014) ............................................................................... 14

*AdTrader, Inc. v. Google LLC*,
5
  2022 WL 16579324 (N.D. Cal. Nov. 1, 2022) ................................................................. 12

6
*Allagas v. BP Solar Int'l, Inc.*,
7
  2016 WL 9114162 (N.D. Cal. Dec. 22, 2016) ................................................................. 16

8
*Andrews v. Plains All Am. Pipeline L.P.*,
  2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ................................................................. 17
9

*Barbosa v. Cargill Meat Solutions Corp.*,
10
  297 F.R.D. 431 (C.D. Cal. 2013) ............................................................................... 11, 17

11
*Bellinghausen v. Tractor Supply Co.*,
12
  306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................... 15, 22

13
*Betancourt v. Advantage Human Resourcing, Inc.*,
  2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ................................................................... 18

14
*Blount v. Host Healthcare, Inc.*,
15
  2022 WL 1094616 (S.D. Cal. Apr. 12, 2022) ................................................................. 21

16
*Blum v. Stenson*,
  465 U.S. 886 (1984) ......................................................................................................... 16
17

*Boeing Co. v. Van Gemert*,
18
  444 U.S. 472 (1980) ........................................................................................................... 9

19
*Brown v. 22nd Dist. Agric. Ass'n*,
20
  2017 WL 3131557 (S.D. Cal. July 21, 2017) ................................................................. 15

21
*Brown v. CVS Pharmacy, Inc.*,
  2017 WL 3494297 (C.D. Cal. Apr. 24, 2017) ................................................................. 12

22
*Cabiness v. Educ. Fin. Sols., LLC*,
23
  2019 WL 1369929 (N.D. Cal. Mar. 26, 2019) ............................................................... 18

24
*Carlin v. DairyAm. Inc.*,
  380 F. Supp. 3d 998 (E.D. Cal. 2019) ....................................................................... 16, 18
25

26
*Ching v. Siemens Indus.*,
  2014 WL 2926210 (N.D. Cal. Jun. 27, 2014) ........................................................... 15, 18

27
*Davidson v. Apple*,
28
  2019 WL 2548460 (N.D. Cal. June 20, 2019) ................................................................. 13

iii

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016)................................................................. 10, 12

*Durham v. Sachs Elec. Co.*,
   2022 WL 2307202 (N.D. Cal. June 27, 2022) ...................................................................... 10

*Fischel v. Equitable Life Assur. Soc'y of the United States*,
   307 F.3d 997 (9th Cir. 2002)................................................................................................. 13

*Fleming v. Impax Lab'ys Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022) ............................................................... 19, 21

*Floyd v. First Data Merch. Servs. LLC*,
   2022 WL 6173122 (N.D. Cal. Oct. 7, 2022) ....................................................................... 21

*Galeener v. Source Refrigeration & HVAC, Inc.*,
   2015 WL 12977077 (N.D. Cal. Aug. 21, 2015) ................................................................... 18

*Gergetz v. Telenav, Inc.*,
   2018 WL 4691169 (N.D. Cal. Sept. 27, 2018)......................................................... 12, 18, 22

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
   2008 WL 1901988 (W.D. Wash. Apr. 24, 2008) ................................................................. 11

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ................................................................................................. 16

*Haag v. Hyundai Motor Am.*,
   2019 WL 1029002 (W.D.N.Y. Mar. 5, 2019) ..................................................................... 13

*Haier Freezer Consumer Litig.*,
   2013 WL 2237890 (N.D. Cal. 2013)..................................................................................... 14

*Hendricks v. Starkist Co.*,
   2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) .................................................................... 19

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .............................................................................................................. 11

*Hernandez v. Dutton Ranch Corp.*,
   WL 5053476 (N.D. Cal. Sept. 10, 2021)............................................................................... 18

*Hope Med. Enters., Inc. v. Fagron Compounding Serv., LLC*,
   2022 WL 826903 (C.D. Cal. Mar. 14, 2022) ...................................................................... 20

*In re Apple iPhone 4 Prod. Liab. Litig.*,
   2012 WL 3283432 (N.D. Cal. Aug. 10, 2012)..................................................................... 11

*In re Auto. Parts Antitrust Litig.*,
   2019 WL 13090127 (E.D. Mich. Dec. 29, 2019) ................................................................ 20

iv

*In re Capacitors Antitrust Litig.*,
2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) .................................................................. 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) .................................................................... 11

*In re DRAM Antitrust Litig.*,
2013 WL 12387371 (N.D. Cal. Nov. 5, 2013) .................................................................. 21

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
21 F.4th 1102 (9th Cir. 2021) .......................................................................................... 10

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................................. 16

*In re iPhone Application Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013) ............................................................................... 13

*In re Lenovo Adware Litig.*,
2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) .................................................................. 19

*In re MacBook Keyboard Litig.*,
2019 WL 1765817 (N.D. Cal. Apr. 22, 2019) .................................................................... 4

*In re MacBook Keyboard Litig.*,
2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .................................................................... 5

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1995) ................................................................................ 21

*In re Ocean Power Techs., Inc.*,
2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...................................................................... 16

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................... 11

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................................................. 21

*In re Quantum Health Resources, Inc. Sec. Litig.*,
962 F. Supp. 1254 (C.D. Cal. 1997) ................................................................................ 13

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ............................................................................................ 19

*In re Seagate Tech. LLC*,
326 F.R.D. 223 (N.D. Cal. 2018) .................................................................................... 14

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) .......................................................................................... 16

v

*In re Toys R Us-Del., Inc. FACTA Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) ........................................................................ 22

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ......................................................................... 9, 15

*In re Zoom Video Commc'ns, Inc. Priv. Litig.*,
   2022 WL 1593389 (N.D. Cal. Apr. 21, 2022) ...................................................... 22

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   2016 WL 183285 (N.D. Cal. Jan. 14, 2016) ........................................................ 19

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   2022 WL 17730381 (N.D. Cal. Nov. 9, 2022) ..................................................... 18

*Jarrell v. Amerigas Propane, Inc.*,
   2018 WL 1640055 (N.D. Cal. Apr. 5, 2018) ....................................................... 18

*Johnson v. General Mills, Inc.*,
   2013 WL 3213832 (C.D. Cal. June 17, 2013) ..................................................... 19

*Kakani v. Oracle Corp.*,
   2007 WL 4570190 (N.D. Cal. Dec. 21, 2007) ..................................................... 13

*Kendall v. Odonate Therapeutics, Inc.*,
   2022 WL 1997530 (S.D. Cal. June 6, 2022) ....................................................... 21

*Korean Air Lines Co. Antitrust Litig.*,
   2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ..................................................... 10

*Lalli v. First Team Real Est.-Orange Cnty.*,
   2022 WL 8207530 (C.D. Cal. Sept. 6, 2022) ...................................................... 18

*Looper v. FCA US LLC*,
   2017 WL 11650429 (C.D. Cal. 2017) ................................................................ 14

*Martinelli v. Johnson & Johnson*,
   2022 WL 4123874 (E.D. Cal. Sept. 9, 2022) ...................................................... 15

*Mauss v. NuVasive, Inc.*,
   2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ....................................................... 12

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ...................................................................................... 21

*Moreyra v. Fresenius Med. Care Holdings, Inc.*,
   2013 WL 12248139 (C.D. Cal. Aug. 7, 2013) ..................................................... 17

*Nelson v. Avon Prods.*,
   2017 WL 733145 (N.D. Cal. Feb. 24, 2017) ................................................. 18, 22

vi

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-CV-02813-EJD-VKD

*Norris v. Mazzola*,
    2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) ................................................................. 16

