Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*sgrille@girardsharp.com*

Steven A. Schwartz (*pro hac vice*)
Beena M. McDonald (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER**
 **& DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
*sas@chimicles.com*
*bmm@chimicles.com*

*Class Counsel*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE: MACBOOK KEYBOARD LITIGATION | Case No. 5:18-cv-02813-EJD-VKD **JOINT DECLARATION OF SIMON S. GRILLE AND STEVEN A. SCHWARTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS** Judge:  Hon. Edward J. Davila Date:   March 16, 2023 Time:   9:00 a.m. Courtroom: 4 – 5th Floor |

We, Simon S. Grille of Girard Sharp LLP, and Steven A. Schwartz of Chimicles Schwartz Kriner & Donaldson-Smith LLP, declare as follows:

1.    Simon S. Grille is a partner of Girard Sharp LLP ("Girard Sharp") and one of the attorneys of record for Plaintiffs and the Class in this litigation. Mr. Grille submits this declaration in support of Plaintiffs' Motions for Final Approval of Class Action Settlement and for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards. He submits this declaration based on personal knowledge, and if called to do so, could testify to the matters contained herein.

2.    Steven A. Schwartz is a partner of Chimicles Schwartz Kriner & Donaldson-Smith LLP ("CSKDS") and one of the attorneys of record for Plaintiffs and the Class in this litigation. Mr. Schwartz submits this declaration in support of Plaintiffs' Motions for Final Approval of Class Action Settlement and for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards. He submits this declaration based on personal knowledge, and if called to do so, could testify to the matters contained herein.

3.    For convenience, Girard Sharp and CSKDS are referred to in this Declaration as "Class Counsel" or "we."

## THE LITIGATION

### Investigation and Complaint Filing

4.    On May 11, 2018, Class Counsel filed a class action complaint against Apple Inc. on behalf of their clients Kyle Barbaro and Zixuan Rao, Plaintiffs in the first-filed complaint. That complaint alleged that MacBook laptops equipped with a "butterfly keyboard" contain a defect that causes the keys to become unresponsive or stop correctly registering keystrokes when small particles of dust or debris accumulate beneath them.

5.    Before filing, our firms reviewed thousands of consumer complaints concerning Apple's butterfly keyboards and investigated various technical explanations of the mounting keyboard problems.  We responded to hundreds of consumer inquiries, interviewed potential class representatives and class members, and analyzed documentation relating to their potential claims. We also researched publicly available sources concerning Apple's knowledge of the alleged defect, including Apple patent applications, analyzed Apple's written warranty and terms of sale, reviewed

JOINT DECLARATION OF SIMON S. GRILLE AND STEVEN A. SCHWARTZ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

articles reporting on the keyboard problems, studied technical specifications and product reviews, and compiled and analyzed Apple's representations about the MacBook and the butterfly keyboard.  We researched the law and, before filing the complaint, sent Apple a demand letter under California's Consumers Legal Remedies Act.

6.    Three other related class actions were filed after Barbaro's and Rao's first-filed action. Those other cases alleged the same keyboard defect and asserted similar claims.

7.    After instituting suit, Girard Sharp and CSKDS continued to investigate and develop the case. We continued our interviews of consumers who contacted our firms because their MacBooks' keys stopped working, and we also continued to monitor and assess consumer complaints, articles, and videos about the alleged defect. We consulted with economists regarding potential damage theories and with engineering experts regarding the nature and source of the alleged defect. We also reviewed additional patent filings relating to the relevant MacBook keyboards, interviewed former Apple employees, and consulted with third-party repair technicians.  In addition, we consulted with the activist who initiated a change.org petition (which now has over 42,000 signatures) demanding that Apple remedy the defective MacBook butterfly keyboards.

8.    Class Counsel served Apple with early Rule 34 requests in August 2018. We drafted and filed a stipulated protective order and an order governing the handling of electronically-stored information. Class Counsel and Apple vigorously negotiated several provisions in these stipulated orders, such as treatment of experts under the protective order.

9.    We also developed a time-reporting protocol for all Plaintiffs' counsel, which the Court entered. The protocol is unique because it requires Plaintiffs' counsel to publicly file time and expense reports on a quarterly basis. Over the course of this action, we filed 14 quarterly time and expense filings on the case docket.

10.    In the early stages of the litigation, we worked with defense counsel and with other plaintiffs' counsel to organize the related cases. As part of this work, we prepared stipulations to relate and consolidate the related cases and secure a prompt determination on appointment of lead counsel. All other plaintiffs' counsel agreed to the leadership structure proposed in our Motion to Appoint Interim Class Counsel.

JOINT DECLARATION OF SIMON S. GRILLE AND STEVEN A. SCHWARTZ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

11.     On June 26, 2018, the Court consolidated the three related actions, and on September 24, 2018, following an Initial Case Management Conference, the Court appointed Girard Sharp and CSKDS as interim class counsel under Rule 23(g).

12.     On October 11, 2018, we filed a Consolidated Complaint, which included newly developed facts and evidence. We researched and asserted claims for: (1) violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) violations of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (3) fraudulent concealment; (4) breach of the implied covenant of good faith and fair dealing;  (5) breach of the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act ("Song-Beverly"), Cal. Civ. Code § 1792, *et seq.*; (6) violations of the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010, *et seq.*; (7) violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*; (8) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. § 505/1, *et seq.*; (9) violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq.*; (10) violations of New York's General Business Law ("GBL") § 349; and (11) violations of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq.* ("MCPA").

13.     We conferred frequently with Apple after the filing of the Consolidated Complaint. The Parties filed three Joint Case Management Statements before the Court entered an initial case schedule on January 14, 2020. When the global pandemic led to a declaration of national emergency, we again conferred with Apple and jointly submitted a proposal for extending the case schedule, which the Court promptly entered.

***Motions to Dismiss and Amended Complaints***

14.     Apple moved to dismiss the Consolidated Complaint on December 3, 2018, arguing that the non-California Plaintiffs could not pursue claims under California law, that Plaintiffs did not allege sufficient facts to support their consumer fraud claims, and that Plaintiffs' CLRA and Song-Beverly claims were mooted by Apple's Keyboard Service Program ("KSP") geared toward addressing problems in consumers' Butterfly MacBooks. We opposed the motion on January 14, 2019.

---

3

15.    The Court held a hearing on February 21 and then issued an Order Granting in Part and Denying in Part the Motion to Dismiss on April 22, 2019. The Court found that Plaintiffs stated claims for violations of the unfair and fraud prongs of the UCL and claims for omissions-based fraud.  The Court also dismissed Plaintiffs' CLRA and Song-Berverly warranty claims, noting that Plaintiffs did not address the KSP in their complaint and inviting Plaintiffs to amend their complaint to address Apple's mootness arguments. The Court dismissed Plaintiffs' claim for breach of the covenant of good faith and fair dealing.

16.    On May 13, 2019, as permitted under the Court's Order, we filed the First Amended Consolidated Complaint ("FAC"). In view of the Court's analysis, we elected not to replead a claim for breach of the covenant of good faith and fair dealing, but otherwise asserted the same claims as in the Consolidated Class Action Complaint. The FAC squarely addressed Apple's KSP, citing documents obtained from Apple through Class Counsel's early discovery efforts. The FAC also included new factual allegations developed by Class Counsel's ongoing investigation.

17.    Apple moved to dismiss the FAC on June 4, 2019, arguing that Plaintiffs lacked standing to pursue their claims and that the CLRA and Song-Berverly claims should again be dismissed because the KSP mooted the claims. We opposed the motion. The Court held a hearing on November 21, and the next day, the Court issued an Order denying Apple's second motion to dismiss, finding that the Plaintiffs adequately alleged that Apple's KSP did not fully resolve Plaintiffs' claims, and upholding their UCL and Song-Berverly warranty claims.

18.    In April 2020, when the pandemic caused two Plaintiffs to question their ability to continue participating in this litigation, we requested that Apple stipulate to amendment of the complaint to add two new Plaintiffs. Apple would not stipulate, so Plaintiffs moved for leave to amend on May 8, 2020. Apple opposed that motion, but the Court granted it. On July 2, 2020, as permitted by the Court, we filed the operative Second Amended Complaint ("SAC"). The SAC added two plaintiffs and modified the proposed class definition to specify the models of MacBook laptops included as Class Computers.

19.    On July 16, 2020, Apple filed a third motion to dismiss, challenging Plaintiffs' claims for equitable relief under *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir. 2020). Plaintiffs

1  opposed the motion on July 30. The Court granted the motion on October 13, 2020, dismissing with

2  prejudice Plaintiffs' UCL claim and Plaintiffs' remaining claims to the extent they sought an

3  injunction, restitution, or other equitable relief.

4         20.    Apple filed its Answer to the SAC on June 2, 2021.

5  ***Discovery***

6         21.    Class Counsel conducted extensive discovery in this case. Working collaboratively with

7  Apple as well as with other plaintiffs' firms, we:

8         a.    Reviewed, analyzed, and coded approximately 1.2 million pages of documents

9  produced by Apple—including highly technical documents—and 1,237 pages produced by non-

10  parties;

11         b.    propounded to Apple four sets of document requests and three sets of

12  interrogatories;

13         c.    served ten subpoenas *duces tecum* on non-party resellers and repair providers;

14         d.    negotiated document production with Apple's counsel, including with regard to

15  search terms and custodians for the production of electronically stored information;

16         e.    negotiated multiple rounds of supplemental responses to Plaintiffs'

17  interrogatories, which responses included critical information about sales volume and repair rates;

18         f.    deposed 15 Apple witnesses, including its Rule 30(b)(6) designees, between

19  October 30, 2019 and April 30, 2021;

20         g.    prepared responses to Apple's discovery requests on behalf of each Plaintiff,

21  including responses to 19 document requests, eight interrogatories, and a request for inspection with

22  respect to each Plaintiff;

23         h.    gathered, reviewed, and produced Plaintiffs' documents;

24         i.    defended each Plaintiff's deposition (11 total);

25         j.    defended five depositions of Plaintiffs' experts and produced documents in

26  connection with 10 different expert reports;

27         k.    took seven depositions of Apple's experts; and

28         l.    communicated with hundreds of absent class members throughout the litigation.

5

22.     Over the course of this litigation, we also briefed and appeared before Judge DeMarchi on several discovery disputes related to Apple's document production, clawback demand, and Rule 30(b)(6) depositions. Discovery motions were preceded by conferral sessions with Apple's counsel, allowing the parties to narrow some disputes, resolve others, and secure rulings on the remaining points of disagreement. We also conferred with Apple extensively about other discovery disputes, which we were able to resolve without the Court's intervention. For example, we exchanged written correspondence and held several conferences with Apple concerning production of its sales and revenue data for use in our expert's damages model. We drafted Plaintiffs' portion of a joint discovery letter and sent it to Apple before reaching an agreement for production of this data.

23.     Plaintiffs also moved to compel production of nonparty Amazon's MacBook sales data in the Western District of Washington. *See Rao v. Amazon.com, Inc.*, No. 2:20-mc-00104-JCC (W.D. Wash.). After filing the motion, we continued conferring with Amazon and ultimately reached an agreement under which Amazon would produce the requested information. *See id.* at Dkt. No. 7.

***Class Certification***

24.     On August 14, 2020, Plaintiffs moved to certify a seven-state class of Class Computer purchasers (as well as seven constituent state subclasses of purchasers of Class Computers in California, New York, Florida, Illinois, New Jersey, Washington, and Michigan for case management purposes) as to their claims for: (1) breach of implied warranty in violation of the Song-Beverly Act; (2) violations of the UCL ; (3) violations of the CLRA; (4) violations of the WCPA; (5) violations of the FDUTPA; (6) violations of the ICFA; (7) violations of the NJCFA; (8) violations of GBL section 349; and (9) violations of the MCPA.

25.     In connection with the class certification motion, we worked closely Dr. Hal Singer, an economist, and Dr. David Niebuhr, an engineer, who both submitted reports in support of certification. Dr. Singer's report included a full supply-side analysis of the pricing impact of disclosure of the alleged defect. Dr. Singer's presentation required sophisticated econometric analysis and close communication with counsel.

26.     On September 29, 2020, Apple opposed the motion and moved to strike the expert opinions of Plaintiffs' experts. In addition to preparing Plaintiffs' reply brief, we worked closely with

our experts to oppose to Apple's motions to strike. We submitted our reply, reply expert reports, and oppositions to Apple's motions to strike on October 28.

27.   On February 4, 2021, the Court held a hearing on Plaintiffs' Motion for Class Certification and Apple's Motions to Strike. The Court granted Plaintiffs' Motion for Class Certification on March 8. The Court simultaneously granted Apple's Motion to Strike the expert opinion of Dr. David Niebuhr and granted in part and denied in part Apple's Motion to Strike the expert opinions of Dr. Hal Singer, upholding Dr. Singer's conjoint analysis.

28.   On March 22, 2021, Apple filed a Petition for Permission to Appeal Order Granting Class Certification Under Rule 23(f) in the Ninth Circuit. Plaintiffs opposed that petition on April 1. On October 12, the Ninth Circuit denied Apple's petition.

29.   In connection with class certification and other motion practice, Plaintiffs filed under seal a substantial number of documents that Apple had designated as confidential or highly confidential. Class Counsel complied with this District's sealing procedures, reviewed each document that Apple sought to seal, and opposed a large number of Apple's requests. Plaintiffs' oppositions to Apple's sealing motions included detailed charts identifying each document, setting out Plaintiffs' position, and identifying the basis for that position. The Court unsealed many of these documents.

***Merits Expert Work and Trial Setting***

30.   Plaintiffs served merits expert reports on April 13, 2021. The reports of our economist and our original engineering expert contained more detail than their class certification reports. We also engaged an additional engineering expert who examined each of the MacBook models at issue and created three-dimensional models of the alleged failure mechanism. Apple served rebuttal expert reports on May 13, and Plaintiffs served reply expert reports on May 27.

31.   On July 15, Apple moved to exclude the opinions of Plaintiffs' experts Dr. Hal Singer, Dr. David Niebuhr, and Charles Curley from trial. Plaintiffs opposed each of these motions on August 12, and Apple replied in support of its motions on August 26. The Court denied all of Apple's motions to exclude Plaintiffs' experts on January 25, 2022.

32.   The Court held a Trial Setting Conference on January 27, 2022, and set a trial date of March 21, 2023. We then began preparing the case in earnest for trial.

**SETTLEMENT NEGOTIATIONS**

33.    The Parties' settlement negotiations spanned over two years. Class Counsel and Apple began discussing settlement in the spring of 2020. Judge Gandhi (ret.) of JAMS conducted full-day mediation sessions with the Parties in June and August 2020. The Parties then continued to engage in settlement discussions under Judge Gandhi's supervision leading up to the February 4, 2021 class certification hearing, but reached an impasse.

34.    The Parties did not re-engage on settlement until June 2021, after the Court issued its class certification decision. The Parties exchanged multiple proposals and counterproposals but made limited progress. After the Court denied Apple's *Daubert* motions for purposes of trial, the Parties appeared before Judge Infante (ret.) of JAMS for a third mediation, on February 8, 2022. With Judge Infante's assistance, the Parties reached agreement in principle at the mediation (including the $50 million amount and the contours of the plan of allocation) and signed a term sheet on February 10.

35.    The Parties then negotiated the settlement agreement and executed it on July 18, 2022. Class Counsel devoted a significant amount of time at the mediation with Judge Infante and thereafter developing and negotiating with Apple the plan of allocation to ensure a fair distribution of the Net Settlement Fund.

**SETTLEMENT TERMS**

36.    The proposed Settlement Class consists of all persons and entities in the United States who purchased, other than for resale, one or more of the following Class Computers: MacBook (Retina, 12-inch, Early 2015), MacBook (Retina, 12-inch, Early 2016), MacBook (Retina, 12-inch, 2017), MacBook Air (Retina, 13-inch, 2018), MacBook Air (Retina, 13-inch, 2019), MacBook Pro (13-inch, 2016, Two Thunderbolt 3 Ports), MacBook Pro (13-inch, 2017, Two Thunderbolt 3 Ports), MacBook Pro (13-inch, 2019, Two Thunderbolt 3 Ports), MacBook Pro (13-inch, 2016, Four Thunderbolt 3 Ports), MacBook Pro (13-inch, 2017, Four Thunderbolt 3 Ports), MacBook Pro (15-inch, 2016), MacBook Pro (15-inch, 2017), MacBook Pro (13-inch, 2018, Four Thunderbolt 3 Ports), MacBook Pro (15-inch, 2018), MacBook Pro (13-inch, 2019, Four Thunderbolt 3 Ports), and MacBook Pro (15-inch, 2019). These are the same MacBooks that (a) are subject to Apple's Keyboard Service Program ("KSP") and (b) at issue in Plaintiffs' operative complaint.

37.     The Settlement Class excludes Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns; all judges assigned to this case and any members of their immediate families; the Parties' counsel in this litigation; and all persons who validly request exclusion from the Settlement Class.

38.     Under the Settlement, Apple will pay $50,000,000 to create a non-reversionary settlement fund for Settlement Class Members. Notice costs, administration expenses, attorneys' fees and costs, and service awards awarded by the Court will be deducted from the fund. The balance (the "Net Settlement Fund") will be applied to pay Settlement Class Member claims.

39.     Settlement Class Members will remain eligible for Apple's KSP, which provides four years of protection from the date of purchase for the symptoms of the alleged defect, such as stuck keys or keys not responding to inputs. Depending on the severity and specific problem with their keyboard, Settlement Class Members may receive a free replacement of their computer Topcase—the laptop assembly that contains the entire keyboard as well as the battery, trackpad, and speakers. The KSP thus not only provides a new keyboard but also replaces other major computer components of the laptop, such as its battery, trackpad, and speakers.

## DISTRIBUTION OF THE SETTLEMENT FUND

40.     The Net Settlement Fund will be allocated to Settlement Class Members who experienced keyboard problems and received at least one unsuccessful repair. All Settlement Class Members who went to Apple or an Authorized Service Provider and received a "Topcase Replacement" or a "Keycap Replacement" within four years after the date they purchased their Class Computer are eligible for a cash payment. Settlement Class Members can receive compensation only once for each Class Computer but can make additional claims if they purchased more than one Class Computer. As set forth below, for purposes of setting recovery amounts, the plan of allocation establishes a uniform, objective method for distributing awards that accounts for structural differences among claims based on their value and evidentiary support, including by making common-sense distinctions between: (1) Settlement Class Members who received two or more Topcase Replacements from Apple or an Authorized Service Provider; and (2) Settlement Class Members who received only

JOINT DECLARATION OF SIMON S. GRILLE AND STEVEN A. SCHWARTZ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

1    one Topcase or one or more Keycap Replacement(s) from Apple or an Authorized Service Provider

2    and who attest that the repair did not resolve their keyboard issues.

3    41.    Class Counsel developed the plan of allocation to treat Class Members fairly in relation

4    to the extent of their injuries. The plan balances the need to prevent fraudulent claims while reasonably

5    accounting for differing product experiences. We insisted on substantial payments to Class Members

6    who had to obtain multiple keyboard repairs.

7    42.    In determining how Settlement Class Members will be paid, the Settlement

8    Administrator will divide Claimants into three groups. Group 1 will consist of Settlement Class

9    Members who received two or more Topcase Replacements from Apple or an Authorized Service

10   Provider within four years of purchase based on Apple's records. Group 1 Claimants need not submit a

11   claim to receive compensation. Settlement Class Members may become eligible for Group 1 payment

12   until two years after preliminary approval (i.e., until December 2, 2024). Group 1 payments will be

13   initially set at $300 but may increase up to a cap of $395.

14   43.    Group 2 will consist of Settlement Class Members who obtained a single Topcase

15   Replacement from Apple or an Authorized Service Provider within four years of purchase, and who

16   attest on the Claim Form that the repair did not resolve their keyboard issues.

17   44.    Group 3 will consist of Settlement Class Members who obtained one or more Keycap

18   Replacements (but not Topcase Replacements) within four years of purchase, and who attest on the

19   Claim Form that the repair did not resolve their keyboard issues.

20   45.    Groups 2 and 3 claimants must submit a Claim Form to receive payment. Group 2

21   Claimants can receive up to $125, while Group 3 Claimants can receive up to $50.

22   46.    The Claim Form will be pre-populated with contact information for members of the

23   Settlement Class to the extent reasonably practicable, and members of the Settlement Class will be

24   able to update or confirm their current contact information.

25   47.    To be eligible for payment, Group 2 and 3 Settlement Class Members must confirm

26   under oath that (1) they purchased a Class Computer in the United States, (2) they did not purchase the

27   Class Computer for resale, (3) they received a Topcase or Keycap Replacement, and (4) the repair did

28   not resolve their keyboard issues.

JOINT DECLARATION OF SIMON S. GRILLE AND STEVEN A. SCHWARTZ IN SUPPORT OF
PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR
ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

48.     If a member of the Settlement Class receives a Claim Form with pre-populated responses to (1) and (3) (indicating that Apple has their records), they will not be required to submit supporting documentation. If the Claim Form is not pre-populated, the Claimant will need to submit reasonable documentation or information to support their claims.

49.     Class Counsel designed the streamlined claim procedure to balance the objectives of limiting recovery to eligible claimants, including to prevent fraud, while also optimizing the recoveries for those who experienced repeat issues. The Claim Form, designed in accordance with this District's Procedural Guidance, allows for ease of use by Settlement Class Members, who may submit a claim online or by mail.

50.     After the Claim Period ends, the Settlement Administrator will deduct from the Net Settlement Fund the amount sufficient to pay $300 to each Group 1 Claimant. The Settlement Administrator will also set aside a reserve amount sufficient to pay $300 to the number of Settlement Class Members projected to become a future Group 1 Claimant by December 2, 2024 (two years from the date of the Preliminary Approval Order). The Settlement Administrator will consult with the Parties to determine the reserve amount using Apple's records and projections.

51.     The Reserve Period protects Class Computer owners who will need to obtain multiple repairs in the future—a significant benefit given that the computers at issue include MacBook models released as late as the end of 2019.

52.     The amount remaining in the settlement fund after the above amounts are set aside for Group 1 Claimants will then be divided among eligible Group 2 and 3 Claimants on a proportionate basis using a set of formulas that account for the number of claims in each group and the maximum value of those claims. If the payment amount for each Group 3 Claimant exceeds the $50 limit, any excess will be redistributed to Group 2 Claimants, up to the $125 cap for that group. If a Group 2 payment would exceed the $125 cap, any such excess will be redistributed to Group 1 Claimants up to the $395 cap for that group, including a proportional increase of the amount to be paid to Settlement Class Members who become Group 1 Claimants within two years after Preliminary Approval.

53.     After the payments for Claimants are calculated, Class Counsel will submit a proposed Order to the Court directing payment be made to eligible Claimants and providing that the payments to

Settlement Class Members who may become Group 1 Claimants within two years of preliminary approval may be reduced if the actual number exceeds Apple's projections. Class Payments will be made in two stages—the first payment to occur within a reasonable time after the Effective Date, and the second within a reasonable time after the Reserve Period has elapsed.

54.    If, after the Reserve Period, sufficient funds remain in the Net Settlement Fund, the Settlement Administrator will make a payment of up to $395 to Group 1 Claimants who received a second Topcase Replacement after the expiration of the Claim Period, and a supplemental payment to Group 1 Claimants who received two or more Topcase Replacements before the expiration of the Claims Period, such that all Group 1 Claimants receive up to $395 in total distributions from the Net Settlement Fund.  If, after any such payments, there are remaining funds in the Net Settlement Fund, supplemental payments shall be made to Group 2 Claimants up to $125 and Group 3 Claimants up to $50. If making a supplemental distribution to Settlement Class Members is not practicable, or if, after all such supplemental payments are made, there are remaining funds in the Net Settlement Fund, Class Counsel and Apple will meet and confer to discuss a proposal to present to the Court regarding distribution of remaining funds, including a *cy pres* distribution.

55.    Because all Group 1 Settlement Class Members will receive payment based on Apple's records, the effective claims rate for this group will be at or near 100%. For Group 2 and 3 Claimants, we expect a claims rate of 15% to 25% for Settlement Class Members who appear in Apple's records and do not need to submit documentation or information in support of their Claim. For Settlement Class Members submitting documentation or information, the claims rate will be lower, an estimated 5% or less.

56.    These claims rate estimates are based on discussions with the Settlement Administrator. The estimates are also consistent with Class Counsel's experience, which includes work in cases with claims rates ranging from less than 1% to 50%.

57.    Claim submission rates are fact dependent and driven by factors such as the nature of the case, the severity of the problem, the cost of the underlying product or service, the methods for notice, and the accessibility of the claim form. We have worked to simplify and streamline the claims process

for this settlement, recognizing the need to limit recovery to eligible claimants to prevent fraud while also optimizing recovery for those who had to get multiple repairs.

58.     After deduction of the requested attorneys' fees, costs, service awards, and administrative expenses, approximately $32 million would remain in the fund, which Class Counsel anticipates will be sufficient to fund the individual Class member payments estimated in the Notice. As such, awarding the requested 30% attorneys' fee and expense reimbursements will not decrease the projected recoveries to Class Members that are set forth in the Notices.

59.     Class Counsel have begun receiving praise for the Settlement from Class members. Tech journalists have characterized this Settlement with Apple as "massive." *See* https://www.macworld.com/article/1418084/judge-approves-macbook-keyboard-lawsuit-payout.html (last visited Jan 5, 2023).

### THE SETTLEMENT RELEASE

60.     The proposed release applies to claims arising from the facts underlying the claims and allegations in this action. In accordance with the Procedural Guidance, the release appropriately tracks the claims in the SAC, which alleges a nationwide class of Class Computer purchasers.

61.     The release also extends to the *Huey* action[1]—a parallel suit against Apple pending in the Superior Court of the District of Columbia; plaintiff Huey joins in the agreement. If the Settlement is approved, the Parties agree that both this case and *Huey* will be dismissed with prejudice.

### THE SETTLEMENT ADMINISTRATOR

62.     We retained JND as the settlement administrator after sending requests for proposal to four leading class action administrators and receiving proposals from each of them.

63.     After reviewing all the proposals, we selected JND based on its qualifications and competitive bid. The Court previously approved the Parties' selection of JND to distribute class notice.

64.     Administrative costs will be paid from the settlement fund. Based on information provided by the Parties to date, the Settlement Administrator has agreed to perform all settlement

---

[1] *Huey v. Apple Inc.*, Case No. 2018 CA 004200 B, pending in the Superior Court of the District of Columbia.

13

notice and administration duties required by the Settlement Agreement at a cost not anticipated to exceed $1,400,000.

65.    We worked closely with JND to format notices in a manner that maximizes the likelihood they will be received and understood by Settlement Class Members.

66.    In addition to managing the notice program and receiving and processing claims and opt-outs, JND maintains a dedicated settlement website containing links to the notice, claim form, and all other relevant settlement documents. The accompanying Declaration of Jennifer Keough provides further detail regarding notice and administration.

67.    Based on Apple's purchase, registration, and other databases, Apple has records of contact information (either email address or physical mailing address) for more than 95% of the Settlement Class. Apple provided this information to the Settlement Administrator.

## ATTORNEYS' FEES

68.    Class Counsel respectfully apply for an award of $15 million in attorneys' fees (30% of the settlement fund), $1,559,090.75 million in litigation expenses, and payment of a $5,000 service award to each Class Representative and Plaintiff Huey.

69.    Settlement Class Members were given notice of the request for attorneys' fees and litigation expenses in the Notices (email, postcard, and long-form) and on the Settlement Website. The Notices and website state that Class Counsel will seek attorneys' fees of up to 30% of the Settlement Fund, litigation expenses, and service awards of up to $5,000 for each of the 12 Plaintiffs. This declaration and Plaintiffs' motion for attorneys' fees, expense reimbursements, and service awards will be posted on the Settlement Website concurrently with this filing and hence will be available for any class member to review more than a month before the objection deadline, March 6.

70.    Girard Sharp and CSKDS have decades of experience successfully representing plaintiffs and classes in high stakes class action litigation, including in consumer product defect cases. *See In re MacBook Keyboard Litig.*, 2021 WL 1250378, at *15 (appointing Class Counsel); Dkt. No. 62 (appointing interim class counsel); Dkt. No. 30 (firm resumes).

71.    Over the past five years Class Counsel have devoted thousands of hours and all necessary expenses to develop and pursue the claims against Apple and negotiate a favorable

settlement for the Class. Class Counsel have at all times represented Plaintiffs and class members on a fully contingency basis. Thus, in undertaking the representation and prosecuting these claims, we risked the outlay of substantial time and out-of-pocket expenses with no guarantee of recovery. We recognized that litigation against Apple would be lengthy and hard fought, and defended by sophisticated and experienced counsel, heightening the risk of being uncompensated. Professional time that Class Counsel devoted to this case would otherwise have been spent on other matters.

72.    Class Counsel and the Executive Committee dedicated 27,761 hours to prosecuting this case on behalf of Plaintiffs and the Class, with a resulting lodestar of $16,777,146.65. Of these total hours, 94% were spent by Class Counsel. Class Counsel divided tasks between the two firms to avoid duplication. Girard Sharp took the lead on briefing and on legal and damages analyses. CKSD performed the bulk of the document review and worked more closely with the engineering experts. We collaborated on case strategy, divided responsibility for the depositions, and shared the opportunities for presenting oral argument.

73.    In line with the Court's order appointing interim class counsel, the Executive Committee provided a valuable supporting role. *See* Dkt. No. 62 ("[M]embers of an executive committee . . . may provide services at the direction of interim class counsel as deemed necessary and appropriate."). **Exhibit 1** to this declaration is a composite exhibit that contains supporting declarations from each of the Executive Committee firms whose professional time is included in the lodestar.

74.    Below is a summary of the number of hours worked by each firm and the firm's total lodestar (based on current rates). Time devoted in *Huey v. Apple* is not included in these numbers.

| Firm | Hours | Lodestar |
|------|-------|----------|
| Girard Sharp LLP | 12,039.0 | $7,880,518.50 |
| Chimicles Schwartz Kriner & Donaldson-Smith LLP | 14,025.6 | $7,831,820.00 |
| Schubert Jonckheer & Kolbe LLP | 1,211 | $807,160.50 |
| Berger & Montague, PC | 152.5 | $80,399.75 |
| Migliaccio & Rathod LLP | 332.9 | $177,247.90 |
| **TOTAL** | **27,761.0** | **$16,777,146.65** |

75.    The lodestar for each Girard Sharp and CKSD professional is broken down in the following charts.  Consistent with the Northern District's Procedural Guidance for Class Action Settlements, detailed, contemporaneously-maintained time records supporting the information in these charts are available and will be submitted if requested by the Court. Professional rates are current other than for former employees, for whom the rate is that charged at the time the professional departed the firm.

| Girard Sharp | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Position** | **Rate** | **Hours** | **Lodestar** |
| Daniel C. Girard | Partner | $1,195.00 | 407.3 | $486,723.50 |
| Dena Sharp | Partner | $1,110.00 | 19.1 | $21,010.00 |
| Jordan Elias | Partner | $1,050.00 | 717.5 | $753,375.00 |
| Adam E. Polk | Partner | $975.00 | 559.9 | $545,902.50 |
| Simon S. Grille | Partner | $875.00 | 2621.4 | $2,293,725.00 |
| Trevor Tan | Associate | $850.00 | 987.5 | $839,375.00 |
| Deirdre Roney | Associate | $400.00 | 1763.9 | $705,560.00 |
| Erika Garcia | Associate | $625.00 | 701.5 | $438,437.50 |
| Angelica Ornelas | Associate | $580.00 | 690.5 | $400,490.00 |
| Makenna Cox | Associate | $600.00 | 479.4 | $287,640.00 |
| Peter Touschner | Associate | $550.00 | 379.5 | $208,725.00 |
| Peng Shao | Associate | $385.00 | 392.0 | $150,920.00 |
| Sylvain Frayer | Associate | $400.00 | 340.8 | $136,320.00 |

16

| Girard Sharp | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Position** | **Rate** | **Hours** | **Lodestar** |
| Elizabeth Kramer | Associate | $550.00 | 113.8 | $62,590.00 |
| Emily Jenks | Associate | $400.00 | 143.2 | $57,280.00 |
| Mikaela Bock | Associate | $600.00 | 93.5 | $56,100.00 |
| Jessica Cook | Associate | $500.00 | 91.3 | $45,650.00 |
| Gabriella Carnevale | Associate | $400.00 | 14.8 | $5,920.00 |
| Kimberly Macey | Associate | $500.00 | 10.4 | $5,200.00 |
| Natalie Attar | Litigation Assistant | $300.00 | 622.6 | $186,780.00 |
| Estela Barajas | Law Clerk | $200.00 | 383.5 | $76,700.00 |
| Anne von Goetz | Litigation Assistant | $250.00 | 154.8 | $38,700.00 |
| Cole Limbach | Litigation Assistant | $225.00 | 126.6 | $28,485.00 |
| Ferdous Joya | Litigation Assistant | $200.00 | 96.1 | $19,220.00 |
| Schuyler Sandeen | Litigation Assistant | $225.00 | 82.4 | $18,540.00 |
| Olivia Hooker | Litigation | $250.00 | 25.5 | $6,375.00 |

17

JOINT DECLARATION OF SIMON S. GRILLE AND STEVEN A. SCHWARTZ IN SUPPORT OF
PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR
ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

| Girard Sharp | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Position** | **Rate** | **Hours** | **Lodestar** |
| | Assistant | | | |
| Professionals with fewer than 10 hours | | | 20.2 | $4,775.00 |
| | | **TOTALS:** | **12,039.0** | **$7,880,518.50** |

| Chimicles Schwartz Kriner & Donaldson-Smith LLP | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Position** | **Rate** | **Hours** | **Lodestar** |
| Steven A. Schwartz | Partner | $1,000.00 | 1,045.20 | $1,045,200.00 |
| Benjamin F. Johns | Former Partner | $800.00 | 1,807.30 | $1,445,840.00 |
| Andrew W. Ferich | Former Associate | $750.00 | 478.40 | $358,800.00 |
| Beena M. McDonald | Partner | $750.00 | 2,609.20 | $1,956,900.00 |
| Samantha E. Holbrook | Associate | $575.00 | 167.20 | $96,140.00 |
| Alex M. Kashurba | Associate | $550.00 | 233.30 | $128,315.00 |
| Diane L. Danois | Contract Attorney | $425.00 | 2,897.70 | $1,231,522.50 |

JOINT DECLARATION OF SIMON S. GRILLE AND STEVEN A. SCHWARTZ IN SUPPORT OF
PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR
ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD

| Chimicles Schwartz Kriner & Donaldson-Smith LLP | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Position** | **Rate** | **Hours** | **Lodestar** |
| Melody Z. Forrester | Contract Attorney | $425.00 | 2,279.80 | $968,915.00 |
| David W. Birch | Information Technology | $400.00 | 122.10 | $48,840.00 |
| Tamara E. Berg | Contract Attorney | $400.00 | 310.90 | $124,360.00 |
| Justin P. Boyer | Paralegal | $325.00 | 336.40 | $109,330.00 |
| Carlynne A. Wagner | Associate | $260.00 | 52.60 | $13,676.00 |
| Corneliu P. Mastraghin | Paralegal | $250.00 | 12.00 | $3,000.00 |
| Madeline C. Landry | Former Paralegal | $200.00 | 1,051.30 | $210,260.00 |
| Harrison Meyer | Law Clerk | $125.00 | 593.80 | $74,225.00 |
| Professionals with fewer than 10 hours | | | 28.40 | $16,496.50 |
| | | **TOTALS:** | **14,025.60** | **$7,831,820.00** |

76.    Class Counsel set their rates based upon their regular monitoring of prevailing market rates in this District for attorneys of comparable skill, experience, and qualifications, and Class Counsel's professional rates have been repeatedly approved by courts in this District. *See, e.g.*, *In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2020 WL 6813220, at *4 (N.D. Cal. Sept. 15,

2020), *report and recommendation adopted*, 2020 WL 6544472 (N.D. Cal. Nov. 7, 2020) (Girard Sharp); *In re Nexus 6P Products Liab. Litig.*, No. 17-cv-02185-BLF, Dkt. No. 225 (N.D. Cal. Nov. 12, 2019) (Girard Sharp and CSKDS); *Weeks v. Google LLC*, No. 18-cv-00801, Dkt. No. 184 (N.D. Cal. Aug. 30, 2019) (Girard Sharp and CSKDS); *Rodman v. Safeway Inc.*, No. 3:11-cv-03003-JST, 2018 U.S. Dist. LEXIS 143867, at *14-16 (N.D. Cal. Aug. 22, 2018) (CSKDS).

77.    Class Counsel's rates used in the lodestar calculation are the same rates currently being paid by our hourly fee-paying clients in other complex litigation matters.

78.    Class Counsel's lodestar will further increase in the months to come as a result of our ongoing work responding to class member inquiries, preparing the reply in support of Plaintiffs' motions for final approval and for attorneys' fees, expense reimbursement, and service awards, preparing for and attending the Final Fairness Hearing, supervising the Claims Administrator's work, including with respect to distribution of the Settlement Fund, and completing the post-distribution reporting called for under the Procedural Guidance.

79.    In accordance with the Court's Order, Class Counsel since 2018 have filed quarterly time and expense reports detailing their hours worked and expenses incurred. *See* Dkt. Nos. 67, 80, 109, 150, 156, 181, 204, 220, 249, 283, 323, 330, 368, 380. Those reports have been continuously available to the Court, opposing counsel, and the public.

## LITIGATION EXPENSES

80.    Class Counsel and the Executive Committee's billing rates do not reflect charges for litigation expenses. Expense items are billed separately; such charges are not duplicated in the firm's lodestar.

81.    Class Counsel advanced a variety of out-of-pocket expenses in furtherance of the prosecution of this litigation. Below is an itemized list of the unreimbursed expenses that Class Counsel and the Executive Committee incurred in this litigation.

| Expense Category | Amount |
|---|---|
| Court/Filing Fees | $    3,507.00 |
| Professional Fees (e.g., experts, consultants, etc.) | $ 1,222,037.16 |
| Air Transportation | $   10,080.93 |

| Expense Category | Amount |
|---|---|
| Ground Transportation | $       2,577.83 |
| Meals | $       4,624.93 |
| Lodging | $       6,923.25 |
| Telephone/Facsimile | $       1,593.55 |
| Postage/Express Delivery/Messenger | $       5,069.50 |
| Commercial Copies | $          418.55 |
| Court Reports/Transcripts | $    148,940.23 |
| Witness/Service Fees | $       2,588.69 |
| Internal Reproduction/Copies | $     28,681.00 |
| Computer Research (e.g., Westlaw) | $     56,082.68 |
| Miscellaneous (Tech services/Marketing/Digital Hosting) | $     65,965.45 |
| **TOTAL:** | **$1,559,090.75** |

82.     The costs and expenses summarized in the paragraphs above were reasonably and necessarily incurred in furtherance of the prosecution of this case, were advanced by Class Counsel on behalf of Plaintiffs and the Class, and have not been reimbursed.  They are reflected in the books and records of our respective firms, which are prepared from expense vouchers, check records, invoices, and other source materials, copies of which will be made available upon the Court's request. Third-party expenses are not marked up, meaning that the firms request reimbursement only for the amount actually billed by the third party. Class Counsel may incur additional expense in connection with the final approval hearing and settlement administration. Class Counsel respectfully reserve the right to seek reimbursement for those expenses.

## SERVICE AWARDS

83.     Each Plaintiff devoted significant time to this case, assisting counsel in preparing the complaints, regularly communicating with counsel about case developments, responding to written discovery requests propounded by Apple, gathering and producing documents, and (except plaintiff Huey) preparing for and testifying at a deposition, each of which lasted several hours.

84.     Each Plaintiff except Plaintiff Lee also preserved his or her Class Computer for the duration of this litigation (nearly four years). Plaintiff Lee returned his laptop to Apple at Apple's request as part of a repair, and preserved his laptop for two years prior to returning it.

85.     Based on the time and effort the Plaintiffs dedicated to the class over the course of this litigation, we believe that a $5,000 service award to each of them is fair and reasonable, and respectfully request these awards be approved.

*        *        *

We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on January 6, 2023.

/s/ *Simon S. Grille*
Simon S. Grille

/s/ *Steven A. Schwartz*
Steven A. Schwartz

## **ATTESTATION**

I, Simon S. Grille, am the ECF user whose identification and password are being used to file this Joint Declaration in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards. I hereby attest under penalty of perjury that concurrence in this filing has been obtained from counsel.

DATED: January 6, 2023                    /s/ *Simon S. Grille*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2023, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

/s/ *Simon S. Grille*

23

JOINT DECLARATION OF SIMON S. GRILLE AND STEVEN A. SCHWARTZ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS
CASE NO. 5:18-cv-02813-EJD-VKD