1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

**IN RE : MACBOOK KEYBOARD**
**LITIGATION**

Case No. 5:18-cv-02813-EJD-VKD

**DECLARATION OF JENNIFER**
**KEOUGH REGARDING NOTICE**
**ADMINISTRATION**

I, Jennifer Keough, hereby declare and state as follows:

1.      I am the CEO and President of JND Legal Administration LLC ("JND"). I have more than 20 years of experience creating and supervising notice and claims administration programs and have personally overseen well over 1,000 matters. A comprehensive description of my experience is attached as **Exhibit A**.

2.      JND is serving as the Settlement Administrator[1] in the above-captioned litigation ("Action"), as ordered by the Court in its Order Granting Preliminary Approval of Class Action Settlement and Setting Deadlines for Notice, Objection, Exclusion and Final Fairness Hearing ("Preliminary Approval Order"), dated December 2, 2022.

## BACKGROUND EXPERIENCE

3.      JND's class action division provides all services necessary for the effective administration of class actions including:  (1) all facets of legal notice, such as outbound mailing, email notification, and the design and implementation of media programs, including through digital and social media platforms; (2) website design and deployment, including on-line claim filing capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) calculation design and programming; (7) payment disbursements through multiple means; (8) qualified settlement fund tax reporting; (9) banking services and reporting; and (10) all other functions related to the secure and accurate administration of class actions.

4.      JND is an approved vendor for the United States Securities and Exchange Commission ("SEC") as well as for the Federal Trade Commission ("FTC") and we have worked with a number of other government agencies including: the U.S. Equal Employment Opportunity Commission ("EEOC"), the Office of the Comptroller of the Currency ("OCC"), the Consumer Financial Protection Bureau ("CFPB"), the Federal Deposit Insurance Corporation ("FDIC"), the Federal Communications Commission ("FCC"), the Department of Justice ("DOJ"), and the Department of Labor ("DOL"). We also have Master Services Agreements with various

---

[1] Capitalized terms used and otherwise not defined in this Declaration shall have the meanings given to such terms in the Settlement Agreement and Release.

DECLARATION OF JENNIFER KEOUGH
REGARDING NOTICE ADMINISTRATION
3:20-CV-02725 (JCS)

1  corporations, banks, and other government agencies, which were only awarded after JND

2  underwent rigorous reviews of our systems, privacy policies, and procedures. JND has also been

3  certified as SOC 2 compliant by noted accounting firm Moss Adams.[2] Finally, JND has been

4  recognized by various publications, including the *National Law Journal*, the *Legal Times* and the

5  *New York Law Journal*, for excellence in class action administration.

6      5.      The principals of JND, including me, collectively have over 80 years of experience

7  in class action legal and administrative fields. We have personally overseen the administration of

8  some of the most complex administration programs in the country and regularly prepare and

9  implement court-approved notice campaigns throughout the United States. For example, my team

10 and I handled all aspects of mailed notice, website activities, call center operations, claim intake,

11 scanning and data entry, and check distribution for the $20 billion Gulf Coast Claims Facility. In

12 the $10+ billion BP Deepwater Horizon Settlement, I worked directly for Patrick Juneau, the Court-

13 appointed claims administrator, in overseeing all inbound and outbound mail activities, all call

14 center operations, all claim intake, scanning and data entry and all check distributions for the

15 program. I also oversaw the entire administration process in the $3.4 billion Cobell Settlement.

16     6.      JND was appointed as the notice and claims administrator in the landmark $2.67

17 billion Blue Cross Blue Shield antitrust settlement in which we mailed over 100 million postcard

18 notices; sent hundreds of millions of email notices and reminders; staffed the call center with 250

19 agents during the peak of the notice program; and received and processed more than eight million

20 claims. We also handled the settlement administration of the $1.3 billion Equifax Data Breach

21 Settlement, the largest class action ever in terms of the number of claims received (over 18 million);

22 a voluntary remediation program in Canada on behalf of over 30 million people; the $1.5 billion

23 Mercedes-Benz Emissions settlements; the $120 million GM Ignition class action economic

24 settlement, where we sent notice to nearly 30 million class members, and the $215 million USC

25 Student Health Center Settlement on behalf of women who were sexually abused by a doctor at

26 USC, as well as hundreds of other matters.

27

28  [2] As a SOC 2 Compliant organization, JND has passed an audit under AICPA criteria for providing
    data security.

DECLARATION OF JENNIFER KEOUGH
REGARDING NOTICE ADMINISTRATION
3:20-CV-02725 (JCS)

7.    Our notice campaigns are regularly approved by courts throughout the United States.

8.    JND's Legal Notice Team, which operates under my direct supervision, researches, designs, develops, and implements a wide array of legal notice programs to meet the requirements of Rule 23 and relevant state court rules. During my career, I have submitted several hundred affidavits to courts throughout the country attesting to our role in the creation of legal notice programs.

### NOTICE PLAN

9.    The Notice Plan included the following components, as further described in the sections below:

A.    Email Notice to all Settlement Class members for whom a valid email address was obtained;

B.    Postcard notice to all known Settlement Class members for whom an email notice bounced back undeliverable or for whom an email address was not obtained;

C.    The Settlement Website which contains important case documents, including the Settlement Agreement and Long Form Notice; and

D.    The Settlement toll-free number, post office box, and email address through which Settlement Class members may obtain more information about the Settlement.

### CLASS MEMBER DATA

10.    Between November 1 and November 11, JND received several files from Apple containing purchase and repair data for the Class Computers. JND analyzed those data files and compiled the list of names, postal addresses, email addresses, device serial numbers, and Settlement Group numbers for all Settlement Class members for whom Apple had contact information.  The Settlement Class member data was promptly loaded into a database established for this Action.

11.    JND analyzed the contact information available for each Settlement Class member and determined if they should receive an Email Notice or Postcard Notice as detailed further below.

**DIRECT NOTICE CAMPAIGN**

12.  JND sent direct individual Notice to all Settlement Class members for whom Apple provided contact information, starting with sending Notice via email where a valid email address was available. Apple had a valid email address for 14,359,248 Settlement Class members. To the 401,579 individuals for whom Apple did not have a valid email address, or as to whom JND determines the email notice was returned as undeliverable, JND will mail a postcard version of the Notice.

13.  Prior to emailing the Notice, JND evaluated the email for potential spam language to improve deliverability.  This process included running the email through spam testing software, DKIM[3] for sender identification and authorization, and hostname evaluation.  Additionally, JND checked the send domain against the 25 most common IPv4 blacklists.[4]

14.  JND used industry-leading email solutions to achieve the most efficient email notification campaign.  JND provided individualized support during the program and managed its sender reputation with the Internet Service Providers ("ISPs").  We analyzed the program's data and monitored the ongoing effectiveness of the notification program, adjusting the campaign as needed to ensure the highest possible deliverability of the email campaign so that more potential Settlement Class members received Notice.

15.  JND utilized a verification program to eliminate invalid email and spam traps that would otherwise negatively impact deliverability.  JND then cleaned the list of email addresses for formatting and incomplete addresses to further identify all invalid email addresses.

16.  To ensure readability of the email, JND reviewed and formatted the body content into a structure that is applicable to all email platforms, allowing the email to pass easily to the recipient. Before launching the email campaign, we sent a test email to multiple ISPs and opened and tested the email on multiple devices (iPhones, Android phones, desktop computers, tablets, etc.) to ensure the email opened as expected.

---

[3] DomainKeys Identified Mail, or DKIM, is a technical standard that helps protect email senders and recipients from spam, spoofing, and phishing.

[4] IPv4 address blacklisting is a common practice. To ensure that the addresses being used are not blacklisted, a verification is performed against well-known IP blacklist databases. A blacklisted address affects the reputation of a company and could cause an acquired IP addresses to be blocked

DECLARATION OF JENNIFER KEOUGH
REGARDING NOTICE ADMINISTRATION
3:20-CV-02725 (JCS)

17.    Additionally, JND included an "unsubscribe" link at the bottom of the email to allow Settlement Class members to opt out of any additional email notices from JND. This step is essential to maintain JND's good reputation among the ISPs and reduce complaints relating to the email campaign.

18.    Prior to mailing the Postcard Notices, JND updated the contact information for Settlement Class member records using the National Change of Address ("NCOA") database.[5]

19.    Between December 12, 2022, and January 5, 2023, JND sent 54,839 Group 1 Email Notices, 675,925 Group 2 and 3 Email Notices, and 10,048,397 Group 4 Email Notices. JND will substantially complete Email Notice to all Settlement Class members who have a valid email address by January 6, 2023.  Representative samples of the Group 1 Email Notice, Group 2 and 3 Email Notice, and Group 4 Email Notice are attached hereto as **Exhibit B**, **Exhibit C**, and **Exhibit D** respectively.

20.    Emails that are returned to JND are generally characterized as either "Soft Bounces" or "Hard Bounces." Soft Bounces are when the email is rejected for temporary reasons, such as the recipient's email address inbox is full. Hard Bounces are when the ISP rejects the email due to a permanent reason such as the email account is no longer active. When an email was returned to JND as a Soft Bounce, JND attempted to re-email the email notice up to three additional times in an attempt to secure deliverability. Where a Soft Bounce is not ultimately delivered, it is considered a Hard Bounce and determined to be undeliverable.

21.    If a postcard Notice is returned by the U.S. Postal Service with a forwarding address, JND will cause the postcard notice to be remailed to that address.

22.    As of the date of this Declaration, JND has tracked 1,239 Group 1 Email Notices, 17,548 Group 2 and 3 Email Notices, and 331,598 Group 4 Email Notices that were ultimately deemed undeliverable. JND will mail a Postcard Notice to all Settlement Class members where the Email Notice was undeliverable.

---

[5] The NCOA database is the official United States Postal Service ("USPS") technology product which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream.  This product is an effective tool to update address changes when a person has completed a change of address form with the USPS.  The address information is maintained in the database for 48 months.

DECLARATION OF JENNIFER KEOUGH
REGARDING NOTICE ADMINISTRATION
3:20-CV-02725 (JCS)

23.      By January 6, 2023, JND will mail 1,281 Group 1 Postcard Notices, 16,391 Group 2 and 3 Postcard Notices, and 340,903 Group 4 Postcard Notices to Settlement Class members who did not have a valid email address.  Representative samples of the Group 1 Postcard Notice, Group 2 and 3 Postcard Notice, and Group 4 Postcard Notice are attached hereto as **Exhibit E**, **Exhibit F**, and **Exhibit G**, respectively.

24.      JND also gave notice to governmental enforcement authorities, at Apple's direction, consistent with 28 U.S.C. § 1715.

## SETTLEMENT WEBSITE

25.      On December 11, 2022, JND established an informational and interactive case-specific Settlement Website, www.keyboardsettlement.com. The Settlement Website has an easy-to-navigate design and is formatted to emphasize important information and deadlines. The Settlement Website includes a page with answers to frequently asked questions ("FAQs"), contact information for the Settlement Administrator, Settlement deadlines, and links to important case documents including the Settlement Agreement and Release, the Notice, and the Preliminary Approval Order. The Settlement Website also includes interactive forms where Settlement Class members may update their mailing addresses, request to opt out of the Settlement, or file a claim.

26.      The Settlement Website is ADA-compliant and optimized for mobile visitors so that information loads quickly on mobile devices and is designed to maximize search engine optimization through Google and other search engines. Keywords and natural language search terms are included in the site's metadata to maximize search engine rankings.

27.      As of the date of this Declaration, the website has tracked 376,427 unique users with 1,317,712 pageviews.   JND will continue to update and maintain the website throughout the administration process.

28.      The Settlement has also received substantial press and social media coverage.

## TOLL-FREE NUMBER, P.O. BOX AND EMAIL ADDRESS

29.      On December 12, 2022, JND established a case-specific toll-free telephone number (1-855-579-1311) with an interactive voice recording (IVR) that is available 24 hours a day, seven days a week.  The toll-free telephone line provides Settlement Class members with Settlement-related

DECLARATION OF JENNIFER KEOUGH
REGARDING NOTICE ADMINISTRATION
3:20-CV-02725 (JCS)

1    information, the ability to update their address, and options to request and receive the Long Form

2    Notice, Claim Form or Opt Out form by mail.

3        30.      As of the date of this Declaration, the toll-free telephone number has received 1,871

4    calls from potential Settlement Class members.

5        31.      JND established two dedicated email addresses to receive and respond to Settlement

6    Class member inquiries. As of January 6, 2023, JND has received 1,701 emails to the case email

7    inbox.

8        32.      JND established a P.O. Box to receive Settlement Class member correspondence and

9    Claim Forms by mail.

10       33.      The current and projected cost of JND's activities in administering the Notice

11   Program and the Settlement falls within its projected budget of $1,400,000.

12                    **CLAIMS, OBJECTIONS, AND OPT OUTS**

13       34.      The deadline to opt out or object is February 10, 2023. Thus far, JND has received

14   648 requests to opt out, and one (1) objection has been filed.  As of January 6, 2023, JND has

15   received 48,675 claims.

16

17       I declare under penalty of perjury under the laws of the United States of America that the

18   foregoing is true and correct.

19

20       Executed this 6th day of January, 2023, at Seattle, Washington.

21

22

23                                          Jennifer Keough

24

25

26

27

28

DECLARATION OF JENNIFER KEOUGH
REGARDING NOTICE ADMINISTRATION
3:20-CV-02725 (JCS)

# EXHIBIT A

# JENNIFER KEOUGH

## CHIEF EXECUTIVE OFFICER AND CO-FOUNDER





# INTRODUCTION

Jennifer Keough is Chief Executive Officer and Co-Founder of JND Legal Administration ("JND"). She is the *only* judicially recognized expert in all facets of class action administration - from notice through distribution. With more than 20 years of legal experience, Ms. Keough has directly worked on hundreds of high-profile and complex administration engagements, including such landmark matters as the $20 billion Gulf Coast Claims Facility, $10 billion BP Deepwater Horizon Settlement, $3.4 billion Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever), $3.05 billion VisaCheck/MasterMoney Antitrust Settlement, $2.67 billion Blue Cross Blue Shield antitrust settlement, $1.5 billion Mercedes-Benz Emissions Settlements; $1.3 billion Equifax Data Breach Settlement, $1 billion Stryker Modular Hip Settlement, $600 million Engle Smokers Trust Fund, $240 million Signet Securities Settlement, $215 million USC Student Health Center Settlement, and countless other high-profile matters. She has been appointed notice expert in many notable cases and has testified on settlement matters in numerous courts and before the Senate Committee for Indian Affairs.

The only female CEO in the field, Ms. Keough oversees more than 200 employees at JND's Seattle headquarters, as well as other office locations around the country.

She manages all aspects of JND's class action business from day-to-day processes to high-level strategies. Her comprehensive expertise with noticing, claims processing, Systems and IT work, call center logistics, data analytics, recovery calculations, check distribution, and reporting gained her the reputation with attorneys on both sides of the aisle as the most dependable consultant for all legal administration needs. Ms. Keough also applies her knowledge and skills to other divisions of JND, including mass tort, lien resolution, government services, and eDiscovery. Given her extensive experience, Ms. Keough is often called upon to consult with parties prior to settlement, is frequently invited to speak on class action issues, and has authored numerous articles in her multiple areas of expertise.

Ms. Keough launched JND with her partners in early 2016. Just a few months later, Ms. Keough was named as the Independent Claims Administrator ("ICA") in a complex BP Solar Panel Settlement. Ms. Keough also started receiving numerous appointments as notice expert and in 2017 was chosen to oversee a restitution program in Canada where every adult in the country was eligible to participate. Also, in 2017, Ms. Keough was named a female entrepreneur of the year finalist in the 14th Annual Stevie Awards for Women in Business. In 2015 and 2017, she was recognized as a "Woman Worth Watching" by Profiles in Diversity Journal.

Since JND's launch, Mrs. Keough has also been featured in numerous news sources. In 2019, she was highlighted in an Authority Magazine article, "5 Things I wish someone told me before I became a CEO," and a Moneyish article, "This is exactly how rampant 'imposter syndrome' is in the workforce." In 2018, she was featured in several Fierce CEO articles, "JND Legal Administration CEO Jennifer Keough aids law firms in complicated settlements," "Special Report—Women CEOs offer advice on defying preconceptions and blazing a trail to the top," and "Companies stand out with organizational excellence," as well as a Puget Sound Business Journal article, "JND Legal CEO Jennifer Keough handles law firms' big business." In 2013, Ms. Keough appeared in a CNN article, "What Changes with Women in the Boardroom."

Prior to forming JND, Ms. Keough was Chief Operating Officer and Executive Vice President for one of the then largest legal administration firms in the country, where

she oversaw operations in several offices across the country and was responsible for all large and critical projects. Previously, Ms. Keough worked as a class action business analyst at Perkins Coie, one of the country's premier defense firms, where she managed complex class action settlements and remediation programs, including the selection, retention, and supervision of legal administration firms. While at Perkins she managed, among other matters, the administration of over $100 million in the claims-made Weyerhaeuser siding case, one of the largest building product class action settlements ever. In her role, she established a reputation as being fair in her ability to see both sides of a settlement program.

Ms. Keough earned her J.D. from Seattle University. She graduated from Seattle University with a B.A. and M.S.F. with honors.



# II. LANDMARK CASES

Jennifer Keough has the distinction of personally overseeing the administration of more large class action programs than any other notice expert in the field. Some of her largest engagements include the following:

### 1. *Allagas v. BP Solar Int'l, Inc.*

**No. 14-cv-00560 (N.D. Cal.)**

Ms. Keough was appointed by the United States District Court for the Northern District of California as the Independent Claims Administrator ("ICA") supervising the notice and administration of this complex settlement involving inspection, remediation, and replacement of solar panels on homes and businesses throughout California and other parts of the United States. Ms. Keough and her team devised the administration protocol and built a network of inspectors and contractors to perform the various inspections and other work needed to assist claimants. She also built a program that included a team of operators to answer claimant questions, a fully interactive dedicated website with online claim filing capability, and a team trained in the very complex intricacies of solar panel mechanisms. In her role as ICA, Ms. Keough regularly reported to the parties and the Court regarding the progress of the case's administration. In addition to her role as ICA, Ms. Keough also acted as mediator for those claimants who opted out of the settlement to pursue their claims individually against BP. Honorable Susan Illston, recognized the complexity of the settlement when appointing Ms. Keough the ICA (December 22, 2016):

> *The complexity, expense and likely duration of the litigation favors the Settlement, which provides meaningful and substantial benefits on a much shorter time frame than otherwise possible and avoids risk to class certification and the Class's case on the merits...The Court appoints Jennifer Keough of JND Legal Administration to serve as the Independent Claims Administrator ("ICA") as provided under the Settlement.*

### 2.  Chester v. The TJX Cos.

**No. 15-cv-01437 (C.D. Cal.)**

As the notice expert, Ms. Keough proposed a multi-faceted notice plan designed to reach over eight million class members. Where class member information was available, direct notice was sent via email and via postcard when an email was returned as undeliverable or for which there was no email address provided. Additionally, to reach the unknown class members, Ms. Keough's plan included a summary notice in eight publications directed toward the California class and a tear-away notice posted in all TJ Maxx locations in California. The notice effort also included an informational and interactive website with online claim filing and a toll-free number that provided information 24 hours a day. Additionally, associates were available to answer class member questions in both English and Spanish during business hours. Honorable Otis D. Wright, II approved the plan (May 14, 2018):

> ...the Court finds and determines that the Notice to Class Members was complete and constitutionally sound, because individual notices were mailed and/or emailed to all Class Members whose identities and addresses are reasonably known to the Parties, and Notice was published in accordance with this Court's Preliminary Approval Order, and such notice was the best notice practicable.

### 3.  Cobell v. Salazar

**No. 96 CV 1285 (TFH) (D. D.C.)**

As part of the largest government class action settlement in our nation's history, Ms. Keough worked with the U.S. Government to implement the administration program responsible for identifying and providing notice to the two distinct but overlapping settlement classes. As part of the notice outreach program, Ms. Keough participated in multiple town hall meetings held at Indian reservations located across the country. Due to the efforts of the outreach program, over 80% of all class members were provided notice. Additionally, Ms. Keough played a role in creating the processes for evaluating claims and ensuring the correct distributions were made. Under Ms. Keough's supervision,

the processing team processed over 480,000 claims forms to determine eligibility. Less than one half of one percent of all claim determinations made by the processing team were appealed. Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with notice efforts to the American Indian community when he stated: "Oh, wow. Okay... the administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members." Additionally, when evaluating the Notice Program, Judge Thomas F. Hogan concluded (July 27, 2011):

> ...that adequate notice of the Settlement has been provided to members of the Historical Accounting Class and to members of the Trust Administration Class.... Notice met and, in many cases, exceeded the requirements of F.R.C.P. 23(c)(2) for classes certified under F.R.C.P. 23(b)(1), (b)(2) and (b)(3). The best notice practicable has been provided class members, including individual notice where members could be identified through reasonable effort. The contents of that notice are stated in plain, easily understood language and satisfy all requirements of F.R.C.P. 23(c)(2)(B).

### 4.   *FTC v. Reckitt Benckiser Grp. PLC*

**No. 19CV00028 (W.D. Va.)**

Ms. Keough and her team designed a multi-faceted notice program for this $50 million settlement resolving charges by the FTC that Reckitt Benckiser Group PLC violated antitrust laws by thwarting lower-priced generic competition to its branded drug Suboxone.

The plan reached 80% of potential claimants nationwide, and a more narrowed effort extended reach to specific areas and targets. The nationwide effort utilized a mix of digital, print, and radio broadcast through Sirius XM. Extended efforts included local radio in areas defined as key opioid markets and an outreach effort to medical professionals approved to prescribe Suboxone in the U.S., as well as to substance abuse centers; drug abuse and addiction info and treatment centers; and addiction treatment centers nationwide.

### 5. Gulf Coast Claims Facility (GCCF)

The GCCF was one of the largest claims processing facilities in U.S. history and was responsible for resolving the claims of both individuals and businesses relating to the Deepwater Horizon oil spill. The GCCF, which Ms. Keough helped develop, processed over one million claims and distributed more than $6 billion within the first year-and-a-half of its existence. As part of the GCCF, Ms. Keough and her team coordinated a large notice outreach program which included publication in multiple journals and magazines in the Gulf Coast area. She also established a call center staffed by individuals fluent in Spanish, Vietnamese, Laotian, Khmer, French, and Croatian.

### 6. Health Republic Ins. Co. v. United States

**No. 16-259C (F.C.C.)**

For this $1.9 billion settlement, Ms. Keough and her team used a tailored and effective approach of notifying class members via Federal Express mail and email. Opt-in notice packets were sent via Federal Express to each potential class member, as well as the respective CEO, CFO, General Counsel, and person responsible for risk corridors receivables, when known. A Federal Express return label was also provided for opt-in returns. Notice Packets were also sent via electronic-mail. The informational and interactive case-specific website posted the notices and other important Court documents and allowed potential class members to file their opt-in form electronically.

### 7. In re Air Cargo Shipping Servs. Antitrust Litig.

**No. 06-md-1775 (JG) (VVP) (E.D.N.Y.)**

This antitrust settlement involved five separate settlements. As a result, many class members were affected by more than one of the settlements, Ms. Keough constructed the notice and claims programs for each settlement in a manner which allowed affected class members the ability to compare the claims data. Each claims administration program included claims processing, review of supporting evidence, and a deficiency notification process. The deficiency

notification process included mailing of deficiency letters, making follow-up phone calls, and sending emails to class members to help them complete their claim. To ensure accuracy throughout the claims process for each of the settlements, Ms. Keough created a process which audited many of the claims that were eligible for payment.

### 8.   *In re Blue Cross Blue Shield Antitrust Litig.*

**Master File No.: 13-CV-20000-RDP (N.D. Ala.)**

JND was appointed as the notice and claims administrator in the $2.67 billion Blue Cross Blue Shield proposed settlement. To notify class members, we mailed over 100 million postcard notices, sent hundreds of millions of email notices and reminders, and placed notice via print, television, radio, internet, and more. The call center was staffed with 250 agents during the peak of the notice program. More than eight million claims were received. In approving the notice plan designed by Jennifer Keough and her team, United States District Court Judge R. David Proctor, wrote:

> *After a competitive bidding process, Settlement Class Counsel retained JND Legal Administration LLC ("JND") to serve as Notice and Claims Administrator for the settlement. JND has a proven track record and extensive experience in large, complex matters… JND has prepared a customized Notice Plan in this case. The Notice Plan was designed to provide the best notice practicable, consistent with the latest methods and tools employed in the industry and approved by other courts…The court finds that the proposed Notice Plan is appropriate in both form and content and is due to be approved.*

### 9.   *In re Classmates.com*

**No. C09-45RAJ (W.D. Wash.)**

Ms. Keough managed a team that provided email notice to over 50 million users with an estimated success rate of 89%. When an email was returned as undeliverable, it was re-sent up to three times in an attempt to provide notice to the entire class. Additionally, Ms. Keough implemented a claims administration

program which received over 699,000 claim forms and maintained three email addresses in which to receive objections, exclusions, and claim form requests. The Court approved the program when it stated:

> The Court finds that the form of electronic notice... together with the published notice in the Wall Street Journal, was the best practicable notice under the circumstances and was as likely as any other form of notice to apprise potential Settlement Class members of the Settlement Agreement and their rights to opt out and to object. The Court further finds that such notice was reasonable, that it constitutes adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of Due Process...

### 10. *In re Equifax Inc. Customer Data Sec. Breach Litig.*

**No. 17-md-2800-TWT (N.D. Ga.)**

JND was appointed settlement administrator, under Ms. Keough's direction, for this complex data breach settlement valued at $1.3 billion with a class of 147 million individuals nationwide. Ms. Keough and her team oversaw all aspects of claims administration, including the development of the case website which provided notice in seven languages and allowed for online claim submissions. In the first week alone, over 10 million claims were filed. Overall, the website received more than 200 million hits and the Contact Center handled well over 100,000 operator calls. Ms. Keough and her team also worked closely with the Notice Provider to ensure that each element of the media campaign was executed in the time and manner as set forth in the Notice Plan.

Approving the settlement on January 13, 2020, Judge Thomas W. Thrash, Jr. acknowledged JND's outstanding efforts:

> JND transmitted the initial email notice to 104,815,404 million class members beginning on August 7, 2019. (App. 4, ¶¶ 53-54). JND later sent a supplemental email notice to the 91,167,239 class members who had not yet opted out, filed a claim, or unsubscribed from the initial email notice. (Id., ¶¶ 55-56). The notice plan also provides for JND to perform two additional supplemental email notice campaigns. (Id., ¶ 57)...JND has also developed

*specialized tools to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). As a result, class members have the opportunity to file a claim easily and have that claim adjudicated fairly and efficiently...The claims administrator, JND, is highly experienced in administering large class action settlements and judgments, and it has detailed the efforts it has made in administering the settlement, facilitating claims, and ensuring those claims are properly and efficiently handled. (App. 4, ¶¶ 4, 21; see also Doc. 739-6, ¶¶ 2-10). Among other things, JND has developed protocols and a database to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). Additionally, JND has the capacity to handle class member inquiries and claims of this magnitude. (App. 4, ¶¶ 5, 42). This factor, therefore, supports approving the relief provided by this settlement.*

## 11. *In re General Motors LLC Ignition Switch Litig.*

No. 2543 (MDL) (S.D.N.Y.)

<u>GM Ignition Switch Compensation Claims Resolution Facility</u>

Ms. Keough oversaw the creation of a Claims Facility for the submission of injury claims allegedly resulting from the faulty ignition switch. The Claims Facility worked with experts when evaluating the claim forms submitted. First, the Claims Facility reviewed thousands of pages of police reports, medical documentation, and pictures to determine whether a claim met the threshold standards of an eligible claim for further review by the expert. Second, the Claims Facility would inform the expert that a claim was ready for its review. Ms. Keough constructed a database which allowed for a seamless transfer of claim forms and supporting documentation to the expert for further review.

## 12. *In re General Motors LLC Ignition Switch Litig.*

No. 2543 (MDL) (S.D.N.Y.)

Ms. Keough was appointed the class action settlement administrator for the $120 million GM Ignition Switch settlement. On April 27, 2020, Honorable

Jesse M. Furman approved the notice program designed by Ms. Keough and her team and the notice documents they drafted with the parties:

> *The Court further finds that the Class Notice informs Class Members of the Settlement in a reasonable manner under Federal Rule of Civil Procedure 23(e)(1)(B) because it fairly apprises the prospective Class Members of the terms of the proposed Settlement and of the options that are open to them in connection with the proceedings.*

> *The Court therefore approves the proposed Class Notice plan, and hereby directs that such notice be disseminated to Class Members in the manner set forth in the Settlement Agreement and described in the Declaration of the Class Action Settlement Administrator...*

Under Ms. Keough's direction, JND mailed notice to nearly 30 million potential class members.

On December 18, 2020, Honorable Jesse M. Furman granted final approval:

> *The Court confirms the appointment of Jennifer Keough of JND Legal Administration ("JND") as Class Action Settlement Administrator and directs Ms. Keough to carry out all duties and responsibilities of the Class Action Settlement Administrator as specified in the Settlement Agreement and herein...The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rules of Civil Procedure 23(c)(2)(b) and 23(e), and fully comply with all laws, including the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.*

### 13. *In re Mercedes-Benz Emissions Litig.*

**No. 16-cv-881 (D.N.J.)**

JND Legal Administration was appointed as the Settlement Administrator in this $1.5 billion settlement wherein Daimler AG and its subsidiary Mercedes-Benz USA reached an agreement to settle a consumer class action alleging that the

automotive companies unlawfully misled consumers into purchasing certain diesel type vehicles by misrepresenting the environmental impact of these vehicles during on-road driving.  As part of its appointment, the Court approved Jennifer Keough's proposed notice plan and authorized JND Legal Administration to provide notice and claims administration services.

> The Court finds that the content, format, and method of disseminating notice, as set forth in the Motion, Declaration of JND Legal Administration, the Class Action Agreement, and the proposed Long Form Notice, Short Form Notice, and Supplemental Notice of Class Benefits (collectively, the "Class Notice Documents") – including direct First Class mailed notice to all known members of the Class deposited in the mail within the later of (a) 15 business days of the Preliminary Approval Order; or (b) 15 business days after a federal district court enters the US-CA Consent Decree – is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B). The Court approves such notice, and hereby directs that such notice be disseminated in the manner set forth in the Class Action Settlement to the Class under Rule 23(e)(1)...JND Legal Administration is hereby appointed as the Settlement Administrator and shall perform all duties of the Settlement Administrator set forth in the Class Action Settlement.

On July 12, 2021, the Court granted final approval of the settlement:

> The Court has again reviewed the Class Notice Program and finds that Class Members received the best notice practicable under the circumstances.

## 14. *In re MyFord Touch Consumer Litig.*

**No. 13-cv-3072 (EMC) (N.D. Cal.)**

Ms. Keough was retained as the Notice Expert in this $17 million automotive settlement. Under her direction, the JND team created a multi-faceted website with a VIN # lookup function that provided thorough data on individual car repair history. To assure all of the data was safeguarded, JND hired a third-party to attempt to hack it, demonstrating our commitment to ensuring the security of all client and claimant data. Their attempts were unsuccessful.

In his December 17, 2019 final approval order Judge Edward M. Chen remarked on the positive reaction that the settlement received:

> *The Court finds that the Class Notice was the best practicable notice under the circumstances, and has been given to all Settlement Class Members known and reasonably identifiable in full satisfaction of the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process... The Court notes that the reaction of the class was positive: only one person objected to the settlement although, by request of the objector and in the absence of any opposition from the parties, that objection was converted to an opt-out at the hearing.*

## 15. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*

**No. 2179 (MDL) (E.D. La.)**

Following the closure of the Gulf Coast Claims Facility, the Deepwater Horizon Settlement claims program was created. There were two separate legal settlements that provided for two claims administration programs. One of the programs was for the submission of medical claims and the other was for the submission of economic and property damage claims. Ms. Keough played a key role in the formation of the claims program for the evaluation of economic and property damage claims. Additionally, Ms. Keough built and supervised the back-office mail and processing center in Hammond, Louisiana, which was the hub of the program. The Hammond center was visited several times by Claims Administrator Pat Juneau -- as well as by the District Court Judge and Magistrate -- who described it as a shining star of the program.

## 16. *In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.*

**No. 13-2441 (MDL) (D. Minn.)**

Ms. Keough and her team were designated as the escrow agent and claims processor in this $1 billion settlement designed to compensate eligible U.S. Patients who had surgery to replace their Rejuvenate Modular-Neck and/or ABG II Modular-Neck hip stems prior to November 3, 2014. As the claims processor, Ms. Keough

and her team designed internal procedures to ensure the accurate review of all medical documentation received; designed an interactive website which included online claim filing; and established a toll-free number to allow class members to receive information about the settlement 24 hours a day. Additionally, she oversaw the creation of a deficiency process to ensure claimants were notified of their deficient submission and provided an opportunity to cure. The program also included an auditing procedure designed to detect fraudulent claims and a process for distributing initial and supplemental payments. Approximately 95% of the registered eligible patients enrolled in the settlement program.

## 17. *In re The Engle Trust Fund*

**No. 94-08273 CA 22 (Fla. 11th Jud. Cir. Ct.)**

Ms. Keough played a key role in administering this $600 million landmark case against the country's five largest tobacco companies. Miles A. McGrane, III, Trustee to the Engle Trust Fund recognized Ms. Keough's role when he stated:

> *The outstanding organizational and administrative skills of Jennifer Keough cannot be overstated. Jennifer was most valuable to me in handling numerous substantive issues in connection with the landmark Engle Trust Fund matter. And, in her communications with affected class members, Jennifer proved to be a caring expert at what she does.*

## 18. *In re Washington Mut. Inc., Sec. Litig.*

**No. 08-md-1919 MJP (W.D. Wash.)**

Ms. Keough supervised the notice and claims administration for this securities class action, which included three separate settlements with defendants totaling $208.5 million. In addition to mailing notice to over one million class members, Ms. Keough managed the claims administration program, including the review and processing of claims, notification of claim deficiencies, and distribution. In preparation for the processing of claims, Ms. Keough and her team established a unique database to store the proofs of claim and supporting documentation; trained staff to the particulars of this settlement; created multiple computer

programs for the entry of class member's unique information; and developed a program to calculate the recognized loss amounts pursuant to the plan of allocation. The program was designed to allow proofs of claim to be filed by mail or through an online portal. A deficiency process was established in order to reach out to class members who submitted incomplete proof of claims. The deficiency process involved reaching out to claimants via letters, emails, and telephone calls.

### 19. *King v. Bumble Trading Inc*

**No. 18-cv-06868-NC  (N.D. Cal.)**

Ms. Keough served as the notice expert in this $22.5 million settlement that alleged that Bumble's Terms & Conditions failed to notify subscribers nationwide of their legal right to cancel their Boost subscription and obtain a refund within three business days of purchase, and for certain users in California, that Bumble's auto-renewal practices violated California law.

JND received two files of class member data containing over 7.1 million records. Our team analyzed the data to identify duplicates and then we further analyzed the unique records, using programmatic techniques and manual review, to identify accounts that had identical information in an effort to prevent multiple notices being sent to the same class member. Through this process, JND was able to reduce the number of records to less than 6.3 million contacts.

Approving the settlement on December 18, 2020, Judge Nathanael M. Cousins, acknowledged the high success of our notice efforts:

> *Pursuant to the Court's Preliminary Approval Order, the Court appointed JND Settlement Administrators as the Settlement Administrator... JND sent court-approved Email Notices to millions of class members...Overall, approximately 81% of the Settlement Class Members were successfully sent either an Email or Mailed Notice...JND supplemented these Notices with a Press Release which Global Newswire published on July 18, 2020... In sum, the Court finds that, viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" to warrant approval.*

## 20. *Linneman v. Vita-Mix Corp.*

**No. 15-cv-748 (S.D. Ohio)**

Ms. Keough was hired by Plaintiff Counsel to design a notice program regarding this consumer settlement related to allegedly defective blenders. The Court approved Ms. Keough's plan and designated her as the notice expert for this case. As direct notice to the entire class was impracticable due to the nature of the case, Ms. Keough proposed a multi-faceted notice program. Direct notice was provided by mail or email to those purchasers identified through data obtained from Vita-Mix and third parties, such as retailers, dealers, distributors, or restaurant supply stores. To reach the unknown class members, Ms. Keough oversaw the design of an extensive media plan that included: published notice in *Cooking Light*, *Good Housekeeping*, and *People* magazine and digital notice; placements through Facebook/Instagram, Twitter, and Conversant; and paid search campaign through Google and Bing. In addition, the program included an informational and interactive website where class members could submit claims electronically, and a toll-free number that provided information to class members 24 hours a day. When approving the plan, Honorable Susan J. Dlott stated (May 3, 2018):

> *JND Legal Administration, previously appointed to supervise and administer the notice process, as well as oversee the administration of the Settlement, appropriately issued notice to the Class as more fully set forth in the Agreement, which included the creation and operation of the Settlement Website and more than 3.8 million mailed or emailed notices to Class Members. As of March 27, 2018, approximately 300,000 claims have been filed by Class Members, further demonstrating the success of the Court-approved notice program.*

## 21. *Loblaw Card Program*

Jennifer Keough was selected by major Canadian retailer Loblaw and its counsel to act as program administrator in its voluntary remediation program. The program was created as a response to a price-fixing scheme perpetrated by some employees of the company involving bread products. The program

offered a $25 gift card to all adults in Canada who purchased bread products in Loblaw stores between 2002 and 2015. Some 28 million Canadian residents were potential claimants. Ms. Keough and her team: (1) built an interactive website that was capable of withstanding hundreds of millions of "hits" in a short period of time; (2) built, staffed and trained a call center with operators available to take calls twelve hours a day, six days a week; (3) oversaw the vendor in charge of producing and distributing the cards; (4) was in charge of designing and overseeing fraud prevention procedures; and (5) handled myriad other tasks related to this high-profile and complex project.

### 22. *McWilliams v. City of Long Beach*

**No. BC261469 (Cal. Super. Ct.)**

Ms. Keough and her team designed and implemented an extensive notice program for the City of Long Beach telephone tax refund settlement. In addition to sending direct notice to all addresses within the City of Long Beach utility billing system and from its GIS provider, and to all registered businesses during the class period, JND implemented a robust media campaign that alone reached 88% of the Class. The media effort included leading English and Spanish magazines and newspapers, a digital effort, local cable television and radio, an internet search campaign, and a press release distributed in both English and Spanish. The 12% claims rate exceeded expectations.

Judge Maren E. Nelson acknowledged the program's effectiveness in her final approval order on October 30, 2018:

> *It is estimated that JND's Media Notice plan reached 88% of the Class and the overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

## 23. *New Orleans Tax Assessor Project*

After Hurricane Katrina, the City of New Orleans began to reappraise properties in the area which caused property values to rise. Thousands of property owners appealed their new property values and the City Council did not have the capacity to handle all the appeals in a timely manner. As a result of the large number of appeals, the City of New Orleans hired Ms. Keough to design a unique database to store each appellant's historical property documentation. Additionally, Ms. Keough designed a facility responsible for scheduling and coordinating meetings between the 5,000 property owners who appealed their property values and real estate agents or appraisers. The database that Ms. Keough designed facilitated the meetings between the property owners and the property appraisers by allowing the property appraisers to review the property owner's documentation before and during the appointment with them.

## 24. *USC Student Health Ctr. Settlement*

**No. 18-cv-04258-SVW (C.D. Cal.)**

JND was approved as the Settlement Administrator in this important $215 million settlement that provides compensation to women who were sexually assaulted, harassed and otherwise abused by Dr. George M. Tyndall at the USC Student Health Center during a nearly 30-year period. Ms. Keough and her team designed a notice effort that included: mailed and email notice to potential Class members; digital notices on Facebook, LinkedIn, and Twitter; an internet search effort; notice placements in USC publications/eNewsletters; and a press release. In addition, her team worked with USC staff to ensure notice postings around campus, on USC's website and social media accounts, and in USC alumni communications, among other things. Ms. Keough ensured the establishment of an all-female call center, whose operators were fully trained to handle delicate interactions, with the goal of providing excellent service and assistance to every woman affected. She also worked with the JND staff handling lien resolution for this case. Preliminarily approving the settlement, Honorable Stephen V. Wilson stated (June 12, 2019):

*The Court hereby designates JND Legal Administration ("JND") as Claims Administrator. The Court finds that giving Class Members notice of the Settlement is justified under Rule 23(e)(1) because, as described above, the Court will likely be able to: approve the Settlement under Rule 23(e)(2); and certify the Settlement Class for purposes of judgment. The Court finds that the proposed Notice satisfies the requirements of due process and Federal Rule of Civil Procedure 23 and provides the best notice practicable under the circumstances.*

## 25. *Williams v. Weyerhaeuser Co.*

**Civil Action No. 995787 (Cal. Super. Ct.)**

This landmark consumer fraud litigation against Weyerhaeuser Co. had over $100 million in claims paid. The action involved exterior hardboard siding installed on homes and other structures throughout the United States from January 1, 1981 to December 31, 1999 that was alleged to be defective and prematurely fail when exposed to normal weather conditions.

Ms. Keough oversaw the administration efforts of this program, both when she was employed by Perkins Coie, who represented defendants, and later when she joined the administration firm handling the case. The claims program was extensive and went on for nine years, with varying claims deadlines depending on when the class member installed the original Weyerhaeuser siding.  The program involved not just payments to class members, but an inspection component where a court-appointed inspector analyzed the particular claimant's siding to determine the eligibility and award level.  Class members received a check for their damages, based upon the total square footage of damaged siding, multiplied by the cost of replacing, or, in some instances, repairing, the siding on their homes.  Ms. Keough oversaw the entirety of the program from start to finish.



# III.

# JUDICIAL RECOGNITION

Courts have favorably recognized Ms. Keough's work as outlined above and by the sampling of judicial comments from JND programs listed below.

### 1.   Judge Valerie Figueredo

*Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York,* (August 19, 2022) No. 19-cv-06004 (S.D.N.Y.):

*The Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

### 2.   Judge David J. Novak

*Brighton Tr. LLC, as Tr. v. Genworth Life & Annuity Ins. Co.,* (June 3, 2022) No. 20-cv-240-DJN (E.D. Va.):

*The Court appoints JND Legal Administration LLC ("JND"), a competent firm, as the Settlement Administrator.*

### 3.   Judge Donovan W. Frank

*Advance Trust & Life Escrow Serv., LTA v. ReliaStar Life Ins. Co.,* (June 2, 2022) No. 18-cv-2863-DWF-ECW (D. Minn.):

*The Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

### 4.   Honorable Philip S. Gutierrez

*Andrews v. Plains All Am. Pipeline, L.P.,* (May 25, 2022) No. 15-cv-04113-PSG-JEM (C.D. Cal.):

*Court appoints JND Legal Administration as the Settlement Administrator in this Action...The Court approves, as to form and content, the Mail Notice and the*

*Publication Notice, substantially in the forms attached as Exhibits D, E, and F to the Declaration of Jennifer Keough In Support of Motion for Preliminary Approval of Class Action Settlement and Direction of Notice ("Keough Declaration").*

## 5.   Judge Victoria A. Roberts

***Graham v. Univ. of Michigan,*** (March 29, 2022)
No. 21-cv-11168-VAR-EAS (E.D. Mich.):

*The Court has received and reviewed...the proposed notice plan as described in the Declaration of Jennifer Keough...The Court finds that the foregoing program of Class Notice and the manner of its dissemination is sufficient under the circumstances and is reasonably calculated to apprise the Settlement Class of the pendency of this Action and their right to object to the Settlement.  The Court further finds that the Class Notice program is reasonable; that it constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and that it meets the requirements of due process and Federal Rule of Civil Procedure 23.*

## 6.   Honorable Michael Markman

***DC 16 v. Sutter Health, (March 11, 2022***)
No. RG15753647 (Cal. Super. Ct.):

*The Court approves and appoints JND Legal Administration ("JND") to serve as the notice provider and directs JND to carry out all duties and responsibilities of providing notice and processing requests for exclusion.*

## 7.   Honorable P. Kevin Castel

***Hanks v. Lincoln Life & Annuity Co. of New York, (February 23, 2022***)
No. 16-cv-6399 PKC (S.D.N.Y.):

*The Court appoints JND Legal Administration LLC ("JND"), a competent firm, as the Settlement Administrator...The form and content of the notices, as well as the manner of dissemination described below, meet the requirements of Rule 23 and due process,*

*constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

## 8.  Judge David G. Campbell

***In re Arizona Theranos, Inc. Litig., (February 2, 2022)***
No. 16-cv-2138-DGC (D. Ariz.):

*The Court appoints JND Legal Administration ("JND") to serve as Class Administrator and directs JND to carry out all duties and responsibilities of the Class Administrator as specified in the Notice Plan...This approval includes the proposed methods of providing notice, the proposed forms of notice attached as Exhibits B through D to the Declaration of Jennifer M. Keough (Doc. 445-1 – "Keough Decl."), and the proposed procedure for class members to opt-out.*

## 9.  Judge William M. Conley

***Bruzek v. Husky Oil Operations Ltd., (January 31, 2022)***
No. 18-cv-00697 (W.D. Wis.):

*The claims administrator estimates that at least 70% of the class received notice... the court concludes that the parties' settlement is fair, reasonable and adequate under Rule 23(e).*

## 10.  Honorable Dana M. Sabraw

***In re Packaged Seafood Prods. Antitrust Litig. (DPP Class), (January 26, 2022)***
No. 15-md-02670 (S.D. Cal.):

*The rigorous notice plan proposed by JND satisfies requirements imposed by Rule 23 and the Due Process clause of the United States Constitution. Moreover, the contents of the notice satisfactorily informs Settlement Class members of their rights under the Settlement.*

### 11.  Honorable Dana M. Sabraw

*In re Packaged Seafood Prods. Antitrust Litig. (EPP Class), (January 26, 2022*)
No. 15-md-02670 (S.D. Cal.):

*Class Counsel retained JND, an experienced notice and claims administrator, to serve as the notice provider and settlement claims administrator.  The Court approves and appoints JND as the Claims Administrator.  EPPs and JND have developed an extensive and robust notice program which satisfies prevailing reach standards.  JND also developed a distribution plan which includes an efficient and user-friendly claims process with an effective distribution program.  The Notice is estimated to reach over 85% of potential class members via notice placements with the leading digital network (Google Display Network), the top social media site (Facebook), and a highly read consumer magazine (People)... The Court approves the notice content and plan for providing notice of the COSI Settlement to members of the Settlement Class.*

### 12.  Judge Alvin K. Hellerstein

*Leonard v. John Hancock Life Ins. Co. of NY,* (January 10, 2022)
No. 18-CV-04994 (S.D.N.Y.):

*The Court finds that the manner of distribution of the Notices constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to the Class and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.*

### 13.  Honorable Justice Edward Belobaba

*Kalra v. Mercedes-Benz Canada Inc.,* (December 9, 2021)
No. 15-MD-2670 (Ont. Super. Ct.):

*THIS COURT ORDERS that JND Legal Administration is hereby appointed the Settlement Administrator to implement and oversee the Notice Program, the Claims Program, the Honorarium Payment to the Class Representative, and the payment of the Levy to the Class Proceedings Fund.*

### 14. Judge Timothy J. Corrigan

***Levy v. Dolgencorp, LLC,*** (December 2, 2021)

No. 20-cv-01037-TJC-MCR (M.D. Fla.):

*No Settlement Class Member has objected to the Settlement and only one Settlement Class Member requested exclusion from the Settlement through the opt-out process approved by this Court...The Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice. The Notice Program fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

### 15. Honorable Nelson S. Roman

***Swetz v. GSK Consumer Health, Inc.,*** (November 22, 2021) No. 20-cv-04731 (S.D.N.Y.):

*The Notice Plan provided for notice through a nationwide press release; direct notice through electronic mail, or in the alternative, mailed, first-class postage prepaid for identified Settlement Class Members; notice through electronic media—such as Google Display Network and Facebook—using a digital advertising campaign with links to the dedicated Settlement Website; and a toll-free telephone number that provides Settlement Class Members detailed information and directs them to the Settlement Website. The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order.*

### 16. Honorable James V. Selna

***Herrera v. Wells Fargo Bank, N.A.,*** (November 16, 2021)

No. 18-cv-00332-JVS-MRW (C.D. Cal.):

*On June 8, 2021, the Court appointed JND Legal Administration ("JND") as the Claims Administrator... JND mailed notice to approximately 2,678,266 potential*

*Non-Statutory Subclass Members and 119,680 Statutory Subclass Members. Id.*
*¶ 5. 90% of mailings to Non-Statutory Subclass Members were deemed delivered,*
*and 81% of mailings to Statutory Subclass Members were deemed delivered. Id. ¶ 9.*
*Follow-up email notices were sent to 1,977,514 potential Non-Statutory Subclass*
*Members and 170,333 Statutory Subclass Members, of which 91% and 89% were*
*deemed delivered, respectively. Id. ¶ 12. A digital advertising campaign generated*
*an additional 5,195,027 views. Id. ¶ 13...Accordingly, the Court finds that the*
*notice to the Settlement Class was fair, adequate, and reasonable.*

## 17. Judge Mark C. Scarsi

***Patrick v. Volkswagen Grp. of Am., Inc.,*** (September 18, 2021)
No. 19-cv-01908-MCS-ADS (C.D. Cal.):

*The Court finds that, as demonstrated by the Declaration of Jennifer M. Keough*
*and counsel's submissions, Notice to the Settlement Class was timely and properly*
*effectuated in accordance with Fed. R. Civ. P. 23(e) and the approved Notice Plan*
*set forth in the Court's Preliminary Approval Order. The Court finds that said Notice*
*constitutes the best notice practicable under the circumstances, and satisfies all*
*requirements of Rule 23(e) and due process.*

## 18. Judge Morrison C. England, Jr.

***Martinelli v. Johnson & Johnson,*** (September 27, 2021)
No. 15-cv-01733-MCE-DB (E.D. Cal.):

*The Court appoints JND, a well-qualified and experienced claims and notice*
*administrator, as the Settlement Administrator.*

## 19. Honorable Nathanael M. Cousins

***Malone v. Western Digital Corp.,*** (July 21, 2021) No. 20-cv-03584-NC (N.D. Cal.):

*The Court hereby appoints JND Legal Administration as Settlement Administrator...*
*The Court finds that the proposed notice program meets the requirements of Due*

*Process under the U.S. Constitution and Rule 23; and that such notice program— which includes individual direct notice to known Settlement Class Members via email, mail, and a second reminder email, a media and Internet notice program, and the establishment of a Settlement Website and Toll-Free Number—is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.  The Court further finds that the proposed form and content of the forms of the notice are adequate and will give the Settlement Class Members sufficient information to enable them to make informed decisions as to the Settlement Class, the right to object or opt-out, and the proposed Settlement and its terms.*

## 20.  Judge Mark H. Cohen

***Pinon v. Mercedes-Benz USA, LLC and Daimler AG,*** (March 29, 2021)
No. 18-cv-3984 (N.D. Ga.):

*The Court finds that the content, format, and method of disseminating the Notice Plan, as set forth in the Motion, the Declaration of the Settlement Administrator (Declaration of Jennifer M. Keough Regarding Proposed Notice Plan) [Doc. 70-7], and the Settlement Agreement, including postcard notice disseminated through direct U.S. Mail to all known Class Members and establishment of a website: (a) constitutes the best notice practicable under the circumstances; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed Settlement Agreement, and their rights under the proposed Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfies all requirements provided Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notices are written in plain language, use simple terminology, and are designated to be readily understandable by the Settlement Class.*

### 21.  Honorable Daniel D. Domenico

*Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co.,* (January 29, 2021)
No. 18-cv-01897-DDD-NYW (D. Colo.):

The court approves the form and contents of the Short-Form and Long Form Notices attached as Exhibits A and B, respectively, to the Declaration of Jennifer M. Keough, filed on January 26, 2021...The proposed form and content of the Notices meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B)...The court approves the retention of JND Legal Administration LLC as the Notice Administrator.

### 22.  Honorable Virginia A. Phillips

*Sonner v. Schwabe N. Am., Inc.,* (January 25, 2021)
No. 15-cv-01358 VAP (SPx) (C.D. Cal.):

Following preliminary approval of the settlement by the Court, the settlement administrator provided notice to the Settlement Class through a digital media campaign.  (Dkt. 203-5).  The Notice explains in plain language what the case is about, what the recipient is entitled to, and the options available to the recipient in connection with this case, as well as the consequences of each option.  (Id., Ex. E).  During the allotted response period, the settlement administrator received no requests for exclusion and just one objection, which was later withdrawn.  (Dkt. 203-1, at 11).

Given the low number of objections and the absence of any requests for exclusion, the Class response is favorable overall.  Accordingly, this factor also weighs in favor of approval.

### 23.  Honorable R. Gary Klausner

*A.B. v. Regents of the Univ. of California,* (January 8, 2021)
No. 20-cv-09555-RGK-E (C.D. Cal.):

The parties intend to notify class members through mail using UCLA's patient records. And they intend to supplement the mail notices using Google banners and

*Facebook ads, publications in the LA times and People magazine, and a national press release. Accordingly, the Court finds that the proposed notice and method of delivery sufficient and approves the notice.*

## 24. Judge Vernon S. Broderick, Jr.

**In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,** (December 16, 2020) No. 14-md-02542 (S.D.N.Y.):

*I further appoint JND as Claims Administrator.  JND's principals have more than 75 years-worth of combined class action legal administration experience, and JND has handled some of the largest recent settlement administration issues, including the Equifax Data Breach Settlement.  (Doc. 1115 ¶ 5.)  JND also has extensive experience in handling claims administration in the antitrust context.  (Id.  ¶ 6.) Accordingly, I appoint JND as Claims Administrator.*

## 25. Honorable Laurel Beeler

**Sidibe v. Sutter Health,** (November 5, 2020) No. 12-cv-4854-LB (N.D. Cal.):

*Class Counsel has retained JND Legal Administration ("JND"), an experienced class notice administration firm, to administer notice to the Class. The Court appoints JND as the Class Notice Administrator. JND shall provide notice of pendency of the class action consistent with the procedures outlined in the Keough Declaration.*

## 26. Judge Carolyn B. Kuhl

**Sandoval v. Merlex Stucco Inc.,** (October 30, 2020) No. BC619322 (Cal. Super. Ct.):

*Additional Class Member class members, and because their names and addresses have not yet been confirmed, will be notified of the pendency of this settlement via the digital media campaign outlined by the Keough/JND Legal declaration...the Court approves the Parties selection of JND Legal as the third-party Claims Administrator.*

### 27.  Honorable Louis L. Stanton

***Rick Nelson Co. v. Sony Music Ent.,*** (September 16, 2020)
No. 18-cv-08791 (S.D.N.Y.):

*The parties have designated JND Legal Administration ("JND") as the Settlement Administrator. Having found it qualified, the Court appoints JND as the Settlement Administrator and it shall perform all the duties of the Settlement Administrator as set forth in the Stipulation...The form and content of the Notice, Publication Notice and Email Notice, and the method set forth herein of notifying the Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process. and any other applicable law, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

### 28.  Judge Steven W. Wilson

***Amador v Baca,*** (August 11, 2020)
No. 10-cv-1649 (C.D. Cal.):

*Class Counsel, in conjunction with JND, have also facilitated substantial notice and outreach to the relatively disparate and sometimes difficult to contact class of more than 94,000 individuals, which has resulted in a relatively high claims rate of between 33% and 40%, pending final verification of deficient claims forms. Their conduct both during litigation and after settlement was reached was adequate in all respects, and supports approval of the Settlement Agreement.*

### 29.  Judge Stephanie M. Rose

***Swinton v. SquareTrade, Inc.,*** (April 14, 2020)
No. 18-CV-00144-SMR-SBJ (S.D. Iowa):

*This publication notice appears to have been effective.  The digital ads were linked to the Settlement Website, and Google Analytics and other measures indicate that, during the Publication Notice Period, traffic to the Settlement Website was at its peak.*

### 30. Judge Joan B. Gottschall

*In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods.,* (January 3, 2020) No. 14-cv-10318 (N.D. Ill.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

### 31. Honorable Steven I. Locke

*Donnenfield v. Petro, Inc.,* (December 4, 2019) No. 17-cv-02310 (E.D.N.Y.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

### 32. Honorable Amy D. Hogue

*Trepte v. Bionaire, Inc.,* (November 5, 2019) No. BC540110 (Cal. Super. Ct.):

*The Court appoints JND Legal Administration as the Class Administrator... The Court finds that the forms of notice to the Settlement Class regarding the pendency of the action and of this settlement, and the methods of giving notice to members of the Settlement Class... constitute the best notice practicable under the circumstances and constitute valid, due, and sufficient notice to all members of the Settlement Class. They comply fully with the requirements of California Code of Civil Procedure section 382, California Civil Code section 1781, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.*

### 33. Judge Barbara Jacobs Rothstein

***Wright v. Lyft, Inc.,*** (May 29, 2019)
No. 17-cv-23307-MGC 14-cv-00421-BJR (W.D. Wash.):

*The Court also finds that the proposed method of distributing relief to the class is effective. JND Legal Administration ("JND"), an experienced claims administrator, undertook a robust notice program that was approved by this Court...*

### 34. Judge J. Walton McLeod

***Boskie v. Backgroundchecks.com,*** (May 17, 2019)
No. 2019CP3200824 (S.C. C.P.):

*The Court appoints JND Legal Administration as Settlement Administrator...The Court approves the notice plans for the HomeAdvisor Class and the Injunctive Relief Class as set forth in the declaration of JND Legal Administration. The Court finds the class notice fully satisfies the requirements of due process, the South Carolina Rules of Civil Procedure. The notice plan for the HomeAdvisor Class and Injunctive Relief Class constitutes the best notice practicable under the circumstances of each Class.*

### 35. Honorable James Donato

***In re Resistors Antitrust Litig.,*** (May 2, 2019)
No. 15-cv-03820-JD (N.D. Cal.):

*The Court approves as to form and content the proposed notice forms, including the long form notice and summary notice, attached as Exhibits B and D to the Second Supplemental Declaration of Jennifer M. Keough Regarding Proposed Notice Program (ECF No. 534-3). The Court further finds that the proposed plan of notice – including Class Counsel's agreement at the preliminary approval hearing for the KOA Settlement that direct notice would be effectuated through both U.S. mail and electronic mail to the extent electronic mail addresses can be identified following a reasonable search – and the proposed contents of these notices, meet the requirements of Rule 23 and*

*due process, and are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.The Court appoints the firm of JND Legal Administration LLC as the Settlement Administrator.*

## 36.  Honorable Leigh Martin May

**Bankhead v. First Advantage Background Serv. Corp.,** (April 30, 2019)
No. 17-cv-02910-LMM-CCB (N.D. Ga.):

*The Court appoints JND Legal Administration as Settlement Administrator... The Court approves the notice plans for the Class as set forth in the declaration of the JND Legal Administration. The Court finds that class notice fully satisfies the requirements of due process of the Federal Rules of Civil Procedure. The notice plan constitutes the best notice practicable under the circumstances of the Class.*

## 37.  Honorable P. Kevin Castel

**Hanks v. Lincoln Life & Annuity Co. of New York,** (April 23, 2019)
No. 16-cv-6399 PKC (S.D.N.Y.):

*The Court approves the form and contents of the Short-Form Notice and Long-Form Notice (collectively, the "Notices") attached as Exhibits A and B, respectively, to the Declaration of Jennifer M. Keough, filed on April 2, 2019, at Docket No. 120...The form and content of the notices, as well as the manner of dissemination described below, therefore meet the requirements of Rule 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto...the Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

## 38.  Judge Kathleen M. Daily

**Podawiltz v. Swisher Int'l, Inc.,** (February 7, 2019)
No. 16CV27621 (Or. Cir. Ct.):

*The Court appoints JND Legal Administration as settlement administrator...The Court finds that the notice plan is reasonable, that it constitutes due, adequate*

*and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, ORCP 32, and any other applicable laws.*

### 39. Honorable Kenneth J. Medel

***Huntzinger v. Suunto Oy,*** (December 14, 2018)
No. 37-2018-27159 (CU) (BT) (CTL) (Cal. Super. Ct.):

*The Court finds that the Class Notice and the Notice Program implemented pursuant to the Settlement Agreement and Preliminary Approval Order constituted the best notice practicable under the circumstances to all persons within the definition of the Class and fully complied with the due process requirement under all applicable statutes and laws and with the California Rules of Court.*

### 40. Honorable Thomas M. Durkin

***In re Broiler Chicken Antitrust Litig.,*** (November 16, 2018)
No. 16-cv-8637 (N.D. Ill.):

*The notice given to the Class, including individual notice to all members of the Class who could be identified through reasonable efforts, was the best notice practicable under the circumstances. Said notice provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.*

### 41. Judge Maren E. Nelson

***Granados v. Cnty. of Los Angeles,*** (October 30, 2018)
No. BC361470 (Cal. Super. Ct.):

*JND's Media Notice plan is estimated to have reached 83% of the Class. The overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough*

*Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

## 42. Judge Cheryl L. Pollak

***Dover v. British Airways, PLC (UK),*** (October 9, 2018)
No. 12-cv-5567 (E.D.N.Y.), in response to two objections:

*JND Legal Administration was appointed as the Settlement Claims Administrator, responsible for providing the required notices to Class Members and overseeing the claims process, particularly the processing of Cash Claim Forms...the overwhelmingly positive response to the Settlement by the Class Members, reinforces the Court's conclusion that the Settlement is fair, adequate, and reasonable.*

## 43. Judge Edward J. Davila

***In re Intuit Data Litig.,*** (October 4, 2018)
No. 15-CV-1778-EJD (N.D. Cal.):

*The Court appoints JND Legal Administration ("JND") to serve as the Settlement Administrator...The Court approves the program for disseminating notice to Class Members set forth in the Agreement and Exhibit A thereto (herein, the "Notice Program"). The Court approves the form and content of the proposed forms of notice, in the forms attached as Attachments 1 through 3 to Exhibit A to the Agreement. The Court finds that the proposed forms of notice are clear and readily understandable by Class Members. The Court finds that the Notice Program, including the proposed forms of notice, is reasonable and appropriate and satisfies any applicable due process and other requirements, and is the only notice to the Class Members of the Settlement that is required.*

## 44. Judge Ann D. Montgomery

***In re Wholesale Grocery Prod. Antitrust Litig.,*** (November 16, 2017)
No. 9-md-2090 (ADM) (TNL) (D. Minn.):

*Notice provider and claims administrator JND Legal Administration LLC provided proof that mailing conformed to the Preliminary Approval Order in a declaration filed contemporaneously with the Motion for Final Approval of Class Settlement. This notice program fully complied with Fed. R. Civ. P. 23, satisfied the requirements of due process, is the best notice practicable under the circumstances, and constituted due and adequate notice to the Class of the Settlement, Final Approval Hearing and other matters referred to in the Notice.*

## 45. Honorable David O. Carter

***Hernandez v. Experian Info. Sols., Inc.,*** (April 6, 2018)
No. 05-cv-1070 (C.D. Cal.):

*The Court finds, however, that the notice had significant value for the Class, resulting in over 200,000 newly approved claims—a 28% increase in the number of Class members who will receive claimed benefits—not including the almost 100,000 Class members who have visited the CCRA section of the Settlement Website thus far and the further 100,000 estimated visits expected through the end of 2019. (Dkt. 1114-1 at 3, 6). Furthermore, the notice and claims process is being conducted efficiently at a total cost of approximately $6 million, or $2.5 million less than the projected 2009 Proposed Settlement notice and claims process, despite intervening increases in postage rates and general inflation. In addition, the Court finds that the notice conducted in connection with the 2009 Proposed Settlement has significant ongoing value to this Class, first in notifying in 2009 over 15 million Class members of their rights under the Fair Credit Reporting Act (the ignorance of which for most Class members was one area on which Class Counsel and White Objectors' counsel were in agreement), and because of the hundreds of thousands of claims submitted in response to that notice, and processed and validated by the claims administrator, which will be honored in this Settlement.*



# IV. CASE EXPERIENCE

Ms. Keough has played an important role in hundreds of matters throughout her career. A partial listing of her notice and claims administration case work is provided below.

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Aaland v. Contractors.com and One Planet Ops* | 19-2-242124 SEA | Wash. Super. Ct. |
| *A.B. v. Regents of the Univ. of California* | 20-cv-09555-RGK-E | C.D. Cal. |
| *Achziger v. IDS Prop. Cas. Ins.* | 14-cv-5445 | W.D. Wash. |
| *Adair v. Michigan Pain Specialist, PLLC* | 14-28156-NO | Mich. Cir. |
| *Adkins v. EQT Prod. Co.* | 10-cv-00037-JPJ-PMS | W.D. Va. |
| *Advance Trust & Life Escrow Serv., LTA v. ReliaStar Life Ins. Co.* | 18-cv-2863-DWF-ECW | D. Minn. |
| *Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co.* | 18-cv-01897-DDD-NYW | D. Colo. |
| *Ahmed v. HSBC Bank USA, NA* | 15-cv-2057-FMO-SPx | N.D. Ill. |
| *Allagas v. BP Solar Int'l, Inc.* | 14-cv-00560 (SI) | N.D. Cal. |
| *Amador v. Baca* | 10-cv-1649 | C.D. Cal. |
| *Amin v. Mercedes-Benz USA, LLC* | 17-cv-01701-AT | N.D. Ga. |
| *Andrews v. Plains All Am. Pipeline, L.P.* | 15-cv-04113-PSG-JEM | C.D. Cal. |
| *Anger v. Accretive Health* | 14-cv-12864 | E.D. Mich. |
| *AP-Fonden v. Gen. Elec. Co.* | 17-CV-8457 (JMF) | S.D.N.Y. |
| *Arthur v. Sallie Mae, Inc.* | 10-cv-00198-JLR | W.D. Wash. |
| *Atkins v. Nat'l. Gen. Ins. Co.* | 16-2-04728-4 | Wash. Super. Ct. |
| *Atl. Ambulance Corp. v. Cullum & Hitti* | MRS-L-264-12 | N.J. Super. Ct. |
| *Avila v. LifeLock Inc.* | 15-cv-01398-SRB | D. Ariz. |
| *Backer Law Firm, LLC v. Costco Wholesale Corp.* | 15-cv-327 (SRB) | W.D. Mo. |
| *Baker v. Equity Residential Mgmt., LLC* | 18-cv-11175 | D. Mass. |
| *Bankhead v. First Advantage Background Servs. Corp.* | 17-cv-02910-LMM-CCB | N.D. Ga. |
| *Barbanell v. One Med. Grp., Inc.* | CGC-18-566232 | Cal. Super. Ct. |
| *Barclays Dark Pool Sec. Litig.* | 14-cv-5797 (VM) | S.D.N.Y. |
| *Barrios v. City of Chicago* | 15-cv-02648 | N.D. Ill. |
| *Beezley v. Fenix Parts, Inc.* | 17-cv-7896 | N.D. Ill. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Belanger v. RoundPoint Mortg. Servicing* | 17-cv-23307-MGC | S.D. Fla. |
| *Belin v. Health Ins. Innovations, Inc.* | 19-cv-61430-AHS | S.D. Fla |
| *Beltran v. InterExchange, Inc.* | 14-cv-3074 | D. Colo. |
| *BlackRock Core Bond Portfolio v. Wells Fargo* | 65687/2016 | N.Y. Super. Ct. |
| *Bland v. Premier Nutrition Corp.* | RG19-002714 | Cal. Super. Ct. |
| *Blasi v. United Debt Serv., LLC* | 14-cv-0083 | S.D. Ohio |
| *Bollenbach Enters. Ltd. P'ship. v. Oklahoma Energy Acquisitions* | 17-cv-134 | W.D. Okla. |
| *Boskie v. Backgroundchecks.com* | 2019CP3200824 | S.C. C.P. |
| *Boyd v. RREM Inc., d/b/a Winston* | 2019-CH-02321 | Ill. Cir. Ct. |
| *Bradley v. Honecker Cowling LLP* | 18-cv-01929-CL | D. Or. |
| *Brasch v. K. Hovnanian Enter. Inc.* | 30-2013-00649417-CU-CD-CXC | Cal. Super. Ct. |
| *Brighton Tr. LLC, as Tr. v. Genworth Life & Annuity Ins. Co.* | 20-cv-240-DJN | E.D. Va. |
| *Brna v. Isle of Capri Casinos* | 17-cv-60144 (FAM) | S.D. Fla. |
| *Bromley v. SXSW LLC* | 20-cv-439 | W.D. Tex. |
| *Browning v. Yahoo!* | C04-01463 HRL | N.D. Cal. |
| *Bruzek v. Husky Oil Operations Ltd.* | 18-cv-00697 | W.D. Wis. |
| *Cambridge Ret. Sys. v. Amneal Pharm., Inc.* | SOM-L-19 | N.J. Super. Ct. |
| *Careathers v. Red Bull N. Am., Inc.* | 13-cv-369 (KPF) | S.D.N.Y. |
| *Carillo v. Wells Fargo Bank, N.A.* | 18-cv-03095 | E.D.N.Y. |
| *Carmack v. Amaya Inc.* | 16-cv-1884 | D.N.J. |
| *Cecil v. BP Am. Prod. Co.* | 16-cv-410 (RAW) | E.D. Okla. |
| *Chamblee v. TerraForm Power, Inc.* | 16 MD 2742 (PKC)(AJP) | S.D.N.Y. |
| *Chapman v. GEICO Cas. Co.* | 37-2019-00000650-CU-CR-CTL | Cal. Super. Ct. |
| *Chester v. TJX Cos.* | 15-cv-1437 (ODW) (DTB) | C.D. Cal. |
| *Chieftain Royalty Co. v. BP Am. Prod. Co.* | 18-cv-00054-JFH-JFJ | N.D. Okla. |
| *Chieftain Royalty Co. v. Marathon Oil Co.* | 17-cv-334 | E.D. Okla. |
| *Chieftain Royalty Co. v. Newfield Exploration Mid-Continent Inc.* | 17-cv-00336-KEW | E.D. Okla. |
| *Chieftain Royalty Co. v. SM Energy Co.* | 18-cv-01225-J | W.D. Okla. |
| *Chieftain Royalty Co. v. XTO Energy, Inc.* | 11-cv-00029-KEW | E.D. Okla. |
| *Christopher v. Residence Mut. Ins. Co.* | CIVDS1711860 | Cal. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *City of Los Angeles v. Bankrate, Inc.* | 14-cv-81323 (DMM) | S.D. Fla. |
| *Cline v Sunoco, Inc.* | 17-cv-313-JAG | E.D. Okla. |
| *Cline v. TouchTunes Music Corp.* | 14-CIV-4744 (LAK) | S.D.N.Y. |
| *Cobell v. Salazar* | 96-cv-1285 (TFH) | D.D.C. |
| *Common Ground Healthcare Coop. v. United States* | 17-877C | F.C.C. |
| *Cooper Clark Found. v. Oxy USA* | 2017-CV-000003 | D. Kan. |
| *Corker v. Costco Wholesale Corp.* | 19-cv-00290-RSL | W.D. Wash. |
| *Corona v. Sony Pictures Entm't Inc.* | 14−CV−09600−RGK−E | C.D. Cal. |
| *Courtney v. Avid Tech., Inc.* | 13-cv-10686-WGY | D. Mass. |
| *DC 16 v. Sutter Health* | RG15753647 | Cal. Super. Ct. |
| *D'Amario v. Univ. of Tampa* | 20-cv-03744 | S.D.N.Y. |
| *Dahy v. FedEx Ground Package Sys., Inc.* | GD-17-015638 | C.P. Pa. |
| *Dargoltz v. Fashion Mkting & Merch. Grp.* | 2021-009781-CA-01 | Fla. Cir. Ct. |
| *DASA Inv., Inc. v. EnerVest Operating LLC* | 18-cv-00083-SPS | E.D. Okla. |
| *Davis v. Carfax, Inc.* | CJ-04-1316L | D. Okla. |
| *Davis v. State Farm Ins.* | 19-cv-466 | W.D. Ky. |
| *Davis v. Yelp Inc.* | 18-cv-00400-EMC | N.D. Cal. |
| *DeCapua v. Metro. Prop. and Cas. Ins. Co.* | 18-cv-00590 | D.R.I. |
| *DeFrees v. Kirkland and U.S. Aerospace, Inc.* | CV 11-04574 | C.D. Cal. |
| *Deitrich v. Enerfin Res. I Ltd. P'ship* | 20-cv-084-KEW | E.D. Okla. |
| *de Lacour v. Colgate-Palmolive Co.* | 16-cv-8364-KW | S.D.N.Y. |
| *Delkener v. Cottage Health Sys.* | 30-2016-847934 (CU) (NP) (CXC) | Cal. Super. Ct. |
| *DeMarco v. AvalonBay Communities, Inc.* | 15-cv-00628-JLL-JAD | D.N.J. |
| *Deora v Nanthealth* | 17-cv-01825-TJH-MRWx | C.D. Cal. |
| *Diel v Salal Credit Union* | 19-2-10266-7 KNT | Wash. Super. Ct. |
| *Djoric v. Justin Brands, Inc.* | BC574927 | Cal. Super. Ct. |
| *Doan v. CORT Furniture Rental Corp.* | 30-2017-00904345-CU-BT-CXC | Cal. Super. Ct. |
| *Doan v. State Farm Gen. Ins. Co.* | 1-08-cv-129264 | Cal. Super. Ct. |
| *Dobbins v. Bank of Am., N.A.* | 17-cv-00540 | D. Md. |
| *Donnenfield v. Petro, Inc.* | 17-cv-02310 | E.D.N.Y. |
| *Dougherty v. Barrett Bus. Serv., Inc.* | 17-2-05619-1 | Wash. Super. Ct. |
| *Doughtery v. QuickSIUS, LLC* | 15-cv-06432-JHS | E.D. Pa. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Dover v. British Airways, PLC (UK)* | 12-cv-5567 | E.D.N.Y. |
| *Dwyer v. Snap Fitness, Inc.* | 17-cv-00455-MRB | S.D. Ohio |
| *Dye v. Richmond Am. Homes of California, Inc.* | 30-2013-00649460-CU-CD-CXC | Cal. Super. Ct. |
| *Edwards v. Arkansas Cancer Clinic, P.A.* | 35CV-18-1171 | Ark. Cir. Ct. |
| *Edwards v. Hearst Commc'ns., Inc.* | 15-cv-9279 (AT) (JLC) | S.D.N.Y. |
| *Engquist v. City of Los Angeles* | BC591331 | Cal. Super. Ct. |
| *Erica P. John Fund, Inc. v. Halliburton Co.* | 02-cv-1152 | N.D. Tex. |
| *Expedia Hotel Taxes & Fees Litig.* | 05-2-02060-1 (SEA) | Wash. Super. Ct. |
| *Family Med. Pharmacy LLC v. Impax Labs., Inc.* | 17-cv-53 | S.D. Ala. |
| *Family Med. Pharmacy LLC v. Trxade Grp. Inc.* | 15-cv-00590-KD-B | S.D. Ala. |
| *Farmer v. Bank of Am.* | 11-cv-00935-OLG | W.D. Tex. |
| *Farris v. Carlinville Rehab and Health Care Ctr.* | 2019CH42 | Ill. Cir. Ct. |
| *Fielder v. Mechanics Bank* | BC721391 | Cal. Super. Ct. |
| *Finerman v. Marriott Ownership Resorts, Inc.* | 14-cv-1154-J-32MCR | M.D. Fla. |
| *Fishon v. Premier Nutrition Corp.* | 16-CV-06980-RS | N.D. Cal. |
| *Fitzgerald v. Lime Rock Res.* | CJ-2017-31 | Okla. Dist. Ct. |
| *Fleming v Impax Labs. Inc.* | 16-cv-6557 | N.D. Cal. |
| *Folweiler v. Am. Family Ins. Co.* | 16-2-16112-0 | Wash. Super. Ct. |
| *Fosbrink v. Area Wide Protective, Inc.* | 17-cv-1154-T-30CPT | M.D. Fla. |
| *Franklin v. Equity Residential* | 651360/2016 | N.Y. Super. Ct. |
| *Frederick v. ExamSoft Worldwide, Inc.* | 2021L001116 | Ill. Cir. Ct. |
| *Fresno Cnty. Employees Ret. Assoc. v. comScore Inc.* | 16-cv-1820 (JGK) | S.D.N.Y. |
| *Frost v. LG Elec. MobileComm U.S.A., Inc.* | 37-2012-00098755-CU-PL-CTL | Cal. Super. Ct. |
| *FTC v. Consumerinfo.com* | SACV05-801 AHS (MLGx) | C.D. Cal. |
| *FTC v. Reckitt Benckiser Grp. PLC* | 19CV00028 | W.D. Va. |
| *Gehrich v. Howe* | 37-2018-00041295-CU-SL-CTL | N.D. Ga. |
| *Gomez v. Mycles Cycles, Inc.* | 37-2015-00043311-CU-BT-CTL | Cal. Super. Ct. |
| *Gonzalez v. Banner Bank* | 20-cv-05151-SAB | E.D. Wash. |
| *Gonzalez-Tzita v. City of Los Angeles* | 16-cv-00194 | C.D. Cal. |
| *Gormley v. magicJack Vocaltec Ltd.* | 16-cv-1869 | S.D.N.Y. |
| *Graf v. Orbit Machining Co.* | 2020CH03280 | Ill. Cir. Ct. |
| *Gragg v. Orange Cab Co.* | C12-0576RSL | W.D. Wash. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Graham v. Univ. of Michigan | 21-cv-11168-VAR-EAS | E.D. Mich. |
| Granados v. Cnty. of Los Angeles | BC361470 | Cal. Super., Ct. |
| Gudz v. Jemrock Realty Co., LLC | 603555/2009 | N.Y. Super. Ct. |
| Guevoura Fund Ltd. v. Sillerman | 15-cv-07192-CM | S.D.N.Y. |
| Hahn v. Hanil Dev., Inc. | BC468669 | Cal. Super. Ct. |
| Haines v. Washington Trust Bank | 20-2-10459-1 | Wash. Super. Ct. |
| Halperin v. YouFit Health Clubs | 18-cv-61722-WPD | S.D. Fla. |
| Hanks v. Lincoln Life & Annuity Co. of New York | 16-cv-6399 PKC | S.D.N.Y. |
| Harrington v. Wells Fargo Bank NA | 19-cv-11180-RGS | D. Mass. |
| Harris v. Chevron U.S.A., Inc. | 15-cv-00094 | W.D. Okla. |
| Hawker v. Pekin Ins. Co. | 20-cv-00830 | S.D. Ohio |
| Hawkes v. Toronto Dominion Bank | 2020-0360-PAF | Del. Ch. |
| Hay Creek Royalties, LLC v Mewbourne Oil Co. | CIV-20-1199-F | W.D. Okla. |
| Hay Creek Royalties, LLC v. Roan Res. LLC | 19-cv-00177-CVE-JFJ | N.D. Okla. |
| Health Republic Ins. Co. v. United States | 16-259C | F.C.C. |
| Henry Price Trust v Plains Mkting | 19-cv-00390-RAW | E.D. Okla. |
| Hernandez v. Experian Info. Sols., Inc. | 05-cv-1070 (DOC) (MLGx) | C.D. Cal. |
| Hernandez v. Wells Fargo Bank, N.A. | 18-cv-07354 | N.D. Cal. |
| Herrera v. Wells Fargo Bank, N.A. | 18-cv-00332-JVS-MRW | C.D. Cal. |
| Hicks v. State Farm Fire and Cas. Co. | 14-cv-00053-HRW-MAS | E.D. Ky. |
| Hill v. Valli Produce of Evanston | 2019CH13196 | Ill. Cir. Ct. |
| Holmes v. LM Ins. Corp. | 19-cv-00466 | M.D. Tenn. |
| Holt v. Murphy Oil USA, Inc. | 17-cv-911 | N.D. Fla. |
| Horton v. Cavalry Portfolio Serv., LLC and Krejci v. Cavalry Portfolio Serv., LLC | 13-cv-0307-JAH-WVG and 16-cv-00211-JAH-WVG | C.D. Cal. |
| Howell v. Checkr, Inc. | 17-cv-4305 | N.D. Cal. |
| Hoyte v. Gov't of D.C. | 13-cv-00569 | D.D.C. |
| Hufford v. Maxim  Inc. | 19-cv-04452-ALC-RWL | S.D.N.Y. |
| Huntzinger v. Suunto Oy | 37-2018-27159 (CU) (BT) (CTL) | Cal. Super. Ct. |
| In re Air Cargo Shipping Servs. Antitrust Litig. | 06-md-1775 (JG) (VVP) | E.D.N.Y. |
| In re Akorn, Inc. Sec. Litig. | 15-c-1944 | N.D. Ill. |
| In re Am. Express Fin. Advisors Sec. Litig. | 04 Civ. 1773 (DAB) | S.D.N.Y. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re AMR Corp. (Am. Airlines Bankr.)* | 1-15463 (SHL) | S.D.N.Y. |
| *In re Arizona Theranos, Inc. Litig.* | 16-cv-2138-DGC | D. Ariz. |
| *In re Auction Houses Antitrust Litig.* | 00-648 (LAK) | S.D.N.Y. |
| *In re AudioEye, Inc. Sec. Litig.* | 15-cv-163 (DCB) | D. Ariz. |
| *In re AXA Equitable Life Ins. Co. COI Litig.* | 16-cv-740 | S.D.N.Y. |
| *In re Banner Health Data Breach Litig.* | 16-cv-02696 | D. Ariz. |
| *In re Blue Cross Blue Shield Antitrust Litig.* | 13-CV-20000-RDP | N.D. Ala. |
| *In re BofI Holding, Inc. Sec. Litig.* | 15-cv-02324-GPC-KSC | S.D. Cal. |
| *In re Broiler Chicken Antitrust Litig.* | 16-cv-08637 | N.D. Ill. |
| *In re Celgene Corp. Sec. Litig.* | 18-4772 | D.N.J. |
| *In re Chaparral Energy, Inc.* | 20-11947 (MFW) | D. Del. Bankr. |
| *In re Classmates.com* | C09-45RAJ | W.D. Wash. |
| *In re Cognizant Tech. Solutions Corp. Sec. Litig.* | 16-6509 | D.N.J. |
| *In re CRM Holdings, Ltd. Sec. Litig.* | 10-cv-00975-RPP | S.D.N.Y. |
| *In re Equifax Inc. Customer Data Sec. Breach Litig.* | 17-md-2800-TWT | N.D. Ga. |
| *In re Equifax Inc. Sec. Litig.* | 17-cv-03463-TWT | N.D. Ga. |
| *In re Farm-raised Salmon and Salmon Prod. Antitrust Litig.* | 19-cv-21551-CMA | S.D. Fla. |
| *In re General Motors LLC Ignition Switch Litig.* | 14-md-2543 | S.D.N.Y. |
| *In re Glob. Tel*Link Corp. Litig.* | 14-CV-5275 | W.D. Ark. |
| *In re GoPro, Inc. Shareholder Litig.* | CIV537077 | Cal. Super. Ct. |
| *In re Guess Outlet Store Pricing* | JCCP No. 4833 | Cal. Super. Ct. |
| *In re Helios and Matheson Analytics, Inc. Sec. Litig.* | 18-cv-06965JGK | S.D.N.Y. |
| *In re Illumina, Inc. Sec. Litig.* | 16-cv-03044-L-MSB | S.D. Cal. |
| *In re Initial Pub. Offering Sec. Litig. (IPO Sec. Litig.)* | No. 21-MC-92 | S.D.N.Y. |
| *In re Intuit Data Litig.* | 15-CV-1778-EJD | N.D. Cal. |
| *In re J.P. Morgan Stable Value Fund ERISA Litig.* | 12-cv-02548-VSB | S.D.N.Y. |
| *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig. (Indirect-Purchasers)* | 14-md-02542 | S.D.N.Y. |
| *In re Legacy Reserves LP Preferred Unitholder Litig.* | 2018-225 (JTL) | Del. Ch. |
| *In re LIBOR-Based Fin. Instruments Antitrust Litig.* | 11-md-2262 (NRB) | S.D.N.Y. |
| *In re Mattel, Inc. Sec. Litig.* | 19-CV-10860-MCS | C.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re Mercedes-Benz Emissions Litig.* | 16-cv-881 (KM) (ESK) | D.N.J. |
| *In re Mindbody, Inc. Stockholder Litig.* | 2019-0442-KSJM | Del. Ch. |
| *In re MyFord Touch Consumer Litig.* | 13-cv-3072 (EMC) | N.D. Cal. |
| *In re Mylan N.V. Sec. Litig* | 16-cv-07926-JPO | S.D.N.Y. |
| *In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods. Liab. Litig.* | 14-cv-10318 | N.D. Ill. |
| *In re Novo Nordisk Sec. Litig.* | 17-cv-00209-BRM-LHG | D.N.J. |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* | 2179 (MDL) | E.D. La. |
| *In re Packaged Seafood Products Antitrust Litig. (DPP and EPP Class)* | 15-md-02670 | S.D. Cal. |
| *In re PHH Lender Placed Ins. Litig.* | 12-cv-1117 (NLH) (KMW) | D.N.J. |
| *In re Pivotal Software, Inc. Stockholders' Litig.* | 2020-0440-KSJM | Del. Ch. |
| *In re Pokémon Go Nuisance Litig.* | 16-cv-04300 | N.D. Cal. |
| *In re Polyurethane Foam Antitrust Litig.* | 10-md-196 (JZ) | N.D. Ohio |
| *In re Pre-Filled Propane Tank Antitrust Litig.* | 14-md-02567 | W.D. Mo. |
| *In re Processed Egg Prod. Antitrust Litig.* | 08-MD-02002 | E.D. Pa. |
| *In re Resideo Tech., Inc. Sec. Litig.* | 19-cv-02863 | D. Minn. |
| *In re Resistors Antitrust Litig.* | 15-cv-03820-JD | N.D. Cal. |
| *In re Rev Grp., Inc. Sec. Litig.* | 18-cv-1268-LA | E.D. Wis. |
| *In re Rockwell Med. Inc. Stockholder Derivative Litig.* | 19-cv-02373 | E.D. N.Y. |
| *In re Saks Inc. Shareholder Litig.* | 652724/2013 | N.Y. Super. Ct. |
| *In re Sheridan Holding Co. I, LLC* | 20-31884 (DRJ) | Bankr. S.D. Tex. |
| *In re Signet Jewelers Ltd, Sec. Litig.* | 16-cv-06728-CM-SDA | S.D.N.Y. |
| *In re Snap Inc. Sec. Litig.* | 17-cv-03679-SVW-AGR | C.D. Cal. |
| *In re Spectrum Brand Sec. Litig.* | 19-cv-347-JDP | W.D. Wis. |
| *In re Stellantis N.V. v. Sec. Litig.* | 19-CV-6770 (EK) (MMH) | E.D.N.Y. |
| *In re Stericycle, Inc. Sec. Litig.* | 16-cv-07145 | N.D. Ill. |
| *In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.* | 13-md-2441 | D. Minn. |
| *In re Tenet Healthcare Corp. Sec.* | CV-02-8462-RSWL (Rzx) | C.D. Cal. |
| *In re Tesla Inc. Sec. Litig.* | 18-cv-04865-EMC | N.D. Cal. |
| *In re The Engle Trust Fund* | 94-08273 CA 22 | Fla. 11th Cir. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re Ubiquiti Networks Sec. Litig.* | 18-cv-01620 (VM) | S.D.N.Y. |
| *In re Unilife Corp. Sec. Litig.* | 16-cv-3976 (RA) | S.D.N.Y. |
| *In re Unit Petroleum Co.* | 20-32738 (DRJ) | Bankr. S.D. Tex. |
| *In re Vale S.A. Sec. Litig.* | 15 Civ. 09539 (GHW) | S.D.N.Y. |
| *In re Venator Materials PLC Sec. Litig.* | 19-cv-03464 | S.D. Tx. |
| *In re Washington Mut. Inc. Sec. Litig.* | 8-md-1919 (MJP) | W.D. Wash. |
| *In re Webloyalty.com, Inc. Mktg. & Sales Practices Litig.* | 06-11620-JLT | D. Mass. |
| *In re Wholesale Grocery Prod. Antitrust Litig.* | 9-md-2090 (ADM) (TNL) | D. Minn. |
| *In re Williams Sec. Litig.* | 02-CV-72-SPF (FHM) | N.D. Okla. |
| *In re Yahoo! Inc. Sec. Litig.* | 17-cv-373 | N.D. Cal. |
| *In the Matter of GTV Media Grp. Inc.* | 3-20537 | SEC |
| *In the Matter of Robinhood Fin., LLC* | 3-20171 | SEC |
| *Jerome v. Elan 99, LLC* | 2018-02263 | Tx. Dist. Ct. |
| *Jet Capital Master Fund L.P. v. HRG Grp. Inc.* | 21-cv-552-jdp | W.D. Wis. |
| *Jeter v. Bullseye Energy, Inc.* | 12-cv-411 (TCK) (PJC) | N.D. Okla. |
| *Johnson v. Hyundai Capital Am.* | BC565263 | Cal. Super. Ct. |
| *Johnson v. MGM Holdings, Inc.* | 17-cv-00541 | W.D. Wash. |
| *Johnston v. Camino Natural Res., LLC* | 19-cv-02742-CMA-SKC | D. Colo. |
| *Jordan v. WP Co. LLC, d/b/a The Washington Post* | 20-cv-05218 | N.D. Cal. |
| *Kalra v. Mercedes-Benz Canada Inc.* | CV-16-550271-00CP | Ont. Super. Ct. |
| *Kennedy v. McCarthy* | 16-cv-2010-CSH | D. Conn. |
| *Kent v. R.L. Vallee, Inc.* | 617-6-15 | D. Vt. |
| *Kernen v. Casillas Operating LLC* | 18-cv-00107-JD | W.D. Okla. |
| *Khona v. Subaru of Am., Inc.* | 19-cv-09323-RMB-AMD | D.N.J. |
| *King v. Bumble Trading Inc.* | 18-cv-06868-NC | N.D. Cal. |
| *Kissel v. Code 42 Software Inc.* | 15-1936 (JLS) (KES) | C.D. Cal. |
| *Kokoszki v. Playboy Enter., Inc.* | 19-cv-10302 | E.D. Mich. |
| *Komesar v. City of Pasadena* | BC 677632 | Cal. Super. Ct. |
| *Kommer v. Ford Motor Co.* | 17-cv-00296-LEK-DJS | N.D.N.Y. |
| *Konecky v Allstate* | CV-17-10-M-DWM | D. Mont. |
| *Krueger v. Ameriprise Fin., Inc.* | 11-cv-02781 (SRN/JSM) | D. Minn. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Lambert v. Navy Fed. Credit Union | 19-cv-00103-LO-MSN | E.D. Va. |
| Langan v. Johnson & Johnson Consumer Co. | 13-cv-01471 | D. Conn. |
| Langer v. CME Grp. | 2014CH00829 | Ill. Cir. Ct. |
| Larson v. Allina Health Sys. | 17-cv-03835 | D. Minn. |
| Lee v. Hertz Corp., Dollar Thrifty Auto. Grp. Inc. | CGC-15-547520 | Cal. Super. Ct. |
| Leonard v. John Hancock Life Ins. Co. of NY | 18-CV-04994 | S.D.N.Y. |
| Lerman v. Apple Inc | 15-cv-07381 | E.D.N.Y. |
| Levy v. Dolgencorp, LLC | 20-cv-01037-TJC-MCR | M.D. Fla. |
| Linderman v. City of Los Angeles | BC650785 | Cal. Super. Ct. |
| Linkwell Corp. Sec. Litig. | 16-cv-62506 | S.D. Fla. |
| Linneman v. Vita-Mix Corp. | 15-cv-748 | S.D. Ohio |
| Lion Biotechnologies Sec. Litig. | 17-cv-02086-SI | N.D. Cal. |
| Liotta v. Wolford Boutiques, LLC | 16-cv-4634 | N.D. Ga. |
| Lippert v. Baldwin | 10-cv-4603 | N.D. Ill. |
| Lloyd v. CVB Fin. Corp. | 10-cv-6256 (CAS) | C.D. Cal. |
| Loblaw Card Program | Remediation Program | |
| Lord Abbett Affiliated Fund, Inc. v. Navient Corp. | 16-cv-112 | D. Del. |
| Mabrey v. Autovest | CGC-18-566617 | Cal. Super. Ct. |
| Machado v. Endurance Int'l Grp. Holdings Inc. | 15-cv-11775-GAO | D. Mass. |
| Macias v. Los Angeles County Dept. of Water and Power | BC594049 | Cal. Super. Ct. |
| Malin v. Ambry Gentics Corp. | 30-2018-00994841-CU-SL-CXC | Cal. Super. Ct. |
| Malone v. Western Digital Corp. | 20-cv-03584-NC | N.D. Cal. |
| Marical v. Boeing Employees' Credit Union | 19-2-20417-6 | Wash. Super. Ct. |
| Markson v. CRST Int'l, Inc. | 17-cv-01261-SB (SPx) | C.D. Cal. |
| Martin v. Lindenwood Univ. | 20-cv-01128 | E.D. Mo. |
| Martinelli v. Johnson & Johnson | 15-cv-01733-MCE-DB | E.D. Cal. |
| McCall v. Hercules Corp. | 66810/2021 | N.Y. Super. Ct. |
| McClellan v. Chase Home Fin. | 12-cv-01331-JGB-JEM | C.D. Cal. |
| McClintock v. Continuum Producer Serv., LLC | 17-cv-00259-JAG | E.D. Okla. |
| McClintock v Enter. | 16-cv-00136-KEW | E.D. Okla. |
| McGann v. Schnuck Markets Inc. | 1322-CC00800 | Mo. Cir. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| McGraw v. Geico Gen. Ins. Co. | 15-2-07829-7 | Wash. Super. Ct. |
| McKibben v. McMahon | 14-2171 (JGB) (SP) | C.D. Cal. |
| McKnight Realty Co. v. Bravo Arkoma, LLC | 17-CIV-308 (KEW); 20-CV-428-KEW | E.D. Okla. |
| McNeill v. Citation Oil & Gas Corp. | 17-CIV-121 (KEW) | E.D. Okla. |
| McWilliams v. City of Long Beach | BC361469 | Cal. Super. Ct. |
| Messner v. Cambridge Real Estate Servs., Inc. | 19CV28815 | Or. Cir. Ct. |
| Mid Is. LP v. Hess Corp. | 650911/2013 | N.Y. Super. Ct. |
| Mild v. PPG Indus., Inc. | 18-cv-04231 | C.D. Cal. |
| Miller Revocable Trust v DCP Operating Co., LP | 18-cv-00199-JH | E.D. Okla. |
| Miller v. Carrington Mortg. Serv., LLC | 19-cv-00016-JDL | D. Me. |
| Miller v. Guenther Mgmt. LLC | 20-2-02604-32 | Wash. Super. Ct. |
| Miller v. Mut. of Enumclaw Ins. Co. | 19-2-12357-1 | Wash. Super. Ct. |
| Milstead v. Robert Fiance Beauty Sch., Inc. | CAM-L-328-16 | N.J. Super. Ct. |
| Moeller v. Advance Magazine Publishers, Inc. | 15-cv-05671 (NRB) | S.D.N.Y. |
| Mojica v. Securus Techs., Inc. | 14-cv-5258 | W.D. Ark. |
| Molnar v. 1-800-Flowers Retail, Inc. | BC 382828 | Cal. Super. Ct. |
| Monteleone v. Nutro Co. | 14-cv-00801-ES-JAD | D.N.J. |
| Moodie v. Maxim HealthCare Servs. | 14-cv-03471-FMO-AS | C.D. Cal. |
| Muir v. Early Warning Servs., LLC | 16-cv-00521 | D.N.J. |
| Murphy v. Precision Castparts Corp. | 16-cv-00521-sb | D. Or. |
| Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. | 12-3824 | E.D. Pa. |
| Nasseri v. Cytosport, Inc. | BC439181 | Cal. Super. Ct. |
| Nesbitt v. Postmates, Inc. | CGC-15-547146 | Cal. Super. Ct. |
| New Orleans Tax Assessor Project | Tax Assessment Program | |
| New York v. Steven Croman | 450545/2016 | N.Y. Super. Ct. |
| NMPA Late Fee Program Grps. I-IVA | Remediation Program | CRB |
| Noble v. Northland | UWY-CV-16-6033559-S | Conn. Super. Ct. |
| Novoa v. The GEO Grp., Inc. | 17-cv-02514-JGB-SHK | C.D. Cal. |
| Nozzi v. Housing Auth. of the City of Los Angeles | CV 07-0380 PA (FFMx) | C.D. Cal. |
| Nwabueza v. AT&T | C 09-01529 SI | N.D. Cal. |
| Nwauzor v. GEO Grp., Inc. | 17-cv-05769 | W.D. Wash. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| O'Donnell v. Fin. Am. Life Ins. Co. | 14-cv-01071 | S.D. Ohio |
| Ollila v. Babcock & Wilcox Enter., Inc. | 17-cv-00109 | W.D.N.C. |
| Ostendorf v. Grange Indem. Ins. Co. | 19-cv-01147-ALM-KAJ | S.D. Ohio |
| Paetzold v. Metro. Dist. Comm'n | X07-HHD-CV-18-6090558-S | Conn. Super. Ct. |
| Paggos v. Resonant, Inc. | 15-cv-01970-SJO | C.D. Cal. |
| Palazzolo v. Fiat Chrysler Auto. NV | 16-cv-12803 | E.D. Mich. |
| Palmer v City of Anaheim | 30-2017-00938646 | Cal. Super. Ct. |
| Parker v. Time Warner Entm't Co. | 239 F.R.D. 318 | E.D.N.Y. |
| Parker v. Universal Pictures | 16-cv-1193-CEM-DCI | M.D. Fla. |
| Parmelee v. Santander Consumer USA Holdings Inc. | 16-cv-783-K | N.D. Tex. |
| Patrick v. Volkswagen Grp. of Am., Inc. | 19-cv-01908-MCS-ADS | C.D. Cal. |
| Pauper Petroleum, LLC v. Kaiser-Francis Oil Co. | 19-cv-00514-JFH-JFJ | N.D. Okla. |
| Pearlstein v. BlackBerry Ltd. | 13-cv-7060 | S.D.N.Y. |
| Pemberton v. Nationstar Mortg. LLC | 14-cv-1024-BAS (MSB) | S.D. Cal. |
| Pena v. Wells Fargo Bank | 19-cv-04065-MMC-TSH | N.D. Cal. |
| Perchlak v. Liddle & Liddle | 19-cv-09461 | C.D. Cal. |
| Perez v. DIRECTV | 16-cv-01440-JLS-DFM | C.D. Cal. |
| Perez v. Wells Fargo Co. | 17-cv-00454-MMC | N.D. Cal. |
| Perrigo Sec. Litig. | 16-CV-2805-MCA-LDW | D.N.J. |
| Peterson v. Apria Healthcare Grp., Inc. | 19-cv-00856 | M.D. Fla. |
| Petersen v. Costco Wholesale Co. | 13-cv-01292-DOC-JCG | C.D. Cal. |
| Phillips v. Hobby Lobby Stores, Inc. | 18-cv-01645-JHE; 16-cv-837-JHE | N.D. Ala. |
| Pierce v Anthem Ins. Cos. | 15-cv-00562-TWP-TAB | S. D. Ind. |
| Pine Manor Investors v. FPI Mgmt., Inc. | 34-2018-00237315 | Cal. Super. Ct. |
| Pinon v. Mercedes-Benz USA, LLC and Daimler AG | 18-cv-3984 | N.D. Ga. |
| Plymouth Cnty. Ret. Sys. v. GTT Commc'n, Inc. | 19-cv-00982-CMH-MSN | E.D. Va. |
| Podawiltz v. Swisher Int'l, Inc. | 16CV27621 | Or. Cir. Ct. |
| Prause v. TechnipFMC PLC | 7-cv-2368 | S.D. Tex. |
| Press v. J. Crew Grp., Inc. | 56-2018-512503 (CU) (BT) (VTA) | Cal. Super. Ct. |
| Purcell v. United Propane Gas, Inc. | 14-CI-729 | Ky. 2nd Cir. |
| Quezada v. ArbiterSports, LLC | 20-cv-05193-TJS | E.D. Pa. |

| CASE NAME | CASE NUMBER | LOCATION |
|-----------|-------------|----------|
| *Raider v. Archon Corp.* | A-15-712113-B | D. Nev. |
| *Ramos v. Hopele of Fort Lauderdale, LLC* | 17-cv-62100 | S.D. Fla. |
| *Rayburn v. Santander Consumer USA, Inc.* | 18-cv-1534 | S.D. Ohio |
| *RCC, P.S. v. Unigard Ins. Co.* | 19-2-17085-9 | Wash. Super. Ct. |
| *Reed v. Scientific Games Corp.* | 18-cv-00565-RSL | W.D. Wash. |
| *Reirdon v. Cimarex Energy Co.* | 16-CIV-113 (KEW) | E.D. Okla. |
| *Reirdon v. XTO Energy Inc.* | 16-cv-00087-KEW | E.D. Okla. |
| *Rhea v. Apache Corp.* | 14-cv-00433-JH | E.D. Okla. |
| *Rice v. Insync* | 30-2014-00701147-CU-NP-CJC | Cal. Super. Ct. |
| *Rice-Redding v. Nationwide Mut. Ins. Co.* | 18-cv-01203 | N.D. Ga. |
| *Rich v. EOS Fitness Brands, LLC* | RIC1508918 | Cal. Super. Ct. |
| *Rick Nelson Co. v. Sony Music Ent.* | 18-cv-08791 | S.D.N.Y. |
| *Rocchio v. Rutgers, The State Univ. of New Jersey* | MID-L-003039-20 | N.J. Super. Ct. |
| *Rollo v. Universal Prop. & Cas. Ins.* | 2018-027720-CA-01 | Fla. Cir. Ct. |
| *Rosado v. Barry Univ., Inc.* | 20-cv-21813 | S.D. Fla. |
| *Rose v Array Biopharma Inc.* | 17cv2789 | D. Colo. |
| *Roth v. GEICO Gen. Ins. Co. and Joffe v. GEICO Indem. Co.* | 16-cv-62942 | S.D. Fla. |
| *Rounds v. FourPoint Energy, LLC* | CIV-20-00052-P | W.D. Wis. |
| *Routh v. SEIU Healthcare 775NW* | 14-cv-00200 | W.D. Wash. |
| *Ruppel v. Consumers Union of United States, Inc.* | 16-cv-2444 (KMK) | S.D.N.Y. |
| *Russett v. Nw. Mut. Life Ins. Co.,* | 19-cv-07414-KMK | S.D.N.Y. |
| *Saccoccio v. JP Morgan Chase* | 13-cv-21107 | S.D. Fla. |
| *Salgado v. UPMC Jameson* | 30008-18 | C.P. Pa. |
| *San Antonio Fire & Police Pension Fund v. Dole Food Co.* | 15-cv-1140 (LPS) | E.D. Del. |
| *Sanchez v. Centene Corp.* | 17-cv-00806-AGF | E.D. Mo. |
| *Sanders v. Glob. Research Acquisition, LLC* | 18-cv-00555 | M.D. Fla. |
| *Sandoval v. Merlex Stucco Inc.* | BC619322 | Cal. Super. Ct. |
| *Santa Barbara Channelkeeper v. State Water Res. Control Bd.* | 37-2020-00005776 | Cal. Super. Ct. |
| *Schlesinger v. Ticketmaster* | BC304565 | Cal. Super. Ct. |
| *Schulte v. Liberty Ins. Corp.* | 19-cv-00026 | S.D. Ohio |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Schwartz v. Intimacy in New York, LLC | 13-cv-5735 (PGG) | S.D.N.Y. |
| Schwartz v. Opus Bank | 16-cv-7991 (AB) (JPR) | C.D. Cal. |
| SEB Inv. Mgmt. AB v. Align Tech., Inc. | 18-CV-06720-LHK | N.D. Cal. |
| SEB Inv. Mgmt. AB v. Endo Int'l PLC | 17-cv-3711-TJS | E.D. Pa. |
| SEC v. Brian Lines, Fair Fund | 07-cv-11387 (DLC) | S.D.N.Y |
| SEC v. Friedland, Fair Fund | 18-CV-00529-MSK-MEH | D. Colo. |
| SEC v. Henry Ford and Fallcatcher, Inc. | 19-cv-02214-PD | E.D. Pa. |
| SEC v. Homeland Safety Int'l, Inc. | 08-cv-01197-RO | N.D. Tex. |
| Seegert v. P.F. Chang's China Bistro | 37-2017-00016131-CU-MC-CTL | Cal. Super. Ct. |
| Shah v Zimmer Biomet Holdings, Inc. | 16-cv-00815-PPS-MGG | N.D. Ind. |
| Sidibe v. Sutter Health | 12-cv-4854-LB | N.D. Cal. |
| Smith v. Pulte Home Corp. | 30-2015-00808112-CU-CD-CXC | Cal. Super. Ct. |
| Snap Derivative Settlement | 18STCV09365; BC720152; 19STCV08413 | Cal. Super. Ct. |
| Soderstrom v. MSP Crossroads Apartments LLC | 16-cv-233 (ADM) (KMM) | D. Minn. |
| Solberg v. Victim Serv., Inc. | 14-cv-05266-VC | N.D. Cal. |
| Sonner v. Schwabe N. Am., Inc. | 15-cv-01358 VAP (SPx) | C.D. Cal. |
| Speed v. JMA Energy Co., LLC | CJ-2016-59 | Okla. Dist. Ct. |
| Staats v. City of Palo Alto | 2015-1-CV-284956 | Cal. Super. Ct. |
| Stanley v. Capri Training Ctr. | ESX-L-1182-16 | N.J. Super. Ct. |
| Steele v. PayPal, Inc. | 05-CV-01720 (ILG) (VVP) | E.D.N.Y. |
| Stein v. Eagle Bancorp, Inc. | 19-cv-06873-LGS | S.D.N.Y. |
| Steinberg v. Opko Health, Inc. | 18-cv-23786-JEM | S.D. Fla. |
| Stewart v. Early Warning Serv., LLC | 18-cv-3277 | D.N.J. |
| Stier v. PEMCO Mut. Ins. Co. | 18-2-08153-5 | Wash. Super. Ct. |
| Stillman v. Clermont York Assocs. LLC | 603557/09E | N.Y. Super. Ct. |
| Strickland v. Carrington Mortg. Servs., LLC | 16-cv-25237 | S.D. Fla. |
| Strohm v. Missouri Am. Water Co. | 16AE-CV01252 | Mo. Cir. Ct. |
| Strougo v. Lannett Co. | 18-cv-3635 | E.D. Pa. |
| Stuart v. State Farm Fire & Cas. Co. | 14-cv-04001 | W.D. Ark. |
| Sudunagunta v. NantKwest, Inc. | 16-cv-01947-MWF-JEM | C.D. Cal. |
| Sullivan v Wenner Media LLC | 16–cv–00960–JTN–ESC | W.D. Mich. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Swafford v. Ovintiv Exploration Inc.* | 21-cv-00210-SPS | E.D. Okla. |
| *Swetz v. GSK Consumer Health, Inc.* | 20-cv-04731 | S.D.N.Y. |
| *Swinton v. SquareTrade, Inc.* | 18-CV-00144-SMR-SBJ | S.D. Iowa |
| *Terrell v. Costco Wholesale Corp.* | 16-2-19140-1-SEA | Wash. Super. Ct. |
| *Tile Shop Stockholders Litig.* | 2019-0892-SG | Del. Ch. |
| *Timberlake v. Fusione, Inc.* | BC 616783 | Cal. Super. Ct. |
| *Tkachyk v. Traveler's Ins.* | 16-28-m (DLC) | D. Mont. |
| *T-Mobile Remediation Program* | Remediation Program | |
| *Townes, IV v. Trans Union, LLC* | 04-1488-JJF | D. Del. |
| *Townsend v. G2 Secure Staff* | 18STCV04429 | Cal. Super. Ct. |
| *Trepte v. Bionaire, Inc.* | BC540110 | Cal. Super. Ct. |
| *Tyus v. Gen. Info. Sols. LLC* | 2017CP3201389 | S.C. C.P. |
| *Udeen v. Subaru of Am., Inc.* | 10-md-196 (JZ) | D.N.J. |
| *United States v. City of Austin* | 14-cv-00533-LY | W.D. Tex. |
| *United States v. City of Chicago* | 16-c-1969 | N.D. Ill. |
| *United States v. Greyhound Lines, Inc.* | 16-67-RGA | D. Del. |
| *USC Student Health Ctr. Settlement* | 18-cv-04258-SVW | C.D. Cal. |
| *Van Jacobs v. New World Van Lines, Inc.* | 2019CH02619 | Ill. Cir. Ct. |
| *Vasquez v. Libre by Nexus, Inc.* | 17-cv-00755-CW | N.D. Cal. |
| *Vassalle v. Midland Funding LLC* | 11-cv-00096 | N.D. Ohio |
| *Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York* | 19-cv-06004 | S.D.N.Y. |
| *Viesse v. Saar's Inc.* | 17-2-7783-6 (SEA) | Wash. Super. Ct. |
| *Vitiello v Bed Bath & Beyond Inc.* | 20-cv-04240-MCA-MAH | D.N.J. |
| *Wahl v. Yahoo! Inc.* | 17-cv-2745 (BLF) | N.D. Cal. |
| *Wake Energy, LLC v. EOG Res., Inc.* | 20-cv-00183-ABJ | D. Wyo. |
| *Watson v. Checkr, Inc.* | 19-CV-03396-EMC | N.D. Cal. |
| *Weimar v. Geico Advantage Ins. Co.* | 19-cv-2698-JTF-tmp | W.D. Tenn. |
| *Weiner v. Ocwen Fin. Corp.* | 14-cv-02597-MCE-DB | E.D. Cal. |
| *WellCare Sec. Litig.* | 07-cv-01940-VMC-EAJ | M.D. Fla. |
| *Welsh v. Prop. and Cas. Ins. Co. of Hartford* | 20-2-05157-3 | Wash. Super. Ct. |
| *White Family Minerals, LLC v. EOG Res., Inc.* | 19-cv-409-KEW | E.D. Okla. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Williams v. Children's Mercy Hosp.* | 1816-CV 17350 | Mo. Cir. Ct. |
| *Williams v. Weyerhaeuser Co.* | 995787 | Cal. Super. Ct. |
| *Wills v. Starbucks Corp.* | 17-cv-03654 | N.D. Ga. |
| *Wilner v. Leopold & Assoc,* | 15-cv-09374-PED | S.D.N.Y. |
| *Wilson v. LSB Indus., Inc* | 15-cv-07614-RA-GWG | S.D.N.Y. |
| *Wornicki v. Brokerpriceopinion.com, Inc.* | 13-cv-03258 (PAB) (KMT) | D. Colo. |
| *Wright v. Lyft, Inc.* | 14-cv-00421-BJR | W.D. Wash. |
| *Wright v. Southern New Hampshire Univ.* | 20-cv-00609 | D.N.H. |
| *Yamagata v. Reckitt Benckiser, LLC* | 17-cv-03529-CV | N.D. Cal. |
| *Yates v. Checkers* | 17-cv-09219 | N.D. Ill. |
| *Yeske v. Macoupin Energy* | 2017-L-24 | Ill. Cir. Ct. |
| *Z.B. v. Birmingham Cmty. Charter High Sch.* | 19STCV17092 | Cal. Super. Ct. |

# EXHIBIT B

**To:**    **[Class Member Email Address]**
**From Name: In re MacBook Keyboard Litigation Settlement Administrator From Email
Address: info@KeyboardSettlement.com**
**Subject: In re MacBook Keyboard Litigation Settlement**

# Apple's records indicate that you are eligible for payment from a class action settlement without the need to make a claim

| You are a GROUP 1 Settlement Class Member | | | |
|---|---|---|---|
| **Unique ID:** | <<Unique_ID>> | **PIN:** | <<PIN>> |
| **PLEASE SAVE THESE NUMBERS TO UPDATE YOUR ADDRESS** | | | |

Dear <<Name>> *or if no name* Class Member:

A Settlement has been reached with Apple Inc. ("Apple") in a class action lawsuit alleging that the "butterfly" keyboard mechanism in certain MacBook laptops is defective, and can result in characters repeating unexpectedly; letters or characters not appearing; and/or the keys feeling "sticky" or not responding in a consistent manner.

Apple denies all of the allegations made in the lawsuit, denies that any MacBooks are defective, and denies that Apple did anything improper or unlawful. The proposed Settlement is not an admission of guilt or wrongdoing of any kind by Apple. The United States District Court for the Northern District of California approved this notice.

| Why am I receiving this notice? |
|---|

Apple's records indicate that you are a member of the Settlement Class and entitled to receive a payment because you obtained at least two Topcase Replacements from Apple or an Authorized Service Provider. The Settlement Class includes all persons and entities in the United States who purchased, other than for resale, an Apple MacBook, MacBook Pro or MacBook Air laptop model equipped with a "Butterfly" keyboard between 2015 and 2019 (the "Class Computers") (a list of qualifying Class Computer models is available here). [Link to website Home Page] **Under the terms of the Settlement, you will receive a payment estimated to be between $300 and $395 if the Court approves the Settlement and it becomes final.**

Your payment will be made via check and will be delivered to:

<<Name>>
<<Address>>
<<city>>, <<state>> <<zip>>

To confirm your address or if you would like to have your payment sent to another address, please click here [Link to OCF Login Page] or visit www.KeyboardSettlement.com and **use your Unique ID and PIN provided above. You do not need to file a claim form to receive payment under the Settlement.**

**For more information and to review the full notice, please visit www.KeyboardSettlement.com.**

| What does the Settlement provide? |
|:---:|

Apple has agreed to pay $50 million into a Settlement Fund. After deducting Court-approved attorneys' fees (up to 30% of the Settlement Fund) and expenses, service awards (up to $5,000 to each of the 12 individual class representatives), and the costs of notice and settlement administration, the net Settlement Fund will be distributed to Settlement Class Members based on the type and number of keyboard repairs they obtained, and other factors. For more information about how distributions will be made to Settlement Class Members, please visit www.KeyboardSettlement.com.

| What types of repairs are covered by the Settlement? |
|:---:|

The Settlement covers **Topcase Replacements**, which refers to the replacement of the full keyboard module (including the battery, track pad, speakers, topcase, and keyboard), and **Keycap Replacements,** which refers to the replacement of one or more keycaps on a keyboard and does not involve replacement of the full keyboard module. Either repair must have been performed by Apple or an Apple Authorized Service Provider. **Group 1** Settlement Class Members received at least two Topcase Replacements. **Group 2** Settlement Class Members received a single Topcase Replacement that did not resolve their keyboard issues. **Group 3** Settlement Class Members received one of more Keycap Replacements that did not resolve their keyboard issues. According to Apple's records, **you are a Group 1 Settlement Class Member.**

| What are the expected payments? |
|:---:|

The amount of the payments for each Group will vary depending on the number of valid claims received. As a Group 1 Settlement Class Member, you will receive a payment estimated to be between $300 and $395. Eligible Group 2 Settlement Class Members are estimated to receive up to $125 and eligible Group 3 Settlement Class Members are estimated to receive up to $50. We will not know the final amounts that each Group will receive until all claims are evaluated. Please be patient.

| Do I have to submit a claim? |
|:---:|

No. As a Group 1 Settlement Class Member, you are eligible to receive a payment without the need to submit a claim.

| **What are my other options?** |
| --- |

You can do nothing, exclude yourself or object. If you do nothing, you will get a check if the Settlement becomes final, but you will give up the right to sue or continue to sue Apple for any claim regarding the subject matter of the claims in this case.

If you don't want to receive an automatic payment or be legally bound by the Settlement, you must exclude yourself from it by **February 10, 2023**. Unless you exclude yourself, you won't be able to sue or continue to sue Apple for any claim regarding the subject matter of the claims in this case. If you stay in the Settlement (i.e., don't exclude yourself), you may object to it or ask for permission for you or your own lawyer to appear and speak at the Final Approval Hearing—at your own cost—but you don't have to. Objections and requests to appear are due by **February 10, 2023.** The Final Approval Hearing will be held on March 16, 2023, at 9:00 a.m., in Courtroom 4, of the San Jose federal courthouse, located at 280 South 1st Street, San Jose, CA 95113, or via Zoom Webinar.

More information about your options is in the detailed notice available at www.KeyboardSettlement.com, or you may contact Class Counsel with any questions:

- **Simon S. Grille.** Telephone: (415) 981-4800; email: KeyboardSettlement@girardsharp.com
- **Steve Schwartz.** Telephone: (610) 642-8500; email: KeyboardSettlement@chimicles.com

You may also access the docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California at any of the Court's locations between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT CALL THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

**BY ORDER OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

To unsubscribe from this list, please click on the following link: Unsubscribe

EXHIBIT C

**To:**    **[Class Member Email Address]**
**From Name: In re MacBook Keyboard Litigation Settlement Administrator**
**From Address: info@KeyboardSettlement.com**
**Subject: In re MacBook Keyboard Litigation Settlement**

# If you bought a MacBook laptop sold between 2015 and 2019 equipped with a "Butterfly" keyboard, you may be eligible for payment from a class action settlement

| You are a GROUP 2 or 3 Settlement Class Member | | | |
|---|---|---|---|
| **Unique ID:** | <<Unique_ID>> | **PIN:** | <<PIN>> |
| **PLEASE SAVE THESE NUMBERS TO FILE A CLAIM** | | | |

Dear <<Name>> *or if no name* Class Member:

A Settlement has been reached with Apple Inc. ("Apple") in a class action lawsuit alleging that the "butterfly" keyboard mechanism in certain MacBook laptops is defective, and can result in characters repeating unexpectedly; letters or characters not appearing; and/or the keys feeling "sticky" or not responding in a consistent manner.

Apple denies all of the allegations made in the lawsuit, denies that any MacBooks are defective, and denies that Apple did anything improper or unlawful. The proposed Settlement is not an admission of guilt or wrongdoing of any kind by Apple. The United States District Court for the Northern District of California approved this notice.

| **Why am I receiving this notice?** |
|---|

Apple's records indicate that you may be a member of the Settlement Class and entitled to receive a payment. The Settlement Class includes all persons and entities in the United States who purchased, other than for resale, an Apple MacBook, MacBook Pro, or MacBook Air laptop model equipped with a "Butterfly" keyboard between 2015 and 2019 (the "Class Computers") (a list of qualifying Class Computer models is available here). [Link to website Home Page]

**Apple's records reflect that you received a qualifying keyboard repair. If the repair did not resolve your keyboard issues, you may be eligible to receive up to $50 or $125, depending on the type of repair. You can submit a claim to be paid from the Settlement. A link to your claim form is available here.** [Link to OCF Login Page]

For more information and to review the full notice, please visit **www.KeyboardSettlement.com.**

| What does the Settlement provide? |
| --- |

Apple has agreed to pay $50 million into a Settlement Fund. After deducting Court-approved attorneys' fees (up to 30% of the Settlement Fund) and expenses, service awards (up to $5,000 to each of the 12 individual class representatives), and the costs of notice and settlement administration, the net Settlement Fund will be distributed to Settlement Class Members based on the type and number of keyboard repairs they obtained, and other factors. For more information about how distributions will be made to Settlement Class Members, please visit www.KeyboardSettlement.com.

| What types of repairs are covered by the Settlement? |
| --- |

The Settlement covers **Topcase Replacements**, which refers to the replacement of the full keyboard module (including the battery, track pad, speakers, topcase, and keyboard), and **Keycap Replacements,** which refers to the replacement of one or more keycaps on a keyboard and does not involve replacement of the full keyboard module. Either repair must have been performed by Apple or an Apple Authorized Service Provider. **Group 1** Settlement Class Members received at least two Topcase Replacements. **Group 2** Settlement Class Members received a single Topcase Replacement that did not resolve their keyboard issues. **Group 3** Settlement Class Members received one or more Keycap Replacements that did not resolve their keyboard issues. According to Apple's records, **you are a Group 2 or 3 Settlement Class Member.**

| What are the expected payments? |
| --- |

The amount of the payments for each Group will vary depending on the number of valid claims received. Group 1 Settlement Class Members are estimated to receive a payment between $300 and $395. Eligible Group 2 Settlement Class Members are estimated to receive up to $125 and eligible Group 3 Settlement Class Members are estimated to receive up to $50. We will not know the final amounts that each Group will receive until all claims are evaluated. Please be patient.

| How do I file a claim? |
| --- |

To file a claim, click here. [Link to OCF Login Page] **Use your Unique ID and PIN provided above**, which will pre-populate information in Apple's records, including whether Apple's records reflect you received a Topcase or Keycap Replacement. You will be required to declare that the information in the Claim Form is accurate and that the keyboard repair did not resolve your keyboard issue. Your claim must be submitted electronically or postmarked no later than **March**

**6, 2023** in order to be considered for payment.  See the Claim Form and Instructions for detailed information about what is required to submit a claim. [Link to OCF Login Page]

| What are my other options? |
| --- |

You can do nothing, exclude yourself, or object.  If you do nothing, your rights will be affected and you won't get a payment.  If you don't want to be legally bound by the Settlement, you must exclude yourself from it by **February 10, 2023.**  Unless you exclude yourself, you will give up the right to sue or continue to sue Apple for any claim regarding the subject matter of the claims in this case. If you stay in the Settlement (i.e., don't exclude yourself), you may object to it or ask for permission for you or your own lawyer to appear and speak at the Final Approval Hearing—at your own cost—but you don't have to.  Objections and requests to appear are due by **February 10, 2023**. The Final Approval Hearing will be held on March 16, 2023, at 9:00 a.m., in Courtroom 4, of the San Jose federal courthouse, located at 280 South 1st Street, San Jose, CA 95113, or via Zoom Webinar.

More information about these options is in the detailed notice available at www.KeyboardSettlement.com, or you may contact Class Counsel with any questions:

- **Simon S. Grille.** Telephone: (415) 981-4800; email: KeyboardSettlement@girardsharp.com
- **Steve Schwartz.** Telephone: (610) 642-8500; email: KeyboardSettlement@chimicles.com

You may also access the docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California at any of the Court's locations between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT CALL THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

**BY ORDER OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

To unsubscribe from this list, please click on the following link: Unsubscribe

# EXHIBIT D

**To:** [Class Member Email Address]
**From Name:** In re MacBook Keyboard Litigation Settlement Administrator
**From Address:** info@KeyboardSettlement.com
**Subject:** In re MacBook Keyboard Litigation Settlement

# If you bought a MacBook laptop sold between 2015 and 2019 equipped with a "Butterfly" keyboard, you may be eligible for payment from a class action settlement

| Unique ID: | <<Unique_ID>> | PIN: | <<PIN>> |
|---|---|---|---|
| **PLEASE SAVE THESE NUMBERS TO FILE A CLAIM** | | | |

Dear <<Name>> *or if no name* Class Member:

A Settlement has been reached with Apple Inc. ("Apple") in a class action lawsuit alleging that the "butterfly" keyboard mechanism in certain MacBook laptops is defective, and can result in characters repeating unexpectedly; letters or characters not appearing; and/or the keys feeling "sticky" or not responding in a consistent manner.

Apple denies all of the allegations made in the lawsuit, denies that any MacBooks are defective, and denies that Apple did anything improper or unlawful. The proposed Settlement is not an admission of guilt or wrongdoing of any kind by Apple. The United States District Court for the Northern District of California approved this notice.

### Why am I receiving this notice?

Apple's records indicate that you may be a member of the Settlement Class and may be eligible to receive a payment. The Settlement Class includes all persons and entities in the United States who purchased, other than for resale, an Apple MacBook, MacBook Pro, or MacBook Air laptop model equipped with a "Butterfly" keyboard between 2015 and 2019 (the "Class Computers") (a list of qualifying Class Computer models is available here). [Link to website Home Page] You are eligible to submit a claim for payment if you: (1) purchased a Class Computer; (2) obtained a qualifying keyboard repair from Apple or an Apple Authorized Service Provider; and (3) the repair did not resolve your keyboard issues.

### What does the Settlement provide?

Apple has agreed to pay $50 million into a Settlement Fund. After deducting Court-approved attorneys' fees (up to 30% of the Settlement Fund) and expenses, service awards (up to $5,000 to

each of the 12 individual class representatives), and the costs of notice and settlement administration, the net Settlement Fund will be distributed to Settlement Class Members based on the type and number of keyboard repairs they obtained, and other factors. For more information about how distributions will be made to Settlement Class Members, please visit www.KeyboardSettlement.com.

| **What types of repairs are covered by the Settlement?** |
| --- |

The Settlement covers **Topcase Replacements**, which refers to the replacement of the full keyboard module (including the battery, track pad, speakers, topcase, and keyboard), and **Keycap Replacements,** which refers to the replacement of one or more keycaps on a keyboard and does not involve replacement of the full keyboard module. Either repair must have been performed by Apple or an Apple Authorized Service Provider. **Group 1** Settlement Class Members received at least two Topcase Replacements. **Group 2** Settlement Class Members received a single Topcase Replacement that did not resolve their keyboard issues. **Group 3** Settlement Class Members received one or more Keycap Replacements that did not resolve their keyboard issues. You may be a Group 2 or 3 Settlement Class Member.

| **What are the expected payments?** |
| --- |

The amount of the payments for each Group will vary depending on the number of valid claims received. Group 1 Settlement Class Members are estimated to receive a payment between $300 and $395. Eligible Group 2 Settlement Class Members are estimated to receive up to $125 and eligible Group 3 Settlement Class Members are estimated to receive up to $50. We will not know the final amounts that each Group will receive until all claims are evaluated. Please be patient.

| **How do I file a claim?** |
| --- |

To file a claim, click here. [Link to OCF Login Page] You will be required to provide reasonable documentation that you obtained a qualifying keyboard repair. You must also declare that the information in the Claim Form is accurate and that the keyboard repair did not resolve your keyboard issue. Your claim must be submitted electronically or postmarked no later than **March 6, 2023** in order to be considered for payment. See the Claim Form and Instructions for detailed information about what is required to submit a claim and what qualifies as reasonable documentation. [Link to OCF Login Page]

| **What are my other options?** |
| --- |

You can do nothing, exclude yourself, or object. If you do nothing, your rights will be affected and you won't get a payment. If you don't want to be legally bound by the Settlement, you must exclude yourself from it by **February 10, 2023**. Unless you exclude yourself, you will give up

the right to sue or continue to sue Apple for any claim regarding the subject matter of the claims in this case. If you stay in the Settlement (i.e., don't exclude yourself), you may object to it or ask for permission for you or your own lawyer to appear and speak at the Final Approval Hearing—at your own cost—but you don't have to.  Objections and requests to appear are due by **February 10, 2023.** The Final Approval Hearing will be held on March 16, 2023, at 9:00 a.m., in Courtroom 4, of the San Jose federal courthouse, located at 280 South 1st Street, San Jose, CA 95113, or via Zoom Webinar.

More information about these options is in the detailed notice available at www.KeyboardSettlement.com, or you may contact Class Counsel with any questions:

- **Simon S. Grille.** Telephone: (415) 981-4800; email: KeyboardSettlement@girardsharp.com
- **Steve Schwartz.** Telephone: (610) 642-8500; email: KeyboardSettlement@chimicles.com

You may also access the docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California at any of the Court's locations between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT CALL THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

**BY ORDER OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

To unsubscribe from this list, please click on the following link: Unsubscribe

# EXHIBIT E

<u>IMPORTANT NOTICE ABOUT</u>
<u>A CLASS ACTION LAWSUIT</u>

**If you purchased an Apple MacBook, MacBook Pro or MacBook Air laptop model equipped with a "Butterfly" keyboard sold between 2015 and 2019, you may get a payment from a class action settlement.**

MacBook Keyboard Settlement
c/o JND Legal Administration
PO Box 91341
Seattle, WA 98111

||||||||||||||||||||||
Postal Service: Please do not mark barcode

«MailingID»

«Name»
«CO»
«Addr1» «Addr2»
«City», «St» «Zip»

A Settlement has been reached with Apple Inc. ("Apple") in a class action lawsuit alleging that the "butterfly" keyboard mechanism in certain MacBook laptops is defective, and can result in characters repeating unexpectedly; letters or characters not appearing; and/or the keys feeling "sticky" or not responding in a consistent manner. Apple denies all allegations of wrongdoing.

## Who's included?

The Settlement Class includes all persons and entities in the United States who purchased, other than for resale, an Apple MacBook, MacBook Pro, or MacBook Air laptop model equipped with a "Butterfly" keyboard sold between 2015 and 2019.

## What does the Settlement provide?

Apple has agreed to pay $50 million into a Settlement Fund. After deducting Court-approved attorneys' fees (up to 30% of the Settlement Fund) and expenses, service awards (up to $5,000 to each of the 12 individual class representatives), and the costs of notice and settlement administration, the net Settlement Fund will be distributed to Settlement Class Members based on the type and number of keyboard repairs they obtained, and other factors.

The Settlement covers Topcase Replacements and Keycap Replacements. Group 1 Settlement Class Members received at least two Topcase Replacements. According to Apple's records, **you are a Group 1 Settlement Class Member**. Under the terms of the Settlement, you will automatically receive a check estimated to be between $300 and $395 if the Court approves the Settlement and it becomes final. Please go to www.KeyboardSettlement.com to confirm or update your mailing address. We will not know the final amounts until all claims are evaluated.

| Unique ID: | <<Unique_ID>> | PIN: | <<PIN>> |

## What are your other options?

You can exclude yourself or object. If you do nothing, you will stay in the Settlement Class and automatically receive a check, but you will give up your right to sue or continue to sue Apple for any claim regarding the subject matter of the claims in this case. If you don't want to receive an automatic payment or be legally bound by the Settlement, you must exclude yourself from it by **February 10, 2023**. You may also remain in the Settlement Class but object to the Settlement, and you may (but do not have to) attend the Court's Final Approval Hearing to speak about your objection. Your objection must be filed or postmarked by **February 10, 2023.**

**For more information about the Settlement, your payment, how to exclude yourself or object, and attending the hearing, please visit the website or call the toll-free number below.**

# www.KeyboardSettlement.com
# 1-855-579-1311

You may also access the docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California at any of the Court's locations between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

*Carefully separate this Address Change Form at the perforations.*

Name: _____

Current Address: _____

_____

_____

Place
Stamp
Here

**Address Change Form**
To make sure your information remains up-to-date in our
records, please confirm your address by filling in the above
information and depositing this postcard in the U.S. Mail.

MacBook Keyboard Settlement
c/o JND Legal Administration
PO Box 91341
Seattle, WA 98111

# EXHIBIT F

IMPORTANT NOTICE ABOUT
A CLASS ACTION LAWSUIT

**If you purchased an Apple MacBook, MacBook Pro or MacBook Air laptop model equipped with a "Butterfly" keyboard sold between 2015 and 2019, you may be eligible for payment from a class action settlement.**

MacBook Keyboard Settlement
c/o JND Legal Administration
PO Box 91341
Seattle, WA 98111

|||||||||||||||||||||||
Postal Service: Please do not mark barcode

«MailingID»

«Name»
«CO»
«Addr1» «Addr2»
«City», «St» «Zip»

A Settlement has been reached with Apple Inc. ("Apple") in a class action lawsuit alleging that the "butterfly" keyboard mechanism in certain MacBook laptops is defective, and can result in characters repeating unexpectedly; letters or characters not appearing; and/or the keys feeling "sticky" or not responding in a consistent manner. Apple denies all allegations of wrongdoing.

## Who's included?

The Settlement Class includes all persons and entities in the United States who purchased, other than for resale, an Apple MacBook, MacBook Pro, or MacBook Air laptop model equipped with a "Butterfly" keyboard sold between 2015 and 2019.

## What does the Settlement provide?

Apple has agreed to pay $50 million into a Settlement Fund. After deducting Court-approved attorneys' fees (up to 30% of the Settlement Fund) and expenses, service awards (up to $5,000 to each of the 12 individual class representatives), and the costs of notice and settlement administration, the net Settlement Fund will be distributed to Settlement Class Members based on the type and number of keyboard repairs they obtained, and other factors.

The Settlement covers Topcase Replacements and Keycap Replacements. Group 2 Settlement Class Members received a single Topcase Replacement that did not resolve their keyboard issues. Group 3 Settlement Class Members received one or more Keycap Replacements that did not resolve their keyboard issues. According to Apple's records, **you are a Group 2 or 3 Settlement Class Member**. Under the terms of the Settlement, eligible Group 2 Class Members are estimated to receive up to $125 and eligible Group 3 Class Members are estimated to receive up to $50. We will not know the final amounts until all claims are evaluated.

**How do you get a payment?**

**You must complete and submit a valid Claim Form by March 6, 2023**. Go to **www.KeyboardSettlement.com** or call 1-855-579-1311 for the Claim Form and Instructions. Claims may be submitted online at **www.KeyboardSettlement.com** or mailed to the address on the form.

| **Unique ID:** | **<<Unique_ID>>** | **PIN:** | **<<PIN>>** |
|---|---|---|---|

**What are your other options?**

You can do nothing, exclude yourself, or object. If you do nothing, your rights will be affected and you won't receive a payment. You will give up the right to sue or continue to sue Apple for any claim regarding the subject matter of the claims in this case. If you don't want to be legally bound by the Settlement, you must exclude yourself from it by **February 10, 2023**. You may also remain in the Settlement Class but object to the Settlement, and you may (but do not have to) attend the Court's Final Approval Hearing to speak about your objection. Your objection must be filed or postmarked by **February 10, 2023.**

**For more information about the Settlement, your payment, how to make a claim, exclude yourself or object, and attending the hearing, please visit the website or call the toll-free number below.**

**www.KeyboardSettlement.com   •   1-855-579-1311**

You may also access the docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California at any of the Court's locations between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

*Carefully separate this Address Change Form at the perforation.*

Name: _____

Current Address: _____

_____

_____

**Address Change Form**
To make sure your information remains up-to-date in our
records, please confirm your address by filling in the above
information and depositing this postcard in the U.S. Mail.

Place
Stamp
Here

MacBook Keyboard Settlement
c/o JND Legal Administration
PO Box 91341
Seattle, WA 98111

EXHIBIT G

<u>IMPORTANT NOTICE ABOUT A CLASS ACTION LAWSUIT</u>

**If you purchased an Apple MacBook, MacBook Pro or MacBook Air laptop model equipped with a "Butterfly" keyboard sold between 2015 and 2019, you may be eligible for payment from a class action settlement.**

MacBook Keyboard Settlement
c/o JND Legal Administration
PO Box 91341
Seattle, WA 98111

||||||||||||||||||||||||
Postal Service: Please do not mark barcode

«MailingID»

«Name»
«CO»
«Addr1» «Addr2»
«City», «St» «Zip»

A Settlement has been reached with Apple Inc. ("Apple") in a class action lawsuit alleging that the "butterfly" keyboard mechanism in certain MacBook laptops is defective, and can result in characters repeating unexpectedly; letters or characters not appearing; and/or the keys feeling "sticky" or not responding in a consistent manner. Apple denies all allegations of wrongdoing.

## Who's included?

The Settlement Class includes all persons and entities in the United States who purchased, other than for resale, an Apple MacBook, MacBook Pro, or MacBook Air laptop model equipped with a "Butterfly" keyboard sold between 2015 and 2019.

## What does the Settlement provide?

Apple has agreed to pay $50 million into a Settlement Fund. After deducting Court-approved attorneys' fees (up to 30% of the Settlement Fund) and expenses, service awards (up to $5,000 to each of the 12 individual class representatives), and the costs of notice and settlement administration, the net Settlement Fund will be distributed to Settlement Class Members based on the type and number of keyboard repairs they obtained, and other factors.

The Settlement covers Topcase Replacements and Keycap Replacements. Group 2 Settlement Class Members received a single Topcase Replacement that did not resolve their keyboard issues. Group 3 Settlement Class Members received one or more Keycap Replacements that did not resolve their keyboard issues. You may be a Group 2 or 3 Settlement Class Member. Under the terms of the Settlement, eligible Group 2 Class Members are estimated to receive up to $125 and eligible Group 3 Class Members are estimated to receive up to $50. We will not know the final amounts until all claims are evaluated.

**How do you get a payment?**

**You must complete and submit a valid Claim Form by March 6, 2023**. You will be required to provide reasonable documentation that you obtained a qualifying keyboard repair. Go to **www.KeyboardSettlement.com** or call 1-855-579-1311 for the Claim Form and Instructions.  Claims may be submitted online at **www.KeyboardSettlement.com** or mailed to the address on the form.

| **Unique ID:** | **<<Unique_ID>>** | **PIN:** | **<<PIN>>** |
|---|---|---|---|

**What are your other options?**

You can do nothing, exclude yourself, or object. If you do nothing, your rights will be affected and you won't receive a payment.  You will give up the right to sue or continue to sue Apple for any claim regarding the subject matter of the claims in this case.  If you don't want to be legally bound by the Settlement, you must exclude yourself from it by **February 10, 2023**. You may also remain in the Settlement Class but object to the Settlement, and you may (but do not have to) attend the Court's Final Approval Hearing to speak about your objection.  Your objection must be filed or postmarked by **February 10, 2023.**

**For more information about the Settlement, your payment, how to make a claim, exclude yourself or object, and attending the hearing, please visit the website or call the toll-free number below.**

**www.KeyboardSettlement.com   •   1-855-579-1311**

You may also access the docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California at any of the Court's locations between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

*Carefully separate this Address Change Form at the perforation*

Name: _____

Current Address: _____

_____

_____

**Address Change Form**
To make sure your information remains up-to-date in our
records, please confirm your address by filling in the above
information and depositing this postcard in the U.S. Mail.

Place
Stamp
Here

MacBook Keyboard Settlement
c/o JND Legal Administration
PO Box 91341
Seattle, WA 98111