1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE: MACBOOK KEYBOARD
LITIGATION

Case No.   5:18-cv-02813-EJD

**ORDER GRANTING MOTION FOR
FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT;
GRANTING MOTION FOR
ATTORNEYS' FEES AND EXPENSES,
AND SERVICE AWARDS**

Re: ECF Nos. 430, 431

The Court previously granted Plaintiffs' Motion for Preliminary Approval of Class Action

Settlement on December 2, 2022.  ECF No. 426.  On January 6, 2023, Plaintiffs filed Motions for

Final Approval of Proposed Class Action Settlement (Mot. for Final Approval") and Attorneys'

Fees, Reimbursement of Litigation Expenses, and Service Awards ("Mot. for Fee Award").  ECF

Nos. 430, 431.  Six *pro se* objectors oppose approval of the settlement.  The Court heard oral

arguments on March 16, 2023.

Having considered the motion briefing, the terms of the settlement agreement, the

objections and response thereto, the arguments of counsel, and the other matters on file in this

action, the Court **GRANTS** the motion for final approval.  The Court finds the settlement to be

fair, adequate, and reasonable.  The provisional appointments of the class representative and class

counsel are confirmed.

Plaintiffs' requests for attorneys' fees, expenses, and service awards are **GRANTED**.  The

Court **ORDERS** that class counsel shall be paid $15,000,000 in attorneys' fees, $1,559,090.75 in

expenses, and $5,000 service awards to each of the Named Plaintiffs as well as the Named

Plaintiff in the parallel state court action.[1]

## I.      BACKGROUND

### A.      Procedural History

On October 11, 2018, Plaintiffs—initially ten consumers from California, Florida, Illinois, Michigan, New Jersey, New York, and Washington—filed a consolidated putative class action complaint ("CCAC") against Apple.  ECF No. 66.  Plaintiffs alleged a number of consumer protection and warranty claims stemming from an alleged defect in certain MacBook "butterfly" keyboards ("Class Computers"[2]), purporting to represent a nationwide class and state-specific subclasses.  Plaintiffs alleged that their keyboards failed within a year and Apple failed to provide effective troubleshooting or repairs.  CCAC ¶¶ 27–28, 32, 35–36, 40–43, 48–52, 55–59, 63–65, 69–73, 77–83, 87–91, 94, 96–99.  As a result, Plaintiffs allegedly spent money out of pocket for AppleCare services, insurance, or a new laptop, and those who had their keyboards repaired or replaced were unable to cure the defect.  *Id.* ¶¶ 28, 35–36, 43–44, 50–52, 56–59, 64–65, 69–72, 78–81, 87–91, 95–99.  Pursuant to Rule 23(g), the Court appointed Girard Gibbs LLP and Chimicles Schwartz Kriner & Donaldson-Smith LLP[3] as interim class counsel.  ECF No. 62.  The court also designated (1) Schubert Jonckheer & Kolbe LLP, (2) Berger & Montague, PC, and (3) Migliaccio & Rathod LLP as members of an Executive Committee.  *Id.*

The parties have engaged in extensive motion practice throughout this action's history.  On December 3, 2018, Apple moved to dismiss the CCAC, which the Court granted in part and denied in part on April 22, 2019.  ECF No. 110.  The Court dismissed without prejudice Plaintiffs' claims under the California Consumers Legal Remedies Act ("CLRA") (Count II), breach of implied covenant of good faith and fair dealing (Claim IV), and the Song-Beverly Consumer Warranty Act (Song-Beverly Act") (Claim V).  *Id.* at 8, 15.  Plaintiffs subsequently filed a first

---

[1] *See infra* I(B)(1).
[2] The Court refers to "Class Computers" as defined in the parties Settlement Agreement.  ECF No. 410-1, § H.
[3] Formerly Chimicles & Tikellis LLP.  *See* ECF No. 62.

1    amended consolidated class action complaint ("FAC").  ECF No. 117.

2         Apple moved to dismiss the FAC, asserting that (i) all claims must be dismissed for failure

3    to state facts alleging Article III injury or standing and (ii) Plaintiffs' claim for damages under the

4    CLRA and Song-Beverly are moot because Apple has provided a complete remedy.  ECF No.

5    130.  The Court denied Apple's motion on November 22, 2019.  ECF Nos. 164, 168.

6         In May 2020, the Court granted Plaintiffs request for leave to file a second amended

7    consolidated class action complaint ("SAC")[4] to name additional plaintiffs.  ECF No. 218.  The

8    Named Plaintiffs in the SAC, eleven consumers from California, Massachusetts, New York,

9    Illinois, Florida, Washington, New Jersey, and Michigan, allege ten causes of action for violations

10   of: (1) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) CLRA, Cal.

11   Civ. Code § 1750, *et seq.*; (3) fraudulent concealment; (4) Song-Beverly Act, Cal. Civ. Code §

12   1792, *et seq.*; (5) Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq.*; (6)

13   Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; (7) Illinois

14   Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.*; (8)

15   New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*; (9) New York General

16   Business Law § 349; and (10) Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901,

17   *et seq.* ("MCPA").  ECF No. 219.

18        Apple moved for dismissal of the SAC in July 2020.  ECF No. 221.  The Court granted the

19   motion in October 2020, dismissing Plaintiffs' UCL claim and Plaintiffs' remaining claims to the

20   extent they sought an injunction, restitution, or other equitable relief.  ECF No. 248.

21        In August 2020, Plaintiffs moved for certification of a seven-state subclass of Class

22   Computer purchasers in California, New York, Florida, Illinois, New Jersey, Washington, and

23   Michigan as to their consumer fraud and warranty claims.  ECF No. 229.  Apple opposed

24   certification and also moved to strike the opinions of Plaintiffs' experts Hal J. Singer and David

25   Niebuhr.  ECF Nos. 235, 238, 239.  In March 2021, the Court granted Plaintiffs' motion and

26

27   ───────────────
     [4] The SAC is the operative complaint.
     Case No.: 5:18-cv-02813-EJD

28   ORDER GRANTING MOT. FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
     SETTLEMENT; GRANTING MOT. FOR ATT'Y FEES AND EXPENSES, & SERV. AWARDS
     3

United States District Court
Northern District of California

1 | certified the seven-state class and subclasses.  ECF No. 298 at 29–30.  The Court's Order also

2 | granted in part and denied in part Apple's motion to exclude the expert opinions of Plaintiffs'

3 | damages expert, Dr. Singer, specifically granting Apple's request to strike Dr. Singer's regression

4 | analysis for calculating economic injury and damages and denying Apple's request to strike his

5 | choice-based conjoint analysis.  *Id.* at 8–12.  The Court further found that Dr. Niebuhr rendered

6 | opinions that were "irrelevant at the class certification stage" but could be offered at trial.  *Id.* at 8.

7 | Apple filed a petition with the Ninth Circuit for permission to appeal the Court's Class

8 | Certification Order under Rule 23(f).  However, the Ninth Circuit denied Apple's petition in

9 | October 2021.  The parties proceeded to serve expert and rebuttal reports.  Apple moved to strike

10 | the opinions of Plaintiffs' experts (ECF Nos. 333, 334, 336), which the Court denied (ECF No.

11 | 386) on January 25, 2022.  A trial date was set for March 21, 2023.

12 | Approximately a year before the trial was set to commence, the parties reached a

13 | settlement after multiple settlement conferences with the Honorable Edward Infante (ret.).  The

14 | parties had begun discussing settlement in the spring of 2020.  The Honorable Jay Ghandi (ret.)

15 | conducted mediation sessions in June and August 2020, but the parties were unable to reach an

16 | agreement.  In June 2021, the parties reengaged in settlement discussions after class certification

17 | and appeared before Judge Infante for a third mediation.  The mediation was successful, and the

18 | parties executed a settlement agreement in February 2022.

19 | The Class Settlement Agreement and Release ("Settlement Agreement" or "Agreement"),

20 | attached hereto as **Exhibit A**, defines the class as follows:

21 |
22 |
23 |
24 |
25 |
26 |
27 |

> All persons and entities in the United States who purchased, other than for resale, one or more of the following Class Computers: MacBook (Retina, 12-inch, Early 2015), MacBook (Retina, 12-inch, Early 2016), MacBook (Retina, 12-inch, 2017), MacBook Air (Retina, 13-inch, 2018), MacBook Air (Retina, 13-inch, 2019), MacBook Pro (13-inch, 2016, Two Thunderbolt 3 Ports), MacBook Pro (13-inch, 2017, Two Thunderbolt 3 Ports), MacBook Pro (13-inch, 2019, Two Thunderbolt 3 Ports), MacBook Pro (13-inch, 2016, Four Thunderbolt 3 Ports), MacBook Pro (13-inch, 2017, Four Thunderbolt 3 Ports), MacBook Pro (15-inch, 2016), MacBook Pro (15-inch, 2017), MacBook Pro (13-inch, 2018, Four Thunderbolt 3 Ports), MacBook Pro (15-inch, 2018), MacBook Pro (13-inch, 2019, Four Thunderbolt 3 Ports), and MacBook Pro (15-inch, 2019).

28 |

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT; GRANTING MOT. FOR ATT'Y FEES AND EXPENSES, & SERV. AWARDS

United States District Court
Northern District of California

1    (collectively, the "Settlement Class").  Settlement Agreement and Release ("Settlement

2    Agreement), ECF No. 410-1 §§ H, JJ, KK.  The Settlement Class excludes Apple; any entity in

3    which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal

4    representatives, successors, and assigns; all judges assigned to this case and any members of their

5    immediate families; the parties' counsel in this litigation; and all persons who validly request

6    exclusion from the Settlement Class.  *Id.* §§ JJ, KK.

7    　　　On July 18, 2022, Plaintiffs moved for preliminary approval of settlement.  ECF No. 410.

8    The Court granted Plaintiffs' request on December 2, 2022.  Order Granting Prelim. Approval of

9    Class Action Settlement and Setting Deadlines for Notice, Obj., Exclusion, and Final Fairness

10   Hr'g, ("Prelim. Approval Order"), ECF No. 426.

11   　　　**B.**　　　**Terms of the Settlement Agreement**

12   　　　Under the terms of the Settlement Agreement, Apple will pay $50,000,000 into a non-

13   reversionary settlement fund without admitting liability.  Settlement Agreement §§ LL, 2.1, 2.5,

14   2.6.  This amount includes the cost of class notice and settlement administration, the class

15   representative's incentive award, attorneys' fees and costs, and valid claims from Settlement Class

16   members.  *Id.* §§ 2.3, 2.5.  The Settlement Agreement provides that settlement notice and

17   administration shall not exceed $1,400,000.  *Id.* § 7.4.  The Agreement does not contemplate a

18   payment amount for attorneys' fees, litigation expenses, or incentive awards.  *Id.* § 8.2.  It

19   provides that Apple "reserves the right to object to or oppose Class Counsel's request for

20   Attorneys' Fees and Expenses or for Service Awards."  *Id.*

21   　　　The proposed release applies to claims arising from the facts underlying the claims and

22   allegations in this litigation.  Settlement Agreement § 10.1.  The release tracks the claims in the

23   SAC and it extends to *Huey v. Apple Inc.*, No. 2018 CA 004200 B, the state action pending in the

24   Superior Court of the District of Columbia.  The *Huey* action will be dismissed with prejudice

25   after the Court enters final approval and judgment.  *Id.* § 4.4.

26

27

28

United States District Court
Northern District of California

### 1.    Class Relief

Cash payments will be distributed to owners of certain 2015 to 2019 MacBook Models who experienced qualifying keyboard repairs categorized by group to optimize recovery for those who experienced repeat issues.  The Settlement Agreement provides three payment tiers, or three groups, for eligible Settlement Class Members.  Settlement Agreement § 3.4.3.

Group 1 includes Settlement Class Members who experienced two or more "Topcase Replacements," meaning full keyboard replacements, within four years of purchase.  *Id.* § 3.4.3.1. Settlement Class Members in Group 1 will receive no less than $300 and no greater than $395 in payment per Class Computer.  *Id.*  After the claims period ends, the settlement administrator will initially set aside $300 to pay each Group 1 member, including a "reserve amount" sufficient to pay $300 to Class Members projected to become future Group 1 claimants within the "reserve period," or within the two years after preliminary approval.  *Id.* § 3.4.4.  Payments for Group 1 are distributed automatically using Apple's records, meaning Group 1 members need not submit a claim to collect.  *Id.* § 3.4.3.1.

The amount remaining in the fund will then be divided amongst eligible Groups 2 and 3 claimants using the formulae provided in the Settlement Agreement in Sections 3.4.5.1–3.4.5.6. *Id.* § 3.4.5.  Group 2 consists of Settlement Class Members who received a single Topcase Replacement from Apple, or an authorized service provider as defined in the Agreement, within four years of purchase.  *Id.* § 3.4.3.2.  Group 2 claimants will receive up to $125 per Class Computer.  *Id.*  Group 3 consists of Settlement Class Members who obtained one or more keycap replacements within four years of purchase.  *Id.* § 3.4.3.3.  Group 3 claimants will receive up to $50 per Class Computer.  *Id.*  Unlike Group 1, claimants in Groups 2 and 3 must submit a claim form per Class Computer attesting that the repair did not resolve their keyboard issues to be eligible for payment.  *Id.* §§ 3.3.2, 3.4.3.2, 3.4.3.3.  Apple will prepopulate claim forms for claimants in Groups 2 and 3 for whom Apple has records of repair.  *Id.* § 3.3.2.  Claimants who do not receive a prepopulated claim form from Apple—meaning, claimants for whom Apple does not have repair records—must submit information and/or additional documentation to validate their

claims.  *Id.* § 3.3.5.

Under the terms of the Settlement Agreement, Settlement Class Members will also remain eligible for Apple's Keyboard Service Program ("KSP") that Apple launched in June of 2018.  *Id.* § P; Joint Decl. of Simon S. Grille and Steven A. Schwartz in Support of Pl.'s Mot. for Final Approval of Class Action Settlement and Pls.' Mot. for Att'y Fees, Reimbursement of Litig. Expenses, and Serv. Awards ("Joint Decl."), ECF No. 432 ¶ 39.  The program provides certain repair services such as keyboard repairs and possible replacement of other major computer components to eligible MacBooks for up to four years from the date of purchase.  Settlement Agreement §§ P, 3.1.1; Joint Decl. ¶ 39.

### 2. Residual Funds

For claims arising after the claims period ends, Settlement Class Members who qualify as Group 1 but were either not paid or were paid as a Group 2 claimant will be paid up to the Group 1 amount in the second payment round.  Settlement Agreement § 3.5.1.  If sufficient funds remain in the fund, the Settlement Administrator will make an additional payment to Group 1 claimants until they have received up to $395 in total distributions per Class Computer.  *Id.* § 3.5.3.  Excess funds remaining after Group 1 payments reach their cap will be redistributed to Groups 2 and 3 claimants until their $125 and $50 payment caps are met.  *Id.*  Once all supplementary payments have been made and all payment caps are met, remaining funds may be distributed to a *cy pres* recipient.  *Id.*  The Settlement Agreement does not identify a *cy pres* recipient; if necessary, the parties will meet and confer to select a recipient to be approved by the Court.  *Id.* § 3.5.3.

### 3. Class Notice and Claims Administration

The Settlement Agreement is being administered by JND Legal Administration ("JND"). *Id.* § II.  As of Mach 6, 2023, Direct Notice was provided to more than 97% of all purchasers of Class Computers in Apple's records, regardless of whether there was record of a repair.[5]  Supp.

---

[5] Apple's records of contact information (email address or physical mailing address) are based on purchase, registration, and other databases.  Mot. for Final Approval at 9.

Decl. of Jennifer Keough Regarding Notice Admin. ("Keough Supp. Decl."), ECF No. 445 ¶ 4.

Following the Court's preliminary approval and conditional certification of the settlement, the Settlement Administrator initially emailed 14,359,253 Class Computers by January 6, 2023. *Id.* ¶ 5(A). Specifically, JND emailed 55,097 Group 1 notices; 675,92 Groups 2 and 3 notices; 13,347,371 Group 4[6] notices; and 3,242 "Multiclaim Notices" to Class Members.[7] *Id.* Of those email notices, 480,579 were returned undeliverable. *Id.* ¶ 5(C). By January 6, 2022, JND had mailed a total of 478,678 notices to Settlement Class Members who did not have a valid email address, including: 1,281 Group 1 notices, 16,391 Groups 2 and 3 notices, and 340,903 Group 4 postcard notices. *Id.* ¶ 5(B). JND reports that 99% of the Class Members whose email addresses were invalid but whom JND had a valid mailing address received mailed notice. *Id.* ¶ 5(C). As of March 6, 2023, the Settlement Administrator reported that less than 1% of notices were returned undeliverable via both email and mail. *Id.* ¶ 6. JND also gave notice to governmental enforcement authorities, at Apple's direction pursuant to 28 U.S.C. § 1715. Decl. of Jennifer Keough Regarding Notice Admin. ("Keough Decl."), ECF No. 433 ¶ 24.

On February 15, 2023, the Court granted the parties' stipulation to partially extend opt-out and objection deadlines. ECF No. 442. The parties requested this extension after further investigation revealed that approximately 31,000 of the various entities initially identified as "resellers" who were excluded from notice may not be resellers and therefore could be members of the Settlement Class. JND immediately provided supplemental email notice to these entities associated with 332,468 Class Computers. Keough Supp. Decl. ¶ 8(A). It also mailed supplemental postcard notice to entities associated with 68,774 Class Computers. *Id.* ¶ 8(B).

Indirect class notice was provided through a settlement website. Keough Decl. ¶ 25. The

---

[6] Group 4 includes all potential Settlement Class Members that may be eligible based on Apple's records of Class Computer purchases during the Class Period. *See* Keough Decl., Ex. D; Settlement Agreement § S. Group 4 overlaps with Groups 1–3, which each include individuals who purchased Class Computers during the Class Period of whom Apple has record of repairs.
[7] "Multiclaim Notices" refers to notice sent to potential Class Members who had more than 25 Class Computers associated with their email address or more than 10 Class Computers associated with their name and mailing address.

United States District Court
Northern District of California

website includes answers to FAQs, relevant contact information, settlement deadlines, and links to important case documents.  *Id.*  It also provides opt-out forms, claims, and forms to update contact information.  *Id.*  JND also established a toll-free telephone number available 24 hours per day, every day of the week.  *Id.*  ¶ 29.  The line provides information and the same services available on the settlement website.  *Id.*  In addition, the Settlement Administrator established two email addresses and a P.O. box to respond to Class Member inquiries.  *Id.* ¶¶ 31, 32.  Finally, Class counsel reports that the settlement has "received substantial press and social media coverage."  *Id.* ¶ 28.

The deadline to opt-out or object to the settlement was February 10, 2023.  *Id.* ¶ 34.  However, there was concern that some potential class members did not receive notice.  Pursuant to the parties' stipulation, the entities who were provided notice on February 15, 2023 were given until March 10, 2023 to object, March 15, 2023 to request an exclusion, and March 31, 2023 to file a claim.  ECF No. 442 at 2.  At the time of moving for final approval, JND had reported 648 requests to opt-out and one objection.  *Id.*  As of March 6, 2023, JND had received 86,117 claims, and 1,733 requests for exclusion, two of which were received by entities that received supplemental notice.  Keough Supp. Decl. ¶¶ 14, 16.

## II.    FINAL APPROVAL OF SETTLEMENT

### A.    Legal Standard

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court must balance a number of factors to gauge fairness and adequacy, including the following: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the

United States District Court
Northern District of California

1   reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. Gen. Elec.*,

2   361 F.3d 566, 575 (9th Cir. 2004).

3         Furthermore, class settlements reached prior to formal class certification require a

4   "heightened fairness inquiry." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 783 (9th

5   Cir. 2022) (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019)). When

6   reviewing such a pre-certification settlement, the district court must not only explore the *Churchill*

7   factors but also "look[] for and scrutinize[] any subtle signs that class counsel have allowed

8   pursuit of their own self-interests . . . to infect the negotiations." *Roes*, 944 F.3d at 1043 (internal

9   quotation marks omitted).

10         Here, the Court previously certified a seven-state class and subclasses. *See infra* at 12–13.

11   **B.**    **Analysis**

12       **1.**    **The Settlement Class Meets the Prerequisites for Certification under Rule 23.**

13         First, the Court finds that the prerequisites of Rule 23 of the Federal Rules of Civil

14   Procedure have been satisfied for certification of the Settlement Class for settlement purposes.

15   The Court previously certified a seven-state class and subclasses, and conditionally certified the

16   nationwide Settlement Class in granting preliminary approval. Class Cert. Order at 15–29;

17   Preliminary Approval Order at 5–6. In doing so, the Court found that the class satisfied the

18   requirements of Rule 23(a) and (b)(3).

19       **2.**    **The Settlement is Fair, Adequate, and Reasonable.**

20         **a.**    **Adequate Notice was Provided.**

21         A court must "direct notice [of a proposed class settlement] in a reasonable manner to all

22   class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice must

23   be "reasonably calculated, under all the circumstances, to apprise interested parties of the

24   pendency of the action and afford them an opportunity to present their objections." *Apple Device*,

25   50 F.4th at 779. However, "neither Rule 23 nor the Due Process Clause requires actual notice to

26   each individual class member." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir.

27   Case No.: 5:18-cv-02813-EJD

28   ORDER GRANTING MOT. FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT; GRANTING MOT. FOR ATT'Y FEES AND EXPENSES, & SERV. AWARDS

United States District Court
Northern District of California

1   2017).

2   The Court found the parties' proposed notice procedures provided the best notice

3   practicable and reasonably calculated to apprise Class members of the settlement and their rights

4   to object or exclude themselves.  Prelim. Approval Order at 8–12.

5   Pursuant to those procedures, the Settlement Administrator provided direct and indirect

6   notice through emails, postcards, and the settlement website, in addition to the press and media

7   coverage the settlement received.  JND sent email notice to all Settlement Class Members for

8   whom a valid email address was provided.  Keough Decl., ECF No. 433 ¶ 9.  Prior to sending

9   emails, JND took certain measures to maximize email notice receivability, such as: running the

10  email from spam testing software; checking the send domain against common IPv4 blacklists; and

11  using a verification program to eliminate invalid email and spam traps that negatively impact

12  deliverability.  *Id.* ¶¶ 13, 15.  In total, Apple provided a valid email address for 14,359,248

13  Settlement Class members.  *Id.* ¶ 12.  There were 401,579 individuals for whom Apple did not

14  have a valid email address.  *Id.*

15  Between December 12, 2022 and January 6, 2023, JND administered direct notice to 97%

16  of the Settlement Class.  Keough Supp. Decl. ¶ 4.  Using supplemental notice, JND caused direct

17  notice to be sent to approximately 99% of the Settlement Class.  *Id.*  Initially, JND sent direct

18  notice via email to Settlement Class members associated with 14,359,253 Class Computers.  *Id.* ¶

19  5.  Using supplementary notice, JND emailed additional notice to 332,468 Class Computers in

20  total.  *Id.* ¶ 8.  JND also mailed supplemental notice via postal mail to Settlement Class members

21  associated with 68,774 Class Computers.  *Id.*

22  Regarding indirect notice, as of March 6, 2023, the settlement website received a total of

23  3,565,228 pageviews and 989,217 unique users visited the page.  *Id.* ¶ 9.  The toll-free telephone

24  number that was established on December 12, 2022 has received 8,389 calls as of March 6, 2023.

25  *Id.* ¶ 10.  JND also received 4,801 emails from Settlement Class members across the two dedicated

26  email addresses for inquiries.  *Id.* ¶ 11.

27

28

United States District Court
Northern District of California

1    As of Mach 6, 2023, JND reportedly received 81,683 claims from claimants in Groups 2

2  and 3 for a claims rate of 11.4%.  *Id.* ¶ 17.

3    Based upon the foregoing, the Court finds that the Settlement Class has been provided

4  adequate notice.

5    **b.    The Rule 23(e) and *Churchill* Factors are Satisfied.[8]**

6    **i.    Arm's Length Negotiations and the Experience of Class Counsel**

7    Where the court has previously certified a class, *Bluetooth*'s heightened standard does not

8  apply.  *Theodore Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2020 WL 1972505,

9  at *6 (N.D. Cal. Feb. 5, 2020) (citing *Bluetooth*, 654 F.3d at 946–47).  This Court previously

10 certified a seven-state class and subclasses with respect to Plaintiffs' Song-Beverly and statutory

11 consumer protection claims.  *See* Order Granting Mot. to Certify Class; Granting in Part and Den.

12 in Part Apple's Mot. to Strike Expert Op. of Hal J. Singer; Granting Mot. to Strike Expert Op. of

13 David V. Niebuhr ("Order Certifying Class"), ECF No. 298; ECF No. 317.  At the time, Plaintiffs

14 did not propose national certification.  Plaintiffs now move for certification of a nationwide class.

15    The Court need not analyze the settlement at the heightened *Bluetooth* standard even "if

16 the class certified prior to settlement is narrower than the class certified for settlement purposes."

17 *Theodore Broomfield*, 2020 WL 1972505, at *22 (citing *Wood Kumar v. Salov N. Am. Corp.*, No.

18 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir.

19 2018)).  The Court granted Plaintiffs' request to certify a class consisting of "all persons who

20 purchased, other than for resale, within California, New York, Florida, Illinois, New Jersey,

21 Washington, or Michigan, an Apple MacBook from any of the model years 2015-2017, an Apple

22 MacBook Pro from any of the model years 2016-2019 (excluding the 16 [inch] MacBook Pro

23 released in November 2019), or an Apple MacBook Air from any of the model years 2018-2019,"

24

25  _____

[8] The Court does not address the seventh factor, or the "presence of a governmental participant,"
26 because this factor is inapplicable since there is no government participant in this case. See
*Mendoza v. Hyundai Motor Co., Ltd.*, No. 15-cv-01685-BLF, 2017 WL 342059, at *7 (N.D. Cal.
27 Jan. 23, 2017).

United States District Court
Northern District of California

1   as well as subclasses of purchasers in the seven states listed in the Class definition.  Order

2   Certifying Class at 2.  The conditionally certified nationwide class consists of the same Apple

3   computer model years; the only difference between the certified class being that it is narrower,

4   encompassing only seven states.  Since settlement was negotiated after certification, the

5   procedural burden is not as strict.  *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015).

6         Even so, at the preliminary approval stage the Court found that the Agreement was reached

7   after extensive discovery and that there was no evidence of conflict or collusion.  *See* Order

8   Granting Prelim. Approval of Class Action Settlement and Setting Deadlines for Not., Obj.,

9   Exclusion, and Final Fairness Hearing ("Prelim. Approval Order"), ECF No. 426 at 6–7.  As the

10   Court found in the Preliminary Approval Order, "Class Counsel have demonstrated that they are

11   experienced in representing plaintiffs and classes in complex class action litigation, have

12   vigorously prosecuted the case, and are therefore more than adequate to represent the Settlement

13   Class."  *Id.* at 6.  Finally, the Settlement Agreement was negotiated at arms-length with the

14   assistance of two mediators over the course of two years, Judge Ghandi and Judge Infante.  *Id.* at

15   5.  The Agreement is non-reversionary and does not allocate any amount towards attorneys' fees

16   and costs; rather, Apple reserved the right to oppose Class Counsels' request for attorneys' fees.

17   Settlement Agreement § 8.2.

18         Accordingly, notwithstanding class certification, the Settlement Agreement was reached

19   after arms-length negotiations in satisfaction of *Bluetooth*.

20                   **ii.      Extent of Completed Discovery and the Stage of**
                              **Proceedings**

21

22         Here, the extent of discovery that occurred "suggests that the parties arrived at a

23   compromise based on a full understanding of the legal and factual issues surrounding the case."

24   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).  The

25   proposed settlement was reached after Apple produced over 1.2 million pages of documents,

26   Plaintiffs deposed fifteen of Apple's employees, and Apple deposed eleven Class Representatives.

27   Mot. for Final Approval at 4.  Additionally, Plaintiffs deposed seven of Apple's expert witnesses

28   ORDER GRANTING MOT. FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
     SETTLEMENT; GRANTING MOT. FOR ATT'Y FEES AND EXPENSES, & SERV. AWARDS
                                                13

United States District Court
Northern District of California

1    and Apple deposed Plaintiffs' five expert witnesses.  *Id.*  The parties also engaged in significant

2    discovery motion practice.  *See* ECF Nos. 87, 89, 95, 98, 101, 170, 183, 189, 198.  Finally, the

3    parties served merit expert reports and rebuttal expert reports in April and May of 2021, with

4    Apple moving to strike Plaintiffs' expert opinions which the Court denied.  ECF Nos. 333, 334,

5    336.  A trial date was set for March 21, 2023.  The parties moved for preliminary approval of

6    settlement on July 18, 2022—less than a year out from trial.

7         The Court therefore finds that the substantial discovery and the stage of proceedings weigh

8    in favor of granting the settlement.

9                    **iii.    The Strength of Plaintiffs' Case; the Risk, Expense,
                               Complexity, and Likely Duration of Further Litigation;
10                             and the Risk of Maintaining Class Action Status
                               Throughout the Trial**

11

12        Although Class Counsel were confident in the strength of their case, Apple of course

13   denied liability from the outset.  Mot. for Final Approval at 14.  While Plaintiffs successfully

14   certified a multistate class for trial, continued litigation risked a motion to decertify the class, trial,

15   and post-trial appeal.  *See Mazzei v. Money Store*, 829 F.3d 260, 265–67 (2d Cir. 2016) (noting

     that a court can decertify even after a jury verdict in favor of a certified class).
16
          Apple's modifications to keyboard designs throughout the years led Defendant to assert
17
     that the changes it made to components would prevent Plaintiffs from establishing a common
18
     defect. *See, e.g.*, ECF No. 235 at 15, 19–22.  In cases involving defects, courts in this circuit have
19
     noted a challenge for plaintiffs includes the "battle of the experts" over the existence of a defect.
20
     *See, e.g.*, *Aarons v. BMW of N. Am.*, LLC, 2014 WL 4090564, at *10 (C.D. Cal. 2014).  Apple
21
     also argues that "its knowledge of the alleged defect evolved over time as the design changed
22
     (ECF No. 235 at 2-3), an argument that could have limited the damages period."  Mot. for Final
23
     Approval at 15 (citing *In re Seagate Tech. LLC*, 326 F.R.D. 223, 245 (N.D. Cal. 2018)).  Finally,
24
     Apple contends that the KSP offers an effective remedy thereby mooting the Class's claims.  *See,*
25
     *e.g.*, ECF No. 235 at 26.  Plaintiffs survived this argument at the pleadings stage, contending that
26
     the KSP does not provide all the requested relief, but Apple may have raised this issue in
27
     Case No.: 5:18-cv-02813-EJD
28   ORDER GRANTING MOT. FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
     SETTLEMENT; GRANTING MOT. FOR ATT'Y FEES AND EXPENSES, & SERV. AWARDS
                                                14

United States District Court
Northern District of California

1  calculating damages.  Mot. for Final Approval at 15.

2      After 4 years of extensive discovery and litigation, the parties had sufficient information to

3  "make an informed decision about settlement."  *Carlotti v. ASUS Comput. Int'l*, No. 18-CV-

4  03369-DMR, 2019 WL 6134910, at *7 (N.D. Cal. Nov. 19, 2019).  "[G]iven the substantial

5  litigation risks in this case," the Court finds that the strength of the case and risks associated with

6  continuing to litigate weigh in favor of granting approval of the settlement.  *Spann v. J.C. Penney*

7  *Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016).

8                  **iv.      The Amount Offered is Satisfactory.**

9      The fourth *Churchill* factor favors final approval.  The settlement provides Settlement

10  Class Members with monetary compensation and guarantee of continued use of Apple's KSP for

11  keyboard repairs.  Mot. for Final Approval at 13.  The monetary compensation is based on tiers

12  where the Settlement Class Members who experienced two or more particular repairs receive the

13  greatest payment.  The compensation scheme includes members Settlement Class Members who

14  may experience issues in the future by ensuring Cass Members who receive multiple repairs

15  remain eligible for payment up to two years after preliminary approval.  *Id.*  Plaintiffs' expert

16  calculated that the class might have obtained a judgment in the range of $178 to $569 million.

17  Merits Expert Report of Hal J. Singer ("Singer Report"), ECF No. 395-1, ¶ 51 & App'x 4, Table

18  A1.  The $50 million settlement fund therefore represents between approximately 9% to 28% of

19  the total estimated damages at trial.  Mot. for Final Approval at 13.  "[I]t is well-settled law that a

20  proposed settlement may be acceptable even though it amounts to only a fraction of the potential

21  recovery that might be available to the class members at trial."  *DIRECTV*, 221 F.R.D. at 527.

22  This amount falls squarely within acceptable recovery ranges in this district.  *See, e.g.*, *Fleming v.*

23  *Impax Lab'ys Inc.*, 2021 WL 5447008, at *10 (N.D. Cal. 2021) (settlement recovery representing

24  12.5% of total recoverable damages is "in a range consistent with the median settlement recovery

25  in class actions"); *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *10 (N.D. Cal.

26  2019).

27  Case No.: 5:18-cv-02813-EJD

28  ORDER GRANTING MOT. FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT; GRANTING MOT. FOR ATT'Y FEES AND EXPENSES, & SERV. AWARDS
15

United States District Court
Northern District of California

United States District Court
Northern District of California

**v.      Class Members Reacted Favorably to the Proposed Settlement.**

This factor likewise weighs in favor of final approval of settlement, as the reaction of Class Members has been favorable.  As of March 6, 2023, the Settlement Administrator reported receiving 86,117 claims of the 718,651 eligible Settlement Class Members in Groups 2 and 3, a claims rate of approximately 11%, versus only 1,733 exclusion requests and 6 objections received.[9]  Keough Supp. Decl. ¶¶ 14, 16; Pls.' Reply in Support of Mot. for Final Approval of Class Action Settlement and Mot. for Att'y Fees and Expenses ("Reply"), ECF No. 444 at 2.  The low number of objections and opt outs relative to the size of the class weighs in favor of approving the Settlement.  *See, e.g.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (settlement class reaction favorable where "376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four submitted objections"); *In re Google Plus Profile Litig.*, 2021 WL 242887, at *4 (N.D. Cal. Jan. 25, 2021) (approving settlement with 761 objections out of millions of class members).

**3.      Objections to Final Approval of Settlement Are Overruled.**

All six objectors oppose final approval of the Settlement Agreement.  The Court addresses each objection in turn.

First, Objector Cody Loepp asserts that the settlement compensation is not fair nor equitable because a $125 payment for Group 2 members is inadequate compensation for keyboard repairs that generally cost in excess of $300.  ECF No. 428.  The Court acknowledges Loepp's frustration with the Settlement Class compensation, but the possibility that a better settlement may have been reached—or that the benefits provided under the settlement will not make class members "whole"—are insufficient grounds to deny approval.  Reply at 3–4.  *Vargas v. Ford Motor Co.*, 2020 WL 1164066, at *11 (C.D. Cal. Mar. 5, 2020) ("[S]imply wanting a more favorable settlement, is not a sufficient basis for an objection to a class action settlement that is

---

[9] Settlement Class Members in Group 1 receive automatic payment and therefore are not required to submit claims.

1   otherwise fair, adequate, and reasonable.").  Moreover, according to the Settlement Administrator,

2   although Loepp owns a Class Computer that has received one Topcase Replacement, Loepp has

3   not submitted a claim attesting that the repair did not resolve his issues.  ECF No. 446-1 ¶¶ 4–7.

4        Objector James Finney opposes the settlement on the grounds that he will not receive

5   compensation despite having issues with five keys on his MacBook Pro.  ECF No. 436.  Finney

6   opines that, under the terms of the Settlement Agreement, he is "entitled to nothing" because he

7   did not get his MacBook keys repaired due to expensive cost of repair.  Admittedly the settlement

8   provides no compensation to those who experienced keyboard issues and did not receive a repair,

9   but any settlement necessarily "involves some line-drawing, and 'full compensation is not a

10  prerequisite for a fair settlement.'"  *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. 09-CV-

11  05418 RS, 2012 WL 10277179, at *7 (N.D. Cal. Jan. 6, 2012) (quoting *Dewey v. Volkswagen of

12  Am.*, 728 F.Supp.2d 546, 579 (D.N.J. 2010)).  Finney also states that he was not aware of KSP

13  until he received notice of settlement.  However, Apple publicly disclosed KSP through their

14  website and it was reported in the press and the program has been in place for several years and

15  "thousands of class members have used it."  Def. Apple's Statement in Resp. to Settlement Objs.

16  ("Apple Reply"), ECF Nos. 444 at 6; 446 at 3.

17       Objectors Leslie Parker and Jennifer Yellin likewise object to approval of the settlement on

18  the grounds that the settlement excludes individuals with Class Computers, like themselves, who

19  had keyboard or key issues but never received a repair.  ECF Nos. 437, 438.  Parker states that the

20  keys her on butterfly keyboard "repeat" but because her work requires daily use of her laptop, she

21  could not be without her laptop for the length of time required to repair the keys.  Yellin also

22  contends that the settlement provides no relief for Class Computers that have not been repaired

23  and no longer qualify for KSP.  Parker therefore asserts that the settlement should compensate all

24  individuals with Class Computers who had issues with keys or keyboards regardless of whether

25  they received repairs.  The Court reiterates that "simply wanting a more favorable settlement is not

26  a sufficient basis for an objection to a class action settlement that is otherwise fair, adequate, and

United States District Court
Northern District of California

reasonable." *Vargas*, 2020 WL 1164066, at *11.  While not all who were purportedly injured will receive compensation, the settlement compromise benefits a significant number of individuals. *See*, *Careccio v. BMW of N. Am. LLC*, No. CIV. A. 08-2619, 2010 WL 1752347, at *6 (D.N.J. Apr. 29, 2010) ("At the end of the day, the appropriate test on the adequacy of the settlement terms is whether they are "fair and reasonable" and not whether every member of the class is fully compensated.") (quotations and citation omitted).  In light of this Court's findings that the settlement is fair, adequate, and reasonable, the Court declines to withhold approval based on objections that the settlement could be improved (i.e., more expansive to compensate all who have purportedly been injured) or more favorable to Class Members.  Neither Parker nor Yellin attest that they sought or were refused repair by KSP or another repair providers, a prerequisite to receiving compensation under the settlement.  ECF No. 446 at 4–5.

In response to Finney, Parker, and Yellin, Class Counsel asserts that "[l]imiting monetary payments to Claimants who received Topcase Replacements or Keycap Replacement ensures that Settlement funds will be devoted to Class members who were harmed by the alleged defect. Reply at 6; *Chess v. Volkswagen Grp. of Am., Inc.*, 2022 WL 4133300, at *7 (N.D. Cal. Sept. 12, 2022) ("This is a reasonable and objective standard meant to aim the settlement benefit at those most likely to have experienced the alleged defect.").  Class Counsel also notes that Class Members who did not bring their laptops in for a repair would have had difficulty proving damages at trial.  ECF No. 444 at 6.

Objector Kyle Kavanagh opposes final approval based on the Claim Form's attestation requirement for Groups 2 and 3 Class Members, which requires proof of repair.  ECF No. 439. Kavanagh notes that some people may have changed their Apple ID or thrown away the repair receipt and therefore would be precluded from receiving payment under the settlement.  Class Counsel contends that neither circumstance is an issue here because "anyone who appears in Apple's records as having obtained one or more qualifying repairs will have no need to search for records because they will receive either an automatic payment or a claim form pre-populated with

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT; GRANTING MOT. FOR ATT'Y FEES AND EXPENSES, & SERV. AWARDS
18

1    their repair information."  Reply at 6.  Kavanagh also argues that issues with the butterfly

2    keyboard are a design flaw that cannot be adequately addressed through repair.[10]  However,

3    Kavanagh does not claim that he had issues with his keyboard or keys or that he sought repair

4    from Apple or an authorized service provider.  Apple Reply at 4.

5           Finally, Objector John Hawkinson's filing, while classified as an "objection," is not truly

6    an objection to the terms of the settlement agreement nor to the requested fee award.  ECF No.

7    443.  Instead, Hawkinson identifies ways in which "future" email notices can be improved upon to

8    make it easier to understand.  He argues that that (1) the short form notice does not provide a case

9    number or the case caption; and (2) the long form notice does not provide the docket number in

10   "close proximity."[11]  ECF No. 443 at 3.  The purpose of the email notice is to provide a summary

11   that directs Class Members to the Settlement website which contains more detailed information

12   and the long form notice.  Also, Class Counsel notes that the website prominently lists the case

13   number and caption, which are also repeated in the FAQ section as well as in the court documents

14   available on the website.  Reply at 7.

15          Hawkinson also argues that all dispositive motion practice should have been posted on the

16   settlement website, such as the briefing and court orders relating to the motions to dismiss.  ECF

17   No. 443 at 3–4.  Class counsel notes that the website contains the eleven relevant settlement

18   documents, not all 400 filings from the case docket, such that Class Members are "able to make an

19   informed decision as to whether to opt-out or stay in the class."  Reply at 7 (quoting *Nguyen v.*

20

21   _____

     [10] Kavanagh cites to a YouTube video as evidence that Apple's butterfly keyboard cannot be
22   repaired due to its "design flaw."  This video is inadmissible for these purposes, and the Court
     notes that Apple denies that the butterfly keyboard-equipped laptops are defective.  *See Provident*
23   *Precious Metals, LLC v. Nw. Territorial Mint, LLC*, 117 F. Supp. 3d 879, 899 n.55 (N.D. Tex.
     2015) (YouTube video was "hearsay and inadmissible").
24   [11] Hawkinson also criticizes the notice language as misleading because the long-form notice states
     that "[y]ou can file the objection electronically at https://www.cand.uscourts.gov/cm-ecf" despite
25   the fact that *pro se* objections cannot be filed electronically through CM/ECF.  ECF No. 443 at 4.
     However, this is not accurate; *pro se* objectors *can* in fact file objections electronically if they
26   create a CM/ECF account.  Indeed, Class Counsel notes that this language is recommended by the
     Northern District's Procedural Guidance for Class Action Settlements ¶ 5, at
27   https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

     Case No.: 5:18-cv-02813-EJD
28   ORDER GRANTING MOT. FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
     SETTLEMENT; GRANTING MOT. FOR ATT'Y FEES AND EXPENSES, & SERV. AWARDS
                                              19

United States District Court
Northern District of California

*BMW of N. Am. LLC*, 2012 WL 1677054, at *2 (N.D. Cal. Apr. 20, 2012)).  Indeed, Class Counsel *could* include all prior motions and court orders on the settlement website, but that is not what is required.  *Churchill*, 361 F.3d at 575 ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Lastly, Hawkinson criticizes the fact that the settlement does not direct leftover funds to be distributed pro rata to claimants.  ECF No. 443 at 5.  Class Counsel notes that the "Settlement Agreement does provide for additional rounds of payments to Class Members, up to the individual caps, if the first round of payment does not exhaust the fund."  Reply at 9 (citing to Settlement Agreement §§ 3.4-3.5).  Class Counsel believe that, based on the size of the Class and number of claims received to date, it is unlikely that there will any significant unclaimed funds, but in any event, it is more advantageous to the class to "leave open" what happens to any leftover funds rather than automatically distributing remaining funds to a *cy pres* recipient.  Reply at 9.

In sum, Objectors Parker, Yellin, Kavanagh, and Hawkinson have not confirmed their status as Class Members.  *Seifi v. Mercedes-Benz USA, LLC*, 2015 WL 12964340, at *4 (N.D. Cal. Aug. 18, 2015) (overruling objections "for failing to comply with the requirements").  For these reasons and the reasons articulated above, the Court OVERRULES Objectors Loepp, Finney, Parker, Yellin, Kavanagh, and Hawkinson's objections to the settlement.

### 4. Certification is Granted and the Settlement is Approved.

For the reasons discussed herein and discussed at oral argument, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h).  Such fees must be found "fundamentally fair, adequate, and reasonable" in

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT; GRANTING MOT. FOR ATT'Y FEES AND EXPENSES, & SERV. AWARDS

United States District Court
Northern District of California

1   order to be approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir.

2   2003).  To "avoid abdicating its responsibility to review the agreement for the protection of the

3   class, a district court must carefully assess the reasonableness of a fee amount spelled out in a

4   class action settlement agreement."  *Id.* at 963.  "[T]he members of the class retain an interest in

5   assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high

6   fees are a likely indicator that the class has obtained less monetary or injunctive relief than they

7   might otherwise."  *Id.* at 964.

8       Here, Class Counsel seeks $15,000,000 in attorneys' fees and $1,599,090.75 in

9   reimbursement of expenses incurred by both Class Counsel and Executive Committee.  A

10  maximum of $1,400,000 will be allocated to cover settlement administration costs and a total of

11  $60,000 will be awarded to the Named Plaintiffs as incentive awards.

12          **A.    Attorneys' Fees**

13      Class Counsel moves for a fee award of $15,000,000.  ECF No. 431.  Apple reserved the

14  right to oppose Class Counsel's request for attorneys' fees, expenses, and service awards.

15  Settlement Agreement § 8.2.  Apple does not oppose Class Counsel's motion.

16      The Court analyzes an attorneys' fee request based on either the "lodestar" method or a

17  percentage of the total settlement fund made available to the class, including costs, fees, and

18  injunctive relief.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Under the

19  lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable

20  hourly rate.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the

21  lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable

22  hourly rate.  A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant

23  community.'").  Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically

24  calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate

25  explanation in the record of any 'special circumstances' justifying a departure."  *Bluetooth*, 654

26  F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th

27

28

United States District Court
Northern District of California

Cir. 1990)).  The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *Bluetooth*, 654 F.3d at 944 (citing *Vizcaino*, 290 F.3d at 1050–51).

Here, Apple will pay a $50,000,000 non-reversionary common fund for the benefit of the class.  *See In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018) ("Indeed, the percentage-of-the-fund method is preferred when counsel's efforts have created a common fund for the benefit of the class.").  Accordingly, the percentage-of-the-fund method is the appropriate method to determine attorneys' fees subject to a lodestar cross-check.

### 1.       Departure from the 25% Percentage-of-the-Fund Benchmark

Class Counsel requests $15,000,000 of the $50,000,000 settlement fund, which is 30% of the settlement fund.  The attorneys' fees requested are 5% above the Ninth Circuit's 25% benchmark for attorneys' fees in a class action.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%.").  The Ninth Circuit's 25% benchmark provides a starting point for the Court to determine the appropriate percentage by "tak[ing] into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048; *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1120 (9th Cir. 2021).  The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.  Notably, in common fund cases, awards generally range from 20–30% percent of the recovery.  *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

In determining whether and in what way to depart from the 25% benchmark, courts consider the five *Vizcaino* factors: "(1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and

United States District Court
Northern District of California

1    performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in

2    comparable cases." *Capacitors*, 2018 WL 4790575, at *3 (citing *Vizcaino*, 290 F.3d at 1048–50).

3    Of these factors, "the most critical factor [in determining appropriate attorney's fee awards] is the

4    degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

5         Turning to the first and most significant factor, the Court finds that Class Counsel achieved

6    excellent results for the class.  The settlement fund "represents approximately 9% to 28% of the

7    total estimated damages[.]"  Prelim. Approval Order at 7.  Settlement Class Members in Group 1

8    who experienced two or more Topcase Replacements will automatically receive a minimum

9    payment of $300.  Settlement Class Members in Groups 2 and 3 who submit a valid claim may

10   receive up to $50–$125 payments.  In comparison, other product defect cases involving Apple

11   have yielded substantially lower payments.  *See, e.g.*, *In re Apple iPhone 4 Prod. Liab. Litig.*, No.

12   5:10-MD-2188-RMW, 2012 WL 3283432, at *1 (N.D. Cal. Aug. 10, 2012) (class members

13   received cash payments of $15); *Grace v. Apple, Inc.*, No. 17-CV-00551-LHK (N.D. Cal. Aug. 22,

14   2019), ECF No. 429 at 18 (granting initial payments of $3); *In re Magsafe Apple Power Adapter*

15   *Litig.*, No. 5:09-CV-01911-EJD (N.D. Cal.), ECF Nos. 238, 247 (securing $35 to $79 payments to

16   class members who received replacement power adapters).  Class Counsel predicts that the

17   remaining $32,000,000 in the fund after deduction of attorneys' fees, administrative costs,

18   litigation expenses, and service awards will be sufficient to cover the estimated payments to Class

19   Members.  Mot. for Fee Award at 12.

20        Second, Class counsel submits that the product liability claims against Apple were

21   complex and risky, which is generally true of consumer fraud class actions.  *Id.* (citing *Kakani v.*

22   *Oracle Corp.*, No. 06-CV-06493-WHA, 2007 WL 4570190, at *4 (N.D. Cal. Dec. 21, 2007).

23   Class Counsel contends that they took on risk in challenging Apple in a multi-year consumer

24   products case against a successful company with substantial resources.  Mot. for Fee Award at 13.

25   Class Counsel asserts that, absent settlement, the class faced "major risks" associated with

26   potential decertification, trial, and particularly the "battle of experts" on liability and damages, and

27

28   Case No.: 5:18-cv-02813-EJD
     ORDER GRANTING MOT. FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
     SETTLEMENT; GRANTING MOT. FOR ATT'Y FEES AND EXPENSES, & SERV. AWARDS
                                          23

United States District Court
Northern District of California

1   appeal—all of which could result in little to no recovery for the class, compounded with additional

2   expense and delay.  *Id.* at 13–14.  The Court agrees.  Furthermore, Class Counsel took the case on

3   a contingency fee basis.  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal.

4   2015) "When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk

5   of non-payment . . . justifies a significant fee award.").  Accordingly, the second and third factors

6   support the requested upward adjustment.

7       Fourth, Class Counsel's skill and the quality of their work also support a fee award above

8   the benchmark.  The Class benefitted from Counsel's decades of experience in prosecuting class

9   actions, evidenced by Class Counsel's successful defense in three rounds of motions to dismiss,

10   certification of the seven-state class and subclasses, and prolonged settlement negotiations—first

11   with Judge Ghandi and later with Judge Infante—in pursuit of the best outcome for the class.  *See*

12   Prelim. Approval Order at 6–7; *see Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091,

13   at *13 (N.D. Cal. Dec. 19, 2017) (noting that the skill required in extensive motion practice and

14   discovery as well as the quality of work performed by highly experienced counsel supported the

15   fee award).  The quality of opposing counsel, Morrison and Foerster, further speaks to Class

16   Counsel's skill and diligent prosecution of this action.  *Barbosa v. Cargill Meat Sols. Corp.*, 297

17   F.R.D. 431, 449 (C.D. Cal. 2013) ("The quality of opposing counsel is important in evaluating the

18   quality of Class Counsel's work.").

19       Finally, comparative awards in similar cases affirms that Class Counsel's requested fee is

20   reasonable.  As noted, the 30% fee requested by Class Counsel is within the usual range of "20-

21   30%" in common fund cases.  *Vizcaino*, 290 F.3d at 1047; *Ching v. Siemens Indus., Inc.*, No. 11-

22   CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) ("[T]he request for

23   attorneys' fees in the amount of 30% of the common fund falls within the range of acceptable

24   attorneys' fees in Ninth Circuit cases.").  Other courts in this district have awarded 30% of the

25   fund in similar cases.  *See, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL

26   1791420, at *9 (N.D. Cal. Apr. 24, 2019) (awarding 30% in consumer privacy litigation); *In re:*

27

28

United States District Court
Northern District of California

*Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-JST, 2016 WL 183285, at \*2 (N.D. Cal. Jan. 14, 2016) (awarding a 30% fee).

In sum, a balancing of the *Vizcaino* factors supports the 5% upward adjustment of from the 25% benchmark.  Because the lodestar method yields a figure that is greater than the actual requested fee amounts and the upward adjustment to the percentage-of-the-fund benchmark is supported, the Court finds an award of attorneys' fees provided in the Settlement Agreement to be fair, reasonable, and adequate.[12]

### 2.      Lodestar Cross Check

Based on the time records submitted by counsel, Plaintiffs' lodestar total is $16,777,146.75 across 27,761 hours.[13]  Joint Decl. ¶ 74.  Thus, the lodestar multiplier is 0.89.  "A negative multiplier 'strongly suggests the reasonableness of [a] negotiated fee.'"  *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-CV-07087-DMR, 2021 WL 4133860, at \*6 (N.D. Cal. Sept. 10, 2021) (quoting *Rosado v. Ebay Inc.*, No. 12-CV-04005-EJD, 2016 WL 3401987, at \*8 (N.D. Cal. June 21, 2016)).

The Court finds that the hours claimed were reasonably incurred and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience in the market.  Of the 27,761 hours, 94% were reportedly expended by Class Counsel.  Joint Decl. ¶ 72. Girard Sharp billed at the following rates: $875–$1,195 per hour for partners; $385–$850 per hour for associates; and $200–$250 per hour for legal assistants.  *Id.* ¶ 75.  Co-Lead Counsel, Chimicles Schwartz Kriner & Donaldson-Smith, billed at the following rates: $750–$1,000 per hour for partners; $260–$750 per hour for associates; $400–$425 per hour for contract attorneys; and $200–$325 per hour for paralegals.  *Id.*  Class Counsel determined their rates using the prevailing market rates in this district for attorneys of comparable skill, experience, and qualifications which is the "established standard."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)

---

[12] None of the six objectors oppose Class Counsels' requested attorneys' fees.

[13] The lodestar is exclusive of any time spent in the parallel *Huey* action.

1   (quotations omitted); *see, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL

2   1791420, at *9 (N.D. Cal. Apr. 24, 2019) (approving rates between $150 and $225 per hour for

3   paralegals and $365 to $950 per hour for attorneys); *Hefler v. Wells Fargo & Co.*, No. 16-CV-

4   05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for

5   partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals were

6   reasonable); *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2022 WL 2789496, at *9

7   (N.D. Cal. July 15, 2022) (hourly rates range from $760 to $1,325 for partners, $895 to $1,150 for

8   counsel, and $175 to $520 for associates).

9         Moreover, Class Counsel divided tasks between the two firms to avoid duplication.  Girard

10   Sharp was primarily responsible for the briefing and legal and damages analyses.  Joint Decl. ¶ 72.

11   Chimicles Schwartz Kriner & Donaldson-Smith performed document review and worked with the

12   engineering experts.  *Id.*  The firms worked together on case strategy and both handled depositions

13   and oral arguments.  *Id.*

14         Each of the three firms comprising the Executive Committee also submitted billing records

15   for the Court's assessment.  ECF No. 432-1, Ex. 1.  Schubert Jonckheer & Kolbe LLP expended

16   1,211 hours for a lodestar of $807,160.50.  *Id.*  Berger Montague PC expended 152.5 hours for a

17   lodestar of $80,399.75.  *Id.*  Finally, Migliaccio & Rathod LLP expended 332.9 hours for a

18   lodestar of $177,247.90.  *Id.*  In sum, all three firms' hourly rates are at or below the market rate in

19   this district.

20         Using both the percentage-of-the-fund and the lodestar methods as cross-checks, the Court

21   finds the attorneys' fees sought to be reasonable.

22         **B.      Costs Award**

23         Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses.  Fed. R.

24   Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may

25   recover reasonable expenses that would typically be billed to paying clients in non-contingency

26   matters).  Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by

27

28
     ORDER GRANTING MOT. FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
     SETTLEMENT; GRANTING MOT. FOR ATT'Y FEES AND EXPENSES, & SERV. AWARDS

United States District Court
Northern District of California

1  law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement

2  for litigation expenses, and provides records documenting those expenses, in the amount of

3  $1,599,090.75, the bulk of which were incurred from expert witness and consultant fees. Joint

4  Decl. ¶ 81. After reviewing the itemization of expenses submitted in support of the expense

5  request, the Court finds this amount reasonable, fair, and adequate.

6     **C.    Service Awards**

7        The district court must evaluate the Plaintiff's requested award using relevant factors

8  including "the actions the plaintiff has taken to protect the interests of the class, the degree to

9  which the class has benefitted from those actions . . . [and] the amount of time and effort the

10  plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are

11  discretionary . . . and are intended to compensate class representatives for work done on behalf of

12  the class, to make up for financial or reputational risk undertaken in bringing the action, and,

13  sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West*

14  *Publ'g Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). District courts must "scrutiniz[e] all

15  incentive awards to determine whether they destroy the adequacy of the class representatives."

16  *Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1163 (9th Cir. 2013). This includes analyzing

17  both the service award amount and the number of incentive awards in proportion to the settlement

18  fund. *Staton*, 327 F.3d at 977.

19        Plaintiffs request a $5,000 service award per Class Representative: (1) Zixuan Rao; (2)

20  Joseph Baruch; (3) Bo Laurent; (4) Ashley Marin; (5) Kyle Barbaro; (6) Steve Eakin; (7) Michael

21  Hopkins; (8) Adam Lee; (9) Kevin Melkowski; (10) Lorenzo Ferguson; (11) Benjamin Gulker.

22  Each Class Representative responded to nineteen document requests, eight interrogatories, and

23  requests for inspection of their Class Computers, and produced documents. Joint Decl. ¶ 83; *see*

24  *also* ECF Nos. 431-1 to 431-12. In addition, Plaintiff Huey from the *Huey* action, a parallel suit

25  against Apple pending in the Superior Court of D.C., will also receive a $5,000 service award.

26  The *Huey* action will be dismissed with prejudice upon final approval of the settlement.

27

*United States District Court*
*Northern District of California*

1    "In this district, a $5,000 payment is presumptively reasonable."  *Bellinghausen*, 306

2    F.R.D. at 266.  Here, Plaintiffs propose twelve $5,000 service awards, totaling $60,000.  Courts in

3    this district have approved similar service award payments to twelve or more individuals.  *See*

4    *Wren v. RGIS Inventory Specialists*, No. 6-CV-05778 JCS, 2011 WL 1230826, at *36 (N.D. Cal.

5    Apr. 1, 2011) (approving incentive payments of $5,000 for each for the 24 Named Plaintiffs and

6    $2,500 for one unnamed class member from a $27 million settlement fund).  Moreover, a $60,000

7    total payment is proportional to 0.12% of the $50 million settlement fund.  *See In re Mego Fin.*

8    *Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive award of $5,000 to two

9    plaintiff representatives in $1.75 million settlement, comprising 0.56% of the total settlement

10   fund).  Finally, it is appropriate to give incentives to those who come forward at personal risk,

11   expend time and effort in pursuing the litigation, and who work to achieve a settlement that

12   confers substantial benefits on others.  In light of their efforts, the Court finds that the Class

13   Representatives have adequately represented the class.  A $5,000 service award per Class

14   Representative is reasonable to compensate each of them for their roles in prosecuting this action

15   over the years.

16       Accordingly, the Court approves the requested $5,000 incentive awards per Class

17   Representative and *Huey* Plaintiff.

18   **IV.   CONCLUSION**

19       For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion for Final Approval of

20   Proposed Class Action Settlement.  The Court also **GRANTS** Class Counsels' Motion for

21   Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards and **ORDERS** that:

22   • Class Counsel is awarded $1,559,090.75 in litigation costs;

23   • The eleven Class Representatives and the *Huey* Plaintiff are granted service awards of

24       $5,000 each; and,

25   • Class Counsel is awarded $15,000,000 as attorneys' fees.

26       Without affecting the finality of this order in any way, the Court retains jurisdiction of all

27

matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement, including the designation of a *cy pres* recipient should the need arise.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements.

**IT IS SO ORDERED.**

Dated:  May 25, 2023

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-02813-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT; GRANTING MOT. FOR ATT'Y FEES AND EXPENSES, & SERV. AWARDS