*Opperman v. Kong Techs., Inc.*,
    2017 WL 3149295 (N.D. Cal. July 25, 2017) ................................................................. 13

*Peel v. Brooksam. Mortg. Corp.*,
    2015 WL 12745788 (C.D. Cal. Apr. 6, 2015) ................................................................. 19

*Pelletz v. Weyerhaeuser Co.*,
    592 F. Supp. 2d 1322 (W.D. Wash. 2009) ................................................................. 15

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................. 18, 22

*Roe v. SFBSC Mgmt., LLC*,
    2022 WL 17330847 (N.D. Cal. Nov. 29, 2022) ................................................................. 10

*Schiller v. David's Bridal*,
    2012 WL 2117001 (E.D. Cal. June 11, 2012) ................................................................. 21

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ................................................................. 9

*Skeen v. BMW of N. Am., LLC*,
    2016 WL 4033969 (D.N.J. July 26, 2016) ................................................................. 14

*Smith v. Am. Greetings Corp.*,
    2016 WL 2909429 (N.D. Cal. May 19, 2016) ................................................................. 12

*Sonner v. Premier Nutrition Corp.*,
    962 F.3d 1072 (9th Cir. 2020) ................................................................. 4

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................. 19

*Thomas v. MagnaChip Semiconductor Corp.*,
    2018 WL 2234598 (N.D. Cal. May 15, 2018) ................................................................. 10

*Thornberry v. Delta Air Lines*,
    676 F.2d 1240 (9th Cir. 1982) ................................................................. 21

*Vista Outdoor Inc. v. Reeves Fam. Tr.*,
    2018 WL 3104631 (S.D.N.Y. May 24, 2018) ................................................................. 20

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................. passim

*Waller v. Hewlett-Packard Co.*,
    295 F.R.D. 472 (S.D. Cal. 2013) ................................................................. 13

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-CV-02813-EJD-VKD

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................. 9

*Williams v. SuperShuttle Int'l, Inc.*,
    2015 WL 685994 (N.D. Cal. Feb. 12, 2015) ....................................................... 21

*Wing v. Asarco Inc.*,
    114 F.3d 986 (9th Cir. 1997) ............................................................................. 17

*Yastrab v. Apple Inc.*,
    173 F. Supp. 3d 972 (N.D. Cal. 2016) ............................................................... 13

*Zepada v. PayPal, Inc.*,
    2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ................................................... 16

**Other Authorities**

Robinson, *An Empirical Study of Settlement Conference Nuts and Bolts*, 17 Harv. Negot. L.
    Rev. 97 (2012) ................................................................................................... 16

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................... 6

Fed. R. Civ. P. 23(b)(3) .............................................................................................. 6

Fed. R. Civ. P. 23(f) ............................................................................................... 2, 6

Fed. R. Civ. P. 23(h) ............................................................................................... 1, 3

Fed. R. Civ. P. 30(b)(6) .............................................................................................. 5

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-CV-02813-EJD-VKD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on March 16, 2023 at 9:00 a.m., before the Honorable Edward J. Davila of the United States District Court for the Northern District of California, Plaintiffs Zixuan Rao, Joseph Baruch, Bo Laurent, Ashley Marin, Kyle Barbaro, Steve Eakin, Michael Hopkins, Adam Lee, Kevin Melkowski, Lorenzo Ferguson, and Benjamin Gulker will and do hereby move the Court, pursuant to Federal Rules of Civil Procedure 23(h), for an Order awarding attorneys' fees, reimbursement of litigation expenses, and service awards for the Class Representatives.

The Motion is based on this Notice of Motion; the incorporated memorandum of points and authorities; the accompanying Joint Declaration of Simon S. Grille and Steven A. Schwartz ("Joint Decl."), Declarations of Zixuan Rao, Joseph Baruch, Bo Laurent, Ashley Marin, Kyle Barbaro, Steve Eakin, Michael Hopkins, Adam Lee, Kevin Melkowski, Lorenzo Ferguson, Benjamin Gulker, and Ashton Huey (collectively, "Plaintiffs" or "Class Representatives"), and Declaration of Jennifer Keough ("Keough Decl."); the record in this action; the argument of counsel, including on reply and at the Final Fairness Hearing; and any other matters the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs move for an award of attorneys' fees of 30% of the $50 million settlement fund, and reimbursement of litigation costs of $1,559,091. We respectfully submit that an upward adjustment of the 25% benchmark for attorneys' fee awards in common fund cases is justified. First, Plaintiffs litigated this case for five years against one of the largest and most sophisticated companies in the world, represented by highly skilled counsel. Second, the results achieved speak for themselves: class members will recover cash payments well in excess of the nominal payments sometimes associated with consumer class actions. Apple's $50 million settlement payment will fund automatic distributions of up to $395 to individuals who experienced multiple keyboard failures, while others who had unsatisfactory experiences can make claims to recover up to $125, depending on the nature of the product issues they experienced. Apple had every right to defend this case through trial and appeals; absent the willingness of Class Counsel to fight protracted discovery battles, and hold out

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-CV-02813-EJD-VKD

through class certification, a Rule 23(f) petition, *Daubert* motions, and final pretrial preparation, this action could not have been settled on such satisfactory terms.

To achieve the settlement before the Court, Plaintiffs invested over $16.7 million in attorney time at their current rates (and advanced over $1.5 million in expenses), yielding a negative (0.89) multiplier if the Court awards the full fee requested. And, as the Court has recognized, the risks that Class Counsel assumed in prosecuting this action on a contingent basis were considerable.[1] The case could have been effectively lost at class certification, and an adverse ruling on *Daubert* motions would similarly have been disastrous. A fee award of 30% of the total recovery falls within the standard 20-30% range for fees based on a percentage of the recovery, and represents less than analogous contingency rates for legal services performed through dispositive motions and expert discovery. In addition, Class Counsel do not expect the requested award to reduce the projected payments to class members as summarized in the Notice. A fee award equal to 30% of the settlement fund will ensure that Class Counsel are not penalized for investing the time needed to achieve a fair settlement, furthering the objective of motivating counsel to take difficult cases and assume the risk required to generate meaningful results.

Class Counsel's expense advances should also be reimbursed. These expenditures were reasonable and necessary to achieve the $50 million recovery; absent Class Counsel's willingness to risk over $1.5 million in out-of-pocket expenses, there would be no settlement. Finally, the Court should grant Plaintiffs' motion for service awards of $5,000 to each of the Class Representatives. This amount, frequently approved by courts in class action cases, is warranted given the time devoted by the Class Representatives, including sitting for depositions, and the ensuing stress for these Plaintiffs.

---

[1] The Preliminary Approval Order notes that "[p]roceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals. Plaintiffs faced risks associated with a motion to decertify class" among other litigation challenges. Dkt. No. 426.

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

## II.   STATEMENT OF THE ISSUE TO BE DECIDED

Should the Court grant Plaintiffs' request for attorneys' fees under Fed. R. Civ. P. 23(h), reimbursement of litigation expenses, and service awards?

## III.   OVERVIEW OF WORK PERFORMED BY CLASS COUNSEL

### A.   Investigating the Case and Defending the Pleadings

Beginning in May 2018, four lawsuits against Apple were filed in this District asserting claims arising out of an alleged defect in Apple's MacBook computers equipped with "butterfly" keyboards. Joint Decl., ¶¶ 4-6. Before filing the first of these complaints, Girard Sharp LLP and Chimicles Schwartz Kriner & Donaldson-Smith LLP (together, "Class Counsel"), reviewed thousands of consumer complaints concerning Apple's butterfly keyboards, responded to hundreds of consumer inquiries, and investigated the technical underpinnings of the alleged defect. *Id.*, ¶ 5. Class Counsel also researched publicly available sources concerning Apple's knowledge of the alleged defect, analyzed Apple's warranty documents and terms of sale, reviewed articles reporting on the butterfly keyboard, studied technical specifications and product reviews, and compiled and assessed Apple's representations about the MacBook. *Id.* Class Counsel also sent a demand letter under California's Consumers Legal Remedies Act. *Id.*

After filing the initial complaint, Class Counsel continued to investigate and develop the case by interviewing affected consumers and reviewing consumer complaints, articles, and videos about the alleged defect. Joint Decl., ¶ 7. Class Counsel also consulted with economists about damages and engineering experts about the alleged defect, reviewed more patent filings relating to the MacBook keyboards, and interviewed both former Apple employees and third-party repair technicians. *Id.* In addition, Class Counsel worked with defense counsel and other plaintiffs' counsel to organize the related cases. *Id.*, ¶ 10. Class Counsel drafted early Rule 34 requests and drafted, negotiated, and filed a stipulated protective order and an order governing the handling of electronically-stored information. *Id.*, ¶ 8. Class Counsel also developed a comprehensive time-reporting protocol for all Plaintiffs' counsel which required counsel to publicly file time and expense reports on a quarterly basis. *Id.*, ¶ 9.

The Court on June 26, 2018 consolidated the four related actions and on September 24 appointed Girard Sharp LLP and Chimicles Schwartz Kriner & Donaldson-Smith LLP as Interim

3

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

1  Class Counsel. Dkt. Nos. 27, 33, 62. Plaintiffs filed their Consolidated Class Action Complaint on

2  October 11, 2018, asserting breach of warranty and consumer fraud claims. Joint Decl., ¶ 12.

3       Apple moved to dismiss the Consolidated Class Action Complaint on December 3, 2018,

4  arguing, among other things, that the Keyboard Service Program ("KSP") it implemented after this

5  action began mooted Plaintiffs' CLRA and Song-Beverly claims. Dkt. No. 72. The Court heard

6  arguments on February 21, 2019 (Dkt. No. 92), and on April 22, 2019, the Court granted in part and

7  denied in part the motion to dismiss with leave to amend. *In re MacBook Keyboard Litig.*, 2019 WL

8  1765817, at \*1 (N.D. Cal. Apr. 22, 2019). The Court dismissed Plaintiffs' claim for breach of the

9  covenant of good faith and fair dealing, and, based on the conclusion that Plaintiffs had not pled "any

10  facts showing that the Keyboard Service Program does not moot their claims under the CLRA and the

11  Song-Beverly Act," the Court dismissed those claims as well as the claim under the UCL's unlawful

12  prong. *Id.* at \*4, \*8-9. At the same time, the Court declined to dismiss the fraud by omission claims,

13  finding that Plaintiffs adequately alleged that Apple had a duty to disclose the alleged defect and that

14  the defect would be material to a reasonable consumer. *Id.* at \*5-7. The Court also found that Plaintiffs

15  stated a claim under the UCL's unfair prong. *Id.* at \*9.

16       On May 13, 2019, Plaintiffs filed their First Amended Consolidated Class Action Complaint

17  ("FAC"), electing not to replead the claim for breach of the covenant of good faith and fair dealing but

18  otherwise asserting the same claims as in the Consolidated Class Action Complaint. Dkt. No. 117.

19  Apple moved to dismiss the FAC on June 4, arguing that Plaintiffs lacked standing and that the CLRA

20  and Song-Beverly claims should again be dismissed as moot. Dkt. No. 130. The Court heard

21  arguments on November 21 (Dkt. No. 161) and on November 22 denied Apple's motion to dismiss

22  (Dkt. No. 164).

23       Over Apple's opposition, on July 2, 2020, the Court granted Plaintiffs leave to file a Second

24  Amended Consolidated Class Action Complaint ("SAC") to add two named plaintiffs and modify the

25  proposed class definition to specify the models of MacBook laptops included as Class Computers.

26  Dkt. No. 218. On July 16, Apple moved to dismiss the UCL and equitable relief claims under *Sonner*

27  *v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir. 2020). Dkt. No. 221. On October 13, the Court

28  granted Apple's motion and dismissed with prejudice Plaintiffs' UCL claims and all other claims

4

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

seeking an injunction, restitution, or other equitable relief. *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020).

**B.     Fact and Expert Discovery**

Class Counsel propounded four sets of document requests and three sets of interrogatories to Apple and served ten subpoenas *duces tecum* on non-party resellers and repair providers. Joint Decl., ¶ 21. After protracted negotiation, Apple produced about 1.2 million pages of documents, and non-parties produced another 1,237 pages. *Id.* Class Counsel reviewed, analyzed, and coded all of these documents, which served as the predicate for class certification, expert analysis, and settlement discussions. *Id.* Class Counsel also negotiated responses and multiple rounds of supplemental responses by Apple to Plaintiffs' interrogatories, which provided critical information concerning sales volume and repair rates. Class Counsel deposed 15 Apple employees, including its Rule 30(b)(6) designees, and defended depositions of each of the 11 Class Representatives. *Id.* Each Plaintiff also responded to 19 document requests, eight interrogatories, a request for inspection of their MacBooks, and produced responsive documents. *Id.* Expert work included 10 expert reports, two rounds of depositions, and several document productions. *Id.* Plaintiffs took seven depositions of Apple's experts and Apple took five depositions of Plaintiffs' experts. *Id.*

Class Counsel also briefed and appeared before Judge DeMarchi on several discovery disputes related to Apple's document production, clawback demand, and Rule 30(b)(6) depositions. *See* Dkt. Nos. 87, 89, 95, 98, 101, 170, 183, 189, 198. Discovery motions were preceded by conferral sessions with Apple's counsel, allowing the parties to narrow some disputes, resolve others, and secure rulings on the remaining points of disagreement. Joint Decl., ¶ 22. One such dispute, regarding production of Apple's sales and revenue data, was not resolved until after Plaintiffs drafted and sent Apple their portion of a joint discovery letter. *Id.* Plaintiffs also moved to compel production of nonparty Amazon's MacBook sales data in the Western District of Washington. *See Rao v. Amazon.com, Inc.*, No. 2:20-mc-00104-JCC (W.D. Wash.). After filing that motion, Class Counsel continued to confer with Amazon and ultimately reached an agreement under which Amazon would produce the requested information. *See id.* at Dkt. No. 7.

C.    **Obtaining and Protecting the Class Certification Order**

In August 2020, Plaintiffs moved to certify a seven-state class of Class Computer purchasers along with seven constituent state subclasses of purchasers of Class Computers in California, New York, Florida, Illinois, New Jersey, Washington, and Michigan for case management purposes. Dkt. No. 229. Class Counsel worked closely with Dr. Hal Singer, an economist, and Dr. David Niebuhr, an engineer, who both submitted reports in support of certification. Joint Decl., ¶ 25. Dr. Singer's report included a full supply-side analysis of the pricing impact of disclosure of the alleged defect. *Id.* Dr. Singer's presentation required sophisticated econometric analysis and close communication with counsel. *Id.* Apple opposed the class certification motion and also moved to strike the accompanying opinions of Plaintiffs' experts. Dkt. Nos. 235, 238, 239.

The Court held a hearing on class certification and related *Daubert* motions on February 4, 2021. Dkt. No. 287. On March 8, the Court granted Plaintiffs' motion and certified the seven-state class and subclasses under Rules 23(a) and 23(b)(3). Dkt. No. 298 at 29-30. The Court also granted in part and denied in part Apple's motion to exclude the expert opinions of Dr. Singer, excluding his regression analysis but finding his conjoint analyses sufficiently reliable and relevant. *Id.* at *4-6. Although the Court found Dr. Niebuhr qualified to offer his opinions, the Court excluded them as "irrelevant at the class certification stage" without prejudice to offering him "as an expert witness for other purposes at trial." *Id.* at *8.

Apple filed a petition with the Ninth Circuit for permission to appeal the Court's Class Certification Order pursuant to Federal Rule of Civil Procedure 23(f), which Plaintiffs opposed. The Ninth Circuit denied Apple's petition on October 12, 2021.

In connection with class certification and other motion practice, Plaintiffs filed under seal a substantial number of documents that Apple had designated as confidential or highly confidential. Joint Decl., ¶ 29. Class Counsel complied with this District's sealing procedures, reviewed each document that Apple sought to seal, and opposed a large number of Apple's requests. *Id.* Plaintiffs' oppositions to Apple's sealing motions included detailed charts identifying each document, setting out Plaintiffs' position, and identifying the basis for that position. *Id.* The Court ultimately unsealed many of these documents. *See, e.g.*, Dkt. No. 299.

1

2   **D.      Prevailing Under _Daubert_ and Obtaining a Trial Date**

3       Following class certification, Plaintiffs served merits expert reports on April 13, 2021, Apple

4   served rebuttal expert reports on May 13, and Plaintiffs served reply expert reports on May 27. Joint

5   Decl., ¶ 30. Plaintiffs' economist and engineering experts provided more detailed reports, and Class

6   Counsel also engaged an additional engineering expert who examined each of the MacBook models at

7   issue and created three-dimensional models of the alleged failure mechanism. _Id._ On July 15, 2021,

8   Apple moved to strike the expert opinions of Plaintiffs' experts Dr. Singer, Charles Curley, and Dr.

9   Niebuhr. Dkt. Nos. 333, 334, 336. Plaintiffs opposed each of these motions, and on January 25, 2022,

10  the Court denied Apple's motions to strike. Dkt. No. 386. The Court then held a Trial Setting

11  Conference on January 27, 2022 and set a trial date for March 21, 2023. Dkt. Nos. 390, 398.

12  **E.      Negotiating the Settlement for the Benefit of the Class**

13      Settlement talks in this case were protracted, spanning more than two years. After a period of

14  factual development, the parties began discussing settlement in the spring of 2020. Judge Gandhi

15  conducted full-day mediation sessions with the parties in June and August 2020. The parties continued

16  to engage in settlement discussions under Judge Gandhi's supervision leading up to the February 4,

17  2021 class certification hearing, but reached an impasse. The parties did not re-engage on settlement

18  until June 2021, after the Court's decision on class certification. At that point the parties exchanged

19  multiple proposals and counterproposals but made limited progress.

20      After the Court denied Apple's _Daubert_ motions related to trial, the parties appeared before

21  Judge Infante for a third mediation, on February 8, 2022. The parties reached agreement in principle at

22  the mediation and signed a term sheet on February 10. The parties then drafted and negotiated the

23  settlement agreement, executing it on July 18, 2022. Class Counsel also developed a plan of allocation

24  for the distribution of the Net Settlement Fund. _See generally_ Joint Decl., ¶¶ 33-35.

25  **F.      Ensuring Adequate Relief and Distribution of the Fund**

26       Under the Settlement, Apple will pay $50,000,000 to create a non-reversionary settlement

27  fund for Settlement Class Members. Settlement Agreement ("SA"), Dkt. No. 410-1, at § 2.1. Notice

28  costs, administration expenses, attorneys' fees and costs, and service awards awarded by the Court will

---

7

1  be deducted from the fund. *Id.* at § 2.3. The balance (the "Net Settlement Fund") will be applied to pay

2  Class Members pursuant to the plan of allocation.

3  Class Counsel developed the plan of allocation to treat Class Members fairly in relation to the

4  extent of their injuries. Joint Decl., ¶ 41. The plan balances the need to prevent fraudulent claims while

5  reasonably accounting for differing product experiences. *Id.* ¶¶ 41; 49. Class Counsel insisted on

6  substantial payments to Class Members who had to obtain multiple keyboard repairs. *Id.* at ¶ 41. As a

7  result, the Settlement ensures that those purchasers (Group 1) will receive a minimum payment of

8  $300 and may receive payment as high as $395, without the need to submit a claim. SA at §§ 3.4.3.1;

9  3.4.4. Settlement Class Members may also become eligible for Group 1 payment until two years after

10 preliminary approval. *Id.* at § 3.4.4. This extended payment period protects Class Computer owners

11 who will need to obtain multiple repairs in the future—a significant benefit given that the computers at

12 issue include MacBook models released as late as the end of 2019. Joint Decl., ¶ 51.

13 Class members who obtained only one repair, despite the availability of the KSP, can still

14 receive substantial payments if the repair was unsatisfactory. Class members who obtained a single

15 topcase replacement (Group 2) can get up to $125, and those who obtained only key cap replacements

16 (Group 3) can get up to $50. SA at § 3.4.3.2; 3.4.3.3. Group 2 and 3 claimants must submit a claim

17 attesting that the repair did not resolve their keyboard problems. *Id.* at § 3.3.1. As of this filing nearly

18 fifty thousand claims have been made. Keough Decl., ¶ 34. The claim form is prepopulated and

19 requires no documentation for Class members whose information appears in Apple's records, a benefit

20 that makes submission simple and easy for those with verified repairs. *Id.* at § 3.3.5. Class members

21 who do not appear in Apple's records but believe they qualify can submit a claim demonstrating their

22 eligibility with minimal documentation. *Id.* §§ 3.3.5-3.3.6. As a whole, this claim process discourages

23 fraudulent claims without erecting unreasonable barriers for qualifying claimants. Joint Decl., ¶ 49.

24 As an additional benefit for the Class, counsel secured Apple's commitment to keep in place

25 its KSP, which provides four years of protection from the date of purchase for all manifestations of the

26 alleged defect, such as stuck keys or nonresponsive keys. SA at § 3.1.1. Depending on the keyboard

27 issues presented, Settlement Class Members may receive a free replacement of their computer topcase

28 (the laptop assembly that contains the keyboard as well as the battery, trackpad, and speakers). Joint

8

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

Decl., ¶ 39. The KSP guaranteed by the Settlement thus provides Class members who experience product failures with a new keyboard and other major components. *Id*.

## IV.    ARGUMENT

### A.    The Requested Fee Is Reasonable and Should Be Awarded.

Class Counsel, working on contingency against one of the largest companies in the world, overcame serious hurdles over more than four years to bring these claims to a favorable resolution. Absent counsel's efforts, the Class likely would not be receiving any monetary compensation at all. Considering the Settlement achieved—which provides cash payments to all Class members who encountered the alleged defect, as well as protecting them for at least two years going forward—Class Counsel's requested 30% fee is reasonable, consistent with applicable law, and well supported by the record. Moreover, if granted, the requested award will not decrease projected Class Member recoveries. Joint Decl., ¶ 58. Accordingly, the Court should grant this request.

### 1.    The Court Should Determine Class Counsel's Fee as a Percentage of the Common Fund.

Attorneys may recover reasonable attorneys' fees from a common fund settlement they secure on behalf of a class. The Supreme Court has explained that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund fee is generally "calculated as a percentage of the recovery"). Attorneys' fees are awarded as a means of ensuring the beneficiaries of a common fund share with those whose labor created the fund. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). The percentage-of-the-fund method aligns class counsel's interests with those of the class, and properly incentivizes capable counsel not only to accept challenging cases but to push for the best result that can be achieved. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (percentage method "directly aligns the interests of the class and its counsel") (citation omitted). For these reasons, the percentage method "is preferred when"—as here——"counsel's efforts have created a common fund for the benefit of the

9

class." *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018); *accord Korean Air Lines Co. Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013) (recognizing that "use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit"); *Roe v. SFBSC Mgmt., LLC*, No. 14-CV-03616-LB, 2022 WL 17330847, at *19 (N.D. Cal. Nov. 29, 2022) (same).

The settlement amount in this case is a fixed common fund of $50,000,000. Therefore, the benefit to the class is easily quantifiable, which further favors determining the fee using the percentage method. *See Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016).

### 2. The Court Should Award a Fee of 30% of the Fund.

Class Counsel's requested fee amount of 30% falls within "20-30 percent as the usual range" in common fund cases. *Destefano*, 2016 WL 537946, at *16; *Vizcaino*, 290 F.3d at 1047. The Ninth Circuit's 25% "benchmark" for an attorneys' fees award in a class action provides a starting point; the Court determines the appropriate percentage by "tak[ing] into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048; *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1120 (9th Cir. 2021). The benchmark "should be adjusted when the percentage of recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2018 WL 2234598, at *3 (N.D. Cal. May 15, 2018) (quotation marks and citation omitted). The benchmark is subject to adjustment based on the Court's assessment of: "(1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in comparable cases." *In re Capacitors*, 2018 WL 4790575, at *3 (citing *Vizcaino*, 290 F.3d at 1048-50); *Durham v. Sachs Elec. Co.*, No. 18-CV-04506-BLF, 2022 WL 2307202, at *8 (N.D. Cal. June 27, 2022) (approving upward adjustment based on factors including risk and difficulty of the case). As detailed below, all of these *Vizcaino* factors support the fee requested by Class Counsel here.

1

### a. The Relief Obtained for the Class Is Excellent.

"The most important factor is the results achieved for the class. Outstanding results merit a higher fee." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 4126533, at *4 (N.D. Cal. Aug. 3, 2016) (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)); *see Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"). Class Counsel in this case obtained a large fund for the Class, which the Court found "represents approximately 9% to 28% of the total estimated damages[.]" Dkt. No. 426 at 7. The settlement provides substantial payments to Class Members, including an automatic, minimum payment of $300 to each Class Member who had to obtain multiple repairs. SA at § 3.4.4. Class Counsel have already begun to receive praise for the Settlement from Class members, and tech journalists have characterized the settlement as "massive." Joint Decl. ¶ 59. Class Counsel achieved this result in heavily contested litigation against skilled counsel. *See, e.g.*, *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (C.D. Cal. 2013) ("The quality of opposing counsel is important in evaluating the quality of Class Counsel's work.").

The settlement entitles Settlement Class Members to cash relief from keyboard issues for the four-year useful life of a laptop, in addition to ensuring the protection of Apple's KSP. *See Vizcaino*, 290 F.3d at 1049 ("Incidental or nonmonetary benefits conferred by the litigation are a relevant circumstance" in determining a fee award); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, No. 05-05437 RBL, 2008 WL 1901988, at *3 (W.D. Wash. Apr. 24, 2008). As discussed, the settlement provides for payments as high as $395 for Class members who had to obtain multiple keyboard replacements, and payments up to $125 for those who obtained only one unsatisfactory repair. SA at § 3.4. Other product defect class actions, including cases against Apple, have yielded significantly lower payments. *See, e.g.*, *In re Apple iPhone 4 Prod. Liab. Litig.*, No. 5:10-MD-2188 RMW, 2012 WL 3283432, at *1 (N.D. Cal. Aug. 10, 2012) (providing class members cash payments of only $15); *Grace v. Apple, Inc.*, No. 17-CV-00551-LHK (N.D. Cal. Aug. 22, 2019), Dkt. No. 429 at 18 (initial payments of $3); *In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD (N.D. Cal.), Dkt. Nos. 238, 247 (paying $35 to $79 to class members who received replacement power adapters); *iPod Nano Cases*, Case No. BC342056 (Los Angeles Super. Ct.) (paying between $15 to $25

11

for Apple iPod Nano owners); *see also Horvath v. LG Electronics MobileComm U.S.A., Inc.*, Dkt. No. 101 (S.D. Cal. Jan. 14, 2014) (approving settlement of $19 per claimant in class action alleging smartphone defect). Further, by virtue of the settlement, Class members who experience multiple repairs will remain eligible for payment for two years after Preliminary Approval, ensuring compensation for those who may experience keyboard problems in the future. After deduction of the requested attorneys' fees, costs, service awards, and administrative expenses,[2] $32 million would remain in the fund, which Class Counsel anticipates will be sufficient to cover the individual Class member payments estimated in the Notice. *Id.* ¶ 58. As such, the size of the Settlement Fund and the relief for the Class strongly support the requested fee award.[3]

> **b.** **The Product Liability Claims Against Apple Were Highly Complex and Risky.**

The risk of the litigation is another key factor in determining a reasonable fee. *See Vizcaino*, 290 F.3d at 1048; *Destefano*, 2016 WL 537946, at *17 (approving the requested fee, in part, because the "risks associated with the case were substantial"); *AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2022 WL 16579324, at *7 (N.D. Cal. Nov. 1, 2022) (33% fee award justified by "substantial

---

[2] The Settlement Administrator will perform all settlement notice and administration duties at a cost not expected to exceed $1,400,000. Joint Decl., ¶ 64.

[3] *See, e.g., Gergetz v. Telenav, Inc.*, No. 16-CV-04261-BLF, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) (benchmark increased to 30% of the $3.5 million gross settlement fund in taking into account the exceptional results achieved among other factors); *Mauss v. NuVasive, Inc.*, No. 13-CV-2005 JM (JLB), 2018 WL 6421623, at *6 (S.D. Cal. Dec. 6, 2018) (settlement that was "approximately 23 to 24 percent" of the maximum damages weighed in favor of upward adjustment of the benchmark to 30 percent of the common fund); *Brown v. CVS Pharmacy, Inc.*, No. CV15-7631 PSG (PJWx), 2017 WL 3494297, at *6 (C.D. Cal. Apr. 24, 2017) (settlement of 27% of maximum possible recovery weighed in favor of upward adjustment from the benchmark); *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 2909429, at *8 (N.D. Cal. May 19, 2016) ("It is also notable that the settlement represents 20% of the class's maximum possible recovery").

risk" and results). "The rationale behind awarding a percentage of the fund to counsel in common fund cases is the same that justifies permitting contingency fee arrangements in general. . . . The underlying premise is the existence of *risk*—the contingent risk of non-payment." *In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) (emphasis in original).

Consumer fraud class actions tend to be riskier than most other types of class actions. *Kakani v. Oracle Corp.*, No. 06-06493-WHA, 2007 WL 4570190, at *4 (N.D. Cal. Dec. 21, 2007). For example, consumer plaintiffs suing device manufacturers often have been unable to maintain a class action on a developed record. *See, e.g.*, *Haag v. Hyundai Motor Am.*, 2019 WL 1029002, at *4 (W.D.N.Y. Mar. 5, 2019) (finding common issues did not predominate in a putative product defect class action, as "there is no basis for the Court to infer that a reasonable consumer—let alone an entire class of consumers— would have demanded a lower purchase or lease price").[4] Class Counsel likewise took on risk in undertaking this representation and challenging Apple, committing their time, money, and energy to the prosecution of a multi-year consumer products case against one of the world's most successful companies. *See Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1009 (9th Cir. 2002) (holding that "risk should be assessed when an attorney . . . elects to pursue the claim on the client's behalf.").

Absent settlement, Apple would have funded a trial defense and in all likelihood moved to decertify the Class. Plaintiffs faced major risks associated with decertification, trial, and a post-trial

---

[4] *See also, e.g.*, *Davidson v. Apple*, No. 16-cv-04942-LHK, 2019 WL 2548460, at *1 (N.D. Cal. June 20, 2019) (denying class certification for the third time in a consumer case involving smartphones); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1007 (N.D. Cal. 2013) (granting summary judgment and denying class certification as moot in case involving Apple's data collection practices); *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 976 (N.D. Cal. 2016) (dismissing with prejudice claims based on software updates that purportedly removed features from phones); *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 484 (S.D. Cal. 2013); *Opperman v. Kong Techs., Inc.*, No. 13-CV-00453-JST, 2017 WL 3149295, at *1 (N.D. Cal. July 25, 2017) (denying class certification in case based on alleged security flaws in Apple's mobile applications).

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

1    appeal, especially given Apple's vast resources and technical expertise. The "battle of the experts" on

2    both liability and damages would have been heated, with unpredictable results, and the outcome of a

3    Ninth Circuit appeal uncertain. *See Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *10 (C.D.

4    Cal. 2014) ("In the absence of a settlement, it is very likely that this case could ultimately be decided

5    at trial by a 'battle of the experts' over the existence of a [defect] . . . taking those issues to trial might

6    be more challenging for Plaintiffs than for BMW, given complex technical nature of the CVT

7    system.").

8         Plaintiffs would have had to overcome daunting defenses, including Apple's arguments that the

9    failure rate was low, the keyboards embedded in the computer models significantly differed over the

10   product generations, and it lacked sufficient knowledge to create a duty to disclose. *See, e.g.*, *In re*

11   *Seagate Tech. LLC*, 326 F.R.D. 223, 245 (N.D. Cal. 2018) (evidence of defendant's knowledge from

12   later in class period did not show requisite knowledge for class members who purchased earlier in the

13   period). Apple also would have maintained that the KSP moots or, at a minimum, substantially

14   decreases the value of Plaintiffs' claims because it already offers an effective remedy. *See Looper v.*

15   *FCA US LLC*, 2017 WL 11650429, at *6 (C.D. Cal. 2017) (the manufacturer's recalls made the

16   plaintiffs' recovery uncertain, which supported the settlement). And Apple vigorously contested

17   Plaintiffs' complex damage theory, which they would have had to persuade a lay jury to accept.

18        Seeing this case through to verdict would have required countless additional attorney hours and

19   expense. Especially given the risks—as well as the fact that the aging laptops will soon be obsolete—

20   the Settlement is a clear win for consumers. *See, e.g.*, *Skeen v. BMW of N. Am., LLC*, 2016 WL

21   4033969, at *9 (D.N.J. July 26, 2016) (noting that "the warranty on Ms. Williams's vehicle . . . has

22   already expired even under the extended terms of the settlement."). Class members have the

23   opportunity now to share in the fund and obtain "a significant, easy-to-obtain benefit"—cash

24   recoveries—through automatic payment or with minimal effort using a simplified claim process. *In re*

25   *Haier Freezer Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890, at *4 (N.D. Cal. 2013).

26   The risk of little or no recovery, together with the complexity of the case and likelihood of significant

27   additional expense and delay, weigh in favor of granting the requested fee.

28

### c.  Class Counsel Litigated the Case on a Fully Contingent Basis to the Eve of Trial.

"When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment . . . justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015). Success in this case was far from a sure thing at the outset. Class Counsel's fee was entirely contingent. Joint Decl., ¶ 71. *See Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1328 (W.D. Wash. 2009) (approving 1.82 fee multiplier in part because "the demanding nature of this action precluded Class Counsel from accepting other potentially profitable work."). Since 2018, Class Counsel advanced all necessary expenses, and the representation precluded their work on other matters. Joint Decl., ¶ 71. The potential that Class Counsel would receive nothing supports approval of their requested fee. *See WPPSS*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").[5]

Class Counsel held out for an optimal result for the Class and pursued the claims against Apple to the eve of trial. *See Martinelli v. Johnson & Johnson*, No. 2:15-CV-01733-MCE-DB, 2022 WL 4123874, at *9 (E.D. Cal. Sept. 9, 2022) (33.3% award justified based on contingent risk assumed by counsel in case involving "extensive discovery" and "contested motion practice"). A 30% fee is less than the percentage fee provided for in a standard contingency agreement, and "when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market

---

[5] *See also Ching v. Siemens Indus.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. Jun. 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."); *Brown v. 22nd Dist. Agric. Ass'n*, No. 15-CV-02578-DHB, 2017 WL 3131557, at *8(S.D. Cal. July 21, 2017) (recognizing that "class counsel was forced to forgo other employment in order to devote necessary time to this litigation" and concluding that the substantial risk associated with taking the matter on a contingent basis warranted "an upward adjustment to the fee award").

price for legal services, in light of the risk of nonpayment and the normal rate of compensation . . . ." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001); *see Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring) (noting that "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers."); *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016) ("If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery."); Robinson, *An Empirical Study of Settlement Conference Nuts and Bolts*, 17 Harv. Negot. L. Rev. 97, 112 (2012) ("In many instances, the attorney's fee would be 33% of a settlement, but 40% if it goes to trial."). Hence the contingency risk and the stage of litigation further support Class Counsel's request.

### d. Successfully Prosecuting the Case Against Apple Required a High Level of Skill.

Class Counsel's experience and the result delivered also support granting the requested fee. *See Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091, at *13 (N.D. Cal. Dec. 19, 2017) (noting that the skill required in extensive motion practice and discovery as well as the quality of work performed by highly experienced counsel supported the fee award). The "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (citation omitted), and "the stated goal in percentage fee-award cases [is] ensuring that competent counsel continue to be willing to undertake risky, complex and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (internal quotation marks and citations omitted); *see Zepada v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (class counsel's expertise allowed for a result that "would have been unlikely if entrusted to counsel of lesser experience or capability" given the "substantive and procedural complexities" and the "contentious nature" of the case).[6]

---

[6] *See also Allagas v. BP Solar Int'l, Inc.*, No. 3:14-CV-00560-SI (EDL), 2016 WL 9114162, at *2 (N.D. Cal. Dec. 22, 2016); *Carlin v. DairyAm. Inc.*, 380 F. Supp. 3d 998, 1021 (E.D. Cal. 2019) (the

Class Counsel are experienced in high-stakes consumer class actions. *See* Dkt. No. 30; Joint Decl., ¶ 70. In granting preliminary approval, this Court found that Class Counsel "vigorously prosecuted the case" and that "Counsel for both parties are highly experienced in complex class litigation." Dkt. No. 426 at 6-7. The quality of Class Counsel's representation is reflected in their work throughout the action and in the settlement before the Court. *See Moreyra v. Fresenius Med. Care Holdings, Inc.*, No. SACV-10517-JVS-RZx, 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (the result obtained is "[t]he single clearest factor reflecting the quality of class counsels' services") (citation omitted). Class Counsel applied their experience from case inception forward by actively investigating the underlying facts, interviewing class members, and filing and pursuing the claims against Apple. Joint Decl., ¶ 5. Among other work benefiting Plaintiffs and the other computer purchasers, Class Counsel: (a) opposed three motions to dismiss, (b) certified a seven-state class, (c) submitted 10 expert reports and defended their experts against multiple *Daubert* challenges, (d) reviewed over 1.2 million pages of documents, (e) briefed discovery motions in this Court and in other jurisdictions, and (f) took 22 depositions. *Id.* ¶¶ 7-32. Class Counsel held out through multiple mediations and negotiations over two years to secure a settlement providing for automatic payments of up to $395 for persons who obtained multiple keyboard repairs, and recoveries of up to $50 or $125 for Class Computer purchasers who remained unsatisfied after obtaining a single repair, against a capable and determined team of Morrison & Foerster attorneys who, unlike Class Counsel, were not operating on a contingency. *See Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *3 (C.D. Cal. Sept. 20, 2022) ("[E]specially when considering that Defendants were represented by a prominent litigation firm, Class Counsel's ability to get the case this far along evinces their high quality of work."); *Barbosa*, 297 F.R.D. at 449 (same); *Wing v. Asarco Inc.*, 114 F.3d 986, 988–89 (9th Cir. 1997) (approving a 2.0 fee multiplier in part because of "the quality of the [defendant's] opposition").

---

"breadth and depth" of plaintiffs' counsel's experience and their "'prosecution and management of a complex national class action" justified upward departure from 25% benchmark).

Class Counsel were unable to piggyback on investigations or enforcement actions of governmental officials, instead securing the relief through their efforts alone. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (court justified use of a multiplier based in part on finding that "counsel faced substantial risk in prosecuting this action" and "did not have the benefit of fruits from underlying government actions"). Thus, the skill and expertise brought to bear by Class Counsel support the requested fee.

> **e.      A Comparison to Awards in Similar Cases Demonstrates That the Requested Fee Is Reasonable.**

The 30% fee requested by Class Counsel is within the usual range of "20-30%" in common fund cases. *Vizcaino*, 290 F.3d at 1047. "[C]ourts in this Circuit often award fees at or exceeding 30 percent, and such awards are routinely upheld." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 15-MD-02672-CRB, 2022 WL 17730381, at *11 (N.D. Cal. Nov. 9, 2022) (citing *Hernandez v. Dutton Ranch Corp.*, No. 19-cv-817, 2021 WL 5053476, at *6 (N.D. Cal. Sept. 10, 2021)). "[T]he request for attorneys' fees in the amount of 30% of the common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases." *Ching*, 2014 WL 2926210, at *8 (30% awarded) (collecting cases); *Galeener v. Source Refrigeration & HVAC, Inc.*, No. 3:13-CV-04960-VC, 2015 WL 12977077, at *1 (N.D. Cal. Aug. 21, 2015).[7] The requested 30% also is within the range awarded specifically in consumer class actions, which, as noted above, pose unique risks. *See, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420, at *9 (N.D. Cal.

---

[7] *See also, e.g.*, *Cabiness v. Educ. Fin. Sols., LLC*, 2019 WL 1369929, at *8 (N.D. Cal. Mar. 26, 2019) (30%); *Lalli v. First Team Real Est.-Orange Cnty.*, 2022 WL 8207530, at *14 (C.D. Cal. Sept. 6, 2022) (30%); *Gergetz*, 2018 WL 4691169, at *7 (30%); *Nelson v. Avon Prods.*, No. 13-CV-02276-BLF, 2017 WL 733145, at *6 (N.D. Cal. Feb. 24, 2017) (awarding 33.3% and collecting cases awarding 30% or more); *Jarrell v. Amerigas Propane, Inc.*, No. 16-CV-01481-JST, 2018 WL 1640055, at *3 (N.D. Cal. Apr. 5, 2018) (30%); *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-CV-01788-JST, 2016 WL 344532, at *9 (N.D. Cal. Jan. 28, 2016) (34.3%); *Carlin*, 380 F.Supp.3d at 1023 (33.3%).

Apr. 24, 2019) (awarding 30% in consumer privacy litigation); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 183285, at *2 (N.D. Cal. Jan. 14, 2016) (awarding a 30% fee); *Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016) (finding award of 30% reasonable in consumer fraud case).[8]

Class Counsel's requested fee award is in line with fees approved in connection with comparable settlements throughout the Ninth Circuit. It is reasonable and should be approved as such.

### 3.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee Application.

Class Counsel's negative multiplier in relation to the fee request confirms its reasonableness. A lodestar cross-check may be used to ensure that class counsel performed the work necessary to justify the fee sought and will not receive an undeserved windfall. *Vizcaino*, 290 F.3d at 1050; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("[T]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.") (citation omitted). Lodestar method involves "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonably hourly rate." *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). In the Ninth Circuit, lodestar multipliers of up to four are frequently awarded in common fund cases like this one. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65 held "within the range of multipliers applied in common fund cases").

Class Counsel's rates are reasonable in their prevailing markets for comparable legal services. *See Lenovo*, 2019 WL 1791420, at *9; *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving rates of up to $1,325 for partners). For example, a court recently found "billing rates of $895 to $1,295 per hour for partners and counsel, and between $565 and $985 for

---

[8] *See also, e.g.*, *Johnson v. General Mills, Inc.*, No. SACV 10-00061-CJC, 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) (awarding 30% in false advertising case under the CLRA and UCL); *Peel v. Brooksam. Mortg. Corp.*, 2015 WL 12745788, at *6 (C.D. Cal. Apr. 6, 2015) (approving 29.3% in case involving fraudulent omissions).

associates is reasonable within the legal community of Los Angeles for attorneys of similar skill." *Hope Med. Enters., Inc. v. Fagron Compounding Serv., LLC*, 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022); *see also In re Auto. Parts Antitrust Litig.*, 2019 WL 13090127, at *3 (E.D. Mich. Dec. 29, 2019) ("In national markets, partners routinely charge between $1,200 and $1,300 an hour, with top rates at several large law firms exceeding $1,400.") (citations and quotations omitted); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018). Class Counsel's hourly rates have been repeatedly approved by courts in MDLs and other complex cases.[9] Joint Decl., ¶ 76. Class Counsel's rates used in the lodestar calculation are the same rates currently being paid by our fee-paying clients in other complex litigation matters. Joint Decl., ¶ 77.

Applying their current rates in view of the lengthy delay in payment,[10] Class Counsel's and the Executive Committee's cumulative lodestar as of December 31, 2022 is $16,777,146.75. Joint Decl., ¶ 74. This cumulative lodestar does not include any time spent on the related *Huey v. Apple* action, pending in the District of Columbia. *Id.* The requested fee is thus several hundred thousand dollars *below* Plaintiffs' counsel's lodestar accrued from prosecuting the litigation since 2018. If the Court grants the requested $15,000,000 in fees, the nominal multiplier on Class Counsel's lodestar

---

[9] *See*, *e.g.*, *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (Girard Sharp); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *6 (N.D. Cal. Aug. 23, 2018) (CSKDS).

[10] *Hurtado v. Rainbow Disposal Co.*, 2021 WL 2327858, at *5 (C.D. Cal. May 21, 2021) ("[T]he Court conducts the lodestar crosscheck by applying Class Counsel's current, rather than historic, hourly rates to all hours reasonably billed. This higher billing rate effectively compensates Class Counsel for any delay in re receiving payment."); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (holding "delay in payment . . . a factor properly considered in arriving at a reasonable hourly rate"); *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) ("The lodestar should be computed either using an hourly rate that reflects the prevailing rate as of the date of the fee request, to compensate class counsel for delays in payment inherent in contingency-fee cases, or using historical rates and compensating for delays with a prime-rate enhancement.").

---

1    will be only 0.89—and this negative multiplier confirms the requested fee is reasonable. *See In re*

2    *DRAM Antitrust Litig.*, No. C 06-4333 PJH, 2013 WL 12387371, at *12-13 (N.D. Cal. Nov. 5, 2013)

3    (observing that a negative multiplier "is virtually sufficient to satisfy the cross-check requirement");

4    *see also Schiller v. David's Bridal*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *23 (E.D.

5    Cal. June 11, 2012) (explaining that a negative lodestar multiplier strongly supports the

6    reasonableness of a percentage fee request); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138

7    VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) (noting that a negative multiplier in a

8    lodestar cross-check "suggests that the percentage-based amount is reasonable and fair based on the

9    time and effort expended by class counsel."). California district courts recently have awarded much

10    higher, positive multipliers. *See, e.g.*, *Fleming*, 2022 WL 2789496, at *9 (awarding 30% in attorneys'

11    fees and noting that 2.6 lodestar multiplier confirmed reasonableness of the request); *Kendall v.*

12    *Odonate Therapeutics, Inc.*, No. 3:20-CV-01828-H-LL, 2022 WL 1997530, at *7 (S.D. Cal. June 6,

13    2022) (2.36 lodestar cross-check multiplier confirmed reasonableness of 33.3% fee award); *Blount v.*

14    *Host Healthcare, Inc.*, 2022 WL 1094616, at *10 (S.D. Cal. Apr. 12, 2022) (approving 30% fee

15    award representing a 2.4 multiplier).

16        **B.**    **The Expense Reimbursements Should Be Approved.**

17        "Reasonable costs and expenses incurred by an attorney who creates or preserves a common

18    fund are reimbursed proportionately by those class members who benefit[.]" *In re Media Vision Tech.*

19    *Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S.

20    375, 391-92 (1970)); *see also Floyd v. First Data Merch. Servs. LLC*, No. 5:20-CV-02162-EJD, 2022

21    WL 6173122, at *6 (N.D. Cal. Oct. 7, 2022) ("Class counsel is entitled to reimbursement of

22    reasonable out-of-pocket expenses."). "The prevailing view is that expenses are awarded in addition

23    to the fee percentage." *Williams v. SuperShuttle Int'l, Inc.*, No. 12-CV-06493-WHO, 2015 WL

24    685994, at *2 (N.D. Cal. Feb. 12, 2015) (citations omitted). Reasonable reimbursable litigation

25    expenses include those incurred for document production and database maintenance, experts and

26    consultants, depositions, translation services, travel, mailing and postage expenses. *See Media Vision*,

27    913 F. Supp. 1362 at 1366; *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982),

28    *remanded on other grounds*, 461 U.S. 952 (1983).

21

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

1    In prosecuting this case since 2018, Class Counsel have incurred $1,559,090.75 in litigation

2    expenses including as part of the lengthy expert-witness proceedings. Joint Dec., ¶ 81. These

3    expenses, which are detailed in the accompanying Joint Declaration, were advanced for the benefit of

4    the Class and were reasonably incurred and necessary to achieving the result. They should be

5    reimbursed in full.

6        **C.    The Court Should Award $5,000 Service Awards for the Class Representatives.**

7    Finally, Class Counsel respectfully request that the Court approve a $5,000 service award to

8    each of the twelve named Plaintiffs. These awards are "intended to compensate class representatives

9    for work done on behalf of the class, to make up for financial or reputational risk undertaken in

10   bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

11   general." *Gergetz*, 2018 WL 4691169, at *7 (quoting *Rodriguez*, 563 F.3d at 958-59). As summarized

12   in their declarations filed herewith, Plaintiffs devoted significant time to this case, assisting counsel in

13   preparing the complaints, monitoring and communicating with counsel about case developments,

14   responding to written discovery requests served by Apple, gathering and producing documents, and

15   preparing for and testifying at a deposition. *See also* Joint Decl., ¶¶ 83-85.

16   The requested service awards are consistent with Ninth Circuit practice: "[A] $5,000 payment

17   is presumptively reasonable," and awards "typically range from $2,000 to $10,000." *Bellinghausen v.*

18   *Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases); *see, e.g.*, *In re Zoom*

19   *Video Commc'ns, Inc. Priv. Litig.*, 2022 WL 1593389, at *12 (N.D. Cal. Apr. 21, 2022) (approving

20   $5,000 awards); *In re Toys R Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470–72 (C.D. Cal. 2014)

21   (awarding three plaintiffs $5,000 each, "consistent with the amount courts typically award as

22   incentive payments."); *Nelson*, 2017 WL 733145, at *7 (noting that courts "routinely grant requests

23   for an award over $5,000 where the particular circumstances warrant."). The proposed $5,000 awards

24   for the Class Representatives are proportional to the range of settlement awards for individual class

25   members in this case and should be approved as reasonable.

26

27

28

22

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

1    V.    **CONCLUSION**

2         For the foregoing reasons, Plaintiffs respectfully request that the Court award attorneys' fees

3    in the amount of $15,000,000, reimbursement of litigation expenses in the amount of $1,559,090.75,

4    and service awards of $5,000 to each of the Class Representatives.

5

6    Dated: January 6, 2023                              Respectfully submitted,

7                                                        **GIRARD SHARP LLP**

8

9                                                        /s/ *Simon Grille*

10                                                       Daniel C. Girard (SBN 114826)
                                                         Jordan Elias (SBN 228731)
11                                                       Adam E. Polk (SBN 273000)
                                                         Simon S. Grille (SBN 294914)
12                                                       **GIRARD SHARP LLP**
                                                         601 California Street, Suite 1400
13                                                       San Francisco, CA 94108
                                                         Tel: (415) 981-4800
14                                                       Fax: (415) 981-4846
15                                                       *dgirard@girardsharp.com*
                                                         *jelias@girardsharp.com*
16                                                       *apolk@girardsharp.com*
                                                         *sgrille@girardsharp.com*
17

18                                                       Steven A. Schwartz *(pro hac vice)*
                                                         Beena M. McDonald *(pro hac vice)*
19                                                       **CHIMICLES SCHWARTZ KRINER**
                                                         **& DONALDSON-SMITH LLP**
20                                                       One Haverford Centre
21                                                       361 W. Lancaster Avenue
                                                         Haverford, PA 19041
22                                                       Tel: (610) 642-8500
                                                         Fax: (610) 649-3633
23                                                       *sas@chimicles.com*
                                                         *bmm@chimicles.com*
24

25                                                       *Plaintiffs' Co-Lead Class Counsel*

26

27

28

---
23

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Robert C. Schubert
Willem F. Jonckheer
Amber L. Schubert
**SCHUBERT JONCKHEER**
 **& KOLBE LLP**
3 Embarcadero Center, Suite 1650
San Francisco, CA 94111
Tel: (415) 788-4220
Fax: (415) 788-0161
*rschubert@sjk.law*
*wjonckheer@sjk.com*
*aschubert@sjk.law*

E. Michelle Drake
Joseph C. Hashmall
**BERGER & MONTAGUE, P.C.**
43 SE Main Street
Suite 505
Minneapolis, MN 55414
Tel: (612) 594-5999
Fax: (215) 875-4604
*emdrake@bm.net*
*jhashmall@bm.net*

Esfand Y. Nafisi
**LAW OFFICES OF ESFAND NAFISI**
330 Sir Francis Drake Blvd., Suite B
San Anselmo, CA 94960
Tel: (415) 747-7466
Fax: (415) 363-3753
*enafisi@classlawdc.com*

*Counsel for Plaintiffs in In re MacBook Keyboard*
 *Litigation*

Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.
Washington, D.C. 20002
Office: (202) 470-3520
Fax: (202) 800-2730
www.classlawdc.com

*Counsel for Plaintiff in Huey v. Apple Inc.*

24

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION
EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